COOLEY LLP
Tiana Demas (*pro hac vice*)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598
Email: tdemas@cooley.com

Max A. Bernstein (305722)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222
Email: mbernstein@cooley.com

Attorneys for Defendant
ROBLOX CORPORATION

*Additional parties and counsel listed on signature pages*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL No. 3166 |
| | Case No. 3:25-md-03166-RS |
| This document relates to: | **DEFENDANTS' CONSOLIDATED CASE MANAGEMENT STATEMENT** |
| ALL ACTIONS | Judge Richard Seeborg |

Defendants Roblox Corporation, Discord Inc., Snap Inc. and Meta Platforms, Inc. respectfully submit this Consolidated Case Management Statement. (*See* ECF. No. 2.)[1]

**I.   JURISDICTION AND SERVICE**

This Court is assigned these cases for purposes of coordinated pretrial proceedings under 28 U.S.C. § 1407. All but one action transferred to this MDL assert that the Court has subject matter jurisdiction because the amount in controversy exceeds $75,000 and because complete diversity of

---

[1] The Parties also submit this statement under the Court's Supplemental Standing Order re: Initial Case Management Conferences, the Standing Order for All Judges of the Northern District of California, and Civil L.R. 16-9.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

citizenship exists between the parties.[2,3] *See* 28 U.S.C. § 1332(a). Four actions in this MDL implicate federal question jurisdiction because they assert federal claims.[4] *See* 28 U.S.C. § 1331. The undersigned counsel are aware of no actions in the MDL in which the Court's subject matter jurisdiction is disputed, except that Defendants reserve all rights as to the cases identified in footnotes 2 and 3. Anticipated motions to dismiss could also deprive the Court of jurisdiction in the absence of diversity.

There are 24 cases where Defendants have neither been properly served, nor waived service.[5]

Defendants consent to direct filing in the MDL, provided that any plaintiff who directly files: (1) designates the federal district court in which the complaint should be deemed to have been originally filed (*i.e.*, the Northern District of California, or the district to which the plaintiff wishes to have their complaint ultimately transferred); and (2) alleges in their complaints sufficient facts to support personal jurisdiction and venue in the designated district. Defendants also reserve the right to object to cases not properly included in the MDL and reserve all rights under *Lexecon Inc.*

---

[2] *Doe v. Roblox Corp.*, No. 3:25-cv-07889 (N.D. Cal.) was originally filed in the U.S. District Court for the Northern District of California, but the complaint does not allege subject matter jurisdiction under 28 U.S.C. § 1332(a); indeed, the complaint has no allegations related to subject matter jurisdiction. *See* Compl. ¶¶ 12–13 (allegations as to personal jurisdiction and venue only).

[3] There is no diversity in *Doe C.W. v. Roblox Corp.*, No. 2:25-cv-02222 (D. Nev.) because Roblox is incorporated in Nevada, not Delaware. *See* Compl. ¶¶ 8 (describing plaintiffs as Nevada citizens and residents); *id.* ¶ 11 (incorrectly alleging Roblox is a Delaware corporation).

[4] The following cases implicate federal question jurisdiction: *Doe v. Roblox Corp.*, No. 2:25-cv-04256 (E.D. Pa.); *Doe v. Roblox Corp.*, No. 2:25-cv-05709 (E.D. Pa.); *Doe v. Roblox Corp.*, No. 2:25-cv-05715 (E.D. Pa.); *Doe v. Roblox Corp.*, No. 2:25-cv-05768 (E.D. Pa.).

[5] Defendants have not yet been properly served, nor waived service, in the following cases: *Doe v. Roblox Corp.*, No. 3:25-cv-10748 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 2:25-cv-02222 (D. Nev.); *Doe v. Roblox Corp.*, No. 3:26-cv-00007 (N.D. Cal.) (no waiver or service as to Meta); *Doe v. Roblox Corp.*, No. 3:25-cv-10948 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-09027 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-09807 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-09946 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-09990 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-09991 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-10020 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-10028 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-10307 (N.D. Cal.) (no waiver or service as to Roblox); *Doe v. Roblox Corp.*, No. 4:25-cv-08756 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 4:25-cv-08866 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 4:25-cv-09745 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 4:25-cv-09945 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 4:25-cv-10351 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-07192 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-07393 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-07486 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-07859 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-07899 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-07889 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 3:25-cv-08076 (N.D. Cal.); *Doe v. Roblox Corp.*, No. 4:25-cv-07676 (N.D. Cal.).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

*v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Defendants intend to discuss with Plaintiffs a procedure for service of process and waiver of service for any complaints properly filed in, removed to, or transferred to this MDL.

