1    COOLEY LLP
     Tiana Demas (*pro hac vice*)
2    110 N. Wacker Drive, Suite 4200
     Chicago, IL 60606-1511
3    Telephone: +1 312 881 6500
     Facsimile: +1 312 881 6598
4    Email: tdemas@cooley.com

5    Max A. Bernstein (305722)
     3 Embarcadero Center, 20th Floor
6    San Francisco, CA 94111-4004
     Telephone: +1 415 693 2000
7    Facsimile: +1 415 693 2222
     Email: mbernstein@cooley.com
8
     Attorneys for Defendant
9    ROBLOX CORPORATION

10   *Additional parties and counsel listed on*
     *signature pages*
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15   IN RE: ROBLOX CORPORATION CHILD          MDL No. 3166
     SEXUAL EXPLOITATION AND
16   ASSAULT LITIGATION                        Case No. 3:25-md-03166-RS

17   ─────────────────────────────            **DEFENDANTS' CASE**
     This document relates to:                 **MANAGEMENT STATEMENT**
18
     ALL ACTIONS                               Judge Richard Seeborg
19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1        Pursuant to the Court's January 30, 2026 Order Appointing Plaintiffs' Co-Lead Counsel

2   and Directing Parties to Meet and Confer, ECF No. 137 ("CMO #1"), Defendants Roblox

3   Corporation, Discord Inc., Snap Inc., and Meta Platforms, Inc. ("Defendants") respectfully submit

4   this Case Management Statement in advance of the case management conference ("CMC")

5   scheduled for February 27, 2026, at 9:30 a.m.

6        Defendants met and conferred in good faith with Plaintiffs regarding the issues identified

7   by the Court in CMO #1, and Defendants' positions on those issues are laid out below.

8   **I.      SPECIAL MASTER/MAGISTRATE JUDGE FOR DISCOVERY COORDINATION AND DISPUTES**

9        Defendants consent to referring discovery coordination and any discovery disputes to a

10  magistrate judge in this District, an approach used by this Court and others when managing

11  multidistrict litigations. *See, e.g.*, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 3:20-md-02966-

12  RS, ECF No. 66 (referring discovery matters to Magistrate Judge van Keulen); *In re Viagra*

13  *(Sildenafil Citrate) Prods. Liab. Litig.*, 3:16-md-2691-RS, ECF No. 73 (referring discovery matters

14  to Magistrate Judge Kim); *In re Optical Disk Drive Prods. Antitrust Litig.*, 3:10-md-02143-RS,

15  ECF No. 348 (referring discovery disputes to magistrate judge); *In Re: Wachovia Corp.*, 3:09-md-

16  02015-RS, Dkt. Entry 1/4/2011 (assigning MDL to Magistrate Judge Grewal for discovery

17  matters); *In Re: Webkinz Antitrust Litig.*, 3:08-md-01987-RS, ECF No. 22 (referring all discovery

18  matters to magistrate); *In re Stubhub Refund Litig.*, 4:20-md-02951-HSG, ECF No. 98 (referring

19  MDL to magistrate judge for discovery purposes).

20       Defendants object to the assignment of a special master, as none of the conditions set forth

21  in Federal Rule of Civil Procedure 53(a)(1) have been satisfied. In particular, Defendants are aware

22  of no reason that discovery "cannot be effectively and timely addressed by an available . . .

23  magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). "Ordinarily a district judge who

24  delegates [pretrial] functions should refer them to a magistrate judge acting as a magistrate judge."

25  Fed. R. Civ. P. 53(a) advisory committee's note to 2003 amendment. While discovery should not

26  open until the Court resolves preliminary dispositive motions, both the Court and the Parties are

27  cognizant of the need for and are already discussing mechanisms for streamlining discovery,

28  including exchanging preliminary information necessary for preservation of relevant evidence and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

1    ensuring compliance with the Stored Communications Act ("SCA") in discovery.[1] Defendants have

2    also agreed to work with Plaintiffs to negotiate upfront the protocols and orders that will need to

3    be in place before discovery can open, including an order permitting Defendants to produce certain

4    account-related information to Plaintiffs, a protective order, an ESI protocol, and a Rule 502(d)

5    (clawback) order. To the extent the Parties are unable to agree on early information exchanges or

6    certain provisions of these discovery-related orders, a magistrate judge would be well-positioned

7    to resolve those disputes. Indeed, magistrate judges in this District are uniquely experienced in

8    handling SCA and high-volume ESI issues in complex litigation involving technology companies.

