

March 6, 2026

**VIA ECF**

The Honorable Richard Seeborg
United States Chief District Judge

      RE:    *In re: Roblox Corporation Child Sexual Exploitation and Assault Litigation*, Case No. 25-md-03166
            Structure of Initial Briefing

Your Honor:

      The goals of briefing on any forthcoming motion to compel arbitration ("MTC") or motion to dismiss under Rule 12(b)(6) ("MTD") should be to enable the Court to resolve the issues therein efficiently and in a way that can thereafter guide the parties in all cases in this MDL. To that end, courts in similar complex litigations have selected "bellwether" or "pilot" cases to serve as the subjects of threshold motions. *See*, *e.g.*, Order re Pilot Cases at 5–6, *Litton et al. v. Roblox Corp. et al.*, No. 3:25-cv-03088, ECF 127 (N.D. Cal. Feb. 27, 2026) (attached as Ex. A); Tr. of 1/29/26 H'rg at 8:2–10:1, *Litton*, No. 3:25-cv-03088 (attached as Ex. B); *In re JUUL Labs, Inc., Mkt., Sales Prac., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 577–78 (N.D. Cal. 2020). This process allows the parties to identify and focus their arguments on allegations representative of the most important and prevalent issues in the litigation. And for the MTCs, it facilitates the exchange of facts necessary to ensure that the relevant arbitration issues *can* be resolved within the selected cases.[1]

      Plaintiffs' proposed briefing structure—reflected in Plaintiffs' Status Report, Dkt. 178 at 6 (Feb. 20, 2026), and Proposed Order, Dkt. 185-1 (Feb. 26, 2026), and further elaborated here—best accomplishes these goals. Plaintiffs' proposed schedule is motivated by related desires to conserve resources and obtain clear rulings. This process will ensure that the Court and parties will not waste resources on unnecessary tasks and that neither side has opportunities for improper gamesmanship. Defendants' counterproposals would preserve such opportunities (for themselves), risk creating a muddled record, and waste significant resources.

      At the outset of Plaintiffs' schedule, the parties would share user account information in a manner comparable to what the court ordered in the *Social Media* MDL. *See* User Account Information Order, *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, Case No. 4:22-MD-03047, ECF 616 (N.D. Cal. Jan. 29, 2024) (attached as Ex. C). This type of

---

[1] For clarity, Roblox and Discord apparently intend to file MTCs, whereas all Defendants (Roblox, Discord, Snap, and Meta) apparently intend to file MTDs.

March 6, 2026
Page 2

case is unique in that Defendants are in a better position than minor plaintiffs to identify the account information that may impact their rights. While the scope of the initial exchange of information in this case as it relates to Roblox and Discord[2] will be decided by Magistrate Judge Krishnan, as a scheduling matter this initial information sharing is critical to ensure that whatever bellwether cases are selected for representative rulings are in fact suited to the task—and will not be resolved based on any case-specific issues or cause other complications that could have been foreseen. This exchange, and the ensuing bellwether selection process, can and should be administered briskly and would not delay the overall schedule. With the benefit of this initial mutual exchange of limited and material information, the parties would meet and confer over the categories of MTC and MTD bellwether issues and propose an appropriate number of bellwether cases. Once bellwether cases are selected, Plaintiffs would amend those complaints to include the most up-to-date general allegations and any relevant information learned through the initial exchange. Defendants would then file their MTCs and MTDs; the parties would meet and confer over discovery in response to the MTCs and over the schedule for further arbitration-related briefing, while briefing the MTDs on a separate schedule; all culminating with a hearing on all motions around mid-October, the same timeframe Defendants proposed.

Defendants' proposals broadly align with Plaintiffs' on the use of bellwether cases (at least for MTCs) and the timeline for major events, namely the deadline for the MTCs and MTDs and the hearing date. *See* Defs.' Proposed Order, Dkt. 185-2 (Feb. 26, 2026). Yet Defendants Roblox and Discord otherwise omit the necessary steps to ensure the process is meaningful and efficient. Their proposed schedule provides for no initial mutual exchange of user account information. More accurately, it obliges only *Plaintiffs* to "provide account identifiers for all current cases" by a certain date, with no concomitant obligation on Defendants Roblox and Discord. *Id*. at 2. Defendants Roblox and Discord would thus preserve their own ability, after the Court and parties have selected bellwether cases, to play "gotcha" with attacks based on information known only to those Defendants, as they have tried to do in other cases. *See infra* Part I. Defendants Roblox and Discord would also have the parties select an arbitrary number of bellwether cases for MTCs without the benefit of initial information sharing or a meet and confer, leaving no guarantee that the selected cases will enable the Court to comprehensively resolve the arbitration issues that might arise. Contrary to Rule 15, Fed. R. Civ. P., Defendants would deny Plaintiffs the opportunity to amend the bellwether complaints unless, apparently, Plaintiffs amended all the rest of their complaints, another Plaintiff-only burden that would be wholly unnecessary (and would not preclude future amendments under Rule 15). *See* Defs.' Proposed Order at 2 n.1. And as for MTDs, Defendants would spurn the bellwether approach that other courts have used and would instead have this Court attempt to resolve Rule 12(b)(6) issues in every individual case in this MDL, which would burden everybody and defeat the purpose of the MDL.

---

[2] As reflected on the record at the CMC, the Plaintiffs have agreed to an initial information exchange with Meta and Snap. This agreement was possible as much of the information necessary to reach that agreement is known to many of the members of the Plaintiffs' Leadership team through their work in the *Social Media* MDL. The same is not true with Roblox and Discord, where the Plaintiffs' Leadership team has virtually no visibility into the processes and systems utilized by those Defendants.

March 6, 2026
Page 3

        In total, the parties' proposals differ in four fundamental ways:

(1) <u>Information sharing</u>. Plaintiffs' proposed schedule provides for an initial mutual exchange of limited, material user account information. Defendants Roblox and Discord's proposal does not.

(2) <u>MTD bellwethers</u>. Plaintiffs would use them. Defendants would not.

(3) <u>Bellwether selection</u>. Plaintiffs would have the parties meet and confer over the criteria for and number of bellwether cases. Defendants would have the parties quickly select a likely insufficient number of cases (three each) for bellwether MTCs only, and do so in a way that would deny the Plaintiffs the opportunity to understand from Defendants' perspective what they believe to be cross-cutting issues.

(4) <u>Amendments</u>. Plaintiffs' proposal would provide a window after bellwether selection for Plaintiffs to amend the bellwether complaints. Defendants' proposal would not.

        As can be seen in the parties' competing schedules, Plaintiffs' proposals on the above topics can be implemented within the overall bellwether structure and timeline that the parties generally agree upon. And for the reasons below, Plaintiffs' proposals must be implemented to ensure that this structure accomplishes its goals.

    **I.**    **The Bellwether Schedule Must Begin with a Bilateral Exchange of User Account Information for All Current Plaintiffs**

        The parties first disagree over the initial information-gathering phase, specifically over whether Defendants Roblox and Discord should have a deadline to provide Plaintiffs any user account information at all. Under Defendants' proposed schedule, Plaintiffs would be immediately required to provide account identifiers for all current cases, which Plaintiffs remain willing to do. In return, however, Defendants Roblox and Discord's schedule obligates them to do nothing, effectively securing one-sided discovery for themselves while leaving any further information gathering in limbo.

        As noted, Plaintiffs have been working to reach an agreement with Roblox and Discord for a *bilateral* exchange of user account information. They have significantly narrowed their own requests for information in Defendants' possession and intend promptly to bring any unresolved issues before Judge Krishan. For purposes of the current scheduling dispute, the important point is that this exchange must be bilateral and must occur at the outset. Defendants' continued refusal to engage will risk sinking the whole bellwether enterprise.

        To illustrate, and subject to Judge Krishan's rulings, Plaintiffs would provide (as able) several pieces of account identifying information, including but not limited to their names, birthdates, usernames, phone numbers or email addresses associated with the accounts, and the names of any third parties that might also have used or opened the accounts. In return, Defendants

March 6, 2026
Page 4

should at a minimum provide, among other things, the usernames and details of accounts that Defendants have reason to believe might be associated with a Plaintiff but that the Plaintiff did not identify. (Most Plaintiffs here are children with imperfect recollections.) The Plaintiff would then investigate and certify whether or not those are his or her accounts.

This process is not unduly burdensome nor would it impose unreasonable delay. Indeed, it is similar to the process that some Defendants (Snap and Meta) have already participated in as defendants in the *Social Media* MDL. And this process must occur before bellwether cases are selected to ensure that those cases will in fact present the issues for which they were selected. The Court and parties might otherwise waste time on a bellwether case with procedural problems.

For example, a Plaintiff might provide one username and email address associated with a Roblox account. And that might in fact be the only username and email address she ever used. But Roblox might then identify another username associated with that email address, perhaps because a family member used the same email address to create another account. Or Roblox might identify additional accounts associated with the email addresses of family members or others who share the Plaintiff's last name. Roblox might then point to all those accounts to argue that the Plaintiff agreed to the arbitration clause in Roblox's terms of use multiple times over a period of years— perhaps even after the Plaintiff reached the age of majority and could no longer disaffirm. Or Roblox might argue that an adult associated with one of the other accounts helped the Plaintiff create hers and thereby agreed to the Terms on her behalf. In other circumstances, a Plaintiff might honestly recall using only one Discord username and associated email address, but Discord might identify another account that the same minor Plaintiff created later and through which she arguably agreed to Discord's arbitration clause.

Of course, Plaintiffs do not concede here any such arguments in any case where they might arise. But these examples are drawn from arguments that Roblox and Discord have *already made* in real cases after receiving one-sided discovery of the plaintiffs' usernames and email addresses— which, like here, they claimed to need solely for preservation purposes—while providing nothing in return. Such surprise tactics would defeat the purpose of bellwether selection. As discussed *infra* Part III, bellwether MTCs will be needed on a host of arbitration issues. The parties might end up selecting a bellwether case to test, for example, a 12-year-old Plaintiff's legal and factual capacity to agree to an arbitration clause even though Defendants know, and subsequently argue, that the same Plaintiff created a new Roblox or Discord account and agreed to arbitration as a legal adult. If so, the parties would need to return to step one, where Defendants could again withhold case-specific issues and thus continue to delay the resolution of issues that need to be resolved.

There is no need for hide-and-go-seek. An established process exists for initial information sharing through an order like the *Social Media* MDL's User Account Information Order, *see* Ex. C, which can then inform the selection of truly representative bellwether cases like in *Litton*, *see* Ex. A. This process need not drag; per their proposed order, Plaintiffs anticipate that the parties could exchange user account information and make their bellwether proposals within a month. Whatever schedule the Court adopts must include at least that much time for initial information sharing so that the parties can select the bellwether cases most likely to serve their intended purposes.

March 6, 2026
Page 5

**II.     The Bellwether Process Should Govern Both the MTCs and the MTDs**

Although the parties agree on using bellwethers for MTCs, Defendants "anticipate filing cross-cutting motions to dismiss all of the complaints" under Rule 12(b)(6). Defs.' Proposed Order at 2 n.3. But they do not, and presumably cannot, identify an efficient way of doing so.

Motions to dismiss "all" complaints in this MDL would take one of two general forms. Defendants could file individual Rule 12(b)(6) motions against each complaint, which would likely be redundant in significant part. Or they could file "cross-cutting" motions that attempt to apply general arguments (e.g., Defendants' purported immunity under Section 230, Plaintiffs' purported failure to allege causation) across complaints. Apparently recognizing the infeasibility of the first option, Defendants suggest following the second. If they are going to move against "all of the complaints," however, Defendants' motions must still address all Plaintiffs' individual allegations under all applicable state laws—especially if, as Defendants themselves have previewed, they intend to make arguments that arise under state law. *See* Defs.' Case Mgmt. Stmt. at 10, Dkt. 179 (Feb. 20, 2026) (indicating an intent to argue, e.g., "failure to allege causation," "failure to allege fraudulent concealment/misrepresentation," and "the lack of a duty of care for negligence clams"). And unless these "cross-cutting" motions are going to balloon into merely consolidated versions of individualized motions, Defendants will need to summarily address each state's applicable laws and each complaint's individual allegations via impenetrable string-cites or appendices. Plaintiffs would need to respond in kind, and the Court would need to consider the specific allegations in every complaint. All of this will require extended briefing schedules and gargantuan numbers of pages to address every conceivable issue in every existing case.

Defendants' proposal thus is either unwieldy, confusing, or both. If Defendants did try to address every relevant allegation in every complaint under every applicable state's law, as would be required when moving against all complaints, their briefs would undo all the efficiency the bellwether process is meant to create. And if, for efficiency, they use "*e.g.*" citations to reference a purportedly representative sample of allegations or state laws, they would create a muddled record, leaving this Court (and the appeals court) unable to conclusively determine all the specific allegations or state laws to which the cites and accompanying arguments actually apply.

None of that is necessary. Defendants' Rule 12(b)(6) arguments *can* be addressed in an efficient way—not through hundreds of pages and dozens of appendices, but by resolving bellwether MTDs and then applying those rulings to other cases as appropriate. This process would create a cleaner record while still giving the Court's rulings adequate reach. After all, Defendants have argued that state laws on basic concepts like causation and duties of care do not differ significantly. Thus, resolution of an MTD concerning these issues in State A should apply to a case from State B. And any such difference would be all the more reason not to attempt to address all state laws in single briefs, but to adopt a bellwether process where cases can be selected to

account for the differences. Hence why courts in other complex cases have adopted bellwether procedures for both MTCs and MTDs.[3]

The Court should do the same here. This established procedure should eliminate any concern that Plaintiffs will somehow improperly escape the impact of the Court's MTD rulings if Defendants do not file MTDs against all individual cases. Plaintiffs seek clarity on the big issues as much as Defendants do, and Plaintiffs' proposal will allow for a more efficient determination of the law of the case. In effect, Plaintiffs' proposal would capture the benefits of an administrative master complaint even though that device itself has limitations in cases, like these ones, with individualized allegations that do not fit easily on subsequent short-form complaints—as the Court eventually acknowledged in the *Uber* MDL. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 745 F. Supp. 3d 869, 882–84 (N.D. Cal. 2024). Based on lessons from such other recent MDLs, Plaintiffs have opted to propose a bellwether process for MTDs, rather than a master-complaint process, not to avoid the definitive and broadly applicable rulings that the master-compliant device can provide in other cases, but to obtain such rulings in the most efficient way here.

### III. The Parties Should Meet and Confer About Bellwether Criteria Before Proposing Bellwether Cases

The parties also disagree about the process for selecting bellwethers—even as to MTCs, where everyone agrees a bellwether approach makes sense. Roblox and Discord propose that each side simply pick three cases for bellwether MTCs. But the point of this process is not bellwethers for the sake of bellwethers. The point is to tee up and resolve the most prevalent and important threshold issues in this litigation.

The better approach, for both MTCs and MTDs, is for the parties to identify the number and types of bellwethers necessary to address the cross-cutting issues that will most efficiently move this litigation forward. The Court should order the parties to promptly meet and confer on the categories of bellwether issues and, within a week of Defendants' deadline to provide initial

---

[3] *See, e.g.*, Ex. B (Tr. of *Litton* H'rg) (ordering the parties to propose "six pilot cases" that present "cross-cutting issues" for briefing and explaining that, even though "later cases aren't bound by [the court's] rulings" in the pilot cases, the court's decisions would give the parties "strong signals" and thus move the litigation forward efficiently); *In re JUUL*, 497 F. Supp. 3d at 577–78 (resolving motions to dismiss directed at seven test complaints and thereby addressing, in rulings that informed the rest of the MDL, federal issues common to all government-entity cases and state-law issues under the laws of five states); Case Mgmt. Order No. 1 at 4, *In re Depo-Provera (Depot Medoxyprogesterone Acetate) Prods. Liab. Litig.*, Case No. 3:25-md-3140, ECF 72 (N.D. Fla. Feb. 23, 2025) (attached as Ex. D) ("The work of the MDL will be accomplished through the Pilot cases. In short order, the Defendants will be required to respond to the five Pilot complaints, raising all defenses. Common issues and defenses will be identified and ruled on early, and subsequent case specific discovery will essentially provide a vetting opportunity for the litigation that will narrow the issues for the entire MDL.").

user account information, *see supra* Part I, to submit joint or competing proposals on bellwethers for the MTCs and MTDs. As a result of conferring, the parties might well agree on the number of bellwethers needed, and perhaps even on cases that should serve as bellwethers. At the very least, their proposals, and the Court's bellwether selections, will be informed.

This procedure is the simplest way to organize the many issues that the MTCs and MTDs will involve. As to arbitration, for example, the MTC briefing will need to address the applicability of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401–402 ("EFAA"), in different factual contexts. Some EFAA questions will apply across the board, e.g., whether the Act applies outside of the employment context (as Defendants sometimes contend it does not). Others will apply only to some Plaintiffs, such as contentions that only certain kinds of misconduct trigger the Act or that a Plaintiff forgoes the Act's protection by accepting a Roblox or Discord user agreement after filing a lawsuit.

Beyond the EFAA, the appropriate size and composition of the MTC bellwether pool will depend on which issues the parties and Court agree should be prioritized. If the MTCs address contract formation and capacity, for example, relevant issues could include: which arbitration agreements Defendants contend are relevant in this litigation; which states' capacity/disaffirmance laws make sense to address at the initial stage; and Plaintiffs' ages at the time of alleged assent. Defendants might have other issues in mind—for example, cases in which a parent, rather than a child, purportedly agreed to terms of use—which the parties should likewise discuss rather than hope to cover in an arbitrary number of bellwethers.

As for MTDs, the parties should have a focused discussion on which cross-cutting issues should be resolved, and how. Everyone agrees that Section 230 and First Amendment issues will be briefed. That work likely can be done through a small number of bellwethers. If there are state-law issues of overriding importance (such as whether a Defendant's platforms are "products," or whether Defendants owed a duty), the parties should identify priority states and select bellwethers from those states. *See*, *e.g.*, *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 818 (N.D. Cal. 2023) (deciding initial motion directed as "five priority claims" under the laws of three states); Stip. & Order re Mots. to Dismiss, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, Case No. 3:23-md-03084, ECF 1932 (N.D. Cal. Dec. 4, 2024) (attached as Ex. E) (example of process efficiently applying prior MDL rulings on claims under five states' laws to claims under other states' laws, enabling the parties to tee up particular state-law questions only where a court ruling was necessary). The parties should also discuss whether the bellwether pool should include enough bellwethers to represent each Defendant combination (i.e., Roblox and Discord, Roblox and Snap, or Roblox and Meta).

In short, this is not the type of "took drug, got injured" mass tort case that Defendants try to treat it as. A host of legal and factual issues will dictate the resolution of MTCs and MTDs in different case categories. Those issues can be productively categorized and addressed. Yet there is no guarantee that the parties will be able to address them by simply proposing three bellwethers each. The parties might ultimately need more or fewer than the eight MTC and eight MTD

bellwethers provided in Plaintiffs' Proposed Order. But they cannot hope to agree on that without conferring, which the Court's scheduling order should provide for them to do.

### IV. Plaintiffs Should Have an Opportunity To Amend the Bellwether Complaints

Both sides agree that resolution of pleading challenges in this MDL should be based on the most well-pled allegations. *See, e.g.*, Tr. of 2/27/26 CMC at 29:13–17 (attached as Ex. F). The best way to achieve that is building in a schedule for amendments to a limited number of bellwether complaints before Defendants file their MTC and MTD.

The complaints in this MDL have been filed over the course of approximately the past year. In that time, Defendants have made cosmetic safety changes while the scope of their wrongdoing has been increasingly revealed. Recently filed complaints thus have general allegations beyond those in previously filed complaints. Just as it would be inefficient to proceed with bellwethers that might have lingering pleading issues, there is no conceivable reason to litigate bellwethers without complaints that include all of the most current general allegations, plus any relevant user account information gathered about those Plaintiffs in the parties' initial exchange.

Accordingly, Plaintiffs propose to update their bellwether complaints shortly after bellwether cases are selected. Plaintiffs would be making these amendments earlier than Rule 15 requires (while reserving all rights). And since the parties' bellwether selections will already have been informed by the initial exchange of user account information, there should be little risk that the amendments will cause a case to fall out of the bellwether category for which it was selected.

Defendants instead would apparently require Plaintiffs "to make amendments across the entire docket before Defendants move to dismiss." Defs.' Proposed Order at 2 n.1. So not only would the actual subjects of bellwether MTCs and MTDs be required to amend their complaints before they could do so as of right under Fed. R. Civ. P. 15(a)(1)(B), but *all* Plaintiffs would be required to do so. This cumbersome process runs counter to the very purpose of an MDL, is extremely confusing, and would burden the Court with hundreds of different motions, and given that any ruling will likely be appealed, would create a confusing record on appeal. Defendants can identify no valid reason for this burden, particularly given their concession that the briefing should proceed on the *best* pled allegations (as opposed to cherry-picked allegations from earlier or less-well pled complaints), and that the issues are "truly cross-cutting" such that any variations on state law or individualized allegations are immaterial. *See* Ex. F (CMC Tr.) at 22:4–5. The Court's resolution of amended bellwether complaints can guide future proceedings on the other complaints, including any further amendments that may either be made ("freely") by leave under Fed. R. Civ. P. 15(a)(2) or as of right. That is the point of the bellwether process.

\*   \*   \*

In sum, the Court should order the parties to brief bellwether MTCs and MTDs according to the schedule in Plaintiffs' Proposed Order, Dkt. 185-1. That schedule, with some modifications, is below. Some dates are adjusted based on the assumed entry of a scheduling order on March 13,

2026, with only Plaintiffs' time for amendment shortened to maintain the overall timeframe, though dates might need to be further adjusted depending on the timing of an agreement or order on the initial mutual exchange of user account information.

This schedule also now includes presumptive response and reply dates for the MTDs. Although the parties previously disagreed about setting these dates for future briefing, Defendants did recognize that, "[i]f Plaintiffs move for and obtain discovery for any motion to compel," the parties will need to "submit a new proposed schedule for any affected case." Defs.' Proposed Order at 2 n.2. Plaintiffs can therefore agree to set these additional presumptive dates for the separate MTC and MTD briefing tracks, understanding that the dates might need to be adjusted as the case proceeds.

For the MTCs, parties should meet and confer and seek agreement on arbitration discovery before Plaintiffs are forced to file that motion. It is premature to set any further MTC briefing dates at this stage. As Defendants acknowledge, these dates will depend on discovery. And it cannot be assumed, as Defendants appear to assume, that Plaintiffs will not be entitled to *any* arbitration discovery. Information like the full login history from a Plaintiff's account or allegedly associated accounts, Robux purchases, or chat logs with perpetrators that led to the generation or distribution of child sexual abuse material—to take just a few examples—might well be only in Roblox or Discord's possession and yet relevant to arbitration issues that these Defendants might raise about the EFAA's applicability or about a parent or guardian's participation in account creation or other account activity. *See* Ex. A at 6 (*Litton* Pilot Order) (noting that the Court would order arbitration discovery). Once Roblox and Discord file their MTCs, therefore, the parties will need to meet and confer over the structure of further proceedings on those motions, as well.

| EVENT | DATE |
|---|---|
| Deadline for Parties to meet and confer regarding bellwether selection criteria for motions to compel and Rule 12(b)(6) motions and provide Court with a Joint Status Report | March 20, 2026 |
| Deadline for Plaintiffs to submit User Account Information for all cases pending in the MDL as of 3/6/2026 | March 27, 2026 |
| Deadline for Defendants to submit User Account Information for all cases pending in the MDL as of 3/6/2026 | April 3, 2026 |
| Deadline for Parties to jointly propose the agreed or Court-ordered number of Bellwether Complaints for Motions to Compel and Rule 12(b)(6) Motions, or to submit competing proposals | April 10, 2026[4] |
| Deadline for Plaintiffs to amend Bellwether Complaints | May 8, 2026 |

---

[4] Appropriate deadline subject to change depending on the entry of any order following the parties' March 20 Joint Status Report.

March 6, 2026  
Page 10

| EVENT | DATE |
|---|---|
| Deadline for Roblox and Discord to file Bellwether Motions to Compel | June 9, 2026 |
| Deadline for Defendants to file Bellwether Rule 12(b)(6) Motions | June 23, 2026 |
| Deadline for Plaintiffs to file oppositions to Bellwether Rule 12(b)(6) Motions | September 1, 2026 |
| Deadline for Defendants to file reply briefs in support of Bellwether Rule 12(b)(6) Motions | September 30, 2026 |
| Hearing on Bellwether Rule 12(b)(6) Motions and Motions to Compel | October 15, 2026 |

Respectfully,

Sarah R. London

ALEXANDRA M. WALSH  
D. PATRICK HUYETT  
PAIDE BOLDT  
**ANAPOL WEISS**  
One Logan Square  
130 North 18 th Street, Ste. 1600  
Philadelphia, PA 19103  
Telephone: (215) 608-9645  
awalsh@anapolweiss.com  
phuyett@anapolweiss.com  
pboldt@anapolweiss.com

SARAH R. LONDON  
ANDREW R. KAUFMAN  
**GIRARD SHARP LLP**  
601 California St., Suite 1400  
San Francisco, CA 94108  
Telephone: (415) 981-4800  
slondon@girardsharp.com  
akaufman@girardsharp.com

BRYAN F. AYLSTOCK  
HILLARY NAPPI  
JENNIFER HOEKSTRA

March 6, 2026
Page 11

**AYLSTOCK WITKIN KREIS OVERHOLTZ, PLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
HNappi@awk-saa.com
JHoekstra@awkolaw.com