# EXHIBIT F

Pages 1 - 46

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
IN RE: ROBLOX CORPORATION       )
CHILD SEXUAL EXPLOITATION AND   )
ASSAULT LITIGATION.             )
                                )    NO. 25-03166 RS
                                )
_____)
```

San Francisco, California
Friday, February 27, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

ANAPOL WEISS
14 Ridge Square NW - Suite 342
Washington, D.C. 20016
**BY: ALEXANDRA M. WALSH, ATTORNEY AT LAW**

AYLSTOCK, WITKI, KREIS & OVERHOTLZ
17 East Main Street, Suite 200
Pensacola, Florida 32502
**BY: BRYAN AYLSTOCK, ATTORNEY AT LAW**

GIRARD SHARP LLP
601 California Street - Suite 1400
San Francisco, California 94108
**BY: SARAH R. LONDON, ATTORNEY AT LAW**

For Defendant Snap, Inc.:

O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067
**BY: LEAH GODESKY, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Reported Remotely: Marla F. Knox, RPR, RMR, CRR
United States Official Reporter

**APPEARANCES:**  (continued)

For Defendant Meta Platforms, Inc.:

                    COVINGTON & BURLING LLP
                    415 Mission Street - Suite 5400
                    San Francisco, California  94105
          BY:  **ISAAC D. CHAPUT, ATTORNEY AT LAW**

                    COVINGTON & BURLING LLP
                    1999 Avenue of the Stars - Suite 3500
                    Los Angeles, California  90067
          BY:  **ASHLEY SIMONSEN, ATTORNEY AT LAW**


For Defendant Discord, Inc.:

                    DAVIS WRIGHT TREMAINE LLP
                    920 Fifth Avenue, Suite 3300
                    Seattle, Washington  98104
          BY:  **AMBIKA KUMAR, ATTORNEY AT LAW**

                    DAVIS WRIGHT TREMAINE LLP
                    350 S. Grand Avenue - 27th Floor
                    Los Angeles, California  90071
          BY:  **ADAM SEIFF, ATTORNEY AT LAW**

For Defendant Roblox Corporation:

                    COOLEY LLP
                    110 N. Wacker Drive - 42nd Floor
                    Chicago, Illinois  60606
          BY:  **TIANA DEMAS, ATTORNEY AT LAW**

                    COOLEY LLP
                    10265 Science Center Drive
                    San Diego, California  92121
          BY:  **MICHAEL ATTANASIO, ATTORNEY AT LAW**

| | |
|---|---|
| 1 | **Friday - February 27, 2026** **9:32 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  We are calling case number 25-MD-3166, In |
| 5 | Re: Roblox Corporation Child Sexual Exploitation and Assault |
| 6 | Litigation. |
| 7 | Appearances, please, starting with the Counsel for the |
| 8 | Plaintiffs and then the Defendants. |
| 9 | **MS. WALSH:**  Good morning, Your Honor, Alexandra Walsh |
| 10 | for the Plaintiffs. |
| 11 | **THE COURT:**  Good morning. |
| 12 | **MS. LONDON:**  Good morning, Your Honor, Sarah London |
| 13 | from Girard Sharp on behalf of the Plaintiffs. |
| 14 | **THE COURT:**  Good morning. |
| 15 | **MR. AYLSTOCK:**  And good morning, Your Honor, Bryan |
| 16 | Aylstock on behalf of the Plaintiffs. |
| 17 | **THE COURT:**  Good morning. |
| 18 | **MS. GODESKY:**  Good morning, Your Honor, Leah Godesky |
| 19 | from O'Melveny & Meyers for the Defendant Snap. |
| 20 | **THE COURT:**  Good morning. |
| 21 | **MR. CHAPUT:**  Good morning, Your Honor, Isaac Chaput, |
| 22 | Covington & Burling on behalf of Meta. |
| 23 | **THE COURT:**  Good morning. |
| 24 | **MS. DEMAS:**  Good morning, Your Honor, Tiana Demas from |
| 25 | Cooley LLP on behalf of Defendant Roblox Corporation. |

1          **THE COURT:**  Good morning.

2          **MR. ATTANASIO:**  Good morning, Your Honor, Michael

3    Attanasio, Cooley, on behalf of Roblox.

4          **THE COURT:**  Good morning.

5          **MS. KUMAR:**  Good morning, Your Honor, Ambika Kumar

6    from Davis Wright Tremaine on behalf of discord.

7          **MR. SIEFF:**  And, good morning, Your Honor, Adam Sieff

8    of Davis Wright Tremaine, also on behalf of Discord.

9          **THE COURT:**  Good morning.

10          **MS. SIMONSEN:**  And good morning, Your Honor, Ashley

11    Simonsen, Covington & Burling, also on behalf of the Meta

12    Defendants.

13          **THE COURT:**  Good morning.  Okay.  That's everybody,

14    I guess.

15        So, this is our chance to start to get organized.  First

16    off, let me tell you, I have spoken with Magistrate Judge

17    Krishnan -- Ajay Krishnan who has recently joined us.  He had

18    been a partner at the Keker firm; but fortunately for us, he is

19    now a United States Magistrate Judge.  And I am going to refer

20    to him the discovery disputes in the case.  So, I have already

21    talked to him about it.  He knows it's coming.

22        And so, some of the issues which you have highlighted for

23    me he is ready to address them.  So, you can contact his

24    chambers and you can get on his dance card for resolving some

25    of these disputes that you have alerted me to.

1        He is actually in transit today but he -- for future case

2   management conferences, I'm going to invite him to join us so

3   the two of us will be involved in that.

4        Okay.  So, that's takes care of that.  Some of the

5   disputes that you have highlighted or at least I know there is

6   one continuing dispute, it sounds like, about exchange of

7   information, names and account information, that will be

8   directed to him.

9        So, I guess it's ready to be addressed, so you can arrange

10  with him to have a hearing.  He sits in our Oakland venue so he

11  is in the Oakland courthouse.

12       Okay.  I got from you -- well, then the other issues that

13  you alerted me to, most of which are more just informational

14  for me, I think -- why don't we start with just the scheduling

15  issues.  I got just recently -- I think it was yesterday --

16  each side giving me some proposed schedules leading up to

17  having initial motion practice.

18       And in looking at them, I guess, my first reaction is I'm

19  not exactly sure where there is disputes.  So, when they are

20  not disputes, that's a wonderful thing.  And I will sign on to

21  what you planned.

22       So, perhaps, if somebody from each side wants to come up

23  and you can highlight for me where there is some disagreement.

24  So, I don't know who on the Defense side.  And are you carrying

25  the battle for all of your colleagues on the Defense side?

1          **MS. DEMAS:**  I am, Your Honor, yes.  I'm carrying the

2     torch.

3          **THE COURT:**  Very good.

4     So, Ms. London why don't we start with you.  Where is --

5     where do you need me to weigh in and make some calls?

6          **MS. LONDON:**  Sure, thank you, Your Honor.  I guess

7     just to start out at what is our goal here with this kind of

8     early round of motion practice, I think we are generally

9     aligned on the vision and goal, which is that Your Honor will

10    focus and the Court will focus its resources on the issues of

11    broadest applicability, most important issues and most

12    meaningful time spent among the parties.

13         So, thankfully we are all in alignment on that.  It is

14    just how do we get from here to there?  And our vision -- you

15    know, we had originally envisioned somewhat of like a master

16    complaint process with short form complaint process.  We have

17    gone back and really evaluated that in light of the goals we

18    are trying to reach.

19         And we actually determined that's probably not the best

20    vehicle forward here, but we can achieve a lot of the same

21    value of a master complaint in terms of focusing our resources,

22    providing the Court with what is effectively the committee's

23    view of the general allegations, the scope of discovery and our

24    best pled version of the State laws that may be relevant and at

25    issue.

1        **THE COURT:**  For purposes of motion practice, you think

2    we don't need the master complaint?

3        **MS. LONDON:**  Right.  We don't think so because we

4    think we achieve the same goal --

5        **THE COURT:**  What you perfected is -- I guess I should

6    refine the question.  Can we do motion practice on a

7    consolidated basis without the consolidated complaint?

8        **MS. LONDON:**  Yes.  And our vision for doing that, Your

9    Honor, is selecting a small subset of cases that the Defendants

10   will shoot at for both the motions to compel --

11       **THE COURT:**  Sort of a bellwether motion practice.

12       **MS. LONDON:**  Correct, bellwether motion practice where

13   Your Honor will look at the generalized allegations, which

14   would be the same most likely across all subset of those

15   bellwether cases, and the individualized allegations that would

16   go -- Your Honor would consider for the motion to compel

17   arbitration as well as analyzing what Defendants have called

18   crosscutting issues that may touch on variations of State law.

19       We would not try to eat the whole elephant at once with

20   all 50 states like we would do in a master complaint.  With the

21   short form complaint, we would select a smaller subset of

22   states that may prevent -- present different variations that

23   are meaningful.  Start there.  And then to the extent -- we

24   would hope that we would all pick states that would have ripple

25   effects that may -- your rulings on those states would help

1    with other similar states.

2         **THE COURT:**  Okay.

3         **MS. LONDON:**  That's the concept.  And so, to get from

4    here to which states should we pick, which complaints should we

5    pick, what we have set forth is a process where we start with

6    the exchange of information that Your Honor has just delegated

7    to the Magistrate Judge, which is totally fine.

8         And assuming we get resolution on that issue, which I

9    think we will -- and I think that's something that the parties

10   are generally very close to coming to terms on what is the

11   information to be exchanged, assuming there is an exchange --

12   once that information is exchanged, we would pick the

13   bellwether briefs -- excuse me -- the bellwether complaints for

14   purposes of the arbitration issue, for purposes of the 12(b)

15   motions.  And then we would proceed on the briefing process in

16   that sort of orderly way.

17        And our vision would be once those bellwethers are

18   selected, our executive committee would work with the lawyers

19   that represent those individual cases to amend those complaints

20   promptly and make sure all the generalized allegations reflect

21   the latest and greatest; the State law is pled in the way that

22   is the latest and greatest and as well as those individualized

23   allegations on the -- may be relevant to arbitration issues and

24   the like are properly set out in the amended complaints.

25        Once that's done, the motion practice would come.  And I

 1   think we are in alignment, actually, on how to -- that those

 2   can be staggered; that the Defendants -- it sounds like Roblox

 3   and Discord are the only parties that intend to seek

 4   arbitration -- to compel arbitration.  They can file those

 5   first.  And then some period later, they can coordinate and

 6   file the Rule 12 motions.

 7        And then at that point we would evaluate those motions on

 8   the Plaintiffs' side.  We would look at whether discovery is

 9   something we would seek as it relates at least to the

10   arbitration issues, and we would evaluate what time and in what

11   format we want to respond to those motions.

12        All of this really is really contemplating that with the

13   parties meet-and-confer, we better flesh out what are the

14   motions to be filed, what are the most important issues to be

15   raised, how broad will those motions be?  Are we talking, you

16   know, a consolidated brief of 75 pages, 50 pages, 25 pages,

17   several different briefs.  These are all things --

18           **THE COURT:**  The last one is my favorite.

19           **MS. LONDON:**  Right, the shortest most efficient ones.

20   So that's, what we want to work out optimally once we get the

21   Court's guidance on this as a process.  Then we can submit a

22   proposed order on, okay, we would oppose by this date on this

23   format and the like.

24        So, that's our vision in how we get here -- from here to

25   there and once Your Honor rules on the hearing --

1          **THE COURT:**  My recollection may be wrong.  Before this

2     case was MDL'd, there were some rulings on the arbitration,

3     weren't there?  I think Judge Gonzalez Rogers had a ruling.

4          **MS. LONDON:**  Not exactly -- I'm actually going to call

5     up Ms. Walsh who can give you --

6          **THE COURT:**  It is not that important.  I'm just

7     curious.

8          **MS. WALSH:**  Thank you, Your Honor, Alex Walsh for

9     Plaintiffs.  Yes, those rulings have been -- they are largely

10    in State court.  We have one relevant ruling also from Federal

11    court.  I'm sure Roblox's Counsel will correct me if I'm

12    leaving something out.

13         But we -- my firm has a couple of cases filed in

14    California State court in San Mateo.  And in both of those

15    cases Roblox and Discord have moved to compel arbitration.  And

16    in both of those cases, those motions have been denied; and

17    they are now -- were about to -- they are up on appeal.  We

18    have a briefing schedule.

19         We also have -- my firm has a class case that's really a

20    consumer case, so it is different from this personal injury

21    case down in the Southern District of California.  And in that

22    case there was also a lot of litigation around arbitration, a

23    lot of discovery around arbitration.  The motion to compel was

24    ultimately denied by that court as well.  And that is also up

25    on appeal in the Ninth Circuit.

1      **THE COURT:**  Okay.

2      **MS. DEMAS:**  The only correction I would make,

3  Your Honor, is that in these cases -- in the component cases of

4  this MDL, there has not been a motion to compel ruled on by a

5  Federal Court.  Judge Gonzalez Rogers had put forth a schedule,

6  and we had a schedule in another case in the Southern District

7  of Texas.  Roblox and Discord had moved to compel in those

8  cases, and then briefing was stayed due to the petition to

9  transfer.

10     **MS. WALSH:**  Although the Federal law questions had

11  been briefed and decided by the State courts regarding

12  arbitration.

13     **THE COURT:**  All right.  Ms. London, are you done?

14     **MS. LONDON:**  That's about it, Your Honor.  I would

15  reserve to respond to what Counsel has to say.

16     **THE COURT:**  Okay, Ms. Demas.

17     **MS. DEMAS:**  Your Honor, I'm going to start with the

18  motions to dismiss first because that is something that impacts

19  all Defendants, and then I will take the motions to compel

20  second.

21     So, as the Court is aware and as Ms. London just alluded

22  to, the pleadings have -- the pleading structure has changed

23  significantly in the past week, week and a half.  And that --

24     **THE COURT:**  By that you mean, no longer shooting

25  towards a master complaint?

1          **MS. DEMAS:**  Exactly, Your Honor.  And, look, and

2    Plaintiffs are the masters of their own complaint.  If they

3    want to rely on the collection of cases in this case, that's

4    their prerogative; but Defendants are the master of our own

5    motions to dismiss.

6         We feel strongly that we should be given the opportunity

7    to move across the cases and not be forced into a bellwether

8    process for these crosscutting motions to dismiss at this early

9    stage of the case.

10        And I will say that we do have agreement in concept on two

11   key dates in this schedule.

12          **THE COURT:**  Let me back up -- stop you at one point.

13          **MS. DEMAS:**  Sure.

14          **THE COURT:**  So, let's assume that, as you say, they

15   opt to proceed by way of individual complaints and not a master

16   complaint; and you are saying, well, we want the opportunity to

17   do sort of an omnibus motion that would apply to every

18   complaint; right.

19          **MS. DEMAS:**  Yes, Your Honor.

20          **THE COURT:**  How, just practically, would that work?

21          **MS. DEMAS:**  So, practically speaking, Your Honor --

22   and there is precedent for this and some of my co-Defendants,

23   Meta and Snap, have done this in the *Social Media Addiction*

24   case where they did move across the entire collection of cases.

25   There was a different structure there.  There was a master

 1  complaint.  But it can be done in various ways.

 2      It relies -- I think one of the most important things is

 3  there are some issues that Section 230, First Amendment that

 4  can really be done -- that apply to all the cases no matter

 5  what.  It doesn't -- you know, the variation in allegations

 6  isn't such that these various complaints is going to make a

 7  huge difference.

 8      They kind of fall into buckets.  There are some

 9  complaints, they have the same product liability allegations;

10  flavors of misrepresentation allegations; that the variation is

11  really, I think, in a few collected cases -- I would say a

12  handful -- where the allegations about whatever it is that the

13  parents allegedly saw or read is actually pled.

14      And then there is a large component where there is just

15  sort of a vague allegation that parents had a concept that

16  platforms were safe and relied on that.

17      So, that's sort of how we are bucketing it in terms of the

18  differences in the cases.  And we can do that in a streamlined

19  way through appendices, through charts.  We are not proposing

20  to have pages and pages and pages about the individual

21  allegations.

22          THE COURT:  Well, maybe you can explain to me -- I now

23  understand the structural difference between the proposal for

24  each side -- and not getting into your strategy and things --

25  I'm trying to determine what each side -- why they want the

```
 1   particular approach.  Is it -- is your concern that somehow if
 2   it is a bellwether, it gives the Plaintiffs the opportunity to
 3   say it doesn't apply in certain of the cases?  Or alternatively
 4   from their perspective, why should you necessarily without a
 5   master complaint be allowed to say, I'm going to -- we are
 6   going to -- it is going to govern all the cases?  I'm trying to
 7   see why there is a fight about this.
 8        MS. DEMAS:  Well, Your Honor, I think one of the
 9   issues is the idea of applying across the cases.  That is a
10   concern on the Defendants' part.  I think the other issue is
11   that we want to be able to move against, you know, the
12   strongest set of allegations.  And if Plaintiffs -- and that
13   really goes to amendment.
14        What we don't want to have is a situation where we are
15   moving against complaints, where that have not been
16   memorialized and then Plaintiffs get another shot at the end to
17   amend rather than just doing this now so we can move across the
18   strongest allegations.
19        And so, again, we have talked to Plaintiffs.  We had
20   talked about the idea of them amending a cross.  They don't
21   want to do that, and my sense is that it is probably because it
22   may be difficult to do that; but if Plaintiffs are going to
23   rely on these individual complaints, we should have the
24   opportunity to move against them all and to move against the
25   strongest allegations and not have a situation where we don't
```

 1   know what those allegations are at this point in time.

 2       I can give you -- sorry, and I just want to kind of

 3   explain how that can play out in practice.  I mean, a lot of

 4   these cases have these sort of vague allegations that

 5   Plaintiffs have the sense that the platforms are safe; and that

 6   either falls into the fraudulent concealment claims or there is

 7   an allegation that they rely on a general marketing campaign.

 8       If they want to put forward allegations that they relied

 9   on specific statements, then we want them to do that now so we

10   can move across those complaints.  And we are able to do that

11   in the variation of what exists now because some of them have

12   them.  Some of them don't.  We want to know what that variation

13   looks like to be able to brief this crosscutting issue because

14   their top claim is always either fraudulent concealment,

15   negligent misrepresentation, a claim of that nature.  I'm just

16   calling it the misrep claims.

17           **MS. SIMONSEN:**  If I may interrupt a moment just to

18   represent --

19           **THE COURT:**  Go ahead.

20           **MS. SIMONSEN:**  -- Ashley Simmons in for the Meta

21   Defendants -- just an answer to your question that's specific

22   to the Meta Defendants, which is why I wanted to just

23   interrupt.

24           **THE COURT:**  Okay.

25           **MS. SIMONSEN:**  And Snap to some degree as well.  There

1  are only five complaints in this MDL pending against Meta.

2  There are only 14 complaints pending against Snap.  Those two

3  Defendants are not moving to compel arbitration.

4       We would be prepared to move to dismiss even earlier.  We

5  are trying to stay aligned with our co-Defendants of course,

6  and they cannot move to dismiss and have that resolve before

7  their motions to compel arbitration.  And we respect that.  We

8  are willing to stay on their schedule.

9       But I do want to emphasize that this bellwether issue, I

10  think, uniquely makes no sense with respect to Meta and Snap.

11  I mean, there are only four State laws with respect to the

12  complaints against Meta.

13       So, at a minimum, Your Honor, if there is an inclination

14  to order a bellwether process -- which I completely agree with

15  my colleague, there are reasons that does not make sense -- and

16  there is a reason that the Defendants' preference should be

17  honored here just as we have honored their preference for a

18  master complaint.

19            **THE COURT:**  Ms. London.

20            **MS. LONDON:**  Sure.  Thank you, Your Honor.  A couple

21  of things.  First of all, what I understand their proposal to

22  be is just do everything all at once; you know, everything at

23  one time.  And that would require a pretty extensive briefing

24  process.  For us to respond to motions for Section 230, to

25  fraud, to every single thing all at once on every single

```
 1   complaint on every single State law, that would be completely
 2   unworkable and unwieldily.
 3        Your Honor would need to review 108 complaints.  What they
 4   are envisioning is that we would take our collective resources
 5   to allege the strongest complaints or the strongest
 6   allegations.  We are amending every single complaint at the
 7   option for them to pick one stray thing here or there or the
 8   other.  It is totally make work and it doesn't -- we don't need
 9   to do any of that.  We can focus our efforts on a handful of
10   complaints that raise the variations that matter; use our
11   collective resources to give them, as they said, the strongest
12   allegations to shoot at.  That's the most meaningful use of all
13   of our time, not for them to pick one complaint versus another
14   complaint that may have some allegation that we would amend
15   anyway.
16        I mean, it's an absolute delay tactic.  It is long.  It is
17   cumbersome.  And in order to respond on issues of specific
18   statements and misrepresentation, which is not even close to
19   the top level claim here --
20        THE COURT:  I guess what I hear them saying is it's
21   giving you the chance to sort of pick and choose.  And then if
22   there -- rulings are made, then you can sort of amend in an
23   almost -- you know, one-off type of way.  I'm not -- I
24   understand their trepidation about, Well, you know, we want to
25   just -- we have these issues that we think are applicable
```

1    across the board, and we want them decided across the board;

2    and we don't want this process of almost a Whac-A-Mole problem.

3          **MS. LONDON:**  We --

4          **THE COURT:**  So, how do we rectify that?  Are they part

5    of the discussion about the bellwether?  Do they get to weigh

6    in and say, Well, you know, we think you should add or subtract

7    these complaints so that we get the issues we need to get

8    ventilated?

9          **MS. LONDON:**  Absolutely, yes.  And not only are they

10   involved but Your Honor should be involved.  So, we have pulled

11   out a process where either a deadline by which we jointly

12   select cases -- that, again, raise the most meaningful issues;

13   that establish the variation; will have the broadest possible

14   applicability for what Your Honor is ruling on and what the

15   parties are involved in -- I mean, look, they want to be able

16   to get all across the board rulings.  Frankly, so do we because

17   we want to have clarity on the scope of discovery and where

18   this case is going.

19        So, I think we both share that interest.  We have done

20   this model, for example, in the *Juul* MDL, both in Federal and

21   State court.

22        So, what happened there, for -- this was the Government

23   entity claims in Federal court, but it was also done with the

24   personal injury cases in State court; where instead of a master

25   complaint, there was a bellwether group -- again, there was a

 1   meet-and-confer by the parties.  There was a joint submission

 2   about which cases to pick.  And if there were any disputes, the

 3   court would weigh in.  And in that process -- it was exactly as

 4   we described -- the Committee's efforts were meant to put all

 5   of the general allegations in.  There were efforts to ensure

 6   that all the State laws were properly pled and that the court

 7   had the best versions of the complaint.  And it was an

 8   organized process of what allegations would be at issue and

 9   what complaints would be ruled on.

10        This is not any of our first rodeo of how we then would

11   apply this across the board.  It is not our intention to play a

12   game of Whac-A-Mole and just say, Here is a new set of cases

13   and now we are going to start brand new.

14        The whole point is to get Your Honor's rulings on these.

15   Then we would sit down and say, okay, Your Honor has ruled on

16   these ten complaints, let's say, which raise issues of maybe

17   ten different States' laws.  And if we are doing it right, we

18   are picking a case from each of the Defendants though -- that's

19   our goal, is to at least make sure they are representative and

20   inclusive so that all Defendants are participating in this

21   process and get the benefit of Your Honor's rulings and it

22   applies to them.

23        Once we do all of that -- once we get Your Honor's rulings

24   and they have come down, we will sit down and talk with one

25   another about, okay, what do we do now?  Let's say Your Honor

1    rules in our favor on three out of four of the claims, then,

2    you know, we look at what's next to do, what next set of cases

3    should we tee up to get rulings on and which ones can we

4    stipulate Your Honor's ruling applies to so that we all have

5    the proper record and appellate record.

6        There is no interest in coming back to the well over and

7    over again.  I don't think the Court would permit that and we

8    don't want that.

9        **THE COURT:**  You say, Counsel for Meta -- and then she

10   was also speaking for Snap although she doesn't represent

11   Snap -- you know, their point is we are -- we are kind of

12   the -- also ran here -- I know you may disagree with that but

13   in terms of just numbers of complaints and the like -- why

14   isn't there -- why aren't they right; that in some ways this

15   would be unfair to them because they have got a limited number

16   of States and they want to just deal with it all?

17       **MS. LONDON:**  Well, it's the same kind of concept of

18   why do we eat the whole elephant all at once.  I mean, let's

19   say we do ten complaints -- let's say we do twenty, there is

20   enough brain power and experience in this room to pick the

21   right complaints.  And if more of them should include Meta or

22   Snap, fine, we can make that determination that it is most

23   beneficial for the MDL that more of these cases include those

24   Defendants.

25       To the extent these are crosscutting issues, it shouldn't

1    matter all that much exactly which -- you know, so many of the

2    general allegations will be the same.  So many of these issues

3    will be the same across the cases.  There may be some

4    variations of State law.  There may be some variations on

5    certain types of fact patterns and certain Defendants.  That's

6    what we need to discuss and analyze and let the Court weigh in

7    on, if we can't figure out among us, which of the complaints

8    should be shot at.

9        It's just what we don't want is the chaos of them moving

10    on kind of everything all at once and us having to respond on

11    50 States' different law analysis; having the Court have to

12    look at 107 or 108 different complaints to get the context of

13    them; us having to spend our resources amending 107 or 108

14    complaints.  That's just -- it just loses the efficiencies that

15    we have in the MDL.

16        **MS. DEMAS:**  Your Honor --

17        **THE COURT:**  Let me ask a process question and then you

18    can tell me what you want to tell me.  If -- what do you --

19    what are you looking for me to do?

20        In other words, if I -- is the teed up question for me to

21    answer is:  Do we do this on a bellwether motion practice or an

22    omnibus practice?  And then once that decision is made by me,

23    does then -- are there other decisions that need to be made or

24    are there two alternative plans and one plan kicks in?

25        **MS. DEMAS:**  Your Honor, I think that that is the key

question, bellwether versus omnibus.  And if I may just respond
to some of the comments my friend just made, it is not
Defendants' intention to move on every single issue in every
single case.  We have narrowed this down to issues that are
truly crosscutting.

So, I mentioned Section 230 immunity from suit and the
First Amendment, and I will say that every court that has
looked at this fact pattern of platforms that are merely the
conduits of communications between criminal bad actors and the
people who use those platforms, have dismissed the claims.

**THE COURT:**  I know but that begs the question:  Is it
merely -- we all know 230 issues, are they just neutral
platforms or are they doing something more?

So, it is easy to say every time they look at it, every
court does that.  That's in a certain set of -- that's when the
platform is -- is characterized in a particular way, and I
don't know which way these platforms are going to be
characterized here, so --

**MS. DEMAS:**  Understood Your Honor.

**THE COURT:**  -- it's not like every 230 --

**MS. DEMAS:**  No --

**THE COURT:**  -- motion is granted.

**MS. DEMAS:**  And I'm not suggesting, Your Honor, that
the Court doesn't need to look at the specific claims.

**THE COURT:**  All right.

1              **MS. DEMAS:**  My point is that this is a truly

2   crosscutting claim.  The application of the First Amendment is

3   also a truly crosscutting claim.

4              **THE COURT:**  The point is 230 is going to be -- it is

5   either go going to rise or fall on every one of these cases in

6   effectively the same way.

7              **MS. DEMAS:**  In effectively the same way across the

8   claims.  The other issues that we --

9              **THE COURT:**  I don't agree with that but that's okay.

10             **MS. DEMAS:**  Well, we can have disagreement as to how

11  the ultimate result may be.  I think the question that I'm

12  responding to and sort of the structure we are responding to is

13  how best to deal with this collection of cases.

14             **THE COURT:**  If, for example, you get a 230 ruling from

15  me on one of these complaints, why doesn't -- and that

16  effectively ends -- I'm not going to change my mind for a case

17  that's just a different case.

18       So, you get the ruling.  I'm not sure why you -- is it a

19  res judicata thing?  Or what is it you are concerned about?

20             **MS. DEMAS:**  Well, Your Honor, the concern is that we

21  have want to have rules that apply to every variation.

22             **THE COURT:**  But what does that -- "apply to every

23  variation," what does in a mean?  I mean, I make a ruling and

24  that tells you how I have sized up the issue.

25       It doesn't become sort of law of the case.  I mean,

```
 1    I guess -- I guess I don't understand.  It goes back to my

 2    initial question, why the two sides are so dug in on their

 3    particular positions here.  If you are a district court judge

 4    and you are making a ruling, you then don't -- you can't come

 5    back to me later and say, Well, that's the precedent; that's

 6    the law of the case.  I can change my view if I want to, so --

 7    if I think it's warranted.

 8        So, I'm not sure there is really a fundamental difference

 9    between when I rule on, say, a complaint and if I rule on it on

10    a across-the-board basis.  I'm not sure there is really much

11    difference to that.

12        MS. DEMAS:  Your Honor, I do think when we talk about

13    the other crosscutting issues the Defendants intend to raise --

14    and those are issues likes proximate causation, lack of duty

15    for the negligence claims and the concept the Defendants'

16    services are not products for purposes of product liability

17    law -- it is important to be able to brief those crosscutting

18    issues.  There's not a whole lot of variation in the State law.

19    We can do it in a streamlined way that will benefit the

20    Defendants in a way that I think the bellwether process will

21    not.

22        And when I hear my colleague saying, well, okay if we do

23    bellwethers, we will have a set and then we will move to the

24    next set and move to the next set, what we are proposing is to

25    take that, you know, lengthy potentially process of going from
```

1    one set to another to another and just doing it all at the

2    beginning in a consolidated way.

3        **THE COURT:**  I think they are savvy enough to know that

4    it would not be well received if they say "I'm taking another

5    bite at the apple, I'm taking another bite at the apple."

6        If I make a ruling, say, on 230 and it is applicable

7    across the board, they are not going to, you know, say, Oh,

8    well we want to try it again and then try it again and maybe

9    you will forget you did it before and you'll have a different

10   view.

11       I mean, I understand there may be strategic differences

12   that are apparent to you and they are not obviously evident to

13   me right now; but I'm having trouble understanding why this is

14   a subject of such vigorous dispute.

15       But what I think I want to do -- because I want to make

16   sure you have an opportunity to flesh that out -- the proposed

17   schedules you have given me don't really flesh out this issue.

18   So, what I would appreciate is in no more than -- let's say no

19   more than ten pages -- even that's more than I would like -- on

20   this suggestion of how you want to proceed -- let's make it --

21   let's make it more like five pages -- that just sets out in

22   a -- it can be almost in a letter form, what -- you know, why

23   you want the structure that you are asking me for.

24       And then with the benefit of what you have told me, which

25   is once I give you that order, whichever way I end up going,

1  then you can give me a revised schedule that says, Okay, this

2  is the way he wants to do it.  So, therefore, this is how it's

3  going to work, in terms of timing and when briefs are due and

4  the rest.

5      I know you have got an October 15th hearing date for me

6  in, I think, both proposals or at least everybody wants

7  something on October 15th.  I think that's fine.  I may be away

8  in early October, and I'm not sure yet.  But for the time

9  being, you can use October 15.

10         MS. DEMAS:  For context, Your Honor, I chose that date

11  looking at the Court's calendar, seeing that there was no

12  absence on that date.  And, of course, it is at the Court's

13  convenience.

14         THE COURT:  And that's what I asked you to do which I

15  appreciate and you -- what could cause me not to be around on

16  that date you wouldn't know yet because it is not on the

17  calendar.  So, I understand.

18      So, if you can get that to me by the end of next week; and

19  then we can take that and I can decide which structure we are

20  going to have, and then I will ask you to give me a revised

21  schedule.

22      Now, as I'm reading these schedules, fortunately for me,

23  most of this is the parties back and forth.  I mean, I only

24  weigh into the fray at the end of it.  And that's fine for me.

25  Okay.  So --

1      **MS. DEMAS:**  I will add, Your Honor, that this schedule

2  that Defendant put forward does rest on the assumption that the

3  pleadings are settled as of a certain date.  And so, if that

4  settlement of pleadings moves out, then our schedule would move

5  out concomitantly.

6      And this particularly impacts Discord and Roblox because

7  we are moving to compel first.  There is a process that we have

8  put forward for that motion to compel briefing.  It is a bit

9  different, and it is different for a reason, which is that

10  these motions to compel --

11      **THE COURT:**  Let me ask you this question -- that

12  prompts a question for me -- is this one size fits all or --

13  for example, the arbitration issue, can the arbitration issue

14  be across the board?

15      **MS. LONDON:**  So, Your Honor, our -- both sides do

16  agree on a bellwether process for the motions to compel

17  arbitration.

18      **THE COURT:**  Okay.  So, arbitration, you agree, has to

19  be done on a bellwether basis?

20      **MS. DEMAS:**  We do, Your Honor, and that is because

21  they are so fundamentally individualized that we will do -- and

22  our proposal, I think, is very straightforward.  Each party --

23  each side picks three.  We pick our three.  We agree on them.

24  We move --

25      **THE COURT:**  Okay.

1    **MS. DEMAS:**  We have settled complaints.  And then

2  sixty days later, Discord and Roblox move on that set of six.

3    **MS. LONDON:**  And that is --

4    **THE COURT:**  So, going to then what you were concerned

5  about, which is the sort of late breaking amendments to

6  complaints, why wouldn't -- even if I adopted your approach, we

7  are still probably going to have an amendment process.  So,

8  why -- why does that move you back, I guess?

9    **MS. DEMAS:**  Well, if we are selecting bellwethers for

10  purposes of motions to compel arbitration, Your Honor, we do

11  want to be able to know what the allegations are specifically

12  with respect to the potential application of the ending forced

13  arbitration.

14    **THE COURT:**  Well, how about outside of arbitrations,

15  the other motions?

16    **MS. DEMAS:**  Oh, I'm sorry.  I was misunderstanding

17  your question.

18    **THE COURT:**  You had said one of the reasons that you

19  want the approach you are suggesting is the danger -- if I'm

20  hearing you correctly, from your perspective -- that there is

21  going to be amendments and amendments and amendments; and you

22  want a settled set of pleadings is what you said to me; right?

23    **MS. DEMAS:**  I did, Your Honor.

24    **THE COURT:**  Yes.  So, what I'm trying to understand is

25  to get to that settled set of pleadings, why is your model

```
 1   going to get you there better than the bellwether model?

 2            MS. DEMAS:  Well, Your Honor, I think it is in some

 3   ways, we are trying to get to the same place, which is that --

 4   and I think the place the Defendants are trying to get to for

 5   the motions to dismiss -- which are truly -- can be

 6   crosscutting across the cases -- if we are going to be

 7   moving -- and that is our desire, to move across all

 8   complaints -- we do need to have settled pleadings on all of

 9   those complaints to move across them.  Otherwise, there is a

10   potential for these allegations to fundamentally change and for

11   some of the rulings -- and I'm using the

12   misrepresentation/fraudulent concealment claims as an example

13   here -- because there is that variation.  And if we don't have

14   the strongest allegations put forward, then there is a risk

15   that we have a set of bellwether cases that are not

16   representative and that the courts -- then we just keep coming

17   back and back and back again.

18        And that's what Defendants are trying to avoid.  We are

19   trying to have -- we are trying to consider all of the claims

20   and the way they are pleaded and come up with a framework and a

21   structure to impose on this so that we can go across the

22   complaints, move against the crosscutting issues, but do it in

23   a way that's consolidated and not buying --

24            THE COURT:  Okay.

25            MS. DEMAS:  -- a repeated process of one after another
```

1  after another.

2  **THE COURT:**  Okay.  Why is Ms. Demas wrong, that she

3  has this concern?

4  **MS. LONDON:**  Okay.  Well, first of all, I

5  understand -- what I understand Counsel to say is they want to

6  move on things that have to do with variations of

7  individualized allegations, which raises an issue for me.  Are

8  these really crosscutting or not?  These actually sound quite

9  granular, which means the Court will have to review

10  individualized allegations of each complaint that they move

11  against, which then brings us back to 107 or 108 complaints

12  that Your Honor will have to review to rule on their,

13  quote-unquote, crosscutting issues.

14      And so, backing into that, that means amending every

15  single complaint.  That means consuming our entire PEC's

16  resources in every Plaintiff in a -- what is effectively a make

17  work exercise that we can achieve the same goal with a smaller

18  number of complaints where we can focus our effort on those

19  individualized allegations; get Your Honor's rulings.  And

20  Your Honor is a hundred percent correct; that we will not come

21  back to Your Honor and ask for a redo.

22      To figure out how to get the pleadings set on a smaller

23  set of cases is going to tell us way more.  It is going to be a

24  far more meaningful effort than a scattershot everything

25  everywhere all at once.  It will consume our resources to be

 1  amending every single complaint, every single allegation only

 2  to get Your Honor's rulings to have to go back and do it all

 3  over again.  It doesn't meaningfully move the ball forward, and

 4  it is a huge exercise of futility.

 5        **THE COURT:**  You said that once you get my ruling under

 6  your model, you are then going to go to the Counsel for the --

 7  in each of these complaints and get them to amend it.

 8        **MS. LONDON:**  Well, I mean, as it makes sense in the

 9  litigation; right.  So, if Your Honor is picking cases -- what

10  we have done in other cases like this is it's iterative; right.

11  So, we do a pleading set of -- you get the initial legal

12  rulings.  Then we pick bellwethers for discovery purposes, for

13  trial purposes.  And at that point in time, obviously

14  Your Honor will look at if -- are there additional rulings that

15  need to be made.

16        I would take the view that ruling on every complaint and

17  whether they have -- each Plaintiff has alleged a specific

18  representation, that that's not a good use of the Court's and

19  parties' time at this initial stage.  Those are not really

20  crosscutting issues.

21        There are some crosscutting issues that we can absolutely

22  achieve using the bellwether model, using the generalized

23  allegations, using what each of these individual Plaintiffs are

24  talking about.  That's why we want to meet and confer and talk

25  about what is the scope of these motions that makes the most

1  sense.  Not every motion that possibly could be filed should be

2  at this stage of the case.

3      And so, this is what we have done in other MDLs, is that

4  we take it in bite-sized chunks and we move the ball forward,

5  not a re-come back to.

6      But I do want to address one issue about the motions to

7  compel and how that structure might work because there is at

8  least a little bit of a dispute about how those bellwethers

9  should be selected and the timing for that.

10     So, what we have proposed is that we -- and, again, I know

11 Your Honor has referred this issue to the magistrate judge and

12 we will go brief that issue of what account information should

13 be exchanged and when.

14     It is our view that in order for these briefs to be

15 meaningful for this -- for these rulings to be helpful in

16 guiding the parties, we want to say in what cases should be

17 picked as bellwethers for the motions to compel and the process

18 by which we select those cases, we think we should have equal

19 information about what accounts are at issue, what is the last

20 log-in date, the kinds of dispositive type factual issues that

21 are only in the possession of the Defense.

22     That's why we want an early exchange of this very basic

23 account information, so that then we can make sure that we are

24 selecting cases that are meaningful and will give diversity of

25 variations.  So that when Your Honor is ruling on the motions

1    to compel, they will be representative.  Right now that

2    information is largely -- solely in their possession.

3         THE COURT:  What if I opted for the structure that the

4    Defense is suggesting, do you need that information?

5         MS. LONDON:  We do, and we need that -- so, I have for

6    Your Honor --

7         MS. WALSH:  If I might --

8         THE COURT:  Well, again, I think this is now going

9    into the area that Judge Krishnan is going to deal with at

10   least in the first instance.  So, rather than have our hearing

11   be a precursor of the hearing you are going to have with him, I

12   think I am going to wait --

13        MS. LONDON:  Okay.

14        THE COURT:  -- and let him go first.

15        MS. LONDON:  And, Your Honor, if you like, in the

16   submissions we make to the Court on our respective views of the

17   schedule, we can just incorporate this issue as well just to at

18   least flesh out what the issue is, if it is a predicate issue

19   that's between the parties.

20        THE COURT:  I won't preclude you from making reference

21   to this but don't -- you know, I'm not going to be giving a

22   ruling now on that.  And hopefully -- you know, you have the

23   right under the rules and you may do this over the course of

24   this case to have me take a look at what Judge Krishnan does;

25   but just at the outset, let me tell you, I have great

confidence in Judge Krishnan.  And I'm -- I will hope that the

parties will not simply every time he rules say, Okay, now we

are going to go to Seeborg because the whole point is, you

know, you may not win everything; but unless there's a manifest

error, you got to go with what he says.

MS. LONDON:  Absolutely.

THE COURT:  So, that's an aside.  But, okay, in terms

of -- I will give you now ten pages, so you can put some

reference to whatever you want to put in there but with the

understanding that the issue itself is going to Judge Krishnan.

MS. LONDON:  Understood, only as it relates to the

ruling on the scheduling, Your Honor.  And I would like to just

give Ms. Walsh a chance to --

MS. WALSH:  Your Honor, may I just be heard very

briefly on this point?  I absolutely understand the magistrate

judge will be deciding issues of preservation and what needs to

be exchanged back and forth.

We have had extensive experience, my firm, litigating

these motions to compel arbitration with Roblox and Discord.

The reason these issues are so intertwined with the structure

for the bellwether and the briefing and so forth is what we

have seen several times now is that we -- a motion to compel is

filed.  We file an opposition.

In response to that, we hear from Roblox and Discord about

information that they exclusively have regarding these accounts

1    and what they perceive to be related accounts and activity in

2    the accounts that they then use to support their positions.

3        I'm not -- they have every right to make those arguments.

4    We simply want to know going into this bellwether process in

5    order to choose the most representative set to make sure we

6    have equal information regarding the accounts, and that will

7    help us to make sure that we pick a truly representative

8    source.

9            MS. DEMAS:  May I be heard, Your Honor?

10           THE COURT:  Yes.

11           MS. DEMAS:  And I want to be sensitive to the Court's

12   statement that the Court wants the magistrate judge to decide

13   this issue; but I will say, Your Honor, that the idea that we

14   should be off to the races on discovery before deciding these

15   threshold motions gets it backwards.

16       We have experience doing these arbitration motions with

17   these very same Plaintiffs' Counsel in this very same type of

18   case in State court.  Done it in Federal court.  The typical

19   process is we move to compel.  We put any detailed

20   allegation -- excuse me -- detailed declarations.  Those

21   declarations take time to put together.  It requires input from

22   the client.  We want to do this thoroughly.  Plaintiffs then

23   have the opportunity to evaluate those declarations.  We have

24   built into our schedule a lengthy period of time for them to

25   respond to the set of bellwether motions to compel.

1    I can tell you that in our experience, there has been no

2    circumstance where in response to these declarations,

3    Plaintiffs have said, Oh, wait we need discovery; we need more

4    information to respond.  But put that to the side, we have

5    built that into the schedule.  We have built into our schedule

6    that if Plaintiffs feel they need discovery to respond to these

7    arbitration motions, there is an opportunity to seek it and

8    then we will adjust the schedule accordingly.

9    But as a general matter, these arbitration motions are --

10   require no discovery and are routinely decided without it.

11   So -- and to the extent discovery is required, it is

12   usually limited to things like user account flows in terms of

13   use, not the reams of user data and 30(b)(6) depositions that

14   Plaintiffs are requesting here.

15   **THE COURT:**  Both sides have given me a nice preview of

16   what Judge Krishnan will hear.  So, thank you.  But, as I say,

17   I understand these are the issues he is going to hear and have

18   relationship to some of the structural issues that we are

19   talking about and that's what the -- the point you have been

20   making to me and I appreciate that; but I think at this point,

21   I will call it on that in terms of information on that issue

22   and it can go to Judge Krishnan.

23   Okay.  So, let's move to whatever else we need to address

24   early on besides the issue that you are going to be giving me

25   some further input on, and I'm going to give you an answer; and

 1   then I'm going to get a further schedule from you.

 2       So, anything else?  What else do we need to do today?

 3           **MS. LONDON:**  Your Honor, we are pleased to report that

 4   the parties have reached an agreement on the selection of

 5   Mr. Perrelli as an ADR mediator.

 6           **THE COURT:**  Oh, great.  He was in the *Juul* case?

 7           **MS. LONDON:**  He was, Your Honor.  And so, the parties

 8   are conferring over the form of a proposed order.  We will

 9   submit to Your Honor forthwith.

10           **THE COURT:**  Excellent.  That's good.  So, he is going

11   to be the ADR person?

12           **MS. LONDON:**  That's right, Your Honor.

13           **MS. DEMAS:**  Yes, Your Honor.

14           **THE COURT:**  Yes.  When I had my prep sessions for the

15   confirmation process, he was Associate Attorney General; and he

16   came in and got us all ready to go.  So, he is very good.

17           **MS. DEMAS:**  He is very good.  Let me just confer with

18   my colleagues if there's anything else --

19           **THE COURT:**  Yes, Mr. Aylstock looks like he has got

20   something.

21           **MS. LONDON:**  Yes, Your Honor, Mr. Aylstock.

22           **MR. AYLSTOCK:**  Your Honor, just briefly -- and maybe I

23   can get the Court's guidance on whether this is Judge Krishnan

24   or Your Honor -- we have sent over on February 16 a preliminary

25   order on CSAM preservation.  It is modeled after the Meta order

1    or the Social Media order.  It is very important in our

2    experience that that CSAM be preserved in the correct way.

3         **THE COURT:**  Is this a stipulated request?

4         **MR. AYLSTOCK:**  Not yet.

5         **MS. DEMAS:**  Your Honor --

6         **MR. AYLSTOCK:**  We haven't received a response.  It's

7    been eleven days.  So, I just wasn't sure if there was a

8    dispute, if we should bring it to you or --

9         **THE COURT:**  Okay.

10         **MS. DEMAS:**  Your Honor, we are reviewing it.  We will

11   have to confer with our clients on that order and have not had

12   the time to fully digest it.  I can't say one way or the other

13   whether there is going to be a dispute on it.  I understand

14   Mr. Aylstock to be asking if there is a dispute, to whom should

15   it go.

16         **THE COURT:**  Right.  That would go to Judge Krishnan in

17   the first instance.

18         **MR. AYLSTOCK:**  Thank you, Your Honor.

19         **MS. DEMAS:**  And, Your Honor, the only other point I

20   would want to raise just in terms of process is that given that

21   we are going to Judge Krishnan about certain issues that may

22   impact the bellwether motions to compel, I just want to

23   emphasize that whatever -- whatever that results in will impact

24   the schedule for Roblox and Discord in a way that it won't for

25   other Defendants and has to just be incorporated into the

```
 1   schedule.  So, I'm just flagging that as an issue --

 2           THE COURT:  Well --

 3           MS. DEMAS:  -- in terms of staging and timing.

 4           THE COURT:  It is a fair point that in terms of, you

 5   know, what comes first -- my ruling on how we are going to

 6   proceed structurally with the motion practice or Judge

 7   Krishnan's rulings with respect to the issues of disclosure and

 8   information that you are going to do -- which -- does one have

 9   to come before the other?

10           MS. LONDON:  Your Honor, I think what we could do is

11   if Your Honor -- I think they can proceed on parallel tracks.

12   Our view would be that the motion practice schedule would be

13   teed off of the decision made from Judge Krishnan, what

14   information is exchanged; for example, the entry of an order

15   that guides the exchange.  Once that order is entered, we could

16   tee the dates off from that.

17       So, if Your Honor's ruling on the schedule, I think it can

18   proceed subject to the resolution of what that date -- we could

19   leave that as a placeholder date.

20           THE COURT:  Even though you have both sort of

21   explained to me how you think the information exchange either

22   does or does not impact the ability to set the schedule, there

23   is no reason why I should wait for any rulings by Judge

24   Krishnan before I decide the structural issue.

25           MS. LONDON:  Correct.  I think it will be before
```

1    Your Honor, that whether or not the exchange of information and

2    what that form looks like is a key predicate to the rest of the

3    schedule.

4         **THE COURT:**  To the schedule, not the structure.

5         **MS. LONDON:**  And the structure, I guess, because I

6    think it is just a matter of timing.  Our dispute over what --

7    what information needs to be exchanged, once he resolves that

8    question -- assuming his resolution one way or another is going

9    to result in a form of what information is to be provided,

10   either us to them or we expect both ways.

11        **THE COURT:**  Okay.

12        **MS. LONDON:**  Once that order is entered, there will be

13   deadlines set for when the parties will exchange information.

14   It is just that date that would need to be filled into

15   Your Honor's order that would tee off the rest of the schedule.

16        If Your Honor agrees with my colleague here -- that no

17   information needs to be exchanged before anything goes

18   forward -- obviously then Your Honor can proceed.

19        We think that is an issue that will be before Your Honor

20   on the competing briefs of what is the structure and what is

21   the timing, and then the referral to the Magistrate Judge is

22   really on what is the substance of what would be exchanged.

23        **MS. DEMAS:**  Let me just try to simplify this,

24   Your Honor, because I, myself, was getting confused.  I wonder

25   if the Court was as well.

1        Defendants -- Roblox and Discord's position is that

2    everybody has the information we need right now to pick three

3    bellwethers each.  And that's because a lot of the issues that

4    we anticipate Plaintiffs want to raise are things that are in

5    their own control.  They have access to their clients.  They

6    can talk to their clients.  They have specific allegations.

7        The normal process is to just move.  We are willing to

8    engage in this "you pick three, we pick three."  From our

9    perspective, even if there were to be a ruling by Judge

10   Krishnan, Okay, here is how the user information exchange will

11   go, there is still going to be a disagreement about whether

12   that information actually needs to be exchanged before

13   selecting these bellwether motions to compel.

14       And I'm just trying to draw that out.  So, I think it does

15   carry through into the issues that Your Honor will be deciding

16   in terms of the structure of the briefing process.  And I'm

17   just raising that for Your Honor's awareness because there will

18   be that fundamental dispute; but regardless of how the

19   Magistrate Judge decides the issue as to, like, whether

20   information should be disclosed, what information is it,

21   there's going to still be -- unless the parties can work it out

22   and I hope we can -- that gating issue of when should the, you

23   know, deadlines start in the motion to compel process.

24       Because if it is Plaintiffs' position that, Okay, we need

25   user information on all these cases before we can even decide

```
 1   which ones we want to pick, then that will push the deadlines
 2   back.
 3              THE COURT:  But --
 4              MS. DEMAS:  -- if the Court agrees.
 5              THE COURT:  -- as I'm hearing you talk -- you can tell
 6   me if I'm not analyzing this correctly -- my reaction is that
 7   the schedule itself may be significantly impacted depending
 8   upon what Judge Krishnan rules, but the structure is something
 9   I can decide now.
10              MS. DEMAS:  I think so, Your Honor.
11              THE COURT:  Right.
12              MS. DEMAS:  I think that's correct, if we are talking
13   general structure and not dates.
14              THE COURT:  Right.  But structure A or structure B may
15   well look different in terms of timing depending on what Judge
16   Krishnan decides.  I understand that.
17              MS. DEMAS:  Yes, Your Honor.  I know my colleague
18   wanted to speak.
19              MS. GODESKY:  Just wanted to make a quick point, Your
20   Honor, on behalf of Meta and Snap; that the user account
21   information exchange issue is resolved between Meta and Snap
22   and Plaintiffs.  We have reached agreement on the information
23   that's going to be exchanged.
24              THE COURT:  Okay, good.  So, you don't need to have
25   the issue -- you are not going to be involved in the motion
```

```
 1   practice in front of Judge Krishnan then?

 2        MS. GODESKY:  No, Your Honor.  And we also -- just to

 3   be clear, the issue of information exchange does not impact the

 4   structure or the timing for purposes of snap and Meta.  And if

 5   it's necessary for any reason, we could move to dismiss earlier

 6   on the --

 7        THE COURT:  Right, but you were hoping at the

 8   beginning while you would like early resolution, you are

 9   agreeable to going in tandem.  And that helps me because then I

10   don't have to be doing this in a seriatim way.

11        MS. GODESKY:  Thank you, Your Honor.

12        THE COURT:  All right.  So, we should -- I would like

13   to, particularly at the beginning of this case, have regular

14   sessions with you.  I'm trying to think when the optimal time

15   where we can do something productive, when I should next set a

16   conference.  Do you have an idea in mind when enough will have

17   happened that it would be useful to get together?

18        MS. LONDON:  Your Honor, typically every thirty days

19   seems to make sense.

20        THE COURT:  Do you need thirty or -- I'm concerned if

21   we get back together in thirty days, I'm not sure -- I

22   hopefully will have given you a decision on the structure; but

23   I would think that we could pull it out to more to, like, sixty

24   days because I think at the beginning, there's at lot that you

25   need to be working on together and my just seeing you to say
```

1  hello isn't particularly useful.

2         MS. LONDON:  Respectfully on that point, Your Honor,

3  seeing us to say hello, in fact, is remarkably helpful to focus

4  the parties' efforts.

5      In the next thirty days, there's a list of things we are

6  going to try to accomplish.  We are going to try to work on a

7  protective order.  We are going to try to work on other matters

8  related to this case, that -- if we don't need it -- I always

9  find if we don't need it --

10         THE COURT:  Right.

11         MS. LONDON:  -- we can let the Court know we don't

12  need to see you, then we won't.

13         THE COURT:  Okay.

14         MS. LONDON:  The cadence of every thirty days does

15  help us move things along.

16         THE COURT:  Well, why don't -- not precise on thirty,

17  but it will work on my schedule -- how about mid-April, perhaps

18  towards the end of -- I don't have my schedule here.  Oh, here

19  it is.  Perhaps, say, April 17th is a Friday.

20         MS. DEMAS:  Yes, Your Honor, that works for

21  Defendants.

22         MR. AYLSTOCK:  I think I have a Depo-Provera MDL

23  conference that day.

24         MS. LONDON:  April 10th, Your Honor, or into the

25  following week, the week of April 20th.

1          **THE COURT:** I'm out of the district on the week of

2    April 6th, and then the -- sometime the week of the 20th would

3    probably work.

4          **MS. LONDON:** Yes.

5          **THE COURT:** Our Northern District conference is on the

6    24th, so I don't want to set it that date because I need to get

7    up to there for that and probably several of you are going to

8    that. So, I could maybe the 22nd of April.

9          **MS. LONDON:** That works for us, Your Honor.

10         **MS. DEMAS:** Yes, Your Honor, that works.

11                    (Pause in proceedings.)

12         **THE COURT:** We will set this for the 22nd and I will

13   move that around. So, the 22nd, we will say, at 9:30.

14         **MS. LONDON:** Thank you, Your Honor.

15         **THE COURT:** I won't -- I wouldn't be adverse to doing

16   some of these by Zoom if they make it easier for you. The

17   countervailing motion is that sometimes I think it is good to

18   force you guys, all physically, to get together. I'm less

19   important in that process. So, that having been said, do

20   you -- what's the parties' preference on being here personally

21   or Zoom for the next one?

22         **MS. WALSH:** In person.

23         **MR. AYLSTOCK:** In person.

24         **MS. DEMAS:** We are unanimous, Your Honor.

25         **THE COURT:** Well, that makes it easy. Okay.

1          **MS. LONDON:**  Thank you, Your Honor.

2          **THE COURT:**  We will be here in person at 9:30.  At

3    some point when we are doing these, if you do think we reached

4    the point -- I'm aware of the expense involved in having people

5    come, if you do think, Hey, we can do this one by Zoom, you

6    know, tell me.

7          **MS. LONDON:**  We will, Your Honor.

8          **MS. DEMAS:**  Thank you, Your Honor, we certainly

9    appreciate it.

10          **MS. LONDON:**  Thank you, Your Honor.

11          **THE COURT:**  Anything else?

12          **MS. LONDON:**  Not at this time.

13          **MS. DEMAS:**  No.  Thank you, Your Honor.

14          **THE CLERK:**  Court stands in recess.

15              (Proceedings adjourned at 10:30 a.m.)

16                    ---oOo---

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   March 2, 2026

8

9

10

11    _____

12         Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25