1  John C. Bohren (CA Bar No. 295292)
   **YANNI LAW APC**
2  yanni@bohrenlaw.com
3  145 South Spring Street, Suite 850
   Los Angeles, CA 90012
4  Telephone: (619) 433-2803

5
   Paul J. Doolittle (*Pro Hac Vice forthcoming*)
6  **POULIN | WILLEY | ANASTOPOULO**
7  32 Ann Street
   Charleston, SC 29403
   Telephone: (803) 222-2222
8  Fax: (843) 494-5536
   Email: paul.doolittle@poulinwilley.com
9         cmad@poulinwilley.com

10 *Attorneys for Plaintiff and Proposed Class*

11

12                  **IN THE UNITED STATES DISTRICT COURT**
13                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14
   **MELISSA JOHNSON, as legal guardian or**         Case No.: **3-26-cv-00271-RS**
15 **parent of C.W.  a minor;**

16 **TAYLOR BURKETT, as legal guardian or**          MDL: 25-md-3166
   **parent of J.H. a minor;**
17                                                   **AMENDED CLASS ACTION COMPLAINT**
   **TAMEKA WASHINGTON, as legal guard**
18 **or, parent of A.W. a minor and K.W., a minor;**

19 **TASHA ROSS, as legal guardian or parent of**    **JURY TRIAL DEMANDED**
   **M.R. a minor; individually and on behalf of**
20 **others similarly situated.**

21

22
                          **Plaintiff(s),**
23
24          **vs.**

25 **ROBLOX CORPORATION**

26
                          **Defendant(s).**
27

28

                                    - 1 -

Plaintiffs, Melissa Johnson, Tameka Washington, Tasha Ross and Taylor Burkett ("Plaintiffs") bring this Class Action and Complaint against Defendant, Roblox Corporation, Inc., ("Defendant") on behalf of their minor children, along with others similarly situated, and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

### JURISDICTION & VENUE

1.      Plaintiffs each have suffered and will continue to suffer damages that exceed the sum of $75,000 exclusive of interests and costs.

2.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 and the controversy is between citizens of different states.

4.      This Court has personal jurisdiction over Defendant because their principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of California.

5.      The Court has general jurisdiction over the Defendant because it transacts business in the state, supplied services within the state and has caused tortious conduct within the state.

6.      Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

7.      Plaintiff Melissa Johnson is the mother of minor child.  C.W., now aged 11 now who resides in Florence, South Carolina.  C.W. is a user of the Roblox platform and has experienced illicit contact while using the platform.  Plaintiff Johnson has attempted to implement parental controls to no avail.

8.      Plaintiff Taylor Burkett is the parent of a minor J.H., now aged 11who resides in Effingham, South Carolina.  J.H.is a user of the Roblox platform and reports illicit contact from other users.

9.      Plaintiff Tameka Washington is the mother of two minors, A.W. aged 11 now, and K.W., aged 17 now, all reside in Fairfield, Ohio.  Plaintiff Washington's children are users of the Roblox platform. Plaintiff Washington reports her children receiving illicit conversations on the Roblox platform. Plaintiff Washington attempted to implement parental controls.

10.     Plaintiff Tasha Ross is the legal guardian of minor M.R. who is now aged 5 residing in Fairfield, Ohio.  M.R.  is a user of the Roblox Platform and reports receiving inappropriate conversations through the platform's in-app features.

11.     Defendant Roblox Corporation ("Roblox") is a Nevada corporation with its principal place of business in California.  Its principal place of business is 3150 South Delaware Street San Mateo, California. Its Registered Agent is the Corporation Service Co. d/b/a CSC- Lawyers Incorporating Services, located at 2710 Gateway Oaks Drive Sacramento, Ca.

12.     Roblox owns, operates, develops, markets, and profits from the online gaming and social platform known as "Roblox," including its mobile, desktop, and web-based applications, account-creation systems, communications features, recommendation tools, virtual-currency economy, and safety and moderation systems. Roblox designs and controls the core architecture and defaults of the platform, markets the platform directly to children and parents, and derives substantial

CLASS ACTION COMPLAINT

revenue from user engagement, in-platform purchases, subscriptions, and related monetization tied to the participation of minor users.

## FACTUAL ALLEGATIONS

13.     Defendant Roblox Corporation ("Roblox") owns and operates an online, mobile- and web-based gaming platform that offers millions of user-generated "experiences," and is widely accessible on phones, tablets, computers, and consoles.

14.     Roblox is designed and marketed for broad public use, including children, and Roblox knows that minors—particularly children under 13—constitute a substantial portion of its user base.

15.     Roblox makes account creation "extremely easy," requiring only a birthdate, username, and password. Roblox does not require users to verify age at sign-up, allowing users to misrepresent their age.

16.     Although Roblox states that children must have parental permission before signing up, Roblox does not confirm or document parental permission—no matter how young the child is—and does not require a parent to confirm the age the child enters at sign-up.

17.     After creating an account, users are assigned an avatar and can access Roblox experiences through the platform's interface and recommendation tools.

18.     Because Roblox allows self-reported age and does not implement meaningful identity or age verification at account creation, adults can also misrepresent their age and pose as minors to initiate contact with child users.

19.     Roblox generates revenue largely through the sale of its in-game currency, "Robux," used to purchase digital content, experiences, and avatar customization items; Roblox also sells Robux through subscriptions and gift cards that can be purchased and sent to users.

20.     The complaints allege that children frequently become highly motivated to obtain Robux to buy sought-after items and to keep up with peers, and that this dynamic predictably increases children's vulnerability to manipulation by strangers offering, promising, or leveraging Robux.

21.     Roblox's continued growth depends on parents trusting that the platform is safe for children, and Roblox has repeatedly promoted Roblox as a child-safe, "family friendly," and moderated environment.

22.     Roblox has also represented that safety is embedded in its culture and that Roblox uses "moderation" and filters for communications—describing stricter filters for children under 13 and dedicated safety teams monitoring inappropriate content and communication.

23.     Roblox had the ability to implement basic safeguards—such as identity verification, meaningful parental approval, and other protective design measures—but did not implement them, allowing anonymous account creation without names or email addresses and making it easier for predators to create and cycle through multiple accounts.

24.     Roblox permitted users to share external handles and/or link to external services—including Discord—thereby facilitating a known pattern in which predators contact children on Roblox and then move communications to less supervised channels.

25.     Roblox's design choices—low-friction account creation, inadequate age/identity verification, historically permissive default communications, and features that facilitate off-platform contact and real-time communication—created foreseeable and preventable opportunities for adult strangers to target, groom, and exploit children.

26.     The platform's design makes children "easy prey" by allowing adults to identify minors, initiate contact, and "locate, groom, and extort" children.

27.     This grooming pipeline predictably results in child sexual exploitation, including the solicitation or coercion of sexually explicit images from minors.

28.     Predators commonly move children from Roblox to off-platform channels, where exploitation escalates and is harder for parents to detect or control.

29.     These dynamics can escalate into real-world physical danger, including attempted or actual in-person meetings and harms.

CLASS ACTION COMPLAINT

30.     Collectively, such harms can result in profound downstream psychological and developmental harms to children, including depression, anxiety, PTSD, insomnia, eating disorders, social stigma/isolation, academic decline, increased risk-taking, susceptibility to future exploitation, and in extreme cases self-harm, suicidal ideation, or death.

**Plaintiffs' Experiences**

31.     Plaintiff Melissa Johnson is the mother of C.W. who is now 11 but began playing Roblox when he was 9 years old.

32.     C.W. advised Plaintiff Johnson that users would use inappropriate language, sometimes sexual in nature towards him.  Plaintiff Johnson advises that such behavior came from more than one user.

33.     Plaintiff Johnson advises that C.W. plays Roblox 4-5 hours a day.

34.     Plaintiff Taylor Burkett is the mother of minor J.H. (now 11) who has played Roblox for the past 5 years.

35.     Plaintiff Burkett advises that J.H. plays Roblox an hour a day on weekdays and up to 5 hours a day on weekends.

36.     Plaintiff Burkett advises that J.H. has been exposed to inappropriate sexual activity conversations while on the platform.  She advises J.H. being invited into chatrooms on the platform where the conversation is sexually explicit and other users attempt contact with the minor whereby multiple users have attempted to learn his age, where he lives and other social media handles.  J.H. has reported to Plaintiff Burkett his belief that the solicitations are coming from adults.

37.     Plaintiff Burkett advises a belief that J.H.'s Roblox account is associated with a cell number that J.H. uses and further reports having to block individuals from outside area codes who have asked him what he is doing and where he lives among other things.

38.     Plaintiff Tameka Washington is the mother of minors A.W (now 11) and K.W. (now 17).  Minors A.W. and K.W. began playing Roblox 2 years ago.

39.    Plaintiff Washington advises that her children have reported that other users engage in inappropriate behavior with her children to include attempts to: 1) obtain their real phone number; 2) ask to play the game in their underwear and 3) asked to engage in private conversations "off platform".  More specifically, Plaintiff Washington's youngest child, A.W., reports being solicited to move off the Roblox platform and onto Discord's Platform. Fortunately, he refused.

40.    Plaintiff Washington has attempted to block other users but fears the solicitors quickly move to another username to resolicit contact with her children.

41.    Plaintiff Washington believes her children use the platform 2-3 hours per day.

42.    Plaintiffs trusted Roblox in believing that their platform was safe for children to use. Instead, they have discovered other users attempting to engage their children in inappropriate behavior and, in certain instances, trying to gain identifying information from the minors and/or engage them off platform.

## CLASS ALLEGATIONS

43.    Plaintiffs bring a nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

44.    The Class that Plaintiff seeks to represent is defined as follows:

a.    **Nationwide Class**: All persons in the United States who are parents or legal guardians of minor children who used the Roblox platform and were exposed to illicit contact such as predatory contact, grooming, or inappropriate sexual communications due to the platform's design.

b.    **South Carolina Sub-Class**: All parents or legal guardians of minor children residing in South Carolina whose children who used the Roblox platform and were exposed to illicit contact such as predatory contact, grooming, or inappropriate sexual communications due to the platform's design.

c. **Ohio Sub-Class**: All parents or legal guardians of minor children residing in Ohio who used the Roblox platform and were exposed to illicit contact such as predatory contact, grooming, or inappropriate sexual communications due to the platform's design.

45.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

46.    Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

47.    **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Roblox has millions of active users, a substantial portion of whom are minors under the age of 13. The number of parents whose children have been exposed to the "grooming pipeline" described herein likely numbers in the thousands, if not more.

48.    **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether Roblox's platform architecture (e.g., low-friction account creation and inadequate age verification) is defectively designed;

b. Whether Roblox knew or should have known that its platform enabled adult predators to target and groom minors;

c. Whether Roblox failed to provide adequate warnings to parents regarding the risks of off-platform migration and predatory contact;

     d.   Whether Roblox breached an implied contract to provide a safe, moderated environment for children.

49.   **Typicality**: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all Class members have been similarly injured by Roblox's uniform course of conduct and the inherent design defects of the platform. Each Plaintiff is a parent or guardian of a minor who experienced the same categories of harm—illicit contact and predatory solicitation—stemming from the same platform features.

50.   **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class. They have no interests antagonistic to those of the Class. Further, Plaintiffs are represented by counsel who are competent and experienced in complex class action and products liability litigation.

51.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

52.   <u>**Superiority and Manageability**</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members

who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

53.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

54.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

55.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

56.    Roblox has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole, including requiring Roblox to implement feasible, safer alternative designs. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

57.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance

the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Roblox's platform architecture—specifically the lack of mandatory age verification and "low-friction" account creation—is defectively designed.

b.  Whether Roblox's internal discovery tools and private messaging features were designed in a way that predictably facilitated the "grooming pipeline" described in the Complaint.

c.  When Roblox first became aware that adult predators were using the platform to target and groom minor children.

d.  Whether feasible, safer alternative designs existed (such as AI-driven grooming detection or mandatory parental "handshake" protocols) that Roblox chose not to implement.

e.  Whether Roblox's marketing materials (e.g., calling the platform a "safe, moderated community") were materially misleading to parents.

f.  Whether Roblox had a legal duty to warn parents about the specific risk of "off-platform migration" (moving children to Discord or Snapchat).

g.  Whether Roblox unfairly profited from the engagement of minor users who were exposed to predatory environments.

## CAUSES OF ACTION

## COUNT 1: NEGLIGENCE/WANTONNESS

58.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.     Defendant Roblox Corporation ("Roblox") owns, operates, controls, markets, and profits from the Roblox online platform, including its account-creation systems, communications tools, recommendation features, virtual-currency economy, safety settings, and moderation and reporting systems (the "Platform").

60.     Roblox knew or should have known that minors—including children—use the Platform in large numbers, that children are uniquely vulnerable to manipulation and coercion, and that foreseeable risks of harm include predatory contact, grooming, sexual exploitation, sextortion, and related psychological and physical harms.

61.     Roblox owed Plaintiffs and similarly situated minor users a duty to exercise reasonable care in the design, operation, maintenance, marketing, and control of the Platform so as not to create or amplify foreseeable risks of harm to children.

62.     Roblox further owed a duty to implement reasonable safeguards to reduce foreseeable risks to minor users, including reasonable measures to deter adult predators from accessing, contacting, grooming, coercing, or exploiting children on or through the Platform.

63.     Roblox also owed a duty to provide reasonable warnings and instructions to children and parents/guardians about non-obvious, known, or reasonably knowable risks associated with the Platform's features and foreseeable patterns of misuse.

64.     Roblox breached its duties of reasonable care by, among other things, designing, deploying, maintaining, and/or promoting Platform features and defaults that foreseeably enabled adult strangers to locate, contact, and interact with children, and then to groom, coerce, and exploit them.

65.     Roblox breached its duties by failing to implement reasonable safeguards to prevent or meaningfully reduce foreseeable harms to minor users, including by failing to adopt reasonable age- and identity-verification measures and reasonable parental-consent protections appropriate for a child-directed platform.

66.     Roblox breached its duties by failing to implement and enforce reasonable restrictions on adult-child communications and interactions, and by maintaining systems that allowed bad actors to create and reuse accounts, evade detection, and continue contacting children.

67.     Roblox breached its duties by failing to adopt reasonable safety-by-design protections that were feasible and commonly used to reduce predatory contact and exploitation risks, including but not limited to: safer default communication settings for minors, stronger friction and validation around child safety controls, improved detection and interdiction of grooming patterns, effective escalation and response to reports, and robust barriers to off-platform migration for child users.

68.     Roblox breached its duties by failing to adequately warn children and parents/guardians of the foreseeable risks created or amplified by the Platform's design choices and operational practices, including risks of grooming, coercion, sextortion, and exploitation facilitated by in-platform communications and the Platform's virtual economy.

69.     Roblox breached its duties by representing—expressly and impliedly—that the Platform was safe or appropriately moderated for children while failing to exercise reasonable care to make those representations true in practice.

70.     Roblox's breaches were a direct and proximate cause of Plaintiffs' injuries because the Platform's design and operational choices created foreseeable opportunities for predators to access, target, groom, coerce, and exploit minor users, and because Roblox failed to implement reasonable safety measures that would have prevented or materially reduced the risk of such harm.

71.     The harms suffered were a foreseeable result of Roblox's negligent design, negligent operation, and failure to warn, and were within the scope of the risks that made Roblox's conduct unreasonable.

72.     As a result of Roblox's negligence, Plaintiffs sustained damages, including but not limited to: past and future medical and mental-health expenses; emotional distress; psychological trauma; loss of enjoyment of life; impairment and/or disability; and other economic and non-economic damages to be proven at trial.

73.     Plaintiffs are entitled to all available relief, including compensatory damages, costs, interest, and such other and further relief as the Court deems just and proper.

**COUNT 2: DESIGN DEFECT**

74.     Plaintiffs incorporate by reference and reallege all preceding allegations as if fully set forth herein.

75.     Defendant Roblox Corporation ("Roblox") designed, developed, manufactured, marketed, distributed, and sold the Roblox platform, including its core architecture, account-creation systems, communication tools, recommendation features, virtual-currency economy, and safety and moderation systems (collectively, the "Product").

76.     The Product was placed into the stream of commerce and reached users, including minor children, without substantial change in its condition.

77.     At the time the Product left Roblox's control, it was defectively and unreasonably dangerous by design because its foreseeable risks to children outweighed its utility.

78.     The Product's design creates and amplifies a foreseeable risk that adult predators can identify, access, contact, groom, coerce, and exploit minor users through the Product's integrated social and economic features.

79.     The Product failed to perform as safely as an ordinary consumer—particularly parents and children—would reasonably expect when used in an intended or reasonably foreseeable manner.

80.     Feasible, safer alternative designs existed at the time of design and distribution that would have prevented or materially reduced the risk of harm to children without eliminating the Product's utility or imposing unreasonable cost.

81.     Such safer alternatives include, but are not limited to: meaningful age- and identity-verification measures; verified parental consent for child accounts; safer default communication settings for minors; effective restrictions on adult-child interactions; robust barriers to account cycling and evasion by bad actors; design-level protections against off-platform migration for child users; and safety-by-design systems to detect and interrupt grooming and coercive patterns.

82.    Roblox failed to adopt or adequately implement these feasible safer alternative designs and instead chose designs that prioritized growth, engagement, and monetization at the expense of child safety.

83.    The Product's defective design was a proximate and producing cause of Plaintiffs' injuries because it created foreseeable opportunities for predators to exploit children and because the absence of safer alternative designs allowed those harms to occur.

84.    Plaintiffs suffered damages as a result of the Product's defective design, including but not limited to physical injury, psychological trauma, emotional distress, medical and mental-health expenses, loss of enjoyment of life, and other economic and non-economic damages to be proven at trial.

85.    Plaintiffs are entitled to all relief available under law, including compensatory damages, costs, interest, and such other and further relief as the Court deems just and proper.

**COUNT 3: FAILURE TO WARN**

86.    Plaintiffs incorporate by reference and reallege all preceding allegations as if fully set forth herein.

87.    Defendant Roblox Corporation ("Roblox") designed, developed, manufactured, marketed, distributed, and sold the Roblox platform, including its account-creation systems, communications features, recommendation tools, virtual-currency economy, and safety and moderation systems (the "Product").

88.    The Product was placed into the stream of commerce and reached users, including minor children, without substantial change in its condition.

89.    At the time the Product left Roblox's control, it was defective and unreasonably dangerous due to Roblox's failure to provide adequate warnings and instructions concerning the Product's non-obvious, foreseeable risks to children.

90.     Roblox knew or should have known that the Product's design and foreseeable patterns of use exposed minor users to risks including adult-child contact, grooming, coercion, sexual exploitation, sextortion, off-platform escalation, and resulting psychological and physical harm.

91.     These risks were not open and obvious to ordinary consumers, including parents and children, and could not be reasonably avoided without adequate warnings and instructions.

92.     Roblox failed to warn, or failed to adequately warn, parents and child users of the nature, severity, and likelihood of these risks, including by failing to provide clear, conspicuous, and timely warnings at account creation and throughout use of the Product.

93.     Roblox further failed to provide adequate instructions regarding how parents and children could reasonably avoid or mitigate these risks through effective use of safety controls, reporting mechanisms, and account-level protections.

94.     Any warnings or safety representations Roblox did provide were inadequate because they were incomplete, misleading, diluted by contrary messaging, buried in lengthy terms or settings, and failed to accurately convey the magnitude and foreseeability of the risks to minor users.

95.     Roblox's representations that the Product was safe or appropriately moderated for children further rendered its warnings misleading and inadequate.

96.     Had adequate warnings and instructions been provided, parents and children would have altered their behavior, restricted use, implemented protective measures, or avoided use of the Product altogether, and the injuries suffered would have been prevented or materially reduced.

97.     Roblox's failure to warn was a proximate and producing cause of Plaintiffs' injuries and damages.

98.     As a result of Roblox's defective failure to warn, Plaintiffs suffered damages including, but not limited to, emotional distress, psychological trauma, medical and mental-health expenses, loss of enjoyment of life, and other economic and non-economic damages to be proven at trial.

99.    Plaintiffs are entitled to all relief available under law, including compensatory damages, costs, interest, and such other and further relief as the Court deems just and proper.

**COUNT 4: BREACH OF IMPLIED CONTRACT**

100.    Plaintiffs incorporate by reference and reallege all preceding allegations as if fully set forth herein.

101.    Defendant Roblox Corporation ("Roblox") owns and operates the Roblox platform and markets it directly to parents and guardians as appropriate and safe for children, including by promoting parental controls, moderation, and child-safety features.

102.    Parents and guardians permitted their children to access and use the Roblox platform in reliance on Roblox's representations and conduct regarding safety, moderation, and parental oversight.

103.    Through Roblox's course of conduct, marketing, representations, and provision of parent-facing safety tools and controls, Roblox entered into an implied-in-fact contract with parents and guardians of minor users.

104.    Under this implied contract, Roblox promised—by words and conduct—to exercise reasonable care in operating the platform for children, to implement and maintain meaningful child-safety measures, and to provide parents with functional tools and accurate information necessary to supervise and protect their children.

105.    Parents and guardians accepted this implied contract by allowing their children to use the platform and by refraining from restricting or prohibiting use based on Roblox's safety representations and conduct.

106.    Consideration existed in the form of parents' consent to their children's use of the platform, the time and attention of minor users, and Roblox's receipt of economic benefits derived from child engagement, including purchases of virtual currency, subscriptions, advertising value, and data.

107.    Roblox breached the implied contract by failing to provide the level of safety, moderation, and parental oversight reasonably promised by its conduct and representations.

108.    Roblox further breached the implied contract by maintaining platform designs and defaults that foreseeably enabled adult-child contact, grooming, and exploitation, while failing to implement reasonable safeguards or to provide parents with accurate, complete information necessary to protect their children.

109.    Roblox also breached the implied contract by providing parental controls and safety tools that were inadequate, misleading, or ineffective for their represented purpose, and by failing to timely and meaningfully address known risks to minor users.

110.    Roblox's breaches deprived parents and guardians of the benefit of their bargain—namely, a platform that could be reasonably relied upon as appropriate and safe for child use with meaningful parental oversight.

111.    As a direct and proximate result of Roblox's breaches, Plaintiffs suffered damages, including but not limited to: loss of the benefit of the bargain; out-of-pocket expenditures; costs associated with medical and mental-health care for their children; emotional distress; and other economic and non-economic damages to be proven at trial.

112.    Plaintiffs are entitled to all available relief, including compensatory damages, restitution, disgorgement to the extent permitted by law, costs, interest, and such other and further relief as the Court deems just and proper.

**COUNT 5: UNJUST ENRICHMENT**

113.    Plaintiffs incorporate by reference and reallege all preceding allegations as if fully set forth herein.

114.    Defendant Roblox Corporation ("Roblox") knowingly accepted and retained benefits conferred by Plaintiffs and similarly situated parents and guardians in connection with their children's use of the Roblox platform.

115.    Those benefits include but are not limited to:

(a) parents' consent to their children's participation on the platform;

(b) children's time, attention, engagement, and data; and

(c) direct and indirect monetary benefits to Roblox, including purchases of virtual currency, subscriptions, transaction fees, advertising value, and increased platform valuation driven by child user growth.

116.    Roblox accepted and retained these benefits with knowledge that parents permitted their children to use the platform in reliance on Roblox's representations and conduct concerning child safety, moderation, and parental oversight.

117.    Roblox's retention of these benefits was unjust because Roblox failed to provide the level of child safety, parental oversight, and risk mitigation reasonably expected and relied upon by parents and guardians.

118.    Roblox was unjustly enriched by operating and monetizing a platform that foreseeably exposed children to serious risks while externalizing the resulting costs and harms onto families.

119.    Roblox's enrichment was obtained through inequitable means, including maintaining platform designs and defaults that increased child engagement and revenue while failing to implement reasonable safeguards to protect minor users.

120.    As a direct and proximate result of Roblox's unjust enrichment, Plaintiffs suffered losses, including out-of-pocket expenditures, loss of the benefit of their children's engagement, and other economic damages.

121.    Equity and good conscience require restitution and disgorgement of the benefits unjustly retained by Roblox.

122.    Plaintiffs seek restitution, disgorgement, and all other equitable relief available under law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, respectfully requests that the Court enter judgment as follows:

A.   Past, present, and future general damages, the exact amount of which has yet to be ascertained, in an amount which will confirm to proof at time of trial, to compensate Plaintiff for injuries sustained as a result of the use of Defendant's product, including but not limited to physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, and expenses for medical treatments;

B. Past, present, and future economic and special damages, according to proof at the time of trial;

C.  Impaired earning capacity according to proof at the time of trial;

D. Medical expenses, past and future, according to proof at the time of trial;

E.  Punitive or exemplary damages according to proof at the time of trial;

F.  Attorney Fees;

G.  Pre and Post Judgment Interest; and

H. Any other Award the Court deems appropriate and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATED: March 13, 2026                                    Respectfully Submitted,

                                                                        */s/ John C. Bohren*
                                                                        John C. Bohren (Bar No. 295292)
                                                                        **YANNI LAW APC**
                                                                        145 South Spring Street, Suite 850

Los Angeles, CA 90012
Telephone: (619) 433-2803
yanni@bohrenlaw.com

-AND-

Paul J. Doolittle (*Pro Hac Vice* forthcoming)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT