

GIRARD
SHARP

April 2, 2026

**<u>VIA ECF</u>**

The Honorable Ajay Krishnan
United States Magistrate Judge

Re:     *In Re: Roblox Corporation Child Sexual Exploitation and Assault Litigation*, MDL No.
        3166, No. 25-md-03166-RS; Joint Brief Regarding User Account Information Dispute

Your Honor:

Pursuant to the Court's standing order, Plaintiffs and Defendants Roblox Corporation ("Roblox")
and Discord, Inc. ("Discord") submit this joint letter brief concerning: (1) the parties' exchange of
user-account information; (2) Plaintiffs' request for an in-person Rule 26(f) conference including
Roblox and Discord technical company personnel; and (3) Plaintiffs' request for Rule 30(b)(6)
depositions of Roblox and Discord on issues concerning electronically-stored information ("ESI").

(415) 981-4800          601 California Street, Suite 1400          www.girardsharp.com
San Francisco, CA 94108

April 2, 2026
Page 2

### Plaintiffs' Statement

Plaintiffs' Proposed User Account Information Order (UAIO), *see* Ex. A, provides a process for exchanging user account information. Each Plaintiff will first submit to Defendants a "Plaintiff User Account Form" providing the Plaintiff's date of birth and phone numbers, email addresses, or usernames associated with the Plaintiff's Roblox or Discord accounts.[1] Defendants will return a "User Account Identification Form" identifying all user accounts they believe may be associated with the Plaintiff. In this Form, Defendants will also identify the relevant data they have preserved and identify any such data that has been deleted. The Plaintiff will then sign a "User Account Confirmation and Consent Form" confirming whether accounts Defendants identified are associated with the Plaintiff and consenting for Defendants to disclose their user account information. Finally, Defendants will submit a "User Account Data Download" containing archives of the accounts, which include information such as login history and IP addresses.

*Entry of UAIO.* Defendants say the Court should not enter a UAIO at all. But the use of a similar process in the *Social Media* MDL[2] effectively and efficiently advanced that MDL. It would have the same effect here—while imposing minimal burden on Defendants. Implementing this process now is important because a critical first step in this MDL will be litigating Defendants' motions to compel arbitration. (Defendants' position is that arbitration is required in every one of these cases.) In motion practice outside this MDL, Defendants have relied on user account information—like login history, IP addresses, other accounts associated with the plaintiff, and information on purchase of and payment for "Robux"—to contend that these minor plaintiffs should be forced into arbitration. Defendants have argued, for example, that arbitration is required because an adult purportedly helped a minor plaintiff create an account. Much of the data Defendants cite to make these arguments is solely in Defendants' possession, *see* Ex. C, particularly because children often cannot recall the relevant account details themselves.[3] Likewise, where Defendants cite other family members' or friends' accounts, and details about those accounts, that is information Plaintiffs do not have readily available.

Allowing Defendants to withhold disclosure of this information until the filing of a motion to compel is inefficient even in a one-off case—and particularly problematic in this MDL, where the parties have agreed on a "bellwether" process for Defendants' motions to compel arbitration. For that process to be effective, the parties should have symmetrical information about the data that may arguably bear on the arbitration issue. That symmetry of information will help ensure that a proper set of bellwether cases, testing a range of factual scenarios, is selected. Without this user account information, the parties may waste time on briefing bellwether cases that result in rulings that do not resolve disputes with significance for the MDL as a whole.

*UAIO Provisions.* Plaintiffs submit that in the UAIO, the Court should order (1) that the bilateral exchange is governed by the Federal Rules of Civil Procedure; (2) that this exchange should proceed on Plaintiffs' proposed 8-week schedule; and (3) that Defendants must provide certain additional information. Defendants disagree on each point.

---

[1] Plaintiffs have provided user-identifying information for most cases and have at all times been prepared to provide the remainder once the Court enters an order governing this exchange.

[2] The *Social Media* order is attached as Ex. C to Plaintiffs' letter at ECF No. 205 in this MDL.

[3] Another problem is that Defendants may argue that a Plaintiff logging in to retrieve data itself constitutes assent to arbitration (or revocation of disaffirmance of arbitration).

April 2, 2026
Page 3

*First*, applying the Federal Rules to this exchange is necessary. Rule 26(e), for instance, requires a party to timely supplement its discovery responses if it learns that prior productions were incomplete or incorrect. Applying Rule 26(e) to all parties ensures that both the arbitration bellwether selections and the subsequent arbitration motions proceed on a complete, accurate record rather than through surprise revelation. Children, for example, often maintain multiple Roblox accounts and share those accounts with schoolmates, friends, siblings, and other relatives, so a post-complaint login or an "Agree" click on updated terms could be made by someone other than the plaintiff. Only Roblox's records—not the plaintiff or her parents—can identify such activity. Without timely supplementation, Plaintiffs would have no way to verify the accuracy of that information for bellwether selection and would be blindsided by it in motion practice. For example, in a recent case, Roblox filed a supplemental declaration at 11:16 p.m. the night before a 9:00 a.m. hearing on its arbitration motion—after the court had issued a tentative ruling against it—claiming for the first time that the 11-year-old plaintiff had logged into an account 15 times since the motion was filed *months earlier*. *See* Ex. B; Ex. H at 21:16-22:23. Only after the hearing was the plaintiff's father able to determine that the account activity—of which neither he nor the plaintiff had any prior knowledge—was not the plaintiff's, but her cousin's.

*Second*, Defendants should expeditiously produce the User Account Data Downloads. Plaintiffs' proposed 8-week schedule gives Defendants ample time to complete the process in the UAIO while allowing the bellwether process to proceed efficiently. Defendants' proposed 17-week schedule is unreasonably long. For example, it gives Defendant 45 days to simply pull system-generated records from their own servers (records that, to be clear, Plaintiffs cannot access or obtain through their own accounts).

*Third*, Defendants should provide additional, disputed information that can be collected with minimal burden and that will advance the litigation. Plaintiffs need basic preservation details—such as whether communications were preserved, the applicable date ranges, and whether any chats were discarded and when—to understand the scope of relevant data in Defendants' possession. Courts routinely require these disclosures, *see, e.g.*, *Jane Doe LS 340 v. Uber*, No. 3:23-md-03084 (Jan. 9, 2024), ECF 190, and Roblox has been ordered to do so in other cases, *see* Ex. D. Defendants should also produce basic account information for alleged perpetrators and other third parties whose accounts may contain relevant information. Plaintiffs have agreed to provide account information they have on these third parties; in return, they seek only limited non-content account identifiers from Defendants, such as associated emails, phone numbers, account-creation dates, and birth dates. This information is central to Plaintiffs' claims, solely in Defendants' possession, and necessary for Plaintiffs to preserve communications on their devices. And, contrary to Defendants' assertion, producing such non-content records does not violate the Stored Communications Act. *See In re Zynga*, 750 F.3d 1098, 1104 (9th Cir. 2014) (SCA precludes disclosure of "the contents of a communication, but permits disclosure of record information like the name, address, or client ID number of the entity's customers in certain circumstances").

***Rule 26(f) Conference and Rule 30(b)(6) Depositions.*** The Court should also order a limited Rule 26(f) conference and targeted Rule 30(b)(6) depositions. This case involves highly technical issues and large technology companies. To prosecute these claims, Plaintiffs will need communications and records in Defendants' possession, including messages, account activity, and

April 2, 2026
Page 4

interactions between perpetrators and Plaintiffs, which also may be relevant for opposing Defendants' arbitration motions and for efficiently targeting any arbitration-related discovery.

Plaintiffs have well-founded concerns that this critical information and data is not currently subject to proper preservation. For example, in early, pre-MDL cases, Roblox was required to submit court-ordered certifications affirming it had preserved information related to the plaintiffs' and perpetrators' accounts. Roblox's initial and amended certifications revealed inconsistencies on what data was preserved, what steps were taken (or not), and the company's understanding of its own retention systems. These issues show that preservation cannot be assumed and underscore the need for formal processes now.

An early, formal Rule 26(f) conference is therefore essential. It will allow Plaintiffs to understand Defendants' data systems, identify the repositories holding relevant account information, and clarify retention and deletion practices that directly affect preservation of user records. Because this information exists only within Defendants' systems, the conference must include individuals knowledgeable about Defendants' ESI sources and policies to create a record that can guide preservation and early discovery. Following the Rule 26(f) conference, but before Plaintiffs' oppositions to Defendants' arbitration motions, Plaintiffs would take one 30(b)(6) deposition each of Defendants, which would be guided by information learned in the Rule 26(f) conference and narrowly focused on Defendants' ESI sources and data systems. *See, e.g.*, *Westley v. Oclaro, Inc.*, 2013 WL 1365910, at *3, 5 (N.D. Cal. Apr. 3, 2013) (permitting a "prompt[]" ESI-focused 30(b)(6) deposition given Plaintiffs' insufficient knowledge of the "ESI landscape"); *Rodriguez v. Google LLC*, 2021 WL 8085492, at *2 (N.D. Cal. Dec. 1, 2021) (identifying Rule 30(b)(6) depositions as a tool "to identify the data sources [Plaintiffs] seek").

### Roblox and Discord's Statement

This dispute is not about information Plaintiffs need to oppose Roblox and Discord's ("Defendants") motions to compel arbitration—information Plaintiffs have. Nor is it about preservation, as Plaintiffs refuse to provide the information Defendants need to even locate their accounts. Instead, in exchange for identifying their accounts, Plaintiffs seek what amounts to a fishing expedition, i.e., (1) an in-person Rule 26(f) conference involving technical company personnel; (2) a Rule 30(b)(6) deposition on ESI issues; and extensive data about (3) Plaintiffs' accounts (to which they have access); and (4) alleged third-party perpetrator accounts. The Court should order Plaintiffs to provide account identifiers and deny their requests.

*Account identifiers.* Defendants cannot preserve Plaintiffs' accounts without identifiers, such as usernames, email addresses, or phone numbers. That's why, when many plaintiffs pre-MDL refused to provide this information, courts ordered them to do so. Thereafter, numerous Plaintiffs suing Roblox have provided account identifiers. Post-MDL, however, certain Plaintiffs' counsel have again refused to provide identifiers—to Roblox and Discord *only,* not their co-defendants. The Court should require Plaintiffs to provide this basic identifying information.

*Plaintiffs' requests.* No authority supports Plaintiffs' unusual and burdensome requests. In *In re Social Media Adolescent Addiction,* the only case they cite, the user information exchange came *after* decisions on the defendants' threshold motions to dismiss including under Section 230, 47 U.S.C. § 230. Defendants here are entitled not only to decisions under Section 230 but *also* their motions to compel arbitration. The benefits of both are otherwise lost. *Olson v. World Fin.*

(415) 981-4800          601 California Street, Suite 1400          www.girardsharp.com
San Francisco, CA 94108

April 2, 2026
Page 5

*Grp. Ins. Agency, LLC*, 2025 WL 2243646, at *1 (N.D. Cal. Aug. 6, 2025) (discovery pending arbitration motion "could undermine the potential efficiencies of arbitration"); *Onuoha v. Facebook, Inc.*, 2017 WL 11681325, at *1 (N.D. Cal. Apr. 7, 2017) (staying discovery in case involving Section 230). The Court should deny the relief sought for this and the following reasons.

Rule 26(f) conference and Rule 30(b)(6) deposition. "Discovery into another party's discovery practice" is improper absent "some indication that a party's discovery has been insufficient or deficient." *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019). Plaintiffs do not even claim Discord's preservation efforts are insufficient or deficient, so denial of relief as to Discord is proper on this basis alone. As set forth below, Plaintiffs' purported preservation concerns about Roblox are fabrications. In any event, both Discord and Roblox have offered to participate in a conference on the Court's ESI Checklist topics and to respond to Plaintiffs' ESI questions in writing. That would accomplish precisely the goals Plaintiffs seek: to allow them to understand Defendants' systems, identify the relevant data repositories, and discuss any disputes about preservation, including as to information Plaintiffs erroneously claim is solely within Defendants' possession.[4] Plaintiffs have refused both offers.

- **Roblox's further response**: Plaintiffs identify no "inconsistencies" in Roblox's preservation efforts. Their sole example shows the opposite. In the pre-MDL cases to which they refer, the court denied the plaintiffs' motion for a sweeping preservation order and ordered a process in which plaintiffs would provide account identifiers and certify they had done so, and Roblox (and Snap) would certify the accounts they could locate and preserve, and identify data no longer available due to their retention policies. *See, e.g.,* Ex. E at 11:11–13:23. There were no inconsistencies. In one case, Roblox stated that it could not preserve "certain voice chat content, which by default has an extremely short retention [period] (3 minutes to 7 days . . . .)," but had preserved the single existing voice recording. *Jane M.C. Doe v. Roblox Corp.*, No. 2:25-cv-05768-CFK (E.D. Pa. Nov. 10, 2025), ECF No. 33.

Plaintiffs' cases are irrelevant. In *Westley*, the court permitted a deposition on ESI subjects only *after* it denied a motion to dismiss, ordered discovery on the single element it found had been adequately alleged, and the parties had failed to informally agree on the extent of available data. In *Rodriguez*, the court refused to order the defendant to identify "any relevant data sources," and to negotiate an ESI preservation plan, as doing so would be "premature," even *after* motion to dismiss decisions. In *dicta,* the court pointed plaintiffs to "all discovery tools at their disposal, including Rule 30(b)(6) depositions," to identify data sources. *Rodriguez*, 2021 WL 8085492, at *2. Here, Defendants have already offered to provide such sources.

Plaintiff account information. Plaintiffs claim they need information about their own accounts to help select pilot cases for arbitration. But Plaintiffs, *like all users*, can access their own account information, including by making a request through the platforms. And it is *Plaintiffs*, not Defendants, who have information material to case selection, such as their ages, their continued use of the platforms, and the nature of the alleged attacks. Nor do Plaintiffs need this information

---

[4] Defendants are still assessing Plaintiffs' Exhibit C, which was provided to Defendants at the eleventh hour. The exhibit is incorrect as to Roblox. For example, Roblox users can obtain their IP and login history, among other categories of data, by submitting a right-to-access request. Discord, too, provides users extensive information that may include the categories Plaintiffs claim are solely in Discord's possession.

April 2, 2026
Page 6

to oppose Defendants' arbitration motions, which are accompanied by detailed declarations attaching business records. Perhaps for this reason, in every case involving the same Plaintiffs' counsel and claims, arbitration motions required no discovery. *See John Doe v. Roblox Corp.*, No. 25-CIV-01193 (Cal. Sup. Ct. Feb. 12, 2025); *Jane Doe v. Roblox Corp.*, No. 25-CIV-05901 (Cal. Sup. Ct. Aug. 5, 2025).

Despite this, Defendants have engaged in good faith efforts to reach a compromise by negotiating the terms of any UAIO. If the Court adopts some version of the UAIO, it will need to resolve three main disputes. Ex. F.

*First*, Plaintiffs insist Defendants tell them, for every single account, whether information has been discarded under Defendants' retention policies. Although Roblox and Discord are willing to confirm they have preserved relevant, available information, this further step is unnecessary and unduly burdensome, as it would apply to hundreds (if not thousands) of accounts. The *Uber* order does not require this, but rather the disclosure of employees under litigation holds. If Plaintiffs review the archives and believe something is missing, the parties can discuss.

*Second*, Plaintiffs ask the Court to require Defendants to supplement the account archives under Rule 26(e). Roblox and Discord are willing to supplement account information for cases selected for pilot arbitration motions, and to comply with Rule 26(e) as to the remaining accounts once discovery opens. Plaintiffs' insistence that Roblox and Discord supplement *all* accounts whenever they "discover new [information]" would be unduly burdensome and impractical. Ex. G. It would also do nothing to prevent Plaintiffs from being "blindsided." In Plaintiffs' example, Roblox learned less than 24 hours before its reply brief deadline that the plaintiff's account showed new activity, relevant to purported disaffirmance. Roblox promptly filed a supplemental declaration attaching updated records. Ex. H. Plaintiff could have (but did not) ask to postpone the hearing or submit supplemental briefing—a request to which Roblox would have agreed.

*Third,* Plaintiffs ask the Court to order the UAIO process to happen within *eight weeks*. Under Plaintiffs' proposal, Defendants would have just two weeks to provide basic subscriber information ("BSI"), 18 U.S.C. § 2703(c), for each of hundreds of accounts. That is impossible because Plaintiffs routinely (and inadvertently) fail to provide the correct identifiers, which has happened for about 30 percent of identifiers sent to Discord. In those instances, Defendants must follow up with Plaintiffs, a process that can take days or weeks. Plaintiffs' schedule would also require Defendants to provide archives of hundreds of accounts within two weeks. That, too, is unworkable. The proposed process would require engineering work to build custom systems to produce Plaintiffs' requested outputs and extensive manual work to inspect the data prior to production. Furthermore, it is subject to the realities of Defendants' systems (including run-time limitations). Defendants are best positioned to estimate the length of this process and have determined in good faith that it will require at least 17 weeks. Cutting the schedule by more than a half is not workable.

Third-party account information. The parties have been discussing information Defendants might be able to provide concerning third-party accounts. Plaintiffs have insisted that Defendants provide BSI associated with usernames that, at least in some instances, are provided from a child's memory. But they refuse to agree that Defendants need not provide BSI for accounts that appear likely to be inaccurate. Defendants cannot agree to provide information for accounts that do not actually belong to the third-party perpetrators and thus have nothing to do with this lawsuit. Defendants are willing to continue discussions with Plaintiffs.

April 2, 2026
Page 7

Respectfully submitted,

Sarah R. London

ALEXANDRA M. WALSH
D. PATRICK HUYETT
PAIGE BOLDT
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Ste. 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
awalsh@anapolweiss.com
phuyett@anapolweiss.com
pboldt@anapolweiss.com

SARAH R. LONDON
ANDREW R. KAUFMAN
ISABEL VELEZ
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com
akaufman@girardsharp.com

BRYAN F. AYLSTOCK
HILLARY NAPPI
JENNIFER HOEKSTRA
**AYLSTOCK WITKIN KREIS
OVERHOLTZ, PLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
HNappi@awk-saa.com
JHoekstra@awkolaw.com

*Co-Lead Counsel for Plaintiffs*

April 2, 2026
Page 8


*/s/ Tiana Demas*
Tiana Demas (*pro hac vice*)

TIANA DEMAS (*pro hac vice*)
**COOLEY LLP**
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
tdemas@cooley.com

MAX A. BERNSTEIN
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 293-2000
mbernstein@cooley.com

*Attorneys for Defendant Roblox Corporation*


*/s/ Ambika Kumar*
Ambika Kumar (*pro hac vice*)

AMBIKA KUMAR (pro hac vice)
XIANG LI
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3100
ambikakumar@dwt.com
xiangli@dwt.com

ADAM S. SIEFF
**DAVIS WRIGHT TREMAINE LLP**
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
adamsieff@dwt.com

SARAH E. BURNS
SAM F. CATE-GUMPERT
**DAVIS WRIGHT TREMAINE LLP**
50 California Street, Suite 2300

April 2, 2026
Page 9

San Francisco, California 94111
Telephone: (415) 276-6500
sarahburns@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Discord Inc.*