# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL No. 3166 |
| | Case No. 3:25-md-03166-RS |
| This document relates to: | **JOINT CASE MANAGEMENT STATEMENT** |
| ALL ACTIONS | Judge Richard Seeborg |

The parties to these actions submit this Joint Case Management Statement in connection with the Case Management Conference scheduled for June 24, 2026, at 9:30 a.m. PST.

## I.      STATUS OF CASE FILINGS

### A.  Number of MDL Case Filings

As of June 17, 2026, there are 148 cases pending in this MDL, with 21 cases filed since the last Case Management Conference on April 22, 2026. The chart below details the number of cases in the MDL involving each Defendant.

| Defendant | Number of Cases Involving Defendant |
|---|---|
| Roblox | 148 |
| Discord | 58 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| Snap | 29 |
|------|----|
| Meta | 6 |
| Uber | 1 |

### B. Status of JCCP

Approximately 21 cases are pending in the JCCP. On April 17, 2026, Judge Michael Mau of the Superior Court of San Mateo County granted the Petition on Coordination and recommended the Los Angeles County Superior Court for the coordination proceeding. All proceedings in the JCCP are stayed pending the coordination proceeding.

### C. Other Cases and Proceedings

Defendants have provided a current list of civil actions arising from allegations of child sexual assault, abuse, and exploitation on their platforms in which they are named as a defendant, attached as Exhibit A.

### II.    PRETRIAL ORDERS

The following pretrial orders are in place:

- Direct Filing Order (Dkt. 161);

- Order Regarding Plaintiffs and Guardians *Ad Litem* Who Wish to Proceed Anonymously (Dkt. 163);

- Order Referring Discovery Disputes to Magistrate Judge Ajay S. Krishnan (Dkt. 189);

- Order Regarding Motion to Dismiss Briefing (Dkt. 212);

- Order Regarding Motion to Compel Arbitration and Motion to Dismiss Briefing Schedules (Dkt. 269);

- Amended Order Regarding Appointments of Guardians Ad Litem (Dkt. 273);

- Roblox and Discord User Account Information Order (Dkt. 290);

- Meta and Snap User Account Information Order (Dkt. 303);

- Order Regarding Schedule and Word Limits for Motions to Compel Arbitration (Dkt. 342); and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

- Order Regarding Revised Schedule for Motions to Compel Arbitration (Dkt. 346).

The parties are meeting and conferring about other proposed orders, such as an ESI Protocol, CSAM Orders a Protective Order, a Privilege Log Protocol, a Fed. R. Evid. 502(d) Clawback Order, and a Discovery Dispute Resolution Protocol.

Plaintiffs also request that the Court enter the Proposed Common Benefit Order and associated Proposed Order for Motion to Show Cause, attached as Exhibit B. Defendants do not object to their entry.

## III.    CSAM ORDERS

### *Plaintiffs' Position*

As Plaintiffs have advised the Court since inception of this MDL, this litigation presents an urgent preservation issue involving CSAM-commingled evidence. Given the nature of the allegations, Defendants will inevitably identify CSAM commingled with relevant evidence on their platforms, while many Plaintiffs will possess devices, accounts, or other ESI containing relevant platform activity and communications commingled with CSAM created, received, or transmitted during their exploitation. The parties have discussed CSAM protocols for months, exchanged multiple drafts, and remain at impasse. Plaintiffs seek confirmation that they should proceed to present this issue to this Court in the first instance, and ask to order expedited briefing and set an argument schedule promptly. The issue is now ripe, and delay has serious consequences. Defendants' operative policies and procedures risk destruction of CSAM-related evidence critical to Plaintiffs' burden of proof. Pending Plaintiffs may learn at any time that relevant evidence contains CSAM, and prospective Plaintiffs face the same issue before filing. Plaintiffs—many of whom allege they were sexually exploited or assaulted as children—should not be forced to choose among preserving their civil claims, complying with federal criminal law, and facilitating investigation of their abuse. The federal CSAM statutes were designed to protect these children, not to obstruct their access to civil justice.

Early in discussions, Plaintiffs proposed a CSAM special master to address these complex

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

and important issues.[1] Defendants flatly refused. Pressed on Court involvement, Defendants now invoke the possibility of a future specialist as a reason to delay any order. Even if a specialist is later appointed, interim guidance is needed now.

In their statement, Defendants accuse Plaintiffs of failing to preserve evidence, and shockingly reserve spoliation arguments against minor Plaintiffs who have done nothing more than provide CSAM-containing evidence to law enforcement in the hope that the perpetrators may be caught and stopped from causing further harm. Plaintiffs briefly respond.

**1.    Defendants' CSAM Preservation and Reporting Obligations.** This is an urgent, ripe issue. Defendants publicly state that they **proactively remove** CSAM from their platform. Delay risks loss of evidence now. Plaintiffs' proposed order is directed to that risk, which is unique to civil litigation and non-speculative. It would apply to CSAM "identified by a Defendant," not merely CSAM already "reported to NCMEC." Defendants' formulation is circular and leaves a preservation gap between identification and reporting—a concern that mere statutory compliance does not address. Plaintiffs also seek preservation and reporting of reasonably available contextual information, including linked-account information Defendants maintain through ordinary internal account-linking methods.[2] That evidence is central to notice and causation where a predator used a new linked account to groom and exploit a Plaintiff after a prior account was reported, suspended, or banned. Defendants were unable to confirm during meet-and-confers that such evidence is preserved.

Whatever further process may be needed for Plaintiffs' CSAM-containing evidence, the Defendants-side order can be addressed now. Defendants are electronic communication service providers with a statutory pathway for reporting CSAM to NCMEC and preserving related evidence. *See* 18 U.S.C. §§ 2258A, 2258B. Both sides' proposed Defendants-side orders concern Defendants' own CyberTipline reports, preservation of related metadata and account information,

---

[1] Plaintiffs raised this issue in several discussions with Defendants since February, not for the first time in June as they represent below.

[2] Defendants mischaracterize the proposal to include sweeping preservation and reporting of all IP addresses. Plaintiffs are not privy to all the ways Defendants link accounts for their business purposes—that information to date has not been disclosed. The proposed order merely requires a single NCMEC report at the time the CSAM is identified, with identification of accounts Defendants are readily able to link to the perpetrator's account through ordinary methods.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

and limited notice when CSAM associated with a Plaintiff is reported. Neither depends on any future special master.

**2.      Plaintiffs' CSAM-Containing Evidence.** Plaintiffs' evidence presents a different problem because Plaintiffs, their counsel, and ordinary litigation vendors do not have Defendants' statutory reporting-and-preservation framework. Federal law criminalizes knowing receipt, possession, access with intent to view, and distribution of CSAM. *See* 18 U.S.C. § 2252A. Federal law provides a controlled-custody framework in criminal proceedings, *see* 18 U.S.C. § 3509(m), but no comprehensive procedure for handling CSAM-commingled evidence in civil discovery. A handful of federal courts have fashioned case-specific civil procedures, generally involving law-enforcement custody and controlled review, but no court has addressed a problem of this scale.

Plaintiffs proposed narrow interim order applies only to evidence as to which counsel or their agents possess specific information that the source contains CSAM—where knowingly possessing, viewing, transferring, or receiving the devices is a federal crime, punishable by up to twenty-years' imprisonment. *See* 18 U.S.C. § 2252A(b)(1).[3] In that circumstance, the evidence would be preserved intact, not imaged or reviewed, and transferred to a law-enforcement agency authorized and willing to accept custody. The transfer would be documented, law enforcement would receive a preservation request, and Defendants would receive timely notice. Plaintiffs' order also addresses Defendants' comment concerning evidence already transferred to or seized by law enforcement.

Defendants propose the opposite approach: immediate collection of all potentially relevant devices including those specifically believed to contain CSAM, delivery to unspecified private vendors, imaging and inspection for CSAM, segregation and retention of identified CSAM, and transmission of non-CSAM ESI for further hosting and review. That approach is both unlawful as applied to devices known to contain CSAM and unreasonable as applied to ordinary devices at this stage of the MDL. Defendants concede for the first time in this CMC Statement that known CSAM

---

[3] Unlike Plaintiffs, the Defendants receive express statutory protection against civil claims and criminal charges arising from their CSAM reporting and preservation responsibilities under 18 U.S.C. §§ 2258A–2258C. *See* 18 U.S.C. § 2258B(a)–(b). No comparable general civil-discovery safe harbor protects ordinary litigants, their counsel, or litigation vendors who knowingly handle CSAM-commingled evidence.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

should not be provided to a vendor, and propose an exception for devices for which Plaintiffs are aware of a "specific instance" of CSAM. That exception does not solve the problem; it is the problem. Plaintiffs' order is aimed at devices known or reasonably believed to contain CSAM before anyone images, copies, or reviews them. For devices not known to contain CSAM, ordinary preservation measures are sufficient and need not be addressed through a CSAM order.

Defendants' reliance on the Social Media Addiction JCCP protocol does not answer that issue. That protocol arose in bellwether discovery and addressed *incidental* discovery of CSAM during vendor review. And in the related Social Media Addiction MDL, Magistrate Judge Kang denied compelled imaging of non-bellwether plaintiffs' devices. Plaintiffs do not oppose an appropriate incidental-discovery protocol at the bellwether stage for devices or sources *not* specifically known to contain CSAM. But that is not the question here. This MDL involves claims of grooming, sexual exploitation, and abuse where, in many cases, CSAM may be *known in advance* to likely exist on a device. A protocol for incidental discovery does not authorize private parties to image and inspect a device already believed to contain contraband.

Defendants' statutory arguments do not cure the risk. Section 2258E does not make every ESI vendor a protected "provider," and Defendants have not shown that an ordinary litigation vendor retained to image Plaintiffs' devices would receive a general safe harbor for collecting, copying, reviewing, and retaining CSAM-commingled evidence in civil discovery, much less that Plaintiffs and their counsel would similarly be protected for knowingly possessing and distributing such evidence to the vendor. Nor do the "incidental discovery" defenses in 18 U.S.C. §§ 2252(c) or 2252A(d) protect the wholesale collection, receipt, imaging, review, or transfer Defendants propose.

Plaintiffs want this evidence preserved too. Plaintiffs' position is that Rule 37(e) requires reasonable preservation steps, not perfection, and that reasonable steps cannot require Plaintiffs, counsel, or vendors to risk violating federal criminal law. Plaintiffs are amenable to a special master or a centralized law-enforcement repository, including a federal law-enforcement agency such as the FBI's San Francisco Field Office, if the Court concludes that a centralized process is preferable

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

and workable.[4]  Until then, Plaintiffs need an interim order making clear that preserving CSAM-containing evidence intact and transferring it to authorized law enforcement with documentation, notice, and a preservation request is not spoliation.

Plaintiffs respectfully request that the Court set an expedited briefing and argument schedule so that lawful interim protocols can be entered without further delay.

### *Defendants' Position*

This dispute is neither ripe nor before the right judge. As this Court has made clear—and as Plaintiffs continue to disregard—disputes concerning discovery should be decided by Magistrate Judge Krishnan. (Dkt. 189.) They also should not be presented before the parties have reached an impasse. Defendants are evaluating the propriety of a CSAM specialist to assist with these issues.

*Prior negotiations.* The parties have spent substantial time meeting and conferring to reach resolution on an order governing preservation of CSAM-related information. In fact, the parties had reached agreement as of April 16, 2026, on an order governing Defendants' preservation obligations. Then Plaintiffs unilaterally withdrew their agreement and instead proposed a series of orders that seek to: (1) impose obligations on Defendants that exceed the requirements of federal law by requiring Defendants to, among other things, report a deluge of irrelevant information to NCMEC; and (2) condone Plaintiffs' current practice of failing to preserve highly relevant, non-CSAM evidence.

*Defendants' preservation obligations.* Defendants have existing preservation obligations under the reporting statute. 18 U.S.C. § 2258A(h). Defendants also have and comply with a statutory obligation to report all identified apparent CSAM to NCMEC. 18 U.S.C. §§ 2258A(a)(1), (e). Plaintiffs provide no basis to believe that Defendants do not satisfy those obligations with respect to all apparent CSAM they identify. To the contrary, each Defendant has stated and represents that they send identified apparent CSAM images and videos to NCMEC. That they also *remove* that content from their platforms does not mean it is lost. Instead, it resides with NCMEC,

---

[4] Contrary to Defendant's position below, this special master would assist the parties in ensuring that relevant evidence is provided to law enforcement, preserved by law enforcement, and ultimately assist the parties in obtaining relevant evidence (minus any CSAM), from law enforcement, not to hear and decide "CSAM disputes".  And this concept was not "first" proposed on June 9, but was proposed months ago and flatly rejected by the Defendants.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

the very entity responsible for receiving it.

Plaintiffs likewise seek to require Defendants to report to NCMEC a host of enumerated identifiers that far exceed the categories of information that may be reported under § 2258A(b), which controls Defendants' reporting obligations and vests "sole discretion" as to the information that is included in reports. For example, Plaintiffs request that Defendants be required to report to NCMEC "any accounts linked to the user's account by," among other independent identifiers, "IP address." But, as an example of why this request is unworkable, virtually every user is likely to have accessed guest or public Wi-Fi IP addresses, and so this request would result in voluminous, irrelevant data reporting to NCMEC for purportedly "linked" accounts that have nothing to do with CSAM or these plaintiffs. In an MDL of this scale—with 148 pending cases and hundreds of plaintiffs—the volume of spurious reports to NCMEC under Plaintiffs' proposal would be staggering, overwhelming NCMEC's resources and serving no legitimate evidentiary purpose. Defendants, on the other hand, modeled their proposal—to which Plaintiffs initially agreed—on the order entered in *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 22-MD-3047 (Dkts. 463-1, 475). Plaintiffs mischaracterize the nature of that order, which is equally appropriate here.

***Plaintiffs' preservation obligations.*** Plaintiffs are not in the double bind they suggest. There is an option that both preserves key, non-CSAM evidence and complies with federal law: retention of a court-approved vendor. Rather than make a meaningful effort to engage such a vendor, Plaintiffs have been sending computers, cell phones, and other digital and physical evidence to disparate law-enforcement entities on an ad-hoc basis, a process that virtually guarantees spoliation of that evidence—including highly relevant non-CSAM evidence. While Plaintiffs propose asking law enforcement to sign an "Acknowledgement" "request[ing]" that law enforcement preserve the evidence, this Court cannot restrict, or practicably oversee, various law-enforcement agencies' retention of digital and forensic evidence. Nor does Plaintiffs' proposal require law enforcement to isolate the non-CSAM data and return it to Plaintiffs so they could ever preserve or produce it. Plaintiffs, in short, seek to have the Court bless the release of key evidence to third-party law enforcement with no plan for its preservation or retrieval. Indeed, Defendants

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

understand that certain Plaintiffs have already sent evidence to law enforcement, without even requiring the law enforcement "Acknowledgement" they now propose. Defendants reserve all rights with respect to the spoliation of any such evidence.

The more straightforward approach is for Plaintiffs to contract a third-party vendor to forensically image plaintiffs' devices (making digital copies of the contents), and sequester and report any CSAM to NCMEC, as required by law. Unless and until Plaintiffs are aware of specific instances of CSAM on the devices, rather than a general risk that the devices may contain CSAM, this approach will comply with federal law. This is the same protocol to which Plaintiffs' counsel agreed in the Social Media Addiction State JCCP and MDL. Contrary to Plaintiffs' position, an ESI vendor can be a "provider" under § 2258E(6) and therefore enjoy statutory protections. *Supra* n.3. An ESI vendor can also "take reasonable steps to destroy each such" instances of CSAM, without losing the whole of the digital image, and/or "report the matter to a law enforcement agency and afford[ ] that agency access," further ensuring the legality of its operation. 18 U.S.C. § 2252(c).

Finally, at a meet and confer on June 9, 2026, Plaintiffs raised the concept of a third-party specialist to oversee and hear disputes about CSAM.[5] Defendants have not agreed to this proposal but have taken it under consideration, including by vetting potential candidates. Because no agreement exists on a potential specialist's scope, authority, or candidates, and because the parties continue to negotiate the underlying CSAM protocols, any dispute about CSAM-related issues is not yet ripe for court intervention.

## IV.    ADR UPDATE

The Court has indicated its intention to appoint Thomas J. Perelli as Settlement Master. (Dkt. 301.) No party has submitted an objection to this appointment. The parties have separately met with Settlement Master Thomas J. Perelli and intend to cooperate with his recommendations once an Order appointing the Special Master is entered.

---

[5] Plaintiffs' contention that Defendants "flatly refused" to discuss the "concept" of a CSAM specialist "months ago" is puzzling. In April, the parties discussed identifying an ESI vendor who could manage the issue, similar to the Social Media Addiction Cases (a process to which Plaintiffs originally agreed). Plaintiffs also stated that they were attempting to locate a single law-enforcement agency that could take possession of the devices. In that context, there was no need for any specific neutral party to address CSAM issues. But Defendants never refused to consider a CSAM specialist.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

## V. ANTICIPATED MOTIONS

As updated by the Orders revising the Motion to Compel briefing schedule, the parties will serve their selections for the Motion to Compel bellwether June 30, 2026. (Dkts. 342, 346.) Plaintiffs may amend selected bellwether complaints by July 28, 2026. (Dkt. 346.) The parties will then brief Motions to Compel, which will be fully briefed by the end of November. *Id.*

## VI. INFORMATION EXCHANGE

### A. Status of User Account Information Exchange

Pursuant to the Orders regarding User Account Information (Dkts. 290, 303), parties are in the process of exchanging user account information. Under the User Account Information Order entered as to Plaintiffs, Roblox, and Discord (Dkt. 290), the parties will complete the required exchange of information for the Motion to Compel pursuant to the User Account Information Order and the Order re: Revised Schedule for Motions to Compel Arbitration. (Dkt. 346.)

### B. Status of Conferences Regarding ESI and Preservation

The parties have begun meeting and conferring regarding ESI and preservation. Plaintiffs and Roblox have held two conferences and expect to continue those discussions. Plaintiffs and Discord will hold an initial conference soon. Plaintiffs are also conferring with Meta and Snap regarding whether Plaintiffs may have access to relevant Rule 30(b)(6) transcripts from the Social Media Addiction MDL, which may obviate the need for an initial ESI and preservation conference. If disputes remain after these conferences, Plaintiffs intend to promptly submit a letter brief to Judge Krishnan.

### C. Update on Plaintiffs' Request for Initial Discovery

The parties briefed and argued Plaintiffs' request for Defendants to reproduce documents previously produced in connection with government investigations, litigation, and congressional requests before Judge Krishnan. The Court denied Plaintiffs' request without prejudice (Dkt. 335), but indicated it might consider a narrower request from Plaintiffs at a later stage in the case following meet and confer efforts between the parties (5/13/2026 Tr. 5:12-16, 10:24-12:3, 46:1-21).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

## VII.    NEXT CASE MANAGEMENT CONFERENCE

The parties respectfully request that the Court set the next Case Management Conference approximately 60 days from the June 24, 2026 Case Management Conference.

In addition, the parties intend to meet and confer regarding a stipulation to govern future Case Management Statements. Defendants have proposed the following to Plaintiffs in an effort to streamline the process and conserve resources.

1.  The first page of the statement shall contain a proposed agenda for the conference.

2.  The second page shall contain an update on the JCCP, No. 5440.

3.  The parties may have no more than 10 additional pages (5 per side) to address issues and raise topics to be discussed at the conference. A brief statement of position (i.e., a few sentences) will typically suffice for each issue.

4.  The statement shall contain an exhibit listing publicly-filed related cases, for each defendant, until the Court orders otherwise. This exhibit will not count against the page limit.

5.  At least 1 week before filing the statement, the parties shall exchange a list of issues and topics to be discussed during the conference.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

Dated:   June 17, 2026

Respectfully submitted,

*/s/ Tiana Demas*
Tiana Demas

TIANA DEMAS (*pro hac vice*)
**COOLEY LLP**
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
tdemas@cooley.com

SIMONA A. AGNOLUCCI
MAX A. BERNSTEIN
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 293-2000
sagnolucci@cooley.com
mbernstein@cooley.com

*Attorneys for Defendant Roblox Corporation*

*/s/ Ambika Kumar*
Ambika Kumar

AMBIKA KUMAR (*pro hac vice*)
XIANG LI
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3100
ambikakumar@dwt.com
xiangli@dwt.com

ADAM S. SIEFF
**DAVIS WRIGHT TREMAINE LLP**
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
adamsieff@dwt.com

SARAH E. BURNS
SAM F. CATE-GUMPERT
**DAVIS WRIGHT TREMAINE LLP**
50 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 276-6500
sarahburns@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Discord Inc.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

*/s/ Leah Godesky*
Leah Godesky

LEAH GODESKY
HEATHER WELLES
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 246-8501
lgodesky@omm.com
hwelles@omm.com

*Attorneys for Defendant Snap Inc.*

*/s/ Megan Rodgers*
Megan Rodgers

MEGAN RODGERS
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: (650) 632-2112
mrodgers@cov.com

ASHLEY SIMONSEN
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067
Telephone: (424) 332-4800
asimonsen@cov.com

ISAAC CHAPUT
**COVINGTON & BURLING LLP**
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7053
ichaput@cov.com

*Attorneys for Meta Platforms, Inc.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS

*/s/ Sarah R. London*
Sarah R. London

SARAH R. LONDON
ANDREW R. KAUFMAN
ISABEL VELEZ
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com
akaufman@girardsharp.com

ALEXANDRA M. WALSH
D. PATRICK HUYETT
PAIGE BOLDT
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Ste. 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
awalsh@anapolweiss.com
phuyett@anapolweiss.com
pboldt@anapolweiss.com

BRYAN F. AYLSTOCK
HILLARY NAPPI
JENNIFER HOEKSTRA
**AYLSTOCK WITKIN KREIS
OVERHOLTZ, PLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
HNappi@awk-saa.com
JHoekstra@awkolaw.com

*Co-Lead Counsel for Plaintiffs*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

**JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS**

**ATTESTATION**

I, Tiana Demas, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.


Dated:  June 17, 2026

*/s/ Tiana Demas*
Tiana Demas (*pro hac vice*)

Attorneys for Defendant
ROBLOX CORPORATION

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

JOINT CASE
MANAGEMENT STATEMENT
3:25-MD-03166-RS