*Submitting counsel listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL No. 3166 |
| | Case No. 3:25-md-03166-RS |
| This document relates to: | **AMENDED COMPLAINT** |
| T.T., individually and as the parent and next friend of Minor Plaintiff D.H.. | Judge Richard Seeborg |
| Plaintiffs, | |
| v. | |
| ROBLOX CORPORATION, | |
| Defendant. | |
| Case No. 3:25-cv-10812 | |

3533390.1

Plaintiff T.T., individually and as the parent and next friend of Minor Plaintiff D.H. (collectively, "Plaintiffs"), brings this action against Roblox Corporation ("Roblox" or "Defendant") to recover damages arising from the severe injuries Plaintiffs suffered because of Defendant's conduct in creating, designing, marketing, and distributing a mobile- and web-based application ("app"), and alleges as follows:

## I.    INCORPORATION OF COMMON PLEADING

1.    Plaintiffs incorporate every allegation in the Arbitration Bellwether Common Pleading that relates to any Defendant named in this Amended Complaint.

## II.    PARTIES

### A.    Plaintiffs

2.    Plaintiffs D.H., a minor, and T.T., D.H.'s mother, are citizens and residents of the State of Iowa.

3.    Plaintiff D.H. has suffered profound and enduring harm. This includes significant physical trauma and pain, mental suffering, emotional distress, psychological trauma, severe anxiety, and depression. Minor Plaintiff's experiences have led to a loss of trust, safety, personal security, self-esteem, and positive self-image, depriving her of the opportunity for normal and healthy development. The injuries she sustained are severe, ongoing, and permanent, affecting her daily life and emotional health in lasting and immeasurable ways.

4.    Plaintiff T.T., in her individual capacity, has suffered and will continue to suffer damages arising from loss of consortium and loss of society, affection, and assistance, all to the detriment of the parent-child relationship.

5.    Minor Plaintiff never entered any contract with Defendant. To the extent Defendant claims that Minor Plaintiff attempted to accept an electronic terms and conditions clause by clicking buttons on a screen that included language that Minor Plaintiff did not read or understand, such an assertion is legally erroneous, invalid, and unenforceable, including because: Minor Plaintiff disaffirms any contract that she may have entered as a minor, including any forced arbitration

1

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

agreement and any delegation clause in any contract; Minor Plaintiff lacked the capacity to enter any contract, including any forced arbitration agreement and any delegation clause in any contract; any contract that Minor Plaintiff purportedly entered after this lawsuit was filed is invalid and unenforceable; and any arbitration agreement is invalid and unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, Pub. L. No. 117–90, codified at 9 U.S.C. §§ 401-402.

**B.    Defendant**

6.    Defendant Roblox Corporation is a Nevada corporation with its principal place of business in San Mateo, California. Roblox owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Roblox app. Roblox is widely available to consumers throughout the United States.

**III.    JURISDICTION AND VENUE**

7.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

8.    This Court has personal jurisdiction over Defendant because it maintains its principal place of business in California and this lawsuit arises from and relates to Defendant's contacts with California.

9.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**IV.    PLAINTIFF-SPECIFIC ALLEGATIONS**

10.    D.H., who is now 14 years old, first downloaded and started playing Roblox in 2020 when she was approximately 8 years old. D.H.'s mother, T.T., allowed D.H. to use the app only because she trusted Defendant's representations that the app was safe for children to use. D.H.'s family learned the truth only after it was too late. In 2025, when D.H. was 13 years old, Defendant

2

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

enabled a child predator to identify, groom, and manipulate D.H. after being introduced to and gaining access to D.H. on Roblox, a game designed for children. The 37-year-old man used the children's app to learn about and manipulate D.H., finding out other personal information such as her Snapchat and Instagram usernames, and then inviting D.H. to speak and exchange photographs using Snapchat as well. When the perpetrator was introduced to D.H. by Roblox, he was using a children's profile and he knew that D.H. was a minor. D.H.'s avatar at the time, pictured below, plainly resembled a young girl:



11.    Once granted unfettered access to D.H., the perpetrator began grooming and exploiting

3

3533390.1

her, including by purchasing her gifts. Over the course of approximately four months, the grooming and exploitation escalated to include engaging in romantically themed roleplaying, as well as the perpetrator requesting and sending inappropriate photographs and videos to D.H.

12.    After only a few short months of grooming and communication, the perpetrator convinced D.H. to meet him in person. The perpetrator drove 13 hours from his home in Tennessee to West Des Moines, Iowa. On May 24, 2025, the perpetrator abducted D.H. from her grandmother's home in West Des Moines. Over the next three days, the perpetrator trafficked D.H. from Iowa back to his home in Jefferson County, Tennessee, where he repeatedly and violently sexually abused and raped her over a three-day period. D.H's mother, T.T., promptly notified the police upon learning that her daughter was missing. D.H. had never run away from home. The West Des Moines police worked tirelessly to investigate D.H.'s whereabouts and notified the Jefferson County Sheriff's Department that they believed D.H. had been kidnapped and brought there. On May 26, 2025, D.H. escaped the perpetrator's home and appeared at the doorstop of a nearby home to report that she had been kidnapped. The residents of that home called the police, who responded and confirmed that D.H. was indeed the missing 13-year-old girl from Iowa.

13.    Plaintiff D.H. has suffered unimaginable harm. Her innocence has been snatched from her forever and her life will never be the same. As a direct and proximate cause of Defendant's wrongful and tortious conduct, and the resulting sexual, physical and psychological abuse, Plaintiff D.H. has suffered and continues to suffer serious injuries and damages, including but not limited to physical trauma and pain, mental suffering, emotional distress, psychological trauma, severe anxiety, depression, and other irreparable harm. Plaintiff D.H. has also endured humiliation, shame, fear, and a profound loss of trust, safety, and innocence. These injuries are severe, permanent, and continuing, leaving Plaintiff D.H. with lifelong consequences and ongoing emotional and psychological suffering. Since being horrifically trafficked and abused, Plaintiff D.H. has never signed on and played Roblox again, further reflecting the lasting trauma, fear, and loss of enjoyment caused by Defendant's conduct. Plaintiff D.H. has sustained and will continue to sustain economic damages as well, including

4

3533390.1

but not limited to past and future medical expenses, lost education, and loss of income and/or lost earning capacity.

14.    As Plaintiff D.H.'s mother, Plaintiff T.T. has also suffered significant harm. Plaintiff D.H.'s ongoing emotional and psychological suffering have been affecting and will continue to affect her interactions with Plaintiff T.T., and the treatment required for Plaintiff D.H.'s harms will limit the amount and quality of time she can spend with her mother. As a result, Plaintiff T.T has suffered damages arising from loss of consortium and loss of society, affection, and assistance, all to the detriment of the parent-child relationship, and will continue to suffer these damages as the effects of Plaintiff D.H.'s traumas continue into the future.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FRAUDULENT CONCEALMENT AND MISREPRESENTATION

### (By Minor Plaintiff D.H.)

15.    As set forth in more detail above and in the Arbitration Bellwether Common Pleading, Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users—including in light of the reports by news organizations, child safety organizations, law enforcement, independent researchers, and Defendant's own employees regarding the known and documented presence of child predators on Defendant's app.

16.    Defendant was under a duty to tell the public the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users. Instead of disclosing the truth, Defendant engaged in a widespread public campaign to tout the safety of its app in the media, and in the materials provided to potential users of the app, as described above and in the Arbitration Bellwether Common Pleading.

17.    Defendant made numerous false representations about the safety of its app, as described above and in the Arbitration Bellwether Common Pleading, which were specific and widespread. Plaintiff's mother and the public at large relied on Defendant's false representations in

5

3533390.1

deciding to allow children to play on the app.

18. Defendant was under a duty to tell the public, users, and their parents the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users because Defendant possessed superior knowledge about the dangers of its app through internal reviews, external studies known to Defendant, and parent and police reports made to Defendant.

19. Defendant breached its duty to the public, users, and their parents by concealing and failing to disclose the serious safety risks presented by its app. Even though Defendant knew of those risks based on its internal reviews, external studies known to Defendant, and parent and police reports made to Defendant, Defendant intentionally concealed those risks to not lose users and revenue or reduce engagement on the app, and to induce parents to allow their children to use its app. Such risks were known only to Defendant, and the public, users, and their parents, including Minor Plaintiff's mother, could not have discovered such serious safety risks.

20. The public, users, and their parents, including Minor Plaintiff's mother, did not know of the serious safety risks posed by the design of Defendant's app, which were known by Defendant.

21. By intentionally concealing and failing to disclose defects inherent in the design of its app, Defendant knowingly and recklessly misled the public, users, and their parents, including Minor Plaintiff's mother, into believing that its app was safe for children to use.

22. Defendant knew that its concealment, omissions, and misrepresentations were material. A reasonable person, including Minor Plaintiff's mother, would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of Defendant's app, to be important when deciding whether to allow children to use it.

23. Defendant intended to deceive the public, users, and their parents, including Minor Plaintiff's mother, by making misrepresentations and concealing the defects in the design of its app, which made the app unsafe.

24. As a direct and proximate result of Defendant's concealment of material information and misrepresentations, Minor Plaintiff's mother was not aware and could not have been aware of the

6

3533390.1

facts that Defendant concealed, and therefore justifiably and reasonably believed that Defendant's app was safe for children to use.

25. If the serious safety risks presented by the design of Defendant's app had been disclosed, the public, users, and their parents, including Minor Plaintiff's mother, reasonably would have acted differently and/or would have not permitted children to use the app.

26. As a direct and proximate result of Defendant's concealment of material information and misrepresentations, Plaintiff sustained serious injuries and harm.

27. Defendant's concealment of material information and misrepresentations was a substantial factor in causing harm to Minor Plaintiff.

28. Defendant's conduct, as described above and in the Arbitration Bellwether Common Pleading, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

29. Minor Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### SECOND CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (By Minor Plaintiff D.H.)

30. As set forth in more detail above and in the Arbitration Bellwether Common Pleading, Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users—including in light of the reports by news organizations, child safety organizations, law enforcement, independent researchers, and Defendant's own employees regarding the known and documented presence of child predators on Defendant's app. Instead of disclosing the truth, Defendant

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

engaged in a widespread public campaign to tout the safety of its platform in the media, and in the materials provided to potential users of the app, as described above and in the Arbitration Bellwether Common Pleading.

31.    Defendant made numerous false representations about the safety of its app, as described above and in the Arbitration Bellwether Common Pleading, which were specific and widespread. Minor Plaintiff's mother and the public at large relied on Defendant's false representations in deciding to allow children to play on the app.

32.    By making numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and their parents, including Minor Plaintiff's mother, that its app was safe, Defendant negligently misled the public, users, and their parents, including Plaintiff's mother, into believing its app was safe for children to use.

33.    Defendant had no reasonable grounds for believing that its misrepresentations that its app was safe for children to use were true.

34.    As a direct and proximate result of Defendant's material omissions, misrepresentations, and concealment of material information, Minor Plaintiff's mother was not aware and could not have been aware of the facts that Defendant misstated, and therefore justifiably and reasonably believed that Defendant's app was safe for use.

35.    As a direct and proximate result of Defendant's material omissions and misrepresentations, Minor Plaintiff sustained serious injuries and harm.

36.    Minor Plaintiff's mother's reliance on Defendant's misrepresentations about the safety of its app were substantial factors in causing harm to Minor Plaintiff.

37.    Defendant's conduct, as described above and in the Arbitration Bellwether Common Pleading, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish it and deter others from like conduct.

8

3533390.1

38. Minor Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

### (By Minor Plaintiff D.H.)

39. At all relevant times, Defendant designed, developed, set up, managed, maintained, supervised, controlled, operated, labeled, marketed, advertised, promoted, sold, supplied, distributed and benefited from its app used by Minor Plaintiff.

40. Defendant owed Minor Plaintiff a duty: to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the use of its app (including an unreasonable risk of grooming, sexual abuse, and sexual exploitation, and other associated physical or mental injuries); to protect Minor Plaintiff from unreasonable risk of injury from and in the use of its app; and not to invite, encourage, or facilitate youth, such as Minor Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its app. These duties govern Defendant's own specific actions and are based on direct actions Defendant took in developing its app and features.

41. Defendant owed a duty to all reasonably foreseeable users to design a safe app.

42. Further, because Defendant's conduct created the risk that child users of its app would be subject to grooming, sexual abuse, and sexual exploitation, Defendant owed a duty to all reasonably foreseeable users, including but not limited to minor users and their parents, to provide adequate warnings about the risks of using Defendant's app that were known to Defendant, or that Defendant should have known through the exercise of reasonable care.

43. In addition, Defendant owed special relationship duties to Minor Plaintiff to protect her against harm caused by its app and employees or by other users. These special relationship duties

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

are based on the following:

    a.    As a business, Defendant owes a duty to protect customers against reasonably foreseeable dangers known to Defendant on its app;

    b.    As an owner, operator, proprietor, and manager of a digital playground, Defendant—just like any owner, operator, proprietor, and manager of a physical playground—owes its child users a duty: to exercise ordinary care in the design, operation, management, and maintenance of its platform; to secure its platform against foreseeable illicit, tortious, or criminal acts of third parties (including grooming, sexual abuse, and sexual exploitation) that are more likely than not to occur in the absence of such measures; to use reasonable care to keep its platform in a reasonably safe condition for its child users; to use reasonable care to discover any unsafe conditions; and to repair or give an adequate warning of conditions that could be reasonably expected to harm its child users—including by exposing them to the known and documented presence of child predators on Defendant's platform;

    c.    Minor Plaintiff, a minor, was vulnerable and dependent on Defendant for a safe environment on its app, and Defendant has superior ability and control to provide that safety with respect to activities that it sponsors or controls;

    d.    Minor Plaintiff relied upon Defendant for protection against third-party misuse or misconduct;

    e.    The special relationship Minor Plaintiff had with Defendant substantially benefits Defendant through profits and growth in users and user activity. Defendant could not successfully operate without the growth in users and user activity generated by children;

    f.    Defendant was far more to Minor Plaintiff than a business. Defendant provided Minor Plaintiff with opportunities for social interaction and a discrete

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

community of other users. Minor Plaintiff was dependent on Defendant to provide structure, guidance, and a safe environment; and

g.    Defendant has voluntarily undertaken a responsibility to keep children safe on its app. As alleged above and in the Arbitration Bellwether Common Pleading, Defendant has publicly stated that it takes steps to keep children safe on its app and therefore has undertaken a duty to act reasonably in taking such steps.

44.    Minor Plaintiff was a foreseeable user of Defendant's app.

45.    Defendant knew that minors such as Plaintiff would use its app.

46.    Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Minor Plaintiff's use of its app.

47.    Defendant knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of its app (as developed, set up, managed, maintained, supervised, and operated by Defendant) was dangerous, harmful, and injurious when used by youth such as Minor Plaintiff in a reasonably foreseeable manner—including by exposing them to the known and documented presence of child predators on Defendant's app.

48.    Defendant made numerous statements, as outlined above and in the Arbitration Bellwether Common Pleading, claiming in substance that its platform's design was highly effective at protecting users from the types of harms Minor Plaintiff suffered.

49.    At all relevant times, Defendant knew or, by the exercise of reasonable care, should have known that its app (as developed, set up, managed, maintained, supervised, and operated by Defendant) posed unreasonable risks of harm to youth such as Minor Plaintiff, which risks were known and knowable—including in light of reports by news organizations, child safety organizations, law enforcement, independent researchers, and its own employees.

50.    Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of its app, such as Minor Plaintiff, would not have realized the potential risks and dangers of using the app, including a risk of grooming, sexual abuse, and sexual exploitation, which

11

3533390.1

foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects.

51.    Defendant's conduct was closely connected to Minor Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

52.    Defendant could have avoided Minor Plaintiff's injuries with minimal cost, including, for example, by not including certain features in its app which harmed Plaintiff.

53.    Imposing a duty on Defendant would benefit the community at large.

54.    Imposing a duty on Defendant would not be burdensome because it has the technological and financial means to avoid the risks of harm to Minor Plaintiff.

55.    Defendant owed a heightened duty of care to youth users of its app because children's brains are not fully developed, meaning young people are more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

56.    Defendant breached its duties of care owed to Minor Plaintiff through its affirmative malfeasance, actions, business decisions, policies, nonfeasance, failure to act, and omissions in the development, set up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app. These breaches are based on Defendant's own actions in managing its own app made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

a.    Designing its app to include features that, as described above and in the Arbitration Bellwether Common Pleading, are currently structured and operated in a manner that unreasonably create or increase the foreseeable risk

12

3533390.1

of grooming, sexual abuse, and sexual exploitation to youth, including Minor Plaintiff—even though alternative designs were available that would have reduced the dangerous features of Defendant's app and reduced the gravity and severity of danger Defendant's app posed to minor Plaintiffs, all while serving the same purpose as Defendant's defectively designed app;

b.   Designing its app to include features that, as described above and in the Arbitration Bellwether Common Pleading, are currently structured and operated in a manner that unreasonably create or increase the foreseeable risk of harm to the physical and mental health and well-being of youth users, including Minor Plaintiff, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects;

c.   Maintaining unreasonably dangerous features in its app after notice that such features, as structured and operated, posed a foreseeable risk of harm to the physical and mental health and well-being of youth users;

d.   Facilitating unsupervised and/or hidden use of its app by youth, including by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts;

e.   Failing to erect appropriate barriers known to protect child users from unsupervised interactions with adult predators;

f.   Inviting young children on its app and marketing to young children when Defendant knew that its app, as designed, was not safe for young children;

13

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

g.    Failing to use reasonable care in providing adequate warnings to Minor Plaintiff, such as failing to notify parents and the general public of the risks that were known or knowable to Defendant, including but not limited to the risks of grooming, sexual abuse, and sexual exploitation to youth, including Minor Plaintiff; and

h.    Others as set forth herein and in the Arbitration Bellwether Common Pleading.

57.    A reasonable company under the same or similar circumstances as Defendant would have designed, developed, set up, managed, maintained, supervised, and operated its app in a manner that is safer for and more protective of youth users like Plaintiff.

58.    A reasonable company under the same or similar circumstances as Defendant would have used reasonable care to provide adequate warnings to consumers, including the parents of minor users, as described herein and in the Arbitration Bellwether Common Pleading.

59.    At all relevant times, Minor Plaintiff used Defendant's app in the manner in which it was intended to be used.

60.    At all relevant times, Defendant could have provided adequate warnings to prevent the harms and injuries described herein and in the Arbitration Bellwether Common Pleading.

61.    Had Minor Plaintiff received proper or adequate warnings about the risks of Defendant's app, Minor Plaintiff would have heeded such warnings.

62.    As a direct and proximate result of Defendant's breach of one or more of its duties, Minor Plaintiff was harmed. Such harms include the sexual exploitation of Minor Plaintiff by a child predator and a cascade of resulting negative effects, including but not limited to damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues such as depression, anxiety, and other harmful effects.

63.    Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Minor Plaintiff.

14

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

64. Had Defendant redressed the unsafe condition of its platform by erecting the appropriate barriers known to protect child users from unsupervised interactions with adult predators, it is more probable than not that Minor Plaintiff would not have suffered the resulting harms.

65. The nature of the fraudulent and unlawful acts that created safety concerns for Minor Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

66. Minor Plaintiff's mother relied on Defendant exercising reasonable care in undertaking to render a safe platform for Minor Plaintiff, and Minor Plaintiff was harmed as a result of this reliance.

67. Defendant's conduct, as described above and in the Arbitration Bellwether Common Pleading, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

68. Minor Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION

## STRICT LIABILITY – DESIGN DEFECT

## (By Minor Plaintiff D.H.)

69. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Minor Plaintiff.

70. Defendant's product was designed, manufactured, maintained, controlled, and distributed from the California headquarters of Defendant.

71. Defendant's product was designed and intended to be a gaming and/or communication

15

3533390.1

product. The software and architecture of Defendant's product are the same for every user that logs on or signs up for an account. Defendant's product is uniformly defective and poses the same danger to each minor user.

72. Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

73. Defendant's product is marketed and advertised to the public for the personal use of the end-user/consumer.

74. Defendant defectively designed its product to allow children to come into contact with child predators. Children are particularly unable to appreciate the risks posed by the product.

75. The defects in the design of Defendant's product existed prior to the release of the product to Minor Plaintiff and the public, and there was no substantial change to Defendant's product between the time of its upload by Defendant to public or retail channels (*e.g.*, the App Store or Google Play) and the time of its distribution to Minor Plaintiff via download or URL access.

76. Minor Plaintiff used the product as intended, and Defendant knew or, by the exercise of reasonable care, should have known that Minor Plaintiff would use the product without inspection for its dangerous nature.

77. Defendant defectively designed its product to appeal to adult predators by making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Minor Plaintiff.

78. Defendant failed to test the safety of the features it developed and implemented for use on its product. When Defendant did perform some product testing and had knowledge of ongoing harm, it failed to adequately remedy its product's defects or warn Minor Plaintiff.

79. Defendant's product is defective in design and pose a substantial likelihood of harm for the reasons set forth herein and in the Arbitration Bellwether Common Pleading, because the product fails to meet the safety expectations of ordinary consumers when used in an intended or reasonably foreseeable manner, and because the product is less safe than an ordinary consumer would

16

3533390.1

expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendant's product. Indeed, Defendant markets, promotes, and advertises its product to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendant's product to expose them to predators when the product is used in its intended manner by its intended audience. They do not expect the features embedded by Defendant in its product to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect Defendant's revenue and profits to be directly tied to predators' extortion of children.

80.    Defendant's product is likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

81.    The risks inherent in the design of Defendant's product significantly outweigh any benefits of such design.

82.    Defendant could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above and in the Arbitration Bellwether Common Pleading, to minimize the harms described herein and in the Arbitration Bellwether Common Pleading, including, but not limited to:

    a.    Designing its app to require that children have parental approval and a parent's email address to sign-up for an account; and to require that adults provide a phone number to sign-up for an account;

    b.    Designing its app to screen users before allowing them on the app;

    c.    Designing its app to not allow new users to identify themselves as minors, begin

17

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

to use the app, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendant can warn the users' parents or guardians;

d.    Designing its app with effective parental controls and effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls; and providing a transcript of a child's communications to the parent;

e.    Designing its app with safety settings that are the most protective options by default, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

f.    Designing its app with heightened default safety settings that do not allow adults and other strangers' accounts to find, "friend," and communicate with children's accounts; and that do not recommend that adult users and other strangers "friend" and contact child accounts;

g.    Designing its app with pop-up safety notices within chats and games to warn users about inappropriate behavior;

h.    Designing its app so that strangers cannot send Robux to child accounts, and so that children cannot send Robux to strangers' accounts;

i.    Designing its app to ban persistent identifiers of accounts associated with known abusers, including but not limited to banning particular IP and MAC addresses;

j.    Designing its app to not include chat functions that allow adult users to freely communicate with child users;

18

3533390.1

k. Designing and implementing reasonably available means for reporting protocols to allow users or visitors of Defendant's product to report child sex abuse material and adult predator accounts specifically, without the need to create or log in to the product prior to reporting;

l. Designing its app with robust age and identity verification and effective age restrictions on age gated features to prevent adult predators from posing as children on Defendant's app, and to prevent children from bypassing or changing parental controls, safety features and default settings;

m. Designing digital barriers to separate child users from adult users by, for example, creating separate apps for children and adults; and

n. Others as set forth herein and in the Arbitration Bellwether Common Pleading.

83. Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendant's product while reducing the gravity and severity of danger posed by its product's defects.

84. Minor Plaintiff used Defendant's product as intended or in reasonably foreseeable ways.

85. The physical, emotional, and economic injuries of Minor Plaintiff were reasonably foreseeable to Defendant at the time of the product's development, design, advertising, marketing, promotion, and distribution.

86. Defendant's product was defective and unreasonably dangerous when it left Defendant's possession and control. The defects continued to exist through the product's distribution to and use by consumers, including Minor Plaintiff, who used the product without any substantial change in the product's condition.

87. As the manufacturer, designer, and seller, Defendant had a duty to inform itself with the best knowledge of the risks and the defects of its product and Defendant had such knowledge. Its victims, including Minor Plaintiff, were powerless to protect themselves against unknown harms, and

19

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

Defendant should bear the costs of these injuries.

88.    Minor Plaintiff was injured as a direct and proximate result of Defendant's defective designs as described herein and in the Arbitration Bellwether Common Pleading. The defective design of the product used by Minor Plaintiff was a substantial factor in causing harms to Minor Plaintiff.

89.    As a direct and proximate result of Defendant's product's defective design, Minor Plaintiff suffered serious and dangerous injuries.

90.    As a direct and proximate result of Defendant's product's defective design, Minor Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

91.    The nature of the fraudulent and unlawful acts that created safety concerns for Minor Plaintiff are not the type of risks that are immediately apparent from using Defendant's product.

92.    The conduct of Defendant, as described above and in the Arbitration Bellwether Common Pleading, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

93.    Minor Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION

## STRICT LIABILITY – FAILURE TO WARN

## (By Plaintiffs D.H. and T.T.)

94.    At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Minor Plaintiff.

20

3533390.1

95. Defendant's product was designed, manufactured, maintained, controlled, and distributed from the California headquarters of Defendant.

96. Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of the product is the same for every user that logs on or signs up for an account. Defendant's product is uniformly defective and poses the same danger to each minor user.

97. Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

98. Defendant sold and distributed its product to Minor Plaintiff in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of harm to youth as described herein and in the Arbitration Bellwether Common Pleading, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

99. Defendant was in the best position to know the dangers its product posed to consumers, including Minor Plaintiff, as it had superior knowledge of the risks and dangers posed by its product and had exclusive knowledge of these risks at the time of development, design, marketing, promotion, advertising and distribution. Defendant had exclusive control of its product at all times relevant to this litigation.

100. Defendant's product is dangerous, to an extent beyond that contemplated by the ordinary user who used Defendant's product, because it enables predators to find, groom, abuse, and exploit children.

101. Defendant knew or, by the exercise of reasonable care, should have known that its

21

3533390.1

product posed risks of harm to youth considering its own internal data and knowledge regarding its product at the time of development, design, marketing, promotion, advertising, and distribution.

102.    These risks were known and knowable in light of Defendant's own internal data and knowledge regarding its product at the time of the product's development, design, marketing, promotion, advertising, and distribution to Minor Plaintiff.

103.    Defendant's product is defective and unreasonably dangerous because, among other reasons described herein and in the Arbitration Bellwether Common Pleading, Defendant failed to exercise reasonable care to inform users that, among other things:

    a.    Sexual predators use Defendant's product to find, contact, groom, and abuse children with alarming frequency;

    b.    Sexual predators use Defendant's product to solicit, produce, and distribute CSAM with alarming frequency;

    c.    Sexual predators target young children for CSAM on Defendant's product with alarming frequency;

    d.    Sexual predators use Robux to coerce children into sending them nude photos or engaging in other types of sexually explicit behavior;

    e.    Defendant's product is designed in a way that enables and increases risk of exposure to predators and resulting in sexual exploitation;

    f.    Defendant's product causes grooming, sexual abuse, and sexual exploitation, and its resultant physical and mental injuries;

    g.    Use of Defendant's product can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

    h.    Use of Defendant's product can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

i.     New users of Defendant's product can identify themselves as minors, begin to use the product, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendant can warn the users' parents or guardians;

j.     Defendant's failure to verify ages allows children to bypass parental controls, safety features and default settings;

k.     The likelihood and severity of harms is greater for children; and

l.     Others as set forth herein and in the Arbitration Bellwether Common Pleading.

104.    Minor Plaintiff was a foreseeable user of Defendant's product.

105.    Ordinary minor users would not have recognized the potential risks of Defendant's product when used in a manner reasonably foreseeable to Defendant.

106.    Had Minor Plaintiff received proper or adequate warnings or instructions as to the risks of using Defendant's product, Minor Plaintiff would have heeded the warnings and/or followed the instructions.

107.    Had Plaintiff T.T. received proper or adequate warnings or instructions as to the risks of using Defendant's product, Plaintiff T.T. would have heeded the warnings, closely monitored D.H.'s use, and/or prevented D.H. from signing on and playing Roblox.

108.    Defendant's failure to adequately warn Minor Plaintiff about the risks of its defective product were a proximate cause and a substantial factor in the injuries sustained by Minor Plaintiff.

109.    The nature of the fraudulent and unlawful acts that created safety concerns for Minor Plaintiff are not the type of risks that are immediately apparent from using Defendant's product.

110.    The conduct of Defendant, as described above and in the Arbitration Bellwether Common Pleading, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

and deter others from like conduct.

111.    Minor Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SIXTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

## (By Plaintiff T.T.)

112.    Plaintiff T.T. is the biological mother of Minor Plaintiff D.H.

113.    Plaintiff D.H.'s ongoing emotional and psychological suffering have been affecting and will continue to affect her interactions with Plaintiff T.T., and the treatment required for Plaintiff D.H.'s harms will limit the amount and quality of time she can spend with her mother.

114.    Accordingly, as a result of Defendant's conduct, Plaintiff T.T. suffered and will continue to suffer loss of consortium and loss of society, affection, and assistance, all to the detriment of the parent-child relationship.

115.    Plaintiffs demand judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant for the above-referenced claims and causes of action, and as follows:

1.  Past, present, and future general damages, the exact amount of which has yet to be ascertained, in an amount which will confirm to proof at time of trial, to compensate Minor Plaintiff for injuries sustained as a result of the use of Defendant's product, including but not limited to physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, and expenses for medical treatments;

2.  Past, present, and future economic and special damages, according to proof at the time

24

3533390.1

of trial;

3.  Impaired earning capacity according to proof at the time of trial;

4.  Medical expenses, past and future, according to proof at the time of trial;

5.  Past, present, and future loss of consortium damages, according to proof at the time of trial;

6.  Punitive or exemplary damages according to proof at the time of trial;

7.  Attorneys' fees;

8.  For costs of suit incurred herein;

9.  Pre-judgment and post-judgment interest as provided by law; and

10. For such other and further relief as the Court may deem just and proper.

## VII.    DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Date:    July 28, 2026                          Respectfully submitted,

By: */s/ Martin D. Gould*

Martin D. Gould*
Michael R. Grieco*
Steven L. Vanderporten*
**GOULD GRIECO & HENSLEY, PLLC**
1 North Franklin Street, Suite 3500
Chicago, Illinois 60606
P: (312) 728-7444
Martin@GGHLaw.com
Mike@GGHLaw.com
Steven@GGHLaw.com

Melissa H. Nafash
**MILBERG PLLC**
405 E. 50th Street
New York NY 10022
Tel: (212) 946-9305
mnafash@milberg.com

25

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

Gary M. Klinger**
Melinda Maxson**
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
GKlinger@milberg.com
mmaxson@milberg.com

*Attorneys for Plaintiffs*

**Pro Hac Vice Admitted*

***Pro Hac Vice* motions f*orthcoming*

26

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1

**Attestation**

I attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated:   July 28, 2026                                    /s/ Caitlin M. Woods

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-10812

3533390.1