*Submitting counsel listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL No. 3166 |
| | Case No. 3:25-md-03166-RS |
| This document relates to: | **AMENDED COMPLAINT** |
| JANE DOE, a minor represented by her court-appointed guardian ad litem, JOHN DOE | Judge Richard Seeborg |
| Plaintiff, | |
| v. | |
| ROBLOX CORPORATION and DISCORD CORPORATION, | |
| Defendants. | |
| Case No. 3:25-cv-05753 | |

Plaintiff Jane Doe ("Minor Plaintiff"), a minor by and through her court-appointed guardian ad litem, John Doe ("Plaintiff's Father") brings this action against Roblox Corporation and Discord Corporation to recover damages arising from the severe injuries Plaintiff suffered because of Defendants' conduct in creating, designing, marketing, and distributing mobile- and web-based applications ("apps"), and alleges as follows:

## I.    INCORPORATION OF COMMON PLEADING

1.    Plaintiff incorporates every allegation in the Arbitration Bellwether Common Pleading that relates to any Defendant named in this Amended Complaint.

## II.    PARTIES

### A.    Plaintiff

2.    Minor Plaintiff, Jane Doe, represented by her father and court-appointed guardian ad litem, John Doe, are citizens and residents of the State of Alabama.

3.    Plaintiff has suffered profound and enduring harm. This includes significant emotional distress, psychological trauma, and mental anguish. Plaintiff's experiences have led to a loss of trust, safety, and personal security, depriving her of the opportunity for a normal and healthy development. The injuries she sustained are severe, ongoing, and permanent, affecting her daily life and emotional health in lasting and immeasurable ways.

4.    Plaintiff never entered any contract with Defendants. To the extent Defendants claim that Plaintiff attempted to accept an electronic terms and conditions clause by clicking buttons on a screen that included language that Plaintiff did not read or understand, such an assertion is legally erroneous, invalid, and unenforceable, including because: Plaintiff disaffirms any contract that she may have entered as a minor, including any forced arbitration agreement and any delegation clause in any contract; Plaintiff lacked the capacity to enter any contract, including any forced arbitration agreement and any delegation clause in any contract; any contract that Plaintiff purportedly entered after this lawsuit was filed is invalid and unenforceable; and any arbitration agreement is invalid and unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, Pub. L. No. 117–90, codified at 9 U.S.C. §§ 401-402.

1

**B.    Defendants**

5.    Defendant Roblox Corporation is a Nevada corporation with its principal place of business in San Mateo, California. Roblox owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Roblox app. Roblox is widely available to consumers throughout the United States.

6.    Defendant Discord Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Discord owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Discord app. Discord is widely available to consumers throughout the United States.

## III.    JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

8.    This Court has personal jurisdiction over Defendants because they maintain their principal places of business in California and this lawsuit arises from and relates to Defendants' contacts with California.

9.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.    PLAINTIFF-SPECIFIC ALLEGATIONS

10.    Plaintiff is a 15-year-old girl who was manipulated and groomed through Defendants' dangerous apps by a predator who ultimately attempted to rape her but was thwarted only because law enforcement intervened. Plaintiff has suffered devastating and life-altering psychological trauma. Her life will never be the same.

11.    Plaintiff was 10 years old when she first started playing on Roblox. Plaintiff's father believed that Roblox was safe for children because it was designed and marketed for kids. As discussed above and in the Arbitration Bellwether Common Pleading, Roblox spent considerable time

2

and money publicly touting the safety and security of the app, which created the public perception that Roblox had created a safe environment for kids. Unbeknownst to Plaintiff's father at the time, this was nothing more than a false façade of safety.

12.    When Plaintiff was 12 years old, she began using Discord. Plaintiff's father trusted that Discord was a safe place for Plaintiff to communicate with her friends. As discussed above and in the Arbitration Bellwether Common Pleading, Discord spent considerable time and money publicly touting the safety and security of the app. This created the public perception that Discord had created a safe environment for kids. Unbeknownst to Plaintiff's father at the time, this was nothing more than a false façade of safety.

13.    In 2024, when Plaintiff was 13 years old, she met a man on Roblox who told her that he was also 13 but was in fact an adult predator. On Roblox, the predator groomed Plaintiff, exploiting her age and vulnerability to build a false emotional connection with her.

14.    After capturing Plaintiff's trust, the predator intensified his grooming of Plaintiff, and their interactions continued not just on Roblox but also on Discord. He sent Plaintiff graphic messages describing sexual acts he intended to do to her and sent her sexually explicit images of himself. The predator encouraged secretive behavior, minimized the risks to Plaintiff, and ensured that Plaintiff would not reveal any of their interactions to her parents.

15.    The predator also used Roblox's virtual currency Robux to coerce Plaintiff into continuing to interact with him. By regularly giving Plaintiff Robux, the predator was able to manipulate Plaintiff's emotions and foster Plaintiff's dependency on him.

16.    The predator ultimately convinced Plaintiff to meet him in person. Around January 2025, he traveled from another state to Alabama and arranged to meet Plaintiff at a fast-food restaurant near her home. When the predator arrived there, he took Plaintiff to a nearby location and attempted to rape her. Plaintiff resisted, and fortunately, law enforcement arrived during the encounter, finding Plaintiff in a state of extreme distress. She was shirtless, with bruises on her arms and legs. The predator had his genitals exposed and was attempting to forcibly remove Plaintiff's pants to sexually assault her. Police arrested the predator, who is currently incarcerated.

3

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

17.     Plaintiff has suffered profound harm from the grooming, manipulation, and attempted rape that she experienced on Defendants' apps. Plaintiff has engaged in self-harming behaviors and was hospitalized twice this year for psychiatric treatment. During these hospitalizations, she was diagnosed with post-traumatic stress disorder, anxiety, and depression. She continues to suffer from severe mental health issues, including difficulty trusting others, persistent anxiety, and suicidal ideation, and she continues to need intensive therapeutic interventions. Her academic performance has plunged, and she has behavioral issues in school that were not present previously.

18.     Defendants are directly responsible for the immense harm that Plaintiff has suffered. Had Plaintiff's father known the truth about Defendants' apps, he never would have permitted Plaintiff to use them without strict supervision. Had Defendants implemented even the most basic system of screening or age and identity verification, as well as effective parental controls, Plaintiff never would have interacted with this predator and never would have suffered the harm that she did. Plaintiff's life has been devastated as a direct result of Defendants' conduct.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FRAUDULENT CONCEALMENT AND MISREPRESENTATION

### (By Plaintiff Against Each Defendant)

19.     This claim is brought against each Defendant.

20.     As set forth in more detail above and in the Arbitration Bellwether Common Pleading, each Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users—including in light of the reports by news organizations, child safety organizations, law enforcement, independent researchers, and Defendants' own employees regarding the known and documented presence of child predators on Defendants' apps.

21.     Each Defendant was under a duty to tell the public the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users. Instead of disclosing the truth, each Defendant engaged in a widespread public campaign to tout the safety of its

app in the media, and in the materials provided to potential users of the app, as described above and in the Arbitration Bellwether Common Pleading.

22. Each Defendant made numerous false representations about the safety of its app, as described above and in the Arbitration Bellwether Common Pleading, which were specific and widespread. Plaintiff's father and the public at large relied on each Defendant's false representations in deciding to allow children to play on the app.

23. Each Defendant was under a duty to tell the public, users, and their parents the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users because each Defendant possessed superior knowledge about the dangers of its app through internal reviews, external studies known to Defendants, and parent and police reports made to Defendants.

24. Each Defendant breached its duty to the public, users, and their parents by concealing and failing to disclose the serious safety risks presented by its app. Even though each Defendant knew of those risks based on its internal reviews, external studies known to Defendants, and parent and police reports made to Defendants, each Defendant intentionally concealed those risks to not lose users and revenue, and to induce parents to allow their children to use its app. Such risks were known only to Defendants, and the public, users, and their parents, including Plaintiff's father, could not have discovered such serious safety risks.

25. The public, users, and their parents, including Plaintiff's father, did not know of the serious safety risks posed by the design of Defendants' apps, which were known by Defendants.

26. By intentionally concealing and failing to disclose defects inherent in the design of its app, each Defendant knowingly and recklessly misled the public, users, and their parents, including Plaintiff's father, into believing that its app was safe for children to use.

27. Each Defendant knew that its concealment, omissions, and misrepresentations were material. A reasonable person, including Plaintiff's father, would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of each Defendant's app, to be important when deciding whether to allow children to use it.

5

28.     Each Defendant intended to deceive the public, users, and their parents, including Plaintiff's father, by making misrepresentations and concealing the defects in the design of its app, which made the app unsafe.

29.     As a direct and proximate result of each Defendant's concealment of material information and misrepresentations, Plaintiff's father was not aware and could not have been aware of the facts that Defendants concealed, and therefore justifiably and reasonably believed that each Defendant's app was safe for children to use.

30.     If the serious safety risks presented by the design of each Defendant's app had been disclosed, the public, users, and their parents, including Plaintiff's father, reasonably would have acted differently and/or would have not permitted children to use the app.

31.     As a direct and proximate result of each Defendant's concealment of material information and misrepresentations, Plaintiff sustained serious injuries and harm.

32.     Each Defendant's concealment of material information and misrepresentations was a substantial factor in causing harm to Plaintiff.

33.     Each Defendant's conduct, as described above and in the Arbitration Bellwether Common Pleading, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

34.     Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (By Plaintiff Against Each Defendant)

35.     This claim is brought against each Defendant.

6

36. As set forth in more detail above and in the Arbitration Bellwether Common Pleading, each Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users—including in light of the reports by news organizations, child safety organizations, law enforcement, independent researchers, and Defendants' own employees regarding the known and documented presence of child predators on Defendants' apps. Instead of disclosing the truth, each Defendant engaged in a widespread public campaign to tout the safety of its platform in the media, and in the materials provided to potential users of the app, as described above and in the Arbitration Bellwether Common Pleading.

37. Each Defendant made numerous false representations about the safety of its app, as described above and in the Arbitration Bellwether Common Pleading, which were specific and widespread. Plaintiff's father and the public at large relied on each Defendant's false representations in deciding to allow children to play on the app.

38. By making numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and their parents, including Plaintiff's father, that its app was safe, each Defendant negligently misled the public, users, and their parents, including Plaintiff's father, into believing its app was safe for children to use.

39. Each Defendant had no reasonable grounds for believing that its misrepresentations that its app was safe for children to use were true.

40. As a direct and proximate result of each Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff's father was not aware and could not have been aware of the facts that Defendants misstated, and therefore justifiably and reasonably believed that each Defendant's app was safe for use.

41. As a direct and proximate result of each Defendant's material omissions and misrepresentations, Plaintiff sustained serious injuries and harm.

42. Plaintiff's father's reliance on each Defendant's misrepresentations about the safety of its app were substantial factors in causing harm to Plaintiff.

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

43. Each Defendant's conduct, as described above and in the Arbitration Bellwether Common Pleading, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish it and deter others from like conduct.

44. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

## (By Plaintiff Against Each Defendant)

45. This claim is brought against each Defendant.

46. At all relevant times, each Defendant designed, developed, set up, managed, maintained, supervised, controlled, operated, labeled, marketed, advertised, promoted, sold, supplied, distributed and benefited from its app used by Plaintiff.

47. Each Defendant owed Plaintiff a duty: to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the use of its app (including an unreasonable risk of grooming, sexual abuse, and sexual exploitation, and other associated physical or mental injuries); to protect Plaintiff from unreasonable risk of injury from and in the use of its app; and not to invite, encourage, or facilitate youth, such as Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its app. These duties govern each Defendant's own specific actions and are based on direct actions each Defendant took in developing its app and features.

48. Each Defendant owed a duty to all reasonably foreseeable users to design a safe app.

8

49.    Further, because each Defendant's conduct created the risk that child users of its app would be subject to grooming, sexual abuse, and sexual exploitation, each Defendant owed a duty to all reasonably foreseeable users, including but not limited to minor users and their parents, to provide adequate warnings about the risks of using Defendants' apps that were known to Defendants, or that Defendants should have known through the exercise of reasonable care.

50.    In addition, each Defendant owed special relationship duties to Plaintiff to protect her against harm caused by its app and employees or by other users. These special relationship duties are based on the following:

    a.    As businesses, Defendants owe a duty to protect customers against reasonably foreseeable dangers known to Defendants on their apps;

    b.    As an owner, operator, proprietor, and manager of a digital playground, each Defendant—just like any owner, operator, proprietor, and manager of a physical playground—owes its child users a duty: to exercise ordinary care in the design, operation, management, and maintenance of its platform; to secure its platform against foreseeable illicit, tortious, or criminal acts of third parties (including grooming, sexual abuse, and sexual exploitation) that are more likely than not to occur in the absence of such measures; to use reasonable care to keep its platform in a reasonably safe condition for its child users; to use reasonable care to discover any unsafe conditions; and to repair or give an adequate warning of conditions that could be reasonably expected to harm its child users—including by exposing them to the known and documented presence of child predators on Defendants' platforms;

    c.    Plaintiff, a minor at the time of the facts at issue, was vulnerable and dependent on Defendants for a safe environment on their apps, and Defendants have superior ability and control to provide that safety with respect to activities that they sponsor or control;

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

d.    Plaintiff relied upon Defendants for protection against third-party misuse or misconduct;

e.    The special relationship Plaintiff had with each Defendant substantially benefits each Defendant through profits and growth in users and user activity. Each Defendant could not successfully operate without the growth in users and user activity generated by children;

f.    Each Defendant was far more to Plaintiff than a business. Each Defendant provided Plaintiff with opportunities for social interaction and a discrete community of other users. Plaintiff was dependent on each Defendant to provide structure, guidance, and a safe environment; and

g.    Each Defendant has voluntarily undertaken a responsibility to keep children safe on its app. As alleged above and in the Arbitration Bellwether Common Pleading, each Defendant has publicly stated that it takes steps to keep children safe on its app and therefore has undertaken a duty to act reasonably in taking such steps.

51.    Plaintiff was a foreseeable user of Defendants' apps.

52.    Each Defendant knew that minors such as Plaintiff would use its app.

53.    Each Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of its app.

54.    Each Defendant knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of its app (as developed, set up, managed, maintained, supervised, and operated by Defendants) was dangerous, harmful, and injurious when used by youth such as Plaintiff in a reasonably foreseeable manner—including by exposing them to the known and documented presence of child predators on Defendants' apps.

55.    Each Defendant made numerous statements, as outlined above and in the Arbitration Bellwether Common Pleading, claiming in substance that its platform's design was highly effective at protecting users from the types of harms Plaintiff suffered.

10

56.    At all relevant times, each Defendant knew or, by the exercise of reasonable care, should have known that its app (as developed, set up, managed, maintained, supervised, and operated by Defendants) posed unreasonable risks of harm to youth such as Plaintiff, which risks were known and knowable—including in light of reports by news organizations, child safety organizations, law enforcement, independent researchers, and its own employees.

57.    Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of its app, such as Plaintiff, would not have realized the potential risks and dangers of using the app, including a risk of grooming, sexual abuse, and sexual exploitation, which foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects.

58.    Each Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

59.    Each Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by not including certain features in its app which harmed Plaintiff.

60.    Imposing a duty on Defendants would benefit the community at large.

61.    Imposing a duty on Defendants would not be burdensome because they have the technological and financial means to avoid the risks of harm to Plaintiff.

62.    Each Defendant owed a heightened duty of care to youth users of its app because children's brains are not fully developed, meaning young people are more neurologically vulnerable than adults to abusive contact facilitated by Defendants' apps because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

63.    Each Defendant breached its duties of care owed to Plaintiff through its affirmative malfeasance, actions, business decisions, policies, nonfeasance, failure to act, and omissions in the

11

development, set up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app. These breaches are based on each Defendants' own actions in managing its own app made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

a.  Designing their apps to include features that, as described above and in the Arbitration Bellwether Common Pleading, are currently structured and operated in a manner that unreasonably create or increase the foreseeable risk of grooming, sexual abuse, and sexual exploitation to youth, including Plaintiff—even though alternative designs were available that would have reduced the dangerous features of Defendants' apps and reduced the gravity and severity of danger each Defendant's app posed to minor Plaintiffs, all while serving the same purpose as Defendants' defectively designed apps;

b.  Designing their apps to include features that, as described above and in the Arbitration Bellwether Common Pleading, are currently structured and operated in a manner that unreasonably create or increase the foreseeable risk of harm to the physical and mental health and well-being of youth users, including Plaintiff, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects;

c.  Maintaining unreasonably dangerous features in their apps after notice that such features, as structured and operated, posed a foreseeable risk of harm to the physical and mental health and well-being of youth users;

12

AMENDED COMPLAINT<br>Case Nos. 3:25-md-03166, 3:25-cv-03520

d.    Facilitating unsupervised and/or hidden use of their apps by youth, including by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts;

e.    Failing to erect appropriate barriers known to protect child users from unsupervised interactions with adult predators;

f.    Inviting young children on their apps and marketing to young children when each Defendant knew that its app, as designed, was not safe for young children;

g.    Failing to use reasonable care in providing adequate warnings to Plaintiff, such as failing to notify parents and the general public of the risks that were known or knowable to Defendants, including but not limited to the risks of grooming, sexual abuse, and sexual exploitation to youth, including Plaintiff; and

h.    Others as set forth herein and in the Arbitration Bellwether Common Pleading.

64.    A reasonable company under the same or similar circumstances as Defendants would have designed, developed, set up, managed, maintained, supervised, and operated its app in a manner that is safer for and more protective of youth users like Plaintiff.

65.    A reasonable company under the same or similar circumstances as Defendants would have used reasonable care to provide adequate warnings to consumers, including the parents of minor users, as described herein and in the Arbitration Bellwether Common Pleading.

66.    At all relevant times, Plaintiff used each Defendant's app in the manner in which it was intended to be used.

67.    At all relevant times, Defendants could have provided adequate warnings to prevent the harms and injuries described herein and in the Arbitration Bellwether Common Pleading.

68.    Had Plaintiff received proper or adequate warnings about the risks of Defendants' apps, Plaintiff would have heeded such warnings.

69.    As a direct and proximate result of each Defendant's breach of one or more of its duties, Plaintiff was harmed. Such harms include the sexual exploitation of Plaintiff by a child predator and a cascade of resulting negative effects, including but not limited to damage to self-worth, stigma and

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues such as depression, anxiety, and other harmful effects.

70.    Each Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Plaintiff.

71.    Had each Defendant redressed the unsafe condition of its platform by erecting the appropriate barriers known to protect child users from unsupervised interactions with adult predators, it is more probable than not that Plaintiff would not have suffered the resulting harms.

72.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' apps.

73.    Plaintiff's father relied on each Defendant exercising reasonable care in undertaking to render a safe platform for Plaintiff, and Plaintiff was harmed as a result of this reliance.

74.    Each Defendant's conduct, as described above and in the Arbitration Bellwether Common Pleading, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

75.    Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**FOURTH CAUSE OF ACTION**

**STRICT LIABILITY – DESIGN DEFECT**

**(By Plaintiff Against Each Defendant)**

76.    This claim is brought against each Defendant.

14

77. At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Plaintiff.

78. Each Defendant's product was designed, manufactured, maintained, controlled, and distributed from the California headquarters of each Defendant.

79. Each Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of Defendants' products are the same for every user that logs on or signs up for an account. Defendants' products are uniformly defective and pose the same danger to each minor user.

80. Each Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

81. Each Defendant's product is marketed and advertised to the public for the personal use of the end-user/consumer.

82. Each Defendant defectively designed its product to allow children to come into contact with child predators. Children are particularly unable to appreciate the risks posed by the products.

83. The defects in the design of Defendants' products existed prior to the release of these products to Plaintiff and the public, and there was no substantial change to Defendants' products between the time of their upload by each Defendant to public or retail channels (*e.g.*, the App Store or Google Play) and the time of their distribution to Plaintiff via download or URL access.

84. Plaintiff used these products as intended, and each Defendant knew or, by the exercise of reasonable care, should have known that Plaintiff would use these products without inspection for their dangerous nature.

85. Each Defendant defectively designed its product to appeal to adult predators by making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Plaintiff.

15

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

86.     Each Defendant failed to test the safety of the features it developed and implemented for use on its product. When Defendants did perform some product testing and had knowledge of ongoing harm, they failed to adequately remedy their product's defects or warn Plaintiff.

87.     Defendants' products are defective in design and pose a substantial likelihood of harm for the reasons set forth herein and in the Arbitration Bellwether Common Pleading, because the products fail to meet the safety expectations of ordinary consumers when used in an intended or reasonably foreseeable manner, and because the products are less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendants' products. Indeed, each Defendant markets, promotes, and advertises its product to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendants' products to expose them to predators when the products are used in their intended manner by their intended audience. They do not expect the features embedded by each Defendant in its products to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect each Defendant's revenue and profits to be directly tied to predators' extortion of children.

88.     Each Defendant's product is likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

89.     The risks inherent in the design of Defendants' products significantly outweigh any benefits of such design.

90.     Each Defendant could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above and in the Arbitration

16

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

Bellwether Common Pleading, to minimize the harms described herein and in the Arbitration Bellwether Common Pleading, including, but not limited to:

a. Designing its app to require that children have parental approval and a parent's email address to sign-up for an account; and to require that adults provide a phone number to sign-up for an account;

b. Designing its app to screen users before allowing them on the app;

c. Designing its app to not allow new users to identify themselves as minors, begin to use the app, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendants can warn the users' parents or guardians;

d. Designing its app with effective parental controls and effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls; and providing a transcript of a child's communications to the parent;

e. Designing its app with safety settings that are the most protective options by default, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

f. Designing its app with heightened default safety settings that do not allow adults and other strangers' accounts to find, "friend," and communicate with children's accounts; and that do not recommend that adult users and other strangers "friend" and contact child accounts;

g. Designing its app with pop-up safety notices within chats and games to warn users about inappropriate behavior;

17

h. (*As to Roblox only*) Designing its app so that strangers cannot send Robux to child accounts, and so that children cannot send Robux to strangers' accounts;

i. Designing its app to ban persistent identifiers of accounts associated with known abusers, including but not limited to banning particular IP and MAC addresses;

j. Designing its app to not include chat functions that allow adult users to freely communicate with child users;

k. Designing and implementing reasonably available means for reporting protocols to allow users or visitors of Defendants' products to report child sex abuse material and adult predator accounts specifically, without the need to create or log in to the products prior to reporting;

l. Designing its app with robust age and identity verification and effective age restrictions on age gated features to prevent adult predators from posing as children on Defendants' apps, and to prevent children from bypassing or changing parental controls, safety features and default settings;

m. Designing digital barriers to separate child users from adult users by, for example, creating separate apps for children and adults; and

n. Others as set forth herein and in the Arbitration Bellwether Common Pleading.

91. Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendants' products while reducing the gravity and severity of danger posed by their products' defects.

92. Plaintiff used Defendants' products as intended or in reasonably foreseeable ways.

93. The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to each Defendant at the time of the product's development, design, advertising, marketing, promotion, and distribution.

18

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

94.    Each Defendant's product was defective and unreasonably dangerous when it left each Defendant's possession and control. The defects continued to exist through the product's distribution to and use by consumers, including Plaintiff, who used the product without any substantial change in the product's condition.

95.    As the manufacturer, designer, and seller, each Defendant had a duty to inform itself with the best knowledge of the risks and the defects of its product and Defendants had such knowledge. Their victims, including Plaintiff, were powerless to protect themselves against unknown harms, and each Defendant should bear the costs of these injuries.

96.    Plaintiff was injured as a direct and proximate result of each Defendant's defective designs as described herein and in the Arbitration Bellwether Common Pleading. The defective design of the products used by Plaintiff was a substantial factor in causing harms to Plaintiff.

97.    As a direct and proximate result of each Defendant's product's defective design, Plaintiff suffered serious and dangerous injuries.

98.    As a direct and proximate result of each Defendant's product's defective design, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

99.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' products.

100.    The conduct of each Defendant, as described above and in the Arbitration Bellwether Common Pleading, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

101.    Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

19

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

## FIFTH CAUSE OF ACTION

## STRICT LIABILITY – FAILURE TO WARN

### (By Plaintiff Against Each Defendant)

102.    This claim is brought against each Defendant.

103.    At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Plaintiff.

104.    Defendants' products were designed, manufactured, maintained, controlled, and distributed from the California headquarters of each Defendant.

105.    Defendants' products were designed and intended to be gaming and/or communication products. The software and architecture of each product is the same for every user that logs on or signs up for an account. These products are uniformly defective and pose the same danger to each minor user.

106.    Defendants' products are distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

107.    Each Defendant sold and distributed its product to Plaintiff in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of harm to youth as described herein and in the Arbitration Bellwether Common Pleading, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

108.    Each Defendant was in the best position to know the dangers its product posed to consumers, including Plaintiff, as it had superior knowledge of the risks and dangers posed by its product and had exclusive knowledge of these risks at the time of development, design, marketing,

20

promotion, advertising and distribution. Each Defendant had exclusive control of its product at all times relevant to this litigation.

109.    Each Defendant's product is dangerous, to an extent beyond that contemplated by the ordinary user who used Defendants' products, because it enables predators to find, groom, abuse, and exploit children.

110.    Each Defendant knew or, by the exercise of reasonable care, should have known that its product posed risks of harm to youth considering its own internal data and knowledge regarding its product at the time of development, design, marketing, promotion, advertising, and distribution.

111.    These risks were known and knowable in light of each Defendant's own internal data and knowledge regarding its product at the time of the product's development, design, marketing, promotion, advertising, and distribution to Plaintiff.

112.    Defendants' products are defective and unreasonably dangerous because, among other reasons described herein and in the Arbitration Bellwether Common Pleading, each Defendant failed to exercise reasonable care to inform users that, among other things:

    a.    Sexual predators use each Defendant's product to find, contact, groom, and abuse children with alarming frequency;

    b.    Sexual predators use each Defendant's product to solicit, produce, and distribute CSAM with alarming frequency;

    c.    Sexual predators target young children for CSAM on Defendants' products with alarming frequency;

    d.    (*As to Roblox only*) Sexual predators use Robux to coerce children into sending them nude photos or engaging in other types of sexually explicit behavior;

    e.    Each Defendant's product is designed in a way that enables and increases risk of exposure to predators and resulting in sexual exploitation;

    f.    Each Defendant's product causes grooming, sexual abuse, and sexual exploitation, and its resultant physical and mental injuries;

21

g.  Use of each Defendant's product can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

h.  Use of each Defendant's product can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

i.  New users of each Defendant's product can identify themselves as minors, begin to use the product, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendants can warn the users' parents or guardians;

j.  Each Defendant's failure to verify ages allows children to bypass parental controls, safety features and default settings;

k.  The likelihood and severity of harms is greater for children;

l.  The likelihood and intensity of these harmful effects is exacerbated by the interaction of each product's features with one another; and

m.  Others as set forth herein and in the Arbitration Bellwether Common Pleading.

113.  Plaintiff was a foreseeable user of each Defendant's product.

114.  Ordinary minor users would not have recognized the potential risks of each Defendant's product when used in a manner reasonably foreseeable to each Defendant.

115.  Had Plaintiff received proper or adequate warnings or instructions as to the risks of using each Defendant's product, Plaintiff would have heeded the warnings and/or followed the instructions.

116.  Each Defendant's failure to adequately warn Plaintiff about the risks of its defective product were a proximate cause and a substantial factor in the injuries sustained by Plaintiff.

117.  The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using each Defendant's product.

22

118.    The conduct of Defendants, as described above and in the Arbitration Bellwether Common Pleading, was intentional, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

119.    Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1.  Past, present, and future general damages, the exact amount of which has yet to be ascertained, in an amount which will confirm to proof at time of trial, to compensate Minor Plaintiff for injuries sustained as a result of the use of each Defendant's product, including but not limited to physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, and expenses for medical treatments;

2.  Past, present, and future economic and special damages, according to proof at the time of trial;

3.  Impaired earning capacity according to proof at the time of trial;

4.  Medical expenses, past and future, according to proof at the time of trial;

5.  Punitive or exemplary damages according to proof at the time of trial;

6.  Attorneys' fees;

7.  For costs of suit incurred herein;

8.  Pre-judgment and post-judgment interest as provided by law; and

9.  For such other and further relief as the Court may deem just and proper.

## VII.    DEMAND FOR A JURY TRIAL

23

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:   July 28, 2026                                    Respectfully submitted,

**ANAPOL WEISS**

By: */s/ Alexandra M. Walsh*
Alexandra M. Walsh (admitted *pro hac vice*)
14 Ridge Square, NW, 3rd Floor
Washington, DC 20016
Telephone: (771) 224-8065
Facsimile: (215) 735-2211
awalsh@anapolweiss.com

Kristen Feden (admitted *pro hac vice*)
D. Patrick Huyett (admitted *pro hac vice*)
Paige Boldt (SBN 308772)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com
phuyett@anapolweiss.com
pbodlt@anapolweiss.com

*Attorneys for Plaintiff*

24

**Attestation**

I attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated:   July 28, 2026                              /s/ Caitlin M. Woods

25

AMENDED COMPLAINT
Case Nos. 3:25-md-03166, 3:25-cv-03520