## II.   FACTS

The four Defendants operate four distinct and widely used online communication services:

***Roblox***: Roblox offers an interactive online gaming platform on which users play and create games, called "experiences." More than 40 million unique "experiences" span many different genres, and users can chat with each other outside of experiences or through "[g]ameplay interactions" within them. Roblox is available to users of all ages, but minors must obtain parental consent to create an account. Roblox takes many steps to combat abuse of its services. For example, Roblox's current default settings do not allow adults to send direct messages to users under 13, and parental controls allow parents to filter content, block experiences, and determine with whom (if anyone) their child may chat. Roblox has never provided functionality for users to exchange images or video content via chat. In addition, Roblox moderates content using human review and automated tools, employs teams focused on identifying and removing exploitative content, and engages with law enforcement and other organizations that fight child exploitation. Roblox informs users that it cannot prevent all problematic content, encourages users to report abuse, and encourages parents to talk to their children about internet safety, including grooming and sexual exploitation. In January 2026, Roblox began globally rolling out an age check requirement—through facial age estimation or, for users 13 or over, ID verification—to access chat functionality. All Roblox users must agree to its Terms of Use, which include a mandatory arbitration provision.

***Discord***: Discord operates a global voice, video, and text communications service. Users communicate through direct messages, group messages, or in small chat rooms called "servers." Discord started as and remains at its core an online forum for gamers to message each other. Unlike social media platforms, Discord does not use algorithms to select content for users. Discord takes many steps to provide a safe and enjoyable environment for all its users and takes content moderation and safety very seriously. For example, users must be at least 13 years old, and Discord uses a neutral age screen during the sign-up process to prevent underage users from registering.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

Communications on Discord are also subject to significant human and automated moderation. "Teen Safety Assist," for example, automatically blurs potentially sensitive content and sends alerts when teens receive a message from another user for the first time. "Safe Direct Messaging" automatically scans and can block messages that contain explicit content. And Discord's "Family Center for Parents and Guardians" allows parents to closely monitor their children's communications. Discord continuously invests in proactively detecting and removing improper content, including message filtering. All Discord users agree to a mandatory arbitration provision.

*Snap*: Snap operates Snapchat, an online, camera-based messaging platform. Snapchat allows users to communicate through Snaps (photographs or short videos taken with the app's camera), text messages, stickers, and personalized digital avatars called Bitmojis. Just as in-person conversations exist only in the moment, messages sent over Snapchat delete by default. Snap prohibits use by children under 13, and parental-control features, such as the Family Center, allow parents to review friend lists and the accounts with which a child has communicated. Snapchat's architecture minimizes the risk of strangers connecting with minors by facilitating communications between existing contacts. Snap uses myriad measures to combat bad actors seeking to exploit users, including through robust in-app tools allowing users to report bad actors without revealing that report to the reported user. Snap encourages its users to report safety concerns, and provides a digital-safety guide that aims to educate and empower teens and parents regarding online risks, including the sharing of nude or intimate images and sextortion.

*Meta*: Meta owns and operates Instagram, among other social media platforms. Instagram users can post photos and videos, interact with that content, and exchange private messages via voice, video, photos, or text. Instagram's Terms of Service provide that users must be at least 13 years old. Instagram's Community Standards prohibit "content or activity that sexually exploits or endangers children," and Instagram has a zero-tolerance policy when it comes to sharing sexual content involving minors. Meta uses sophisticated technology and other techniques not only to detect child exploitation imagery and remove it, but also to detect and prevent grooming or potentially inappropriate interactions between a minor and an adult. Meta also uses technology to prevent potentially suspicious accounts from interacting with teen accounts and accounts that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

predominantly feature minors, as well as to prevent potentially suspicious accounts from finding each other. And Meta works hard to help law enforcement stop bad actors like those who allegedly harmed Plaintiffs, including providing tips to law enforcement and responding to valid law enforcement process.

Plaintiffs allege that when they were minors, they met predators on Roblox who pretended to also be minors, who subsequently groomed Plaintiffs, and then moved their communications to other online services, including unnamed services, text messages, Discord, Snapchat, or Instagram. In some cases, Plaintiffs allege that the predators sent communications soliciting Plaintiffs to send sexually explicit images, including child sexual abuse material ("CSAM"). In other cases, Plaintiffs' communications with the predators allegedly led to in-person meetings, resulting in actual or attempted sexual assault, kidnapping, and other crimes. Other Plaintiffs allege "inappropriate" communications or forming an "online relationship" with alleged predators, without further detail.

The crimes Plaintiffs describe are deeply concerning. But the third-party predators bear sole responsibility for their heinous conduct. Many have been arrested or convicted for their crimes through the criminal justice system. Plaintiffs, however, seek in this MDL to impose tort liability on Defendants—who operate online communication services—for these third parties' alleged criminal acts. As detailed next, many of these claims should be resolved in another forum, given Roblox's and Discord's mandatory arbitration provisions. And all claims will face significant legal hurdles, as the underlying theories of liability are foreclosed by Section 230 of the Communications Decency Act, U.S. Constitution, and black-letter tort law principles.

### III.    LEGAL ISSUES

The Court will need to resolve several threshold questions before discovery begins, including whether these actions belong in court or arbitration and, even if the claims belong in court, whether Plaintiffs have stated a claim upon which relief can be granted.

#### A.    Arbitration:

For any Defendant moving to compel arbitration, the Court must decide if there is an agreement to arbitrate with each Plaintiff. Defendants anticipate that the Court will also need to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

decide whether certain Plaintiffs may invoke the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the "EFAA"), 9 U.S.C. § 401, which permits a nonmoving party to avoid arbitration in certain cases involving sexual assault and sexual harassment. *E.g.*, *Farnham v. Grindr, LLC*, No. 25-cv-1260, 2025 WL 3062698, at *1 (M.D. Fla. Nov. 3, 2025); *M.D. v. Verizon Commc'ns Inc.*, No. 24-CV-474, 2025 WL 2712831, at *1 (E.D.N.C. Sept. 23, 2023). If the Court finds an agreement to arbitrate and that the EFAA does not apply, it must compel arbitration, without regard to whether the agreement is enforceable. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (where agreement "clearly and unmistakably" delegates to the arbitrator threshold issues such as the scope, validity, and enforceability of the agreement, arbitrability is left to the arbitrator). In the event any such motion is not granted, and is appealed, a mandatory stay pending appeal will apply. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023); *see also In re Chrysler Pacifica Fire Recall Prods. Liab. Litig. MDL No. 3040*, No. 22-3040, 2024 WL 868239, at *1 (E.D. Mich. Feb. 28, 2024) (applying *Coinbase* to stay portion of cases in MDL).

   **B.     Section 230:**

The cases in this MDL are all barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230").

Section 230 immunizes providers of interactive computer services from claims that seek to hold them liable for failing to perfectly monitor, screen, block, modify, edit, or remove content provided by third parties. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). This includes claims seeking to hold online service providers liable for the sexual exploitation of one user by another when the factual predicate is that the two users messaged using the platforms' service, no matter what cause of action is asserted. *See, e.g.*, *Doe v. Grindr, Inc.* ("*Grindr*"), 128 F.4th 1148, 1153–54 (9th Cir. 2025) (minor abused by adult he met on app); *Doe v. MySpace, Inc.* ("*MySpace*"), 528 F.3d 413, 418 (5th Cir. 2008) (same); *Doe v. Snap, Inc.*, No. 22-20543, 2023 WL 4174061, at *1 (5th Cir. June 26, 2023) (similar); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar); *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021) (similar); *Doe II v. MySpace Inc.* ("*MySpace II*"), 175 Cal. App. 4th 561, 572–75 (2009) (similar).

All of Plaintiffs' claims are premised on the allegation that Defendants failed to monitor,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

restrict, or block third-party content, including communications between Plaintiffs and their alleged perpetrators and the content Plaintiffs and the perpetrators included on their individual profiles. Because Plaintiffs' "claims necessarily implicate [Defendants'] role as . . . publisher[s] of third-party content," they must be dismissed. *Grindr*, 128 F.4th at 1151–54 (dismissing misrepresentation, product liability, failure to warn, and negligence claims); *MySpace II*, 175 Cal. App. 4th at 564–65 (dismissing nearly identical claims); *MySpace*, 528 F.3d at 419–20 (same); *In re Facebook*, 625 S.W.3d at 85, 93–94 (same).

C. **First Amendment:**

The First Amendment further bars any non-fraud claims. The Supreme Court has made clear that the First Amendment prohibits holding a forum for third-party speech liable for the speech it distributes without proof that the forum at least had "knowledge . . . of the contents" of the speech in question. *Smith v. People of the State of Cal.*, 361 U.S. 147, 149 (1959) (bookseller could not be liable for distributing obscene books without knowledge the books were obscene). Under this bedrock constitutional principle, Plaintiffs cannot seek to impose liability based on the perpetrators' messages or CSAM they solicited.

Certain Defendants may further argue that Plaintiffs' claims concern the "exercise of [a publisher's] editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). This includes a social media platform's "capacity to engage in content moderation— to filter, prioritize, and label the vari[ous] messages, videos, and other content their users wish to post." *Moody v. NetChoice, LLC*, 603 U.S. 707, 717 (2024). "Like the editors, cable operators, and parade organizers" of the past, "major social-media platforms are in the business, when curating their feeds, of combining 'multifarious voices' to create a distinctive expressive offering." *Id*. at 738. And that "expressive offering" "derive[s] largely from the platforms' editorial decisions about which posts to remove, label, or demote." *Id*. at 738–39; *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 759 (9th Cir. 2024) (reaffirming, after *Moody*, that decisions about "which third-party content … [to] display, or how the display will be ordered and organized," are "expressive choices" (citation omitted)). "'The choice of material,' the 'decisions made [as to] content,' the 'treatment of public issues'—'whether fair or unfair'—all these 'constitute the

Cooley LLP
Attorneys at Law
San Francisco

7

Defendants' Consolidated
Case Management Statement
3:25-md-03166-RS

exercise of editorial control and judgment." *Moody*, 603 U.S. at 738 (alterations in original) (quoting *Tornillo*, 418 U.S. at 258). Court interference with such editorial choices "alters the content of the compilation[,]" and "confronts the First Amendment." *Moody*, 603 U.S. at 731–32.

### D.     Failure to Allege Essential Elements of Claims:

Plaintiffs' claims independently fail because Plaintiffs have failed to plead essential elements, including (but not limited to) the following:

*Causation*. Plaintiffs cannot allege proximate causation, which dooms all their claims. Proximate causation requires a causal chain that "in natural and continuous sequence, unbroken by any efficient intervening cause," produces an injury. *State of Cal. v. Super. Ct.*, 150 Cal. App. 3d 848, 857 (1984) (quotation omitted).[6] Courts have held that an online service cannot be the proximate cause of harm caused by third-party crimes solely because it provides tools the criminal used to communicate. *See, e.g.*, *Fields v. Twitter, Inc.*, 881 F.3d 739, 747–48 (9th Cir. 2018) (Twitter app); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 622–25 (6th Cir. 2019) (same); *Meador v. Apple, Inc.*, 911 F.3d 260, 267 (5th Cir. 2018) (iMessages); *Roland v. Letgo, Inc.*, Nos. 22-1456, 23-1014 & 23-1012, 2024 WL 372218, at *5 (10th Cir. Feb. 1, 2024) (marketplace app); *A.B. v. Salesforce.com, Inc.*, No. 20-CV-01254, 2021 WL 3616097, at *5 & n.5 (S.D. Tex. Mar. 22, 2021) (software enabling messaging); *see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 498–50 (2023) (online platforms do not aid and abet bad actors who misuse their platforms).

*Fraudulent concealment, misrepresentation*. Fraudulent concealment requires (1) concealment of a material fact, (2) by a defendant with a duty to disclose the fact, (3) intention to defraud, (4) reliance, and (5) resulting damage. *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014). The elements for misrepresentation are similar, but lack "the element of intent to deceive" or a duty to disclose. *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 781 (2013). Under Fed. R. Civ. P. 9(b), each of these elements must be alleged with specificity, identifying "the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

---

[6] Defendants cite California cases in this submission but take no position at this stage of the case regarding which state's law should apply in each individual case.

Cooley LLP
Attorneys at Law
San Francisco

8

Defendants' Consolidated
Case Management Statement
3:25-md-03166-RS

1097, 1106 (9th Cir. 2003)). Plaintiffs' claims fail for several reasons, including that Plaintiffs do not identify any specific representations that were allegedly false; Defendants had no duty to disclose because they were not in a fiduciary or fiduciary-like relationship with Plaintiffs; even if there were a duty to disclose, Defendants have satisfied that duty and, for some Defendants, the Plaintiffs' complaints include allegations demonstrating that nothing was concealed.

*Negligence.* Plaintiffs' negligence-based causes of action also fail on the merits because there is no legally cognizable duty to prevent harms inflicted by third parties or that arise simply from making a communications service available to the public. The duties asserted by Plaintiffs primarily sound in nonfeasance. That theory of liability was rejected in *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019), where the Ninth Circuit affirmed dismissal of negligence claims that sought to hold a platform liable for failing to protect a user from another user. *Dyroff* held there was "no special relationship" between the website and its users giving rise to any actionable non-feasance duty, and that releasing a generally available communications service created no cognizable duty in misfeasance. 934 F.3d at 1101; *see also, e.g.*, *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419 (2022) (same); *Bogard v. TikTok Inc.*, No. 24-cv-03131, 2025 WL 604972, at *9 (N.D. Cal. Feb. 24, 2025) (same); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (same); *see also Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021) ("[T]he defendant owes no legal duty to the plaintiff" if "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm.").

*Product liability*. Plaintiffs' product liability claims will fail for the further reason that Defendants' services are not "products" for purposes of product liability law, which must be tangible goods, *e.g.*, *Jackson*, 639 F. Supp. 3d at 1011 (Airbnb not a product), and because product liability cannot attach to the publication of ideas, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034, 1035 n.8 (9th Cir. 1991) (applying California law). Additionally, as to the failure-to-warn claims, "there is no need to warn of known risks under either a negligence or strict liability theory." *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 67 (2008); *see also Holmes v. J.C. Penney Co.*, 133 Cal. App. 3d 216, 218 (1982) (sustaining demurrer).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

IV. **MOTIONS**

    A. **Motions to Compel Arbitration:**

Plaintiffs agreed to arbitrate their claims against Roblox and Discord when they accepted both Defendants' enforceable terms of use. Roblox and Discord have already moved to compel arbitration in two early-filed member matters (Nos. 4:25-cv-03520 and 3:25-cv-10816) and anticipate filing motions to compel arbitration ("Motions to Compel") as to the other Plaintiffs (subject to Defendants' ongoing investigation and receipt of username data necessary to determine the facts underlying these motions).[7]

Plaintiffs in many member matters have voluntarily provided their usernames or other information necessary for Defendants to identify their accounts. This is both critical for preservation purposes, as discussed in Section 6 below, and necessary for Roblox and Discord to prepare the Motions to Compel, as identifying Plaintiffs' accounts allows Roblox and Discord to determine, for example, the manner of assent, the versions of their terms that apply, and other key facts necessary for orderly resolution of the motions. Defendants therefore request that Plaintiffs be ordered to continue to provide this preliminary username and account information.

Defendants propose that Roblox and Discord then select five bellwether cases for which they will file Motions to Compel ("Bellwether Motions"), which would be decided before any merits-based pleadings-stage motions. These Bellwether Motions will streamline the initial briefing on Motions to Compel and allow the Court to provide guidance to the Parties. Defendants propose that once the Bellwether Motions are resolved, the Court should set a further CMC to determine how the case should proceed. This will allow the Court and the Parties to consider a case schedule and sequence, accounting for rulings on the Bellwether Motions, whether any appeals by right (resulting in automatic stays) were taken, and whether Defendants Roblox and Discord intend to move to compel arbitration as to the remaining Plaintiffs. Defendants propose this further CMC be set approximately 30 days after the order(s) resolving the Bellwether Motions.

If the Court ultimately compels Plaintiffs' claims against Roblox and Discord to arbitration, it is possible that the rationale for a MDL may no longer hold, given that only a handful of claims

---

[7] Defendants Snap and Meta do not at this time intend to move to compel arbitration.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

against disparate defendants would remain and, in Plaintiffs' own words, Roblox is the "common thread" around which the MDL was originally formed. This is a further reason to resolve Motions to Compel first and for these cases to proceed as an MDL only if those motions are denied.

### B. Motions to Dismiss:

As discussed above, Defendants propose that the Court resolve five Bellwether Motions to compel arbitration and then set a CMC thereafter to determine next steps. However, Defendants note that if the Parties ultimately brief motions to dismiss, such briefing should occur in two phases. Defendants would first bring "cross-cutting" motions to dismiss as to all Plaintiffs based on certain threshold legal issues, namely: the applicability of Section 230, the First Amendment, failure to allege causation, failure to allege fraudulent concealment/misrepresentation, the lack of a duty of care for negligence claims, and the lack of a "product" for product liability claims. *See* Section 3, *supra*. None of these pleadings challenges requires discovery to resolve.

If any claims survive the threshold challenges, Defendants' more claim-specific arguments can be addressed. Then, if necessary, the Court can direct the preparation of coordinated pleadings with the benefit of a ruling on the threshold legal issues. Other courts in this district have employed such phased approaches to motions to dismiss in MDLs. *See, e.g.*, *Pretrial Order No. 5: Discovery Schedule and Initial Motions*, *In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, No. 23-md-3084 (N.D. Cal. Dec. 28, 2023), ECF No. 175; *Case Management Order No. 1* (*"Case Mgt. Order No. 1"*), *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litig.*, No. 22-md-3047 (N.D. Cal. Nov. 10, 2022) ECF No. 75.

### C. Motions to Disqualify:

Cognizant that courts favor addressing such issues early in an MDL, Defendants raise concerns about counsel representing Plaintiffs in member matters and states in investigations and litigation against Defendants involving the same subject matter. For example, Cooper Masterman, PLLC ("Cooper Masterman") currently represent Plaintiffs in member matters and the State of Florida in investigations and litigation against Roblox. The State of Florida's complaint alleges that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

Roblox "deceived parents about the safety of its platform."[8] Defendants understand that, in Cooper Masterman's role as outside counsel retained by the Attorney General of Florida, Cooper Masterman has received confidential documents and other information from Roblox, produced in response to civil investigative demands and other coercive discovery mechanisms. Cooper Masterman may also have received, or may in the future receive, confidential information related to criminal subpoenas issued by the State of Florida.

The Rules of Professional Conduct make clear that a lawyer cannot receive confidential information as counsel for a governmental body and then use that information to prosecute private litigation. *See* Cal. Code of Professional Conduct 1.11 (c) ("[A] lawyer who was a public official or employee and, during that employment, acquired information that the lawyer knows is confidential government information about a person, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person."). If Cooper Masterman or other Plaintiffs' firms have run afoul of this rule, Defendants will move to disqualify them. *See Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 309 (1989) ("disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation").

Given the high likelihood that Cooper Masterman already may have received confidential information in connection with their role as counsel for the State of Florida—and the firm has only four lawyers, making an ethical wall impossible—Defendants respectfully request that the Court require the firm's counsel to explain what categories of documents and information they have received in the course of their representation of the State of Florida, including whether they have received confidential government information.

If Cooper Masterman has shared documents or information received in connection with its representation of the State of Florida with other counsel representing Plaintiffs in the member

---

[8] *See, e.g.*, https://www.myfloridalegal.com/newsrelease/attorney-general-james-uthmeier-sues-roblox-misrepresenting-platforms-safety.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

matters, Defendants will seek similar remedies as to them.

## V.    AMENDMENT OF PLEADINGS

The Court should set a prompt deadline for Plaintiffs to file a single master complaint. Defendants maintain that any factual allegations in the master complaint must not improperly lump Defendants together and must include distinct allegations that are specific to each Defendant's app or service.

If a master complaint approach is adopted, each Plaintiff should be required to file an individual short-form complaint that fully complies with applicable pleading requirements. Such short-form complaints should (1) identify which of the causes of action in the master complaint the Plaintiff asserts; (2) identify the Defendant(s) against which the Plaintiff purports to bring each cause of action; (3) make Plaintiff-specific allegations regarding the Plaintiff's alleged use of the app(s) at issue, alleged injuries, and alleged damages, including alleging with specificity which app(s) the Plaintiff used and the relevant dates of such alleged use, injuries, and damages; and (4) make any Plaintiff-specific allegations necessary to support particular claims (*i.e.*, to support elements like reliance and causation, as necessary). The Court should direct the parties to meet and confer regarding an appropriate form for such short-form complaints and a short-form complaint implementation order.

## VI.   EVIDENCE PRESERVATION

Defendants have reviewed the Northern District of California's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have taken reasonable and proportionate steps to preserve evidence based on the information available to Defendants relevant to the issues in this action. These cases present complex preservation issues that will require careful delineation and management. Defendants wish to flag the following issues for the Court's awareness.

*First*, a threshold issue is the need to identify all user account(s) associated with Plaintiffs and/or their parents or guardians across the various services, as well as the alleged third-party perpetrator involved in each Plaintiff's case. Even a non-pseudonymous name is insufficient to identify Plaintiffs' account(s). Instead, at a minimum, Defendants require that Plaintiffs diligently

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

search for and provide the following information to identify the relevant accounts associated with Plaintiffs: (1) a username (*i.e.*, "handle"), user ID, or URL for all accounts used by Plaintiffs; (2) all phone numbers used by Plaintiffs and/or their parents or guardians; (3) all email addresses used by Plaintiffs and/or their parents or guardians; and (4) all available identifying information, including but not limited to names and usernames, for the alleged perpetrators involved in each Plaintiff's case. The Parties should confer regarding the information necessary from Plaintiffs to aid in the preservation process and a preservation fact sheet procedure to facilitate preservation.

*Second*, for any of Plaintiffs' accounts that remain active on Defendants' apps, Plaintiffs or their parents or guardians may continue to generate new activity, and in some circumstances that activity may be ephemeral. Plaintiffs can save or preserve their account content, while Defendants would face substantial technological and legal burdens in relation to implementing continuous preservation. While it is unlikely that all of Plaintiffs' ongoing account activity will be relevant to the claims, if Plaintiffs attempt to insist that Defendants assume a one-sided, ongoing preservation of all future content and account activity, Defendants intend to seek clarification from the Court to address the scope of their obligations, if any, to preserve any newly generated content created after the filing of the lawsuit as to these active accounts.

*Third*, Defendants note that many of Plaintiffs' complaints allege that minor users sent images or videos that could constitute child sexual abuse material ("CSAM"). Applicable law prohibits the knowing and intentional production, distribution, reception, and possession of "child pornography," for example, as defined in 18 U.S.C. § 2256(8) (*i.e.*, CSAM). Separately, federal law sets out a specific framework when an electronic service provider has actual knowledge of certain specific apparent violations of federal law involving CSAM; in particular, federal law includes an obligation to report such material to the National Center for Missing and Exploited Children ("NCMEC") and, after a specified period of secure and limited-access, limited-purpose retention, delete the CSAM. *See* 18 U.S.C. § 2258A(a) and (h). Given these legal constraints, should Defendants gain actual knowledge of any such apparent violations, they expect to be unable to preserve (beyond the limited retention period prescribed by law) or produce any such material. Defendants intend to discuss with Plaintiffs an appropriate procedure in this litigation for

Cooley LLP
Attorneys at Law
San Francisco

14

Defendants' Consolidated
Case Management Statement
3:25-md-03166-RS

preserving material related to such CSAM. To be clear, Plaintiffs and their counsel are in the best position to have knowledge of particular pieces of CSAM they make allegations about, which they can and should report to NCMEC and to the services on which they were sent.

*Fourth*, Plaintiffs have necessarily accessed Defendants' services and communicated with third-party perpetrators using one or more electronic devices. Those devices contain relevant information, including, for example, information about any communications Plaintiffs may have had with the alleged perpetrators on other applications. This evidence is not available to Defendants except through an examination of Plaintiffs' devices. To preserve that evidence, including preventing any future loss of data, Defendants propose that Plaintiffs be ordered to make full images or copies of the contents of those devices and any backups in a forensically sound manner using industry-standard tools to be agreed upon by the Parties. Absent such an order, there is a significant probability of data loss from Plaintiffs' devices prior to discovery opening.

Defendants are open to discussing these and other preservation issues in the context of negotiating a protective order and ESI protocol with Plaintiffs during the pendency of their motion(s) to dismiss and/or motions to compel arbitration, but for the reasons discussed below, discovery (including any Rule 26(f) conferences and reports) should be stayed during that time.

**VII.   DISCOVERY**

There has been no discovery in the cases within the MDL and only limited discovery in one state case. The Court should maintain a stay on discovery pending resolution of the threshold legal issues that will be the subject of Defendants' Motions to Compel and motions to dismiss. *See Stipulation and Order Setting Deadlines for Case Schedule, In re Coinbase Customer Data Sec. Breach Litig.*, No. 25-md-3153 (S.D.N.Y. Dec. 22, 2025), ECF No. 65; *Id.*, *MDL Case Management Order No. 1*, (S.D.N.Y. Dec. 29, 2025), ECF No. 70 (staying all discovery not related to arbitrability pending motion to compel arbitration); *Case Mgt. Order No. 1* (staying discovery through resolution of motion to dismiss); *Pretrial Order No. 11: Order Regarding Limited Discovery, In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-md-2843 (N.D. Cal. Aug. 27, 2018), ECF No. 130 (same). Defendants have meritorious threshold legal defenses, including Section 230 immunity and the First Amendment, which should preclude Plaintiffs' claims

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

outright. Discovery should remain stayed until these motions to dismiss are resolved. *See, e.g.*, *Onuoha v. Facebook, Inc.*, No. 16-CV-06440, 2017 WL 11681325, at *1 (N.D. Cal. Apr. 7, 2017) (staying discovery where "if Facebook prevails on its [Section] 230 argument, all of Plaintiffs' claims will be dismissed"); *Bride v. Snap Inc.*, No. 21-CV-06680, 2022 WL 17184600, at *3 (C.D. Cal. Oct. 21, 2022) (staying discovery pending decision on Section 230 motion to dismiss); *Doe v. Reddit, Inc.*, No. SACV 21-768, 2021 WL 4348731, at *7 (C.D. Cal. July 12, 2021) (same); *Order Staying Discovery and Continuing Case Management Conference*, *Fields v. Twitter, Inc.*, No. 16-cv-00213 (N.D. Cal. Apr. 7, 2016), ECF No. 28 (same); *Civil Conference Minute Order*, *Gonzalez v. Twitter, Inc.*, No. 16-cv-03282 (N.D. Cal. Sept. 21, 2016), ECF No. 47 (same).

In the interest of efficiency, even as threshold motions are being litigated, Defendants are prepared to engage with Plaintiffs on several preliminary discovery issues, including an appropriate protective order and ESI protocol. Roblox and Discord note that they in no way intend to nor do waive any right to move to compel arbitration by so engaging, and no Defendant waives any right with respect to dismissal or other pleadings challenges.

## VIII.  DISCLOSURES

The Court should stay all discovery, including Rule 26 disclosures, pending resolution of Defendants' motions to compel arbitration and motions to dismiss.

## IX.  STATUS OF LITIGATION PENDING IN THE INSTANT MDL

There are currently 82 cases that are part of this MDL. *See* ECF Nos. 1, 5, 12-13, 18. 51 additional cases were transferred to this Court after the JPML's initial centralization ruling, *see* Conditional Transfer Order (CTO-1) (ECF No. 8, filed December 23, 2025), Conditional Transfer Order (CTO-2) (ECF No. 9, filed December 30, 2025). Status reports for member cases are attached hereto as **Exhibit A**.

## X.  RELATED STATE CASES

Several state court cases are pending in California that involve related issues. A list of related state cases is included in **Exhibit A.** There is currently a pending petition to create a Judicial Counsel Coordination Proceeding in Alameda County.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

## XI. RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief sought.

## XII. SETTLEMENT AND ADR

Defendants believe it would be premature to discuss settlement.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Defendants do not consent to a Magistrate Judge for all purposes.

## XIV. NARROWING OF ISSUES

Defendants believe that it is premature to consider an agreement to narrow issues for trial or expedite the presentation of evidence at trial. They do not propose to bifurcate any issues, claims, or defenses yet, but Defendants reserve the right to propose a discovery plan following resolution of their Motion(s) to Compel and dismiss that is tailored to address any remaining issues.

## XV. EXPEDITED TRIAL PROCEDURE

Defendants respectfully submit that this case is not appropriate for proceedings pursuant to the expedited trial procedure of General Order No. 64, Attachment A.

## XVI. SCHEDULING

The Court should maintain the discovery stay until after Defendants' pleadings challenges are resolved, particularly given Defendants' strong immunity defense under Section 230.

Defendants propose the following briefing schedule for their proposed Motions to Compel:

| Event | Date |
| --- | --- |
| Deadline for Plaintiffs to Provide All Platform Usernames, Emails, and Phone Numbers | February 20, 2026 |
| Deadline for Plaintiffs to File Master Complaint | March 6, 2026 |
| Deadline to Identify Bellwether Cases | April 3, 2026 |
| Deadline to Submit Joint Plaintiff Fact Sheets Proposal or Letter Setting Out Disputes re Same | April 9, 2026 |
| Deadline to File Short-Form Complaints | April 16, 2026 |

17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

| Deadline to File Motions to Compel as to Bellwether Plaintiffs | May 14, 2026 |
|---|---|
| Deadline to File Oppositions to Motions to Compel as to Bellwether Plaintiffs | June 25, 2026 |
| Deadline to File Replies in Support of Motions to Compel as to Bellwether Plaintiffs | August 6, 2026 |
| Hearing on Motions to Compel as to Bellwether Plaintiffs | August 20, 2026 (or a Date Convenient for the Court Thereafter) |
| Case Management Conference to Set Further Case Schedule | Approximately 30 Days Following Order re Motions to Compel as to Bellwether Plaintiffs |

Defendants believe it would be premature to schedule any other deadlines or proceedings at this time.

## XVII. TRIAL

To Defendants' knowledge, a jury trial has been requested by plaintiffs in every case that is part of this MDL.

## XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Defendants believe that the filing of a statement pursuant to Civil L.R. 3-15, if necessary, should take place in accordance with the Local Rules.

## XIX. DEFENSE LIAISON

Following the Court's appointment of Plaintiffs' leadership structure, Defendants would be amenable to having one or two representatives liaise with the Plaintiffs' leadership group.

## XX. PROFESSIONAL CONDUCT

The undersigned certify that they have reviewed the Guidelines for Professional Conduct for the Northern District of California.

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

Dated: January 16, 2026

Respectfully submitted,

**COOLEY LLP**

*/s/ Tiana Demas*
Tiana Demas (*pro hac vice*)

Attorneys for Defendant
ROBLOX CORPORATION

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Ambika Kumar*
Ambika Kumar

Attorneys for Defendant
DISCORD INC.

**O'MELVENY & MYERS LLP**

*/s/ Leah Godesky*
Leah Godesky

Attorneys for Defendant
SNAP INC.

**COVINGTON & BURLING LLP**

*/s/ Isaac D. Chaput*
Isaac D. Chaput

Attorneys for Defendant
META PLATFORMS, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANTS' CONSOLIDATED
CASE MANAGEMENT STATEMENT
3:25-MD-03166-RS

# ATTESTATION

I, Tiana Demas, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: January 16, 2026

/s/ *Tiana Demas*
Tiana Demas

Cooley LLP
Attorneys at Law
San Francisco

20

Defendants' Consolidated
Case Management Statement
3:25-md-03166-RS