9         By contrast, "[a] pretrial master should be appointed only when the need is clear." Fed. R.

10   Civ. P. 53(a) advisory committee's note to 2003 amendment. No such need is apparent here—

11   particularly before dispositive motions have been resolved—and the Parties should not be

12   incentivized to proliferate discovery disputes, but rather to be efficient in reaching compromises

13   where possible. *See generally* ABA, Jud. Div., Special Master Case Stud. 16 (2018), *available at*

14   https://www.americanbar.org/content/dam/aba/publications/judicial_division/

15   2018lc-specialmasterscasestudy.authcheckdam.pdf (noting some attorneys' critique that the

16   involvement of a special master "can make a case more litigious and costly by providing the

17   opportunity for attorneys to short-circuit the 'meet and confer' process and instead present issues

18   to the Special Master . . . which may then be re-litigated in court").

19        To the extent the Court overrules Defendants' objection to the appointment of a special

20   master, Defendants do not waive Rule 53, which requires (1) *de novo* review of a special master's

21   findings of fact and conclusions of law and (2) abuse-of-discretion review of special master rulings

22   on procedural matters. *See* Fed. R. Civ. P. 53(f). Should the Court appoint a special master,

23

24

---

[1] The SCA precludes providers of "electronic communication service[s]" (or "ECS") and "remote computing service[s]" (or "RCS") to the public—like Defendants—from disclosing the contents of communications, such as the text of users' private messages and emails, except pursuant to certain exceptions set forth in statute. 18 U.S.C. § 2702(a)(1)-(2). As relevant here, one such exception provides for disclosures of content information when such disclosures are made "with the lawful consent of the originator or an addressee or intended recipient of such communication [in the case of an ECS], or the subscriber in the case of [RCS]," *id*. § 2702(b)(3), that is, with the consent of the user of the service.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

1    Defendants have no objection to the Court appointing a magistrate judge to review the special

2    master's decisions.

3    **II.    ADR/MEDIATOR SELECTION**

4        It would be premature to discuss settlement before the Court has ruled on threshold motions

5    that may entirely dispose of (or significantly limit) the cases. *See* ECF No. 111 at 17. Nevertheless,

6    the Parties have exchanged names of potential mediators, and Defendants will continue to meet and

7    confer with Plaintiffs to attempt to reach agreement on a potential mediator.[2]

8    **III.    DISCOVERY**

9        **A.    Meta and Snap**

10       As a compromise to resolve disputes over Plaintiffs' preliminary discovery demands, and

11   to enable Meta and Snap to identify accounts relevant to Plaintiffs' claims for preservation

12   purposes, Meta and Snap have reached the following agreement with Plaintiffs:

13       1.    Plaintiffs will diligently search for and provide to Snap and Meta as soon as

14             possible: (1) a username (i.e., "handle"), user ID, or URL for all accounts

15             used by Plaintiffs; (2) all phone numbers used by Plaintiffs and/or their

16             parents or guardians that are tied to a Snapchat or Instagram account used by

17             Plaintiff; (3) all email addresses used by Plaintiffs and/or their parents or

18             guardians that are tied to a Snapchat or Instagram account used by Plaintiff;

19             and (4) all known and available identifying information, including but not

20             limited to names and usernames, for the alleged perpetrators involved in

21             each Plaintiff's case.

22       2.    Snap will search for and make reasonable efforts to identify all Plaintiff

23             Snapchat accounts that are directly connected to the specific phone numbers

24             and email addresses provided by Plaintiffs. Meta will search for and make

25             reasonable efforts to identify all Plaintiff Instagram accounts that are directly

26             connected to the specific Instagram usernames / account URLs, phone

27

28   _____

[2] Plaintiffs proposed Thomas J. Perrelli as a mediator, following the Court's mention of Mr. Perrelli at the last CMC as a possible special master. Defendants are assessing whether they would agree to Mr. Perrelli as a mediator.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

1   numbers, and email addresses provided by Plaintiffs. Plaintiffs agree that

2   Snap and Meta are not required to search for any additional accounts beyond

3   those directly connected to the Plaintiff-provided information. Snap and

4   Meta have asked Plaintiffs to agree that, to the extent Plaintiffs provide

5   identifying information for different or additional accounts at a later point in

6   time, and Snap and Meta are able to use that information to identify those

7   accounts for preservation purposes, Plaintiffs will not to argue that, by virtue

8   of having not preserved those accounts earlier, Snap or Meta spoliated

9   evidence. Plaintiffs are considering Snap and Meta's request and will

10  continue to meet and confer with them about including such a provision or

11  similar provision in an order similar to the User Account Identification Order

12  entered in MDL No. 3047 (which the Parties shall promptly negotiate and

13  seek to reach agreement on) (the "Roblox UAIO").

14  3.    Subject to entry by the Court of the Roblox UAIO, Snap and Meta will notify

15      Plaintiffs of the identified Plaintiff accounts, and Plaintiffs will confirm

16      which account(s) belong to them. Plaintiffs can then use Snap's "Download

17      My Data" function or Meta's "Download Your Information" function to

18      download account-specific data.[3]

19  4.    For any identified Plaintiff account a Plaintiff attests belongs to them and is

20      relevant to their claims, but they cannot access, the Plaintiff will provide

21      consent under the Stored Communications Act for Snap or Meta (as

22      applicable) to disclose user account information, after which the applicable

23      Defendant will (subject to entry by the Court of the Roblox UAIO) produce

24

25

---

26  [3] Snap's "Download My Data" function provides a comprehensive record of account activity, including: login history, profile information; saved chat history; Snap memories; and location data.

27  Meta's "Download Your Information" function provides data regarding, e.g., an account's: login history and account information; user & public profiles; user activity; saved chat history;

28  interactions with ads or advertisers; location history; search history; and activity received from apps and websites off Instagram.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

1   for those account(s) the data generated through their "Download My Data"

2   and "Download Your Information" functions, respectively.

3   Plaintiffs agree not to seek a Rule 30(b)(6) deposition (or any other formal discovery), a

4   Rule 26(f) conference, or a Rule 26(f) report with or of Meta or Snap unless and until the Court

5   orders that discovery is open in this MDL for all purposes. Meta and Snap agree to negotiate initial

6   discovery-related orders with Plaintiffs (e.g., a Protective Order, ESI Protocol, and Rule 502(d)

7   (clawback) order), and in connection with those negotiations, to share ESI-related information

8   (such as sources of relevant discovery) informally with Plaintiffs. These agreements are without

9   prejudice (1) to Snap and Meta's position that discovery should be stayed pending the resolution

10   of Defendants' motions to dismiss or (2) to Plaintiffs' position that discovery should *not* be stayed;

11   and the Parties reserve all rights and arguments in that regard.

### B.   Roblox and Discord

13   Roblox and Discord have consistently (and repeatedly) asked Plaintiffs to provide unique

14   identifiers for Plaintiffs' accounts on each Defendant's service, so they can identify and preserve

15   those accounts. Despite Plaintiffs' statement at the January 30, 2026 CMC that there was no "reason

16   to hold back the identifying information at this point," Tr. at 55:23–56:3, ECF No. 148, most

17   Plaintiffs still have not provided this information. Instead, Plaintiffs continue to demand that

18   Roblox and Discord provide burdensome and premature discovery in exchange.

19   To attempt to resolve this dispute, Roblox and Discord have proposed to Plaintiffs a process

20   wherein: (1) Plaintiffs provide unique account identifiers to Defendants; (2) using those identifiers,

21   Defendants locate the corresponding account(s); (3) Defendants provide identifiers for the

22   corresponding accounts they have located to Plaintiffs; (4) Plaintiffs execute waivers under the

23   SCA; and (5) Plaintiffs receive downloads of their account-related data. *See* Appendix A (Roblox

24   and Discord's offers). As of this filing, Plaintiffs appear unlikely to accept this compromise, even

25   though Roblox and Discord have offered Plaintiffs substantially the same exchange offered by Meta

26   and Snap (to which Plaintiffs have agreed).

27   Instead, and apart from any exchange of user data related to Defendants' basic preservation

28   obligations, Plaintiffs demand a Rule 30(b)(6) deposition on "data sources and retention" and an

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

1   in-person Rule 26(f) conference where Plaintiffs can question Defendants' respective in-house

2   "technical experts." This stands in contrast to Plaintiffs' statement at the first CMC that this is not

3   the time to "do all of the discovery" or "go whole hog out of the box" at a Rule 26(f) conference.

4   Tr. at 53:18-19, 53:25–54:1. Plaintiffs' proposed discovery-on-discovery has no precedent and is

5   unneeded.

6          "Discovery into another party's discovery process is disfavored," and given "the danger of

7   extending the already costly and time-consuming discovery process ad infinitum," courts

8   "[g]enerally . . . will only permit such discovery where there is some indication that a party's

9   discovery has been insufficient or deficient." *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566

10  (S.D. Cal. 2019) (collecting numerous cases); *see also Taylor v. Google LLC*, 2024 WL 4947270,

11  at *2 (N.D. Cal. Dec. 3, 2024) ("As a general matter, discovery of another party's evidence

12  preservation and collection efforts—or 'discovery on discovery'—is disfavored, as such discovery

13  is typically not relevant to the merits of a claim or defense, and is rarely proportional to the needs

14  of a case."). There is no such indication here, nor could there be, as Defendants do not even have

15  the information needed to identify many accounts at issue.

16         Intrusive early discovery is even more improper where, as here, there will be threshold

17  cross-cutting motions concerning Section 230's immunity from suit, as well as whether claims

18  against Roblox and Discord belong in arbitration. *See, e.g., Onuoha v. Facebook, Inc.*, 2017 WL

19  11681325, at *1 (N.D. Cal. Apr. 7, 2017) (staying discovery until resolution of Facebook's Section

20  230 motion; Section 230 "must be interpreted to protect websites not merely from ultimate liability,

21  but from having to fight costly and protracted legal battles") (quoting *Fair Hous. Council of San*

22  *Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008)); *see also Stiener*

23  *v. Apple Comput., Inc.*, 2007 WL 4219388, at *1-2 (N.D. Cal. Nov. 29, 2007) ("[I]f a dispute is

24  arbitrable, responsibility for the conduct of discovery lies with the arbitrators"; "this is a common

25  practice while motions to compel are pending.").

26         In any event, Plaintiffs have already shown they need no discovery to respond to early

27  motions. Before the petition to transfer was filed, Roblox and Discord had filed arbitration motions

28  in two member cases, Case No. 4:25-cv-3520 and Case No.3:25-cv-0128. In neither case did

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

1    Plaintiffs suggest that discovery was necessary to resolve those motions. Roblox and Discord have

2    also moved to compel in multiple California state court cases involving similar claims and

3    allegations. There, too, no plaintiff has moved for discovery to resolve those motions. And there

4    certainly is no need for discovery to respond to cross-cutting Rule 12(b)(6) motions. If the Court is

5    inclined to order any early discovery, it should be limited to the following discovery aimed at

6    ensuring *preservation*:

7    ● **Plaintiffs confirm they will provide Roblox and Discord by March 3, 2026, the**

8    **unique account identifiers for their accounts and the alleged perpetrator**

9    **accounts.**

10   ● **Roblox and Discord confirm that they will take reasonable steps to preserve**

11   **relevant information relating to any such accounts.**

12   ● **Plaintiffs confirm that they will save or preserve ongoing activity and content**

13   **from any accounts still active on Roblox and Discord's platforms (and**

14   **accounts with any other applications Plaintiffs may have used to communicate**

15   **with the alleged perpetrators, including text-messaging applications)**.

16   ● **Plaintiffs confirm that they will make full images or copies of the contents of**

17   **their electronic devices in a forensically sound manner using industry-**

18   **standard tools to be agreed upon by the Parties**.

19   Finally, with respect to Plaintiffs' request for a Rule 26(f) conference, Roblox and Discord

20   remain prepared to negotiate orders that would govern discovery if and when it opens, such as a

21   protective order, ESI protocol, and Rule 502(d) (clawback) order; as well as a protocol for filing

22   sensitive or confidential information (e.g., permitting all sealing motions to be filed in omnibus

23   fashion at the conclusion of briefing on a particular motion). Roblox and Discord note that the

24   information Plaintiffs appear to seek from a Rule 30(b)(6) deposition would be discussed in the

25   context of negotiating an ESI protocol.

26   **C.    Reproduction of Discovery**

27   Defendants maintain that discovery should be stayed pending resolution of Defendants'

28   threshold motions. ECF No. 111 at 15-16.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

IV.     **OPERATIVE PLEADING AND BRIEFING SCHEDULE**

Plaintiffs' proposal for pleadings in this case has changed significantly since the last CMC. Defendants learned on February 19, 2026, that Plaintiffs wished to select bellwether cases for all purposes, without any master complaint. The evening this status report was due, Plaintiffs stated that they intended to select one set of bellwether cases for motions to compel arbitration, and another set of bellwether cases for motions to dismiss. Although Roblox and Discord (the arbitrating defendants) are amenable to selecting bellwethers for purposes of deciding their motions to compel arbitration, Defendants are still considering Plaintiffs' proposal to select (different) bellwethers for purposes of motions to dismiss. All Defendants agree that the goals of this centralized proceeding would best be served by a process enabling early cross-cutting motions to dismiss on threshold and dispositive legal defenses applicable to all claims in all cases.

Plaintiffs' shifting positions have made alignment on a briefing schedule difficult. Until February 15, 2026, Plaintiffs claimed they intended to use a master complaint for administrative convenience, with short form complaints as the operative pleadings to be filed by June, at the earliest. Following two meet-and-confers during which Plaintiffs indicated their agreement that Defendants could file cross-cutting motions to dismiss about 60 days thereafter, Plaintiffs abruptly sent Defendants an email stating, "we no longer believe that a *purely* administrative master complaint and individual short form complaints are needed in this case. Instead, we believe that proceeding to the briefing schedule is the better course, and will allow both sides (and the Court) to move forward more efficiently and expeditiously" (emphasis added).

Then, during a call on February 19, 2026, Plaintiffs explained that they planned to use all individual complaints on file as of a yet-unspecified date as the operative pleadings, with no master complaint. And for the first time, Plaintiffs proposed using a small set of complaints as "bellwethers" for both motions to compel and Defendants' cross-cutting motions to dismiss. The evening this status report was due, Plaintiffs shifted to proposing different sets of bellwethers for the two different sets of motions.

These abrupt changes have made it impossible to align on a briefing schedule in the few hours before this status report is due. Defendants will continue to confer with Plaintiffs and try to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

**DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS**

1    reach alignment—or present competing proposals—before the next CMC. Regardless, however,

2    Defendants expect to oppose selecting bellwether cases for motions to dismiss (and certainly for

3    all purposes) at this early stage of the litigation. Defendants' cross-cutting motions to dismiss will

4    cover issues that may dispose of every case, e.g.: the applicability of Section 230, the First

5    Amendment, failure to allege causation, failure to allege fraudulent concealment/misrepresentation,

6    the lack of a duty of care for negligence claims, and the lack of a "product for product liability

7    claims." *See* ECF No. 111 at 6-9. The benefits of centralization would be lost if Defendants cannot

8    move to dismiss all current complaints on common issues. If motions to dismiss are filed on fewer

9    than all complaints, there must, at a minimum, be a court-ordered process to (1) have rulings on

10    motions to dismiss "bellwether" cases apply to all other cases (i.e., so they cannot be refiled) and

11    (2) bind Plaintiffs to their election not to use a master complaint.

12

13    Dated:  February 20, 2026                     Respectfully submitted,

14                                                  **COOLEY LLP**

15
                                                    */s/ Tiana Demas*
16                                                  Tiana Demas (*pro hac vice*)

17                                                  Attorneys for Defendant
                                                    ROBLOX CORPORATION
18

19                                                  **DAVIS WRIGHT TREMAINE LLP**

20
                                                    */s/ Ambika Kumar*
21                                                  Ambika Kumar (*pro hac vice*)

22                                                  Attorneys for Defendant
                                                    DISCORD INC.
23

24                                                  **O'MELVENY & MYERS LLP**

25
                                                    */s/ Leah Godesky*
26                                                  Leah Godseky

27                                                  Attorneys for Defendant
                                                    SNAP INC.
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANTS' CASE
                                                    MANAGEMENT STATEMENT
                                                    3:25-MD-03166-RS**

1

2

**COVINGTON & BURLING LLP**

3

*/s/ Isaac D. Chaput*
Isaac D. Chaput

4

Attorneys for Defendant
META PLATFORMS, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

**DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Tiana Demas, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.


Dated:  February 20, 2026                    */s/ Tiana Demas*
                                        Tiana Demas (*pro hac vice*)

                                        Attorneys for Defendant
                                        ROBLOX CORPORATION

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

**DEFENDANTS' CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS**