Ambika Kumar (*pro hac vice*)
ambikakumar@dwt.com
Xiang Li (SBN 291587)
xiangli@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: 206-622-3150
Fax: 206-757-7777

Adam S. Sieff (SBN 302030)
adamsieff@dwt.com
Marcy Blattner Micale (SBN 319868)
marcymicale@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Tel: 213-633-6800
Fax: 213-633-6899

*Attorneys for Defendant*
DISCORD INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION<br><br>This document relates to:<br><br>No. 3:25-cv-3520<br><br>No. 3:25-cv-10982<br><br>No. 3:25-cv-5753<br><br>No. 3:26-cv-810<br><br>No. 3:25-cv-10607<br><br>No. 3:25-cv-7291 | MDL No. 3166<br>Case No. 3:25-md-03166-RS<br><br>**DEFENDANT DISCORD INC.'S NOTICE OF MOTION AND OMNIBUS MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>[Filed Concurrently With Declaration of Xiang Li In Support; Declaration of Ben Robbins In Support; and Proposed Order]<br><br>Hon. Richard Seeborg<br><br>Date: January 13, 2027<br>Time: 9:30 a.m.<br>Courtroom: 12 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2027, at 9:30 am in Courtroom 12 of the Golden Gate Avenue Courthouse of the United States District Court for the Northern District of California, located on the 19th floor of 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Discord Inc. will move for an order (i) compelling Plaintiffs in the following six cases to arbitrate their claims, and (ii) staying proceedings on their claims pending completion of the arbitrations. *See* 9 U.S.C. §§ 1, 3.

1. *Doe v. Roblox Corp. et al.*, No. 3:25-cv-3520 **[Doe A]**
2. *John Doe, a minor represented by his court-appointed guardian ad litem, Jane Doe v. Roblox Corp. et al.*, No. 3:25-cv-10982 **[Doe B]**
3. *Jane Doe, a minor represented by her court-appointed guardian ad litem, John Doe v. Roblox Corp. et al.*, No. 3:25-cv-5753 **[Doe E]**
4. *Jane Doe, a minor represented by her court-appointed guardian ad litem, Mary Doe v. Roblox Corp. et al.*, No. 3:26-cv-810 **[Doe F]**
5. *Jane Doe A.S., a minor represented by her court-appointed guardian ad litem, John Doe L.S. v. Roblox Corp. et al.*, No. 3:25-cv-10607 **[Doe G]**
6. *Jane Doe, a minor represented by her court-appointed guardian ad litem, Mary Doe v. Roblox Corp. et al.*, No. 3:25-cv-7291 **[Doe H]**

Plaintiffs in these six cases assert claims against Discord, an online communications service that allows users to talk through text, voice, and video. The claims generally rest on the allegation that predators used Discord to coerce Plaintiffs into sending sexually explicit materials. Regardless of the merits of their claims, Plaintiffs must resolve them in arbitration. Plaintiffs assented to Discord's Terms of Service, under which they (1) promised to arbitrate any disputes with Discord concerning Discord's services; and (2) agreed that the arbitrator would decide all arbitrability disputes, including those over the scope and enforceability of the arbitration agreement. As a result, Plaintiffs must arbitrate their claims against Discord, including any objections to whether the arbitration agreement is enforceable.

Further, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), which creates an exception to the Federal Arbitration Act's broad pro-arbitration

mandate, does not apply to the allegations here. Among other reasons, the EFAA targets claims for sexual harassment or assault, mostly in the workplace. The statute does not reach tort suits against online communication services simply because one of hundreds of millions of third-party users allegedly engaged in misconduct against another.

This Motion is based on this Notice and Motion; the attached Memorandum of Points and Authorities; the concurrently filed declarations of Ben Robbins and Xiang Li; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this Motion.

Dated: September 22, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ambika Kumar*

Ambika Kumar
Adam S. Sieff
Xiang Li
Marcy Blattner Micale

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 1
  A. Discord Users Agree to Be Bound by Its Terms of Service. ..... 2
    1. Discord Users Accept the Terms When Creating an Account. ..... 2
      a. iOS or Android ..... 3
      b. Website ..... 4
      c. Desktop ..... 5
    2. When Discord Updates Its Terms, Users Must Accept the Terms to Continue Using Discord's Services. ..... 6
  B. When Creating a Discord Account, Users Must Provide Their Date of Birth. ..... 7
  C. Plaintiffs Agreed to Discord's Terms of Service. ..... 8
    1. Doe A ..... 8
    2. Doe B ..... 9
    3. Doe E ..... 10
    4. Doe F ..... 10
    5. Doe G ..... 11
    6. Doe H ..... 11
  D. All Applicable Terms of Service Contain a Mandatory Arbitration Agreement that Delegates Questions of Arbitrability to the Arbitrator. ..... 12
  E. No Plaintiffs Opted Out of the Arbitration Agreement with Discord. ..... 15
  F. Plaintiffs Filed Suit in Contravention of the Arbitration Agreement. ..... 15
III. LEGAL STANDARD ..... 15
IV. ARGUMENT ..... 17
  A. Plaintiffs Agreed to Arbitrate When They Assented to Discord's Terms. ..... 17
    1. Plaintiffs Formed Valid Arbitration Agreements Under Any Applicable State Law. ..... 17
  B. The Parties Agreed to Delegate Arbitrability Issues to the Arbitrator. ..... 21

1. Each Relevant Version of Discord's Terms Delegates Arbitrability. ....... 21

2. Disaffirmance Is an Arbitrability Issue Delegated to the Arbitrator. ........ 23

3. Plaintiffs Cannot Disaffirm, In Any Event. ............................................ 25

a. Doe A Accepted Discord's Terms After Becoming an Adult By Creating New Accounts and Accepting the 2025 Terms Update.. 25

b. Does A, B, and E's Continued Use Defeats Disaffirmance. ......... 27

c. Does A, F, and H's Misrepresentations Defeat Disaffirmance. .... 28

C. The EFAA Does Not Apply. ........................................................................ 30

1. There Is No Predicate "Sexual Assault Dispute" to Which Any of Plaintiffs' Cases Relates. ........................................................................ 31

2. Does B, G, and E Have Not Alleged Conduct Constituting "Sexual Assault." .............................................................................................. 32

3. The EFAA Does Not Void Postdispute Arbitration Agreements, and Does A, B, and E Formed New Agreements After Filing Suit. ......................... 34

D. The Court Should Stay These Proceedings Pending Arbitration. ......................... 36

V. CONCLUSION ............................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021) .......... 25

*Adelstein v. Walmart Inc.*,
728 F. Supp. 3d 762 (N.D. Ohio 2024) .......... 19

*Alexander v. Experian Info. Sols. Inc.*,
2025 WL 1840599 (E.D. Tex. July 3, 2025) .......... 19

*Angelilli v. Activision Blizzard, Inc.*,
2025 WL 524276 (N.D. Ill. Feb. 18, 2025) .......... 25

*Antonetti v. Activision Blizzard, Inc.*,
764 F. Supp. 3d 1309– 23 (N.D. Ga. 2025) .......... 25

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 16, 21

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 20

*Bishop v. SZ DJI Tech. Co.*,
2025 WL 2784243 (E.D. Tex. Sep. 30, 2025) .......... 24

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 22

*Britelink, Inc. v. TeleCorp PCS, Inc.*,
2004 WL 5509416 (E.D. Ark. May 6, 2004) .......... 17

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015) .......... 25, 27

*C.M.D. v. Facebook, Inc.*,
2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) (Seeborg, J.), *aff'd sub nom. C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 .......... 27

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......... 22, 24

*Carusone v. Nintendo of Am., Inc.*,
2020 WL 3545468 (N.D. Ala. June 30, 2020) .......... 19

*Cir. City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 32

*Collett v. Ancestry.com DNA LLC*,
2019 WL 13253477 (N.D. Cal. Dec. 19, 2019) .......... 16, 22

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) .......... 16, 17, 19

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 16

*Ding v. Structure Therapeutics*,
--- F.4th ---, 2026 WL 2420555 (9th Cir. Aug. 19, 2026) .......... 32

*Doe v. Int'l Student Exch., Inc.*,
2026 WL 2110889 (C.D. Ill. July 22, 2026) .......... 32

*Dunn v. Activision Blizzard, Inc.*,
749 F. Supp. 3d 976 (E.D. Ark. 2024) .......... 25

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) .......... 27

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 16

*Farnham v. Grindr, LLC*,
2025 WL 3062698 (M.D. Fla. Nov. 3, 2025) .......... 31

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 16, 17

*French v. Roblox Corp.*,
--- F. Supp. 3d ---, 2026 WL 2195890 (E.D. Pa. July 29, 2026) .......... 25

*G.G. v. Roblox Corp.*,
2026 WL 1615999 (N.D. Cal. June 5, 2026) .......... 23

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 20

*Hawkins v. CMG Media Corp.*,
2024 WL 559591 (N.D. Ga. Feb. 12, 2024) .......... 18, 19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 16, 21, 22

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. 2023)....................22

*In re Nucorp Energy Sec. Litig.*,
772 F.2d 1486 (9th Cir. 1985)....................17

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) ....................16, 17

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873– 84 (6th Cir. 2021)....................25

*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026) ....................21, 27

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 679033 (E.D. Ark. Mar. 3, 2025)....................25

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 864824 (E.D. Ark. Mar. 19, 2025)....................18, 19, 24

*Kamath v. Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024) ....................21

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)....................20

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) ....................22

*Lamb v. Midwest Mut. Ins. Co.*,
296 F. Supp. 131 (W.D. Ark. 1969), *aff'd*, 421 F.2d 179 (8th Cir. 1970) ....................24, 28

*Lee v. Ticketmaster LLC*,
817 F. App'x 393 (9th Cir. 2020)....................21

*M.D. v. Verizon Commc'ns Inc.*,
2025 WL 2712831 (E.D.N.C. Sep. 23, 2025) ....................31, 32

*McConico v. Wal-Mart Stores, Inc.*,
2021 WL 1102416 (N.D. Ala. Mar. 23, 2021)....................18

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011)....................22

*Moreau v. Feld Ent., Inc.*,
2025 WL 2161706 (M.D. Fla. July 30, 2025)....................26, 28

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....................17

*N.A. v. Nintendo of Am., Inc.*,
2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) .......... 25

*Needleman v. Golden 1 Credit Union*,
474 F. Supp. 3d 1097 (N.D. Cal. 2020) .......... 22

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 17, 18

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 17, 18, 19

*Orellana v. Roblox Corp.*,
769 F. Supp. 3d 1273 (M.D. Fla. 2025) .......... 24, 25

*Page v. GameStop Corp.*,
2025 WL 637441 (6th Cir. Feb. 27, 2025) .......... 18

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 19, 23

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 18

*Q.R. by & through Doe v. Multi Media LLC*,
823 F. Supp. 3d 1280 (D. Kan. 2026) .......... 25

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 16, 21, 22, 24

*S.T.G. ex rel. Garcia v. Epic Games, Inc.*,
752 F. Supp. 3d 1200 (S.D. Cal. 2024) .......... 25

*Slaviero v. Baby List, Inc.*,
2026 WL 1097746 (N.D. Cal. Apr. 22, 2026) .......... 19

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 36

*Taylor v. Discord, Inc.*,
No. 3:26-cv-5245, Dkt. No. 50 (W.D. Wash. Sep. 14, 2026) .......... 20, 23

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) .......... 24

*Trout v. Comcast Cable Commc'ns, LLC*,
2018 WL 4638705 (N.D. Cal. Mar. 15, 2018) .......... 27

*Williams v. Moon Active Ltd.*,
811 F. Supp. 3d 1079 (N.D. Cal. 2025) .......... 23, 24

*Wray v. Humble Bundle, Inc.*,
824 F. Supp. 3d 868 (N.D. Cal. 2025) ........ 23

*Ziboukh v. Whaleco, Inc.*,
795 F. Supp. 3d 349 (E.D.N.Y. 2025) ........ 25

**State Cases**

*Butler v. Yusem*,
44 So. 3d 102 (Fla. 2010) ........ 29

*Coughenour v. Del Taco, LLC*,
57 Cal. App. 5th 740 (2020) ........ 24

*DeSantis v. Wackenhut Corp.*,
793 S.W.2d 670 (Tex. 1990) ........ 17

*Esparza v. Sand & Sea, Inc.*,
2 Cal. App. 5th 781 (2016) ........ 35

*Evans v. Henry*,
230 S.W.2d 620 (Tex. Civ. App. 1950) ........ 30

*H & S Homes, L.L.C. v. McDonald*,
823 So. 2d 627 (Ala. 2001) ........ 24

*Hastings v. Dollarhide*,
24 Cal. 195 (1864) ........ 26, 28

*HomeAdvisor, Inc. v. Waddell*,
2020 WL 2988565 (Tex. Ct. App. June 4, 2020) ........ 18

*Homes of Legend, Inc. v. McCollough*,
776 So. 2d 741 (Ala. 2000) ........ 35

*Kellco Custom Homes, Inc. v. Williams*,
2025 Ark. App. 483 (2025) ........ 35

*Massage Envy Franchising, LLC v. Doe*,
339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ........ 18, 19

*Mossler Acceptance Co. v. Perlman*,
47 So. 2d 296 (Fla. 1950) ........ 29

*Muller v. CES Credit Union*,
832 N.E.2d 80 (Ohio Ct. App. 2005) ........ 24

*Nationwide Mut. Ins. Co. v. Wood*,
121 So. 3d 982 (Ala. 2013) ........ 24

*Off the Wall & Gameroom LLC v. Gabbai*,
301 So. 3d 281 (Fla. Dist. Ct. App. 2020) ..... 24, 29

*Salgado v. Carrows Rests., Inc.*,
33 Cal. App. 5th 356 (2019) ..... 35

*Smith v. Adventure Air Sports Kennesaw, LLC*,
849 S.E.2d 738 (Ga. Ct. App. 2020) ..... 24, 30

*Sudbury v. Konsker*,
430 So. 3d 117 (Fla. Dist. Ct. App. 2026) ..... 35

*Taylor Morrison of Tex., Inc. v. Skufca ex rel. KSX*,
660 S.W.3d 525 (Tex. 2023) ..... 24

*Topheavy Studios, Inc. v. Doe*,
2005 WL 1940159 (Tex. Ct. App. Aug. 11, 2005) ..... 29

*Wells Fargo Bank, N.A. v. Chapman*,
90 So. 3d 774 (Ala. Civ. App. 2012) ..... 28

*Williams v. Leon T. Shettler Co.*,
98 Cal. App. 282 (1929) ..... 29

**Federal Statutes**

9 U.S.C. § 2 ..... 13, 15

9 U.S.C. § 3 ..... 36

9 U.S.C. § 401(1) ..... 34, 35

9 U.S.C. § 401(3) ..... 33

9 U.S.C. § 401(4) ..... 31

9 U.S.C. § 402(a) ..... 30, 31, 34

18 U.S.C. § 2246 ..... 32, 33

18 U.S.C. § 2246(2) ..... 33, 34

18 U.S.C. § 2246(3) ..... 33, 34

**State Statutes**

Cal. Fam. Code § 6700 .......... 23

Cal. Fam. Code § 6710 .......... 23, 25, 26

Ga. Code Ann. § 13-3-20 .......... 24

**Other Authorities**

168 Cong. Rec. S625 (2022) .......... 32

H. Rep. No. 117-234 (2022) .......... 32

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should compel arbitration of Plaintiffs' claims under Discord's Terms of Service and stay these proceedings pending arbitration because (a) Plaintiffs accepted the Terms, which contain an arbitration agreement governed by the Federal Arbitration Act; (b) the parties agreed to arbitrate all issues relating to the scope, validity, and enforceability of the arbitration agreement; and (c) the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act does not apply to Plaintiffs' cases against Discord.

## I. INTRODUCTION

Plaintiffs in these six bellwether cases seek to hold Discord, an online communications service, liable for the conduct of third parties who misused it. All of their claims belong in arbitration because Plaintiffs agreed to Discord's Terms of Service when creating Discord accounts. Those Terms contain a binding arbitration agreement that covers all claims related to the use of Discord's services. It also delegates to the arbitrator exclusive authority to resolve all disputes concerning the scope and enforceability of the agreement—disputes that would include any argument that Plaintiffs disaffirmed the agreement after entering into it.

The alleged abuse Plaintiffs sustained at the hands of third parties is horrific. At the same time, Discord cannot be held liable for the misuse of its platform by those individuals. The Court, however, need not and should not reach the merits of Plaintiffs' claims. Supreme Court precedent requires the Court to compel arbitration because each Plaintiff accepted an arbitration agreement that delegates all arbitrability issues here to the arbitrator. Further, several Plaintiffs' allegations do not meet the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act's ("EFAA") statutory definition of a "sexual assault dispute," and others have agreed to new arbitration agreements after filing suit.

Discord's Motion proceeds in three steps. First, Discord establishes that each Plaintiff formed a valid arbitration agreement containing either a delegation clause or language incorporating arbitral rules, both of which require the arbitrator to resolve all disputes about the agreement's enforceability. Second, Discord demonstrates that even if the Court reaches Plaintiffs' anticipated arguments about disaffirmance, Plaintiffs' attempts to disaffirm fail. Third, Discord shows that the EFAA does not apply. Discord respectfully requests that the Court honor the parties' agreement to resolve their disputes in arbitration.

## II. STATEMENT OF FACTS

Discord is an online messaging service that enables people to communicate by making calls, sending messages, and sharing documents, pictures, videos, and other media. Dkt. No. 395 ("Common Pleading") ¶ 242. Unlike social media, Discord does not recommend content or have

a curated feed. It is a messaging service, similar to WhatsApp or iMessage, where users can chat in groups, including by video.

### A. Discord Users Agree to Be Bound by Its Terms of Service.

The Terms of Service are an agreement between Discord and its users that governs the use of Discord's services, apps, websites, and other products. *See* Robbins Decl. Exs. D–H. To use the service, a user must first create a Discord account. Robbins Decl. ¶ 2. Creating a Discord account requires accepting the Terms of Service. *Id.* ¶¶ 8–13. Discord's Terms of Service incorporate Discord's Community Guidelines, which explain the types of activity prohibited on Discord. *Id.* ¶ 15. At all times relevant to this Motion, Discord's Community Guidelines have prohibited child sexual abuse materials and activities. *See id.* Ex. I at 2; *id.* Ex. J at 2; *id.* Ex. K at 2-3; *id.* Ex. L at 2; *id.* Ex. M at 2–3.

#### 1. Discord Users Accept the Terms When Creating an Account.

Plaintiffs created their Discord accounts through one of three methods: 1) Discord's mobile app for iOS or Android (hereinafter, "iOS or Android"); 2) Discord's website; or 3) Discord's desktop app (hereinafter, "desktop"). *See* Robbins Decl. Ex. A (Appendix of User Account Information, hereinafter "App.") at 1–2.

For the Court's convenience, Discord and Roblox use the following common identifiers for the bellwether Plaintiffs, six of which are the subject of Discord's Motion:

| Case No. | Identifier | Discord Motion | Roblox Motion |
|---|---|---|---|
| 3:25-cv-03520 | Doe A | X | X |
| 3:25-cv-10982 | Doe B | X | X |
| 3:26-cv-01681 | Doe C | | X |
| 3:25-cv-10812 | Doe D | | X |
| 3:25-cv-05753 | Doe E | X | |
| 3:26-cv-00810 | Doe F | X | |
| 3:25-cv-10607 | Doe G | X | X |
| 3:25-cv-07291 | Doe H | X | X |

**a. iOS or Android**

The six bellwether Plaintiffs all created at least one Discord account using iOS or Android between January 2021 and October 2025. *See* App. at 1–2. Between January 20, 2021, and April 20, 2025, as well as between May 6, 2025, to mid-June 2025, users creating Discord accounts on iOS or Android were presented with a screen identical or nearly identical to the following:




Robbins Decl. ¶ 8. From mid-June 2025 onward, users creating Discord accounts on iOS or Android were presented with a screen identical or nearly identical to the following:




*Id.* ¶ 9.

As shown in both screenshots above, users had to click a button labeled "Create an account" or "Create Account" immediately above a notice stating that "By registering, you agree to Discord's Terms of Service and Privacy Policy" or "By clicking 'Create Account,' you agree to Discord's Terms of Service and Privacy Policy." *Id*. In each instance, the phrases "Terms of Service" and "Privacy Policy" were set off in blue text, indicating they were hyperlinks that, when clicked, displayed the full terms. *Id*. Users could not create an account through this process without clicking the "Create an account" or "Create Account" button. *Id*.

**b. Website**

Doe F also created a Discord account in January 2023 using Discord's website. App. at 2. There are two ways to do so: through the home page or through the registration page. Robbins Decl. ¶ 10. Both methods required Doe F to accept Discord's Terms of Service. *Id.* ¶ 11–12.

Users creating an account on Discord's *home* page in January 2023 had to click a button titled "Open Discord in Your Browser," which brought users to a page identical or nearly identical to the following:




*Id.* ¶ 11. As shown above, Discord displayed a notice explaining that "By registering, you agree to Discord's Terms of Service and Privacy Policy." *Id*. The notice appeared immediately below an arrow button that users had to click to proceed. *Id*. And the phrases "Terms of Service" and "Privacy Policy" were underlined, in contrast to the other language in the notice, indicating they

were hyperlinks through which users could access and review the full text. *Id*. Users could not create their account without clicking the arrow button right above this notice. *Id*.

Users creating an account on Discord's *registration* page in January 2023 were presented a page identical or nearly identical to the following:




*Id.* ¶ 12. As shown above, users had to check the box next to the statement confirming "I have read and agree to Discord's Terms of Service and Privacy Policy." *Id*. The phrases "Terms of Service" and "Privacy Policy" were set off in blue text, indicating they were hyperlinks. *Id*. Users could not create an account through this process without first checking the box and clicking the "Continue" button to indicate they agreed to Discord's Terms. *Id*.

**c. Desktop**

Doe A also created a Discord account in May 2025 on desktop. App. at 1. A user creating an account at that time was presented with a screen identical or nearly identical to the following:




Robbins Decl. ¶ 13. As shown above, users had to click the button labeled "Create Account" immediately below a notice stating that by clicking the button, "you agree to Discord's Terms of Service and have read the Privacy Policy." *Id.* The phrases "Terms of Service" and "Privacy Policy," each in blue font, contained hyperlinks that enabled users to view the full terms with one click. *Id*. Users could not create an account through this process without clicking "Create Account." *Id.*

**2. When Discord Updates Its Terms, Users Must Accept the Terms to Continue Using Discord's Services.**

Discord advises users that it sometimes updates the Terms of Service. Robbins Decl. ¶ 16. At all relevant times, Discord's Terms informed users that Discord may update the Terms on an ongoing basis, and when it did so, it would provide notice of the update. Robbins Decl. Ex. D ("2020 Terms") at 1; *id.* Ex. E ("2022 Terms") at 9; *id.* Ex. F ("2023 Terms") at 13; *id.* Ex. G ("2024 Terms") at 13; *id.* Ex. H ("2025 Terms") at 22. When Discord updates the Terms, it also requires users to affirmatively manifest their assent to the updated Terms before they can continue using Discord's services. Robbins Decl. ¶ 16.

In addition to accepting the Terms when they created accounts, Does A, B, and E also accepted the Terms via Terms of Service updates in 2024 (Does A, B, and E), 2025 (Does A, B, and E), and 2026 (Doe E). App. at 1–2. During that period, Discord presented users with a screen that provided notice of the updated Terms identical or nearly identical to the following:




Robbins Decl. ¶ 16. As shown above, immediately above the "Agree" button, this screen informed users that "By clicking Agree, you acknowledge that you agree to Discord's Terms of Service and have read our Privacy Policy." *Id*. The notice provided a hyperlink, in blue font, to the "Terms of Service" that, when clicked, displayed the full terms. *Id*. Users could not continue using Discord without first clicking "Agree" on this page. *Id*.

**B. When Creating a Discord Account, Users Must Provide Their Date of Birth.**

Since 2020, Discord has required all users to enter their date of birth during the account creation process. *Id.* ¶ 3. Each version of Discord's Terms stated that users must be 13 years or older to use Discord. *See* 2020 Terms at 1; 2022 Terms at 2; 2023 Terms at 2; 2024 Terms at 2; 2025 Terms at 3. If a user enters a date of birth indicating that they are under 13 years old, Discord's system blocks them from creating an account. Robbins Decl. ¶ 3. If a user enters a date of birth indicating that they are between 13 and 17 years old, Discord's system permits them to create an account and stores the reported month and year of birth, which it uses to determine

whether the user may access age-restricted content on the platform. *Id*. And if a user enters a date of birth indicating that they are 18 years old or older, Discord permits them to create an account and does not store the reported month and year of birth in the user's account record. *Id*.

**C. Plaintiffs Agreed to Discord's Terms of Service.**

Each Plaintiff accepted Discord's Terms of Service on at least one occasion, with most Plaintiffs accepting the Terms multiple times across multiple accounts, and some Plaintiffs accepting the Terms after filing suit. As discussed, creating an account or agreeing to a Terms update required each Plaintiff to click an action button (titled "Create an Account," "Create Account," or "Continue," or labeled with an arrow icon) located directly adjacent to text informing them that, by proceeding to register and create an account or to continue using Discord's services, they must agree to Discord's operative Terms. *Supra* § II(A).

**1. Doe A**

Doe A created six Discord accounts that she claimed through the User Account Information Order ("UAIO") process in this MDL. App. at 1. In doing so, she agreed to Discord's 2020, 2022, and 2024 Terms of Service. *Id*. She also agreed to Terms updates in 2024 and 2025. *Id*. Doe A, therefore, agreed to Discord's Terms at least ***eight*** times. Further, Doe A continued to use four of her Discord accounts after she filed suit against Discord on April 21, 2025.[1] *Id*. Doe A was 18 years old when she created her most recent Discord account and accepted the most recent Terms update. *See* Li Decl. ¶ 7; App. at 1.

---

[1] *Doe v. Roblox Corp.*, No. 4:25-cv-03520, ECF No. 1-1 (N.D. Cal. Apr. 22, 2025).

The details for Doe A's accounts and assents are summarized in the table below (as excerpted from the Appendix):

| Account User ID | Account Creation Date | Account Creation Method | Dates of Terms Update Assents | Post-Complaint Use (Latest Date) |
|---|---|---|---|---|
| [redacted] | 1/20/2021 | Android | N/A | N/A |
| [redacted] | 8/26/2022 | Android | 4/15/2024<br>9/29/2025 | 9/11/2026 |
| [redacted] | 10/8/2024 | Android | N/A | N/A |
| [redacted] | 5/2/2025 | Desktop | N/A | 9/9/2025 |
| [redacted] | 5/16/2025 | Android | N/A | 3/7/2026 |
| [redacted] | 9/9/2025 | Android | N/A | 9/9/2025 |

**2. Doe B**

Doe B created three Discord accounts that he claimed through the UAIO process. App. at 1. By creating those accounts, he agreed to Discord's 2022, 2023, and 2025 Terms. *Id.* He also agreed to Terms updates in 2024 and 2025. *Id.* Doe B, therefore, agreed to Discord's Terms at least ***five*** times. Further, Doe B continued to use two of his Discord accounts after he filed suit against Discord on September 12, 2025.[2] *Id.* Doe B was 14 years old when he created his most recent Discord account and accepted the most recent Terms update. *See* Li Decl. ¶ 8; App. at 1.

The details for Doe B's accounts and assents are provided in the table below (as excerpted from the Appendix):

| Account User ID | Account Creation Date | Account Creation Method | Dates of Terms Update Assents | Post-Complaint Use (Latest Date) |
|---|---|---|---|---|
| [redacted] | 2/14/2023 | iOS | N/A | N/A |
| [redacted] | 9/5/2023 | iOS | 4/15/2024<br>9/29/2025 | 9/10/2026 |
| [redacted] | 10/1/2025 | Android | N/A | 10/2/2025 |

[2] *See Doe v. Roblox Corp.*, No. 4:25-cv-1044, ECF No. 1 (E.D. Ark. Oct. 7, 2025) (notice of removal of state court case filed on September 12, 2025).

### 3. Doe E

Doe E created nine Discord accounts that she claimed through the UAIO process. App at 1–2. By creating those accounts, she agreed to Discord's 2022, 2023, and 2024 Terms of Service. *Id*. She also agreed to Terms of Service updates in 2024, 2025, and 2026. *Id*. Doe E, therefore, agreed to Discord's Terms at least ***thirteen*** times. *Id*. Further, Doe E continued to use two of her Discord accounts after she filed suit against Discord on July 9, 2025.[3] *Id*. Doe E was 13 years old when she created her most recent Discord account and 15 years old when she agreed to the most recent Terms update. *See* Li Decl. ¶ 9; App. at 2.

The details for Doe E's accounts and assents are provided in the table below (as excerpted from the Appendix):

| Account User ID | Account Creation Date | Account Creation Method | Dates of Terms Update Assents | Post-Complaint Use (Latest Date) |
|---|---|---|---|---|
| [redacted] | 4/12/2022 | Android | N/A | N/A |
| [redacted] | 7/10/2022 | Android | N/A | 10/17/2025 |
| [redacted] | 10/23/2022 | iOS | N/A | N/A |
| [redacted] | 11/2/2022 | Android | 4/27/2024<br>8/27/2026 | N/A |
| [redacted] | 11/23/2022 | Android | N/A | N/A |
| [redacted] | 11/29/2022 | iOS | 4/16/2024 | N/A |
| [redacted] | 3/2/2024 | iOS | N/A | N/A |
| [redacted] | 7/3/2024 | iOS | 10/11/2025 | 1/9/2026 |
| [redacted] | 9/4/2024 | Android | N/A | N/A |

### 4. Doe F

Doe F created three Discord accounts that she claimed through the UAIO process and therefore agreed to the Terms at least ***three*** times. App at 2. By creating those accounts, she agreed to Discord's 2020 and 2022 Terms of Service. *Id*. Doe F was 12 years old when she created her most recent Discord account. *See* Li Decl. ¶ 10; App. at 2.

[3] *Doe v. Roblox Corp.*, No. 3:25-cv-05753, ECF No. 1 (N.D. Cal. July 9, 2025).

The details for Doe F's accounts and assents are provided in the table below (as excerpted from the Appendix):

| Account User ID | Account Creation Date | Account Creation Method | Dates of Terms Update Assents | Post-Complaint Use (Latest Date) |
|---|---|---|---|---|
| [redacted] | 6/1/2021 | iOS | N/A | N/A |
| [redacted] | 5/24/2022 | iOS | N/A | N/A |
| [redacted] | 1/2/2023 | Website | N/A | N/A |

**5. Doe G**

Doe G created one Discord account that she claimed through the UAIO process. App at 2. By creating that account, she agreed, at minimum, to Discord's 2024 Terms of Service. Doe G was 13 years old when she created her Discord account. *See* Li Decl. ¶ 11; App. at 2.

The details for Doe G's account and assent are provided in the table below (as excerpted from the Appendix):

| Account User ID | Account Creation Date | Account Creation Method | Dates of Terms Update Assents | Post-Complaint Use (Latest Date) |
|---|---|---|---|---|
| [redacted] | 1/27/2025 | iOS | N/A | N/A |

**6. Doe H**

Doe H created one Discord account that she claimed through the UAIO process. App. at 2. By creating that account, she agreed, at minimum, to Discord's 2022 Terms of Service. *Id*. Doe H was 9 years old when she created her Discord account. *See* Li Decl. ¶ 12; App. at 2.

The details for Doe H's account and assent are provided in the table below (as excerpted from the Appendix):

| Account User ID | Account Creation Date | Account Creation Method | Dates of Terms Update Assents | Post-Complaint Use (Latest Date) |
|---|---|---|---|---|
| [redacted] | 9/3/2022 | Android | N/A | N/A |

**D. All Applicable Terms of Service Contain a Mandatory Arbitration Agreement that Delegates Questions of Arbitrability to the Arbitrator.**

Each relevant version of Discord's Terms of Service—the 2020, 2022, 2023, 2024, and 2025 Terms—contains a conspicuous, easy-to-understand agreement to arbitrate. 2020 Terms at 9–11; 2022 Terms at 7–8; 2023 Terms at 9–12; 2024 Terms at 9–12; 2025 Terms at 14–20. The introduction to each version of the Terms contains language calling attention to the arbitration agreement, in either bold or all-caps text.

In 2020, the notice language stated:

> IMPORTANT NOTICE: THESE TERMS OF SERVICE CONTAIN A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE DISPUTE RESOLUTION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.

2020 TOS at 1.

From 2022 through 2025, that notice was identical or nearly identical to the following:

> **IMPORTANT NOTE: The section titled "Settling Disputes Between You and Discord" contains an arbitration clause and class-action waiver that applies to all U.S.-based Discord users. Please read this section carefully as it may significantly affect your legal rights, including your right to file a lawsuit in court.**

2022 Terms at 2; 2023 Terms at 1; 2024 Terms at 1; 2025 Terms at 2.

In each version of the Terms, the arbitration agreement follows a section header that appears in large bold font, either titled "SETTLING DISPUTES BETWEEN YOU AND DISCORD[,]" 2022 Terms at 7; 2023 Terms at 9; 2024 Terms at 9; 2025 Terms at 12, or "DISPUTE RESOLUTION[,]" 2020 Terms at 9. Each version of the Terms provides that users must first attempt to resolve any dispute with Discord informally. 2020 Terms at 10; 2022 Terms at 7; 2023 Terms at 9; 2024 Terms at 9; 2025 Terms at 12–13. If the parties cannot resolve a dispute informally, the user agrees to mandatory arbitration. 2020 Terms at 10; 2022 Terms at 7; 2023 Terms at 9–10; 2024 Terms at 9–10; 2025 Terms at 14.

The 2023, 2024, and 2025 Terms also provide that the arbitration agreement applies to "claims that arose, were asserted, or involve facts occurring before the existence of this arbitration

agreement or any prior agreement as well as claims that may arise after the termination of this arbitration agreement[.]" 2023 Terms at 10; 2024 Terms at 10; *see* 2025 Terms at 14 (containing nearly identical language).

Each version of the Terms further provides that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, will govern the arbitration agreement's interpretation and enforcement. 2020 Terms at 10; 2022 Terms at 7; 2023 Terms at 10; 2024 Terms at 10; 2025 Terms at 14.

The 2022 through 2025 Terms contain a clause providing that the arbitrator will have exclusive authority to resolve all disputes relating to arbitrability, including the enforceability of the arbitration agreement. 2022 Terms at 7; 2023 Terms at 11; 2024 Terms at 11; 2025 Terms at 15. The Terms also all identify which arbitral organization's rules will govern arbitration. 2020 Terms at 10; 2022 Terms at 7; 2023 Terms at 10; 2024 Terms at 10; 2025 Terms at 15. The rules of JAMS,[4] AAA,[5] and NAM[6] all provide that the arbitrator will decide disputes related to the existence, scope, or validity of an arbitration agreement. An overview of the delegation language and arbitral rules identified in each version of the Terms is provided below:

---

[4] Rule 11(b), JAMS Comprehensive Arbitration Rules and Procedures, https://www.jamsadr.com/rules-comprehensive-arbitration (last visited Sep. 21, 2026) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.").

[5] R-7(a), AAA Consumer Arbitration Rules and Mediation Procedures, https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf (last visited Sep. 21, 2026) ("The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.").

[6] Rule 17(B), NAM Comprehensive Dispute Resolution Rules and Procedures, https://www.namadr.com/content/uploads/2026/08/Comprehensive-Rules-as-of-8.7.26.pdf (last visited Sep. 21, 2026) ("The Arbitrator(s) shall have the authority to determine jurisdiction and arbitrability including, but not limited to, any issue regarding the validity, existence, formation, or scope of the agreement under which Arbitration is being sought, and the proper parties to the Arbitration.").

| Terms | Doe | Delegation Format | Relevant Text of Terms | ADR Provider |
|---|---|---|---|---|
| 2020 (Ex. D) | Doe A<br>Doe F | Incorporated by reference | Arbitration "shall be ... governed by the rules of JAMS that are in effect at the time the arbitration is initiated." | JAMS |
| 2022 (Ex. E) | Doe A<br>Doe B<br>Doe E<br>Doe F<br>Doe H | Express delegation clause | "[T]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these terms of service, including, but not limited to any claim that all or any part of these terms of service are void or voidable, [and] whether a claim is subject to arbitration." | JAMS |
| 2023 (Ex. F) | Doe B<br>Doe E | Express delegation clause | Same as above | AAA |
| 2024 (Ex. G) | Doe A<br>Doe B<br>Doe E<br>Doe G | Express delegation clause | Same as above | AAA |
| 2025 (Ex. H) | Doe A<br>Doe B<br>Doe E | Express delegation clause | "[T]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve: (1) all Disputes; (2) whether a claim is subject to arbitration; and (3) any dispute regarding the payment of administrative or arbitrator fees (including the timing of such payments and remedies for nonpayment). The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity." | NAM[7] |

Each version of the Terms further states that, by using or accessing Discord, the user confirms that they are at least 13 years old and meet the minimum age of digital consent in their country. 2020 Terms at 1; 2022 Terms at 2; 2023 Terms at 2; 2024 Terms at 2; 2025 Terms at 3.

[7] The 2025 Terms also provide that arbitration with Discord users residing in California will be governed by the ADR Services, Inc. Rules. 2025 Terms at 15. Because none of the Plaintiffs resides in California, *see* Doe A Amended Complaint ("AC") ¶ 2; Doe B AC ¶ 2; Doe E AC ¶ 2; Doe F AC ¶ 2; Doe G AC ¶ 2; Doe H AC ¶ 2, this provision is not applicable.

Finally, each version also provides that California law will govern any disputes that arise. 2020 Terms at 12; 2022 Terms at 7; 2023 Terms at 9; 2024 Terms at 9; 2025 Terms at 13.

**E. No Plaintiffs Opted Out of the Arbitration Agreement with Discord.**

Each relevant version of Discord's Terms of Service contains a subsection titled "Opt-Out" or "Opt-Out Right," allowing users to decline the arbitration agreement by providing notice to a specified email address within a specified period of time starting from either account creation or the Terms of Service's effective date. 2020 Terms at 11; 2022 Terms at 8; 2023 Terms at 12; 2024 Terms at 12; 2025 Terms at 19. None of the operative Complaints allege, and Discord has not located records suggesting, that any Plaintiff followed the opt-out procedure. Robbins Decl. ¶ 18.

**F. Plaintiffs Filed Suit in Contravention of the Arbitration Agreement.**

Plaintiffs generally allege that predators contacted them on Roblox and engaged in a pattern of grooming and exploitation. *See* Doe A AC ¶ 22; Doe B AC ¶ 13; Doe E AC ¶ 13; Doe F AC ¶¶ 14–15; Doe G AC ¶ 13; Doe H AC ¶ 13. Plaintiffs allege that these predators then lured them to Discord and coerced them into sending sexually explicit messages and images of themselves through the platform. *See* Doe A AC ¶¶ 22–23; Doe B AC ¶ 15; Doe E AC ¶¶ 13–14; Doe F AC ¶¶ 15–16; Doe G AC ¶ 13; Doe H AC ¶ 13. Does E and F also allege that predators met them in person and assaulted them. Doe E AC ¶ 16; Doe F AC ¶¶ 17, 20–22. Plaintiffs bring tort and personal injury claims. Doe A AC ¶¶ 32–132; Doe B AC ¶¶ 18–118; Doe E AC ¶¶ 19–119; Doe F AC ¶¶ 28–128; Doe G AC ¶¶ 17–117; Doe H AC ¶¶ 19–119.

Per the parties' joint stipulation, *see* Dkt. No. 316, Discord submits this omnibus Motion to Compel Arbitration of the claims asserted in the six Discord bellwether cases selected by the parties.[8]

## III. LEGAL STANDARD

Under the FAA, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

[8] The Doe A, E, G, and H cases were filed in or removed to this District. The Doe B case was filed in Arkansas state court and removed to the Eastern District of Arkansas, No. 4:25-cv-1044. The Doe F case was filed in the Southern District of Texas, No. 4:25-cv-04693. Both were subsequently transferred into this MDL.

The statute reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified). Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration had more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (Seeborg, J.) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).[9]

These same rules apply to agreements requiring an arbitrator to "decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (citation modified). Courts must enforce an agreement to delegate arbitrability questions to the arbitrator, just as they must enforce the arbitration agreement itself. *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–69 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). This obligation has no exceptions. When an arbitration agreement "delegates the arbitrability question to an arbitrator, a court may not override the contract[,] … even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68. The only question, then, is whether a valid arbitration agreement delegating arbitrability questions to the arbitrator exists. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). If so, "a court may not decide the arbitrability issue" and must send the parties to arbitration. *Henry Schein*, 586 U.S. at 69. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Collett v. Ancestry.com DNA LLC*, 2019 WL

[9] As the transferee court in an MDL, the Court "applies the law of its circuit to issues of federal law." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 823 (N.D. Cal. 2023).

13253477, at *2 (N.D. Cal. Dec. 19, 2019) (Seeborg, J.) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

## IV. ARGUMENT

### A. Plaintiffs Agreed to Arbitrate When They Assented to Discord's Terms.

#### 1. Plaintiffs Formed Valid Arbitration Agreements Under Any Applicable State Law.

In deciding whether the parties agreed to arbitrate, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi.*, 514 U.S. at 944; *see Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023). "Questions of contract formation are questions of state law." *Cordas*, 228 F. Supp. 3d at 988.

As the transferee court in an MDL, this Court "applies the state law that would have been applied to the underlying case as if it had never been transferred into the MDL." *In re Soc. Media Adolescent Addiction*, 702 F. Supp. 3d at 823. The Court also applies the choice-of-law rules that would apply in the transferor district. *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985).

California choice-of-law rules apply to the cases filed by Does A, E, G, and H, which originated in this District. *Supra* n.8. Arkansas choice-of-law rules apply to the Doe B case, which was transferred from the Eastern District of Arkansas. And Texas choice-of-law rules apply to the Doe F case, which was transferred from the Southern District of Texas. *Id.* California and Texas choice-of-law rules follow the same principles, and Arkansas's are similar. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (under California choice-of-law rules, parties' contractual choice of law governs unless section 187(2) of the Second Restatement of Conflict of Laws dictates otherwise); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (same for Texas choice-of-law rules); *Britelink, Inc. v. TeleCorp PCS, Inc.*, 2004 WL 5509416, at *5 (E.D. Ark. May 6, 2004) (similar for Arkansas choice-of-law rules). Under the law of all three states, a choice-of-law provision choosing California law controls except when (a) California lacks a substantial relationship with the parties or underlying transaction, (b) there is no reasonable basis to select California, or (c) applying California law "would be contrary to a fundamental policy" of

a state with a materially greater interest in the key issues. Second. Rest. of Conflict of Laws § 187(2). The latter exception could implicate the policies of the home states of Doe A (residing in Florida); Doe B (residing in Arkansas); Doe E (residing in Alabama); Doe F (residing in Texas); Doe G (residing in Ohio); Doe H (residing in Georgia). *See* Doe A AC ¶ 2; Doe B AC ¶ 2; Doe E AC ¶ 2; Doe F AC ¶ 2; Doe G AC ¶ 2; Doe H AC ¶ 2.

But the Court need not engage in a choice-of-law analysis because the outcome under any of the possibly applicable state laws is the same: Plaintiffs formed valid arbitration agreements with Discord. *See Nguyen*, 763 F.3d at 1175 (no need to engage in conflict of law analysis where all possibly applicable state laws "dictate the same outcome"). The state laws relevant to this Motion are materially identical, recognizing that online agreements are valid where, as here, the website provides reasonably conspicuous notice of the agreement's terms, and the user takes some action that objectively manifests assent to those terms, such as clicking a button. *See, e.g.*, *Oberstein*, 60 F.4th 505, 514–15 (California); *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 485 (Fla. Dist. Ct. App. 2022) (Florida); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 864824, at *3 (E.D. Ark. Mar. 19, 2025) (Arkansas); *McConico v. Wal-Mart Stores, Inc.*, 2021 WL 1102416, at *4 (N.D. Ala. Mar. 23, 2021) (Alabama); *HomeAdvisor, Inc. v. Waddell*, 2020 WL 2988565, at *4–5 (Tex. Ct. App. June 4, 2020) (Texas); *Page v. GameStop Corp.*, 2025 WL 637441, at *3 (6th Cir. Feb. 27, 2025) (Ohio); *Hawkins v. CMG Media Corp.*, 2024 WL 559591, at *4 (N.D. Ga. Feb. 12, 2024) (Georgia).

Discord's Terms of Service constitute a classic, enforceable "clickwrap" or "sign-in wrap" agreement because Discord presents users with conspicuous notice of and an opportunity to review the Terms, and users must click a button to accept the Terms before accessing Discord.[10] Courts

[10] "Clickwrap" agreements are presented "with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein*, 60 F.4th at 513. "Sign-in wrap" agreements are presented by notifying "the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up." *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) (citation modified).

applying California law routinely enforce such agreements,[11] as do courts applying Florida, Arkansas, Alabama, Texas, Ohio, and Georgia law.[12]

The process by which each Plaintiff accepted Discord's Terms fits squarely within these authorities. To create each of their accounts, Plaintiffs had to click a button next to a notice indicating that doing so means accepting "Discord's Terms of Service." *See* Robbins Decl. ¶¶ 8–13. Across Discord's mobile app for iOS or Android, website registration page, and desktop app, the phrase "Terms of Service" was always displayed in bright blue font which contrasted from the gray or white text of the surrounding sentence, as well as the black or white background of the surrounding webpage. *See id.* ¶¶ 8–9, 12–13. On the website home page, "Terms of Service" was

[11] *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (agreement enforceable where notice of terms of use was "clear and legible" and placed directly below button to complete purchase); *Oberstein*, 60 F.4th at 515–17 (agreement enforceable where users were shown notice stating that "[b]y continuing past this page, you agree to the Terms of Use[,]" notice included hyperlink to Terms in contrasting blue text, and notice was placed "directly on top of or below each action button"); *Cordas*, 228 F. Supp. 3d at 988–89 (agreement enforceable where app presented users with notice stating "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy" adjacent to button to complete account creation); *Slaviero v. Baby List, Inc.*, 2026 WL 1097746, at *1 (N.D. Cal. Apr. 22, 2026) (agreement enforceable where website placed notice stating "By clicking Sign Up you agree to the [website's] Terms of Use and Privacy Policy" adjacent to sign up button).

[12] *See, e.g.*, *Massage Envy*, 339 So. 3d at 484 (agreement enforceable under Florida law where plaintiff had to click checkbox next to the statement, "I agree and assent to the Terms of Use Agreement"); *Johnson*, 2025 WL 864824, at *2 (clickwrap agreement enforceable under Arkansas law where users had "opportunity to review" user licensing agreement and had to check a box indicating acceptance before they could proceed); *Carusone v. Nintendo of Am., Inc.*, 2020 WL 3545468, at *1 (N.D. Ala. June 30, 2020) (agreement enforceable under Alabama law where plaintiff was shown a screen stating "By selecting the Accept button, you acknowledge that you have read and agree to be bound by the End-User License Agreement," and plaintiff had indisputably clicked accept); *Alexander v. Experian Info. Sols. Inc.*, 2025 WL 1840599, at *6–8 (E.D. Tex. July 3, 2025) (agreement formed under Texas law where user had to click "Create Your Account" button below fields for inputting personal information and notice that by clicking button, user agreed to hyperlinked terms); *Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762, 768 (N.D. Ohio 2024) (clickwrap agreement formed under Ohio law when plaintiff clicked "Place Order" button under notice that by clicking button customer agreed to hyperlinked terms); *Hawkins*, 2024 WL 559591, at *5 (online agreement enforceable under Georgia law where user was required "to press the continue button" to create account and screen "explain[ed] the legal significance of clicking on the continue button").

underlined. *Id.* ¶ 11. In all instances, the use of blue text or underlining clearly indicated that "Terms of Service" contained a one-click hyperlink to the Terms. *Id.* ¶¶ 8–13. Each time Plaintiffs created a Discord account, the notice language and conspicuous hyperlink provided reasonable notice of and an opportunity to review the Terms before clicking to proceed. *Id*. And each time, the notice language was displayed directly adjacent to the action button to complete the account creation process. *Id.*

Each Plaintiff's decision to click to create an account or click "Agree" to an update constitutes an objective manifestation of assent to the Terms. Further, the context in which Plaintiffs signed up to create an account for ongoing use of Discord makes clear that their "use of Discord was not a one-time transaction or a single visit to a website." Order on Discord's Motion to Compel Arbitration, *Taylor v. Discord, Inc.*, No. 3:26-cv-5245, Dkt. No. 50 at 17 (W.D. Wash. Sep. 14, 2026). "By creating an account, [Plaintiffs] necessarily contemplated continued access to the platform and should have reasonably expected that such access would be governed by some terms of use." *Id.* (citing *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925 (N.D. Cal. 2024)). *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1016 (9th Cir. 2024) (users creating online account for ongoing use clearly "contemplate[d] entering into a continuing, forward-looking relationship" of the sort that would be governed by website terms of use). In fact, four of these Plaintiffs—Does A, B, E, and F—created multiple Discord accounts.

Another federal court in the Ninth Circuit recently confirmed that the process by which Discord presented its Terms when a user created an account using Discord's website formed an online agreement with the user. Order, *Taylor*, No. 3:26-cv-5245, Dkt. No. 50 at 16. As to reasonably conspicuous notice of the Terms, the court found that the hyperlinked Terms were conspicuous because they either "appeared in bolded white text against a black background" or "in white, underlined text against a blue background" and were "the only text beneath the registration fields." *Id.* The court also found that the user unambiguously manifested assent because the phrasing of Discord's notice explicitly stated the "legal significance" of clicking the arrow or continue button to create an account. *Id.* at 17 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022)).

Does A, B, and E also agreed on multiple occasions to Terms of Service updates. These repeated assents further confirm that these Plaintiffs formed contractual relationships with Discord. *See Lee v. Ticketmaster LLC*, 817 F. App'x 393, 395 (9th Cir. 2020) (fact that plaintiff clicked to assent to website's terms multiple times "reinforces" that he had many opportunities to review terms before agreeing). The screen that Does A, B, and E were shown in accepting Discord's Terms updates clearly stated that "By clicking Agree, you acknowledge that you agree to Discord's Terms of Service and have read our Privacy Policy." Robbins Decl. ¶ 16. It also contained a one-click hyperlink to the Terms. *Id.*; *see also Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) ("user's downloading and using an app after receiving inquiry notice of the provider's updated terms of service" is "an unambiguous manifestation of assent"); *Kamath v. Coinbase, Inc.*, 2024 WL 950163, at *4–5 (N.D. Cal. Mar. 5, 2024) (landing page informing users of updated user agreement, and requiring them to accept the terms before proceeding to access website, was sufficient to establish reasonably conspicuous notice and assent to website's terms).

### B. The Parties Agreed to Delegate Arbitrability Issues to the Arbitrator.

#### 1. Each Relevant Version of Discord's Terms Delegates Arbitrability.

The Court need not and may not proceed further to compel arbitration because the arbitration agreement reflects the parties' agreement to delegate arbitrability issues (such as disputes related to the existence, scope, or validity of the arbitration agreement) to the arbitrator. *Rent-A-Ctr. W.*, 561 U.S. at 70 n.2; *see supra* § II(D).

In *AT&T Technologies*, 475 U.S. 643, the Supreme Court explained that the existence of a valid arbitration agreement requires courts to compel arbitration regardless of the merits of the claims. *Id.* at 649–50. A court "ha[s] no business weighing the merits of the grievance" when "[t]he agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.* at 650.

The same rule applies when the issue for arbitration is not the *merits* of a claim but the gateway issue of whether the claim is arbitrable. *See Henry Schein*, 586 U.S. at 65, 68. When parties demonstrate "clear and unmistakable" intent to have the arbitrator decide arbitrability, those

issues must be submitted to the arbitrator. *Id.* at 69; *see Rent-A-Ctr. W.*, 561 U.S. at 70. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 586 U.S. at 69. Whether the parties clearly and unmistakably agreed to delegate threshold questions of arbitrability is a question of federal law. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

The 2022, 2023, 2024, and 2025 Terms contain delegation clauses that expressly delegate arbitrability disputes to the arbitrator. *See supra* § II(D). Each delegation clause is at least as clear as delegation clauses the Supreme Court and the Ninth Circuit have found to be sufficiently clear to require arbitration of threshold arbitrability disputes.

For example, *Rent-A-Center* enforced a delegation clause requiring arbitration of disputes "relating to the interpretation, applicability, enforceability or formation of this Agreement." 561 U.S. at 66 (quotation marks omitted). Likewise, *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023), found clear delegation when an arbitrator was empowered to resolve "all challenges to the interpretation or enforceability" of an arbitration agreement. *Id.* at 999–1000 (citation modified). And *Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011), found clear delegation when an agreement required an arbitrator to determine "the validity or application of any of the provisions of" the agreement. *Id.* at 988 (quotation marks & citation omitted).

Delegation clauses of this kind leave no room for discretion and preclude courts from resolving arbitrability disputes. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022); *see Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *5 (N.D. Cal. May 27, 2025) (enforcing express delegation clause); *Collett*, 2019 WL 13253477, at *3 (same); *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1106 (N.D. Cal. 2020) (Seeborg, J.) (same). Where, as here, an arbitration agreement delegates a gateway arbitrability dispute to arbitration, "a court possesses *no power* to decide the arbitrability issue." *Henry Schein*, 586 U.S. at 68 (emphasis added).

Further, the Terms' incorporation of the rules of JAMS (2022 Terms), AAA (2023 and 2024 Terms), and NAM (2025 Terms) is independent evidence of the parties' intent to delegate

arbitrability. *See supra* nn. 4–6 & chart at 14. Courts routinely find clear and unmistakable intent to delegate when the parties "incorporate[] an arbitrator's arbitration rules in the agreement." *Patrick*, 93 F.4th at 480 (AAA and JAMS Rules); *see Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868, 875–76 (N.D. Cal. 2025) (NAM Rules). Therefore, even though the 2020 Terms do not contain an express delegation clause, Does A and F still agreed with Discord to delegate arbitrability disputes because their arbitration agreements incorporate the JAMS Rules "in effect at the time the arbitration is initiated," 2020 Terms at 10, and the current Rules provide that the arbitrator will decide "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration." JAMS Rule 11(b), *supra* n.4. This "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick*, 93 F.4th at 481. Indeed, a district court recently held that Discord's 2020 Terms delegate arbitrability. Order, *Taylor*, No. 3:26-cv-5245, Dkt. No. 50, at 22, 24 (2020 Terms incorporate JAMS Rule 11(b) and therefore demonstrate a clear and unmistakable intent to delegate arbitrability).

**2. Disaffirmance Is an Arbitrability Issue Delegated to the Arbitrator.**

Plaintiffs might seek to avoid arbitration by arguing that they were minors at the time of contracting and have since disaffirmed the arbitration agreement. Regardless of the merits of that argument, disaffirmance raises an arbitrability issue that the delegation clause sends to arbitration. Put differently, each Plaintiff formed a contract when accepting the Terms, and whether Plaintiffs may now disaffirm that contract has been delegated to an arbitrator.

Whether a minor had capacity to contract is a question of state law. *See Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1083 (N.D. Cal. 2025). Whether the Court applies California law or the law of any other potentially relevant state, the outcome is the same: each Plaintiff had the capacity to contract with Discord and thus entered into an arbitration agreement.

Under California law, "a minor may make a contract in the same manner as an adult," Cal. Fam. Code § 6700, subject to the right to disaffirm the contract either before reaching the age of majority or "within a reasonable time afterwards," *id.* § 6710; *see G.G. v. Roblox Corp.*, 2026 WL

1615999, at *1–2 (N.D. Cal. June 5, 2026) (discussing "the legislature's command to treat minors 'in the same manner as an adult' for the purposes of determining contract formation" and finding "plaintiffs' duty to arbitrate … arises out of their own respective agreements with Roblox"); *Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 747–48 (2020). The same principles apply under any of the other potentially applicable state laws: Florida law[13] (Doe A), Arkansas law[14] (Doe B); Alabama law[15] (Doe E), Texas law[16] (Doe F), Ohio law[17] (Doe G), and Georgia law[18] (Doe H).

Although each Plaintiff claims that they disaffirm their agreement with Discord,[19] any purported disaffirmance is not a matter of contract *formation* but a contention that an already-formed contract *cannot be enforced*. Challenges to the enforcement of an arbitration agreement raise an arbitrability dispute that the arbitrator has exclusive authority to decide, per the delegation clause and/or incorporation of arbitral rules in each version of the Terms. *See Caremark*, 43 F.4th at 1034 (any argument that, by its nature, "challenges the enforceability of the arbitration provision as a whole" must be delegated to the arbitrator); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) (claim that agreement is voidable because "one party was an infant" is issue for arbitrator in presence of delegation clause) (citation & internal quotation marks omitted); *see also Rent-A-Ctr.*, 561 U.S. at 70–72. District courts in the Ninth Circuit recognize that a minor's purported disaffirmance of an arbitration agreement that contains a delegation clause is an issue delegated to the arbitrator. *See, e.g.*, *Williams*, 811 F. Supp. 3d at

[13] *See Off the Wall & Gameroom LLC v. Gabbai*, 301 So. 3d 281, 284 (Fla. Dist. Ct. App. 2020); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1284 (M.D. Fla. 2025).

[14] *Johnson*, 2025 WL 864824, at *3; *Lamb v. Midwest Mut. Ins. Co.*, 296 F. Supp. 131, 133 (W.D. Ark. 1969), *aff'd*, 421 F.2d 179 (8th Cir. 1970).

[15] *See Nationwide Mut. Ins. Co. v. Wood*, 121 So. 3d 982, 985 (Ala. 2013); *H & S Homes, L.L.C. v. McDonald*, 823 So. 2d 627, 630 (Ala. 2001).

[16] *Taylor Morrison of Tex., Inc. v. Skufca ex rel. KSX*, 660 S.W.3d 525, 529 n.6 (Tex. 2023); *Bishop v. SZ DJI Tech. Co.*, 2025 WL 2784243, at *3 (E.D. Tex. Sep. 30, 2025).

[17] *Muller v. CES Credit Union*, 832 N.E.2d 80, 85 (Ohio Ct. App. 2005).

[18] *Smith v. Adventure Air Sports Kennesaw, LLC*, 849 S.E.2d 738, 742 (Ga. Ct. App. 2020) (citing Ga. Code Ann. § 13-3-20).

[19] Doe A AC ¶ 4; Doe B AC ¶ 4; Doe E AC ¶ 4; Doe F AC ¶ 4; Doe G AC ¶ 4; Doe H AC ¶ 4.

1084–85; *N.A. v. Nintendo of Am., Inc.*, 2023 WL 8587628, at *5 (N.D. Cal. Dec. 11, 2023); *S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1209–10 (S.D. Cal. 2024); *A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021).[20]

### 3. Plaintiffs Cannot Disaffirm, In Any Event.

Even if the Court were to reach disaffirmance instead of sending the issue to arbitration, Plaintiffs' attempts to disaffirm at this stage fail, either because they continued to use Discord after filing their Complaints or because they misrepresented their age when they created their Discord accounts. Whether a minor successfully disaffirmed an earlier-formed contract is a question of state law. *See, e.g.*, *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015).

#### a. Doe A Accepted Discord's Terms After Becoming an Adult By Creating New Accounts and Accepting the 2025 Terms Update.

Any disaffirmance by Doe A at this juncture is not effective under California law for multiple reasons.

*First*, Doe A has no right to disaffirm the contracts she formed with Discord after she turned 18. *See* Cal. Fam. Code § 6710 (right to disaffirm applies only to contracts formed during minority). According to information provided by Doe A, she turned 18 on [redacted], 2025. Li

[20] The weight of authority in other jurisdictions also finds that a delegation clause requires arbitration of minority defenses like disaffirmance. *See, e.g.*, *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883–84 (6th Cir. 2021) ("plaintiffs' infancy argument does not concern the formation or existence of a contract" and thus presents "a matter of enforceability covered under the delegation provision"); *Q.R. by & through Doe v. Multi Media LLC*, 823 F. Supp. 3d 1280, 1288 (D. Kan. 2026) (infancy argument delegated); *French v. Roblox Corp.*, --- F. Supp. 3d ---, 2026 WL 2195890, at *7 (E.D. Pa. July 29, 2026) (delegation clause applied to issues of "validity, enforceability, or scope" of arbitration clause, which encompassed disaffirmance arguments); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1322–23 (N.D. Ga. 2025) (same as to "infancy, capacity, disaffirmance, and unconscionability arguments"); *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 398 (E.D.N.Y. 2025) ("whether a minor's agreement to a contract is invalid based on their age alone is a question for the arbitrator to decide"); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283–84 (M.D. Fla. 2025) (same as to infancy defense); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 679033, at *3 (E.D. Ark. Mar. 3, 2025) (same as to infancy and competency defenses); *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *6 (N.D. Ill. Feb. 18, 2025) (same as to infancy and unconscionability defenses); *Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976, 982 (E.D. Ark. 2024) (same as to infancy, competency, disaffirmation, and unconscionability defenses).

Decl. ¶ 7. She created three Discord accounts after that date, on May 2, 2025, May 16, 2025, and September 9, 2025. *See supra* § II(C)(1). Each of the agreements she formed on those dates as an adult is an independent basis to compel arbitration, including of her claims against Discord that had accrued earlier. In registering Discord accounts on those dates, Doe A accepted Discord's 2024 Terms, which were effective from April 15, 2024, through September 28, 2025. *See* Robbins Decl. ¶ 14. The 2024 Terms state that they apply to all "claims that arose, were asserted, or involve facts occurring before the existence of this arbitration agreement or any prior agreement." 2024 Terms at 10. These agreements would therefore apply to any claims against Discord that arose while Doe A was a minor.

*Second*, Doe A no longer has any right to disaffirm the three accounts she created while she was a minor (those created on January 20, 2021, August 26, 2022, and October 8, 2024). She cannot disaffirm a contract she made as a minor if she failed to do so either before turning 18 or "within a reasonable time" after turning 18. Cal. Fam. Code § 6710. And having turned 18, any actions ***ratifying*** her agreement with Discord nullify her ability to disaffirm. *See Hastings v. Dollarhide*, 24 Cal. 195, 211 (1864) (California law); *Moreau v. Feld Ent., Inc.*, 2025 WL 2161706, at *3 (M.D. Fla. July 30, 2025) (Florida law). Doe A ratified her agreement with Discord for the account registered on August 26, 2022, by accepting a Terms of Service update on September 29, 2025—more than six months after she had turned 18. *See supra* § II(C)(1). And by accepting this Terms update, Doe A formed a ***new*** contract with Discord that, by its terms, retroactively encompasses all of her claims against the company. 2025 TOS at 14 (arbitration agreement "applies to all Disputes between the Parties," including retroactively). Doe A's agreement to the 2025 Terms is binding, supersedes her agreement to the prior Terms, and renders any disaffirmation of those prior Terms inoperative.

**b. Does A, B, and E's Continued Use Defeats Disaffirmance.**

Does A, B, and E have continued to use Discord's services, even after filing suit and being represented by counsel.[21] *See* App. 1–2. Through their continued use of Discord, these Plaintiffs manifested an intention to *affirm*—not disaffirm—Discord's Terms of Service.

A minor "cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill." *C.M.D.*, 621 F. App'x at 489 (citation omitted). For online services, a minor cannot purport to disaffirm a website's terms of service in filing suit while continuing to use the services governed by those terms. *See id.* Continued use of the services "manifest[s] an intention ***not*** to disaffirm the contract." *Id.* (emphasis added); *see also C.M.D. v. Facebook, Inc.*, 2014 WL 1266291, at *4 (N.D. Cal. Mar. 26, 2014) (Seeborg, J.), *aff'd sub nom. C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488; *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012).[22]

And even if the Court were to apply the substantive law of each Doe's home state, their continued post-filing use of Discord would still defeat their attempts to disaffirm. Doe A continued to use at least one of the Discord accounts she made as a minor even after she turned 18. *See supra* §II(C)(1) (account created on August 26, 2022 was last used on September 11, 2026). Under California and Florida law, this continued use means that she ratified the contract she had originally

---

[21] Doe A filed suit on April 21, 2025; Doe B filed suit on September 12, 2025; and Doe E filed suit on July 9, 2025. *See supra* nn. 1–3. Each Plaintiff has used at least one of their Discord accounts after these filing dates. *See* § II(C)(1), (2), (3). Each Plaintiff therefore had actual knowledge of Discord's Terms by that point, given that the Terms are extensively referenced in each Complaint.

[22] Further, by continuing to use Discord after they filed suit, Does A, B, and E also effectively renewed their agreement to the Terms. Each of these Plaintiffs agreed to the 2025 Terms update and continued using Discord. *See* § II(C)(1), (2), (3). The 2025 Terms state, "If you continue to use our services after [updates] have taken effect, it means that you agree to the changes. If you don't agree, you must stop using our services." 2025 Terms at 22. By continuing to use Discord, each Plaintiff again manifested their assent to Discord's terms. *See Ireland-Gordy*, 2026 WL 594859, at *4 (plaintiffs "unambiguously manifested assent" to terms of service "through their continued use of the Tile App"); *Trout v. Comcast Cable Commc'ns, LLC*, 2018 WL 4638705, at *4 (N.D. Cal. Mar. 15, 2018) (Seeborg, J.) (plaintiff "manifested consent to the arbitration agreement by not opting out, and by continuing to use and pay for the Comcast services for several years").

formed with Discord when she was a minor. *See Hastings*, 24 Cal. at 211 (1864) (California law); *Moreau*, 2025 WL 2161706, at *3 (Florida law). Likewise, under Alabama law—as potentially relevant to Doe E—"[a] party may not accept only those portions of a contract he or she finds advantageous to his or her position and reject others." *Wells Fargo Bank, N.A. v. Chapman*, 90 So. 3d 774, 780 (Ala. Civ. App. 2012) (noting that a minor "is not entitled to enforce portions that are favorable to him and at the same time disaffirm other portions that he finds burdensome"). Doe E cannot disaffirm her agreement with Discord while continuing to use services governed by that agreement. The same principles apply in Arkansas, where Doe B resides. *See Lamb*, 296 F. Supp. at 133 ("[T]he minor must either affirm or disaffirm the contract as a whole; he cannot accept the benefits and disaffirm the burdens.").[23]

**c. Does A, F, and H's Misrepresentations Defeat Disaffirmance.**

If the Court were to apply the substantive law of each Doe's home state, Does A, F, and H would face an additional bar to disaffirmance: Discord's business records show that each entered false birth dates representing that they were adults. Robbins Decl. ¶ 3 & App. at 1–2. These misrepresentations mattered. Not only did the misrepresentations induce Discord to permit these Plaintiffs to create and register accounts, they also induced Discord to not apply age restrictions to those accounts. *See supra* § Part II(B) (explaining Discord's system logic for collecting and applying age information). These misrepresentations bar Does A, F, and H from disaffirming their agreements with Discord based on state law principles of fraudulent misrepresentation.

**Doe A**: Doe A misrepresented that she was an adult in creating one of the three Discord accounts that she registered when she was a minor. *Compare* Robbins Decl. ¶ 3 (when user enters date of birth indicating that she is an adult, Discord does not store the reported month and year of birth in the user's account record), *with* App. at 1 (no date of birth stored in account record for user ID [redacted]).

[23] To date, Discord has been unable to determine whether Does F, G, and H have continued to use Discord after filing suit. *See generally* App. Discord reserves the right to take discovery to determine whether each Plaintiff is using an existing Discord account or any undisclosed accounts in the future, as necessary.

Florida law prohibits disaffirmance if the minor procured the contract through fraudulent misrepresentations to induce the formation of the contract.[24] *See Off the Wall*, 301 So. 3d at 284–86 (holding that "the infancy defense is unavailable to Plaintiff because the child intentionally misrepresented the information on the release and waiver agreement"); *see also Mossler Acceptance Co. v. Perlman*, 47 So. 2d 296, 298 (Fla. 1950) (estopping minor from rescinding sales contract because he fraudulently misrepresented age when entering the contract). Here, the four elements of fraudulent misrepresentation under Florida law are met: (1) Doe A made "a false statement concerning a material fact" in representing that she was 18 or older; (2) she knew she was not 18 and thus had "knowledge that the representation [was] false"; (3) she intended for Discord to act on her representation, inducing Discord to permit her to create an account without age restrictions; and (4) Discord relied on her misrepresentation to its detriment, including having to defend itself in this litigation. *Off the Wall*, 301 So. 3d at 284; *see also Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

**Doe F**: Doe F misrepresented that she was an adult in creating her three Discord accounts. *Compare* Robbins Decl. ¶ 3, *with* App. at 2 (no date of birth stored in account record for user IDs [redacted], [redacted], and [redacted]).

Under Texas law, equity prevents a minor who misrepresents her age in forming a contract from disaffirming the contract. *See Topheavy Studios, Inc. v. Doe*, 2005 WL 1940159, at *4 (Tex. Ct. App. Aug. 11, 2005) ("A minor who fraudulently misrepresents her age to induce another to enter into a contract cannot void the contract."). The three elements of fraudulent misrepresentation under Texas law are: "(1) the minor misrepresented her age, (2) the minor intended for the other party to rely on the misrepresentation, and (3) the party was injured as a result of its actual and justifiable reliance." *Id.* Here, all three elements are satisfied—Doe F entered a birthdate indicating she was an adult; she intended for Discord to permit her to create an account without age restrictions; and Discord formed a contract with her that it would not have otherwise, and now she

[24] Discord acknowledges that, under California law, a minor's misrepresentation of age does not prevent them from disaffirming. *See Williams v. Leon T. Shettler Co.*, 98 Cal. App. 282, 283 (1929).

is suing Discord after the company relied on her misrepresentation in allowing her to create an account. *See Evans v. Henry*, 230 S.W.2d 620, 621 (Tex. Civ. App. 1950).

**Doe H**: Doe H also misrepresented her age when creating her Discord account, entering a birthdate inducing Discord not to apply its age restrictions. *Compare* Robbins Decl. ¶ 3, *with* App. at 2 (no date of birth stored in account record for user ID [redacted]).

Georgia law estops "minors…from voiding contracts when those agreements are induced by fraud and deceit, such as when a false representation is made by a minor as to the minor's age." *Smith*, 849 S.E.2d at 742. Estoppel applies where the minor "has arrived at those years of discretion when a fraudulent intent could be reasonably imputed." *Id.* at 743. Doe H was nine years old when she created her account. Li Decl. ¶ 12. A nine-year old knows her own birthday and knows that the date she entered was not it. She entered a false birthdate for the purpose of circumventing Discord's age requirement, which is sufficient to impute the requisite intent under Georgia law. Discord further notes that Doe H's father maintained his own Discord account, *see id.*; Robbins Decl. ¶ 7, which independently supports that Doe H's use of Discord occurred with parental awareness and acquiescence.

In sum, the Court should not address Plaintiffs' purported disaffirmance because that issue is delegated to the arbitrator. But if the Court does choose to reach the merits, Plaintiffs' attempts to disaffirm should fail for the above reasons.

**C. The EFAA Does Not Apply.**

Plaintiffs contend that their arbitration agreements with Discord are "invalid and unenforceable" under the EFAA. *See* Doe A AC ¶ 4; Doe B AC ¶ 4; Doe E AC ¶ 4; Doe F ¶ 4; Doe G AC ¶ 4; Doe H AC ¶ 4. In 2022, Congress enacted the EFAA in the wake of the #MeToo movement to create a narrow exception to the FAA's broad mandate that courts enforce arbitration agreements. Under the EFAA exception, a plaintiff may render unenforceable a "predispute arbitration agreement" if their lawsuit "relates to" alleged "conduct constituting a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402(a). The EFAA exception does not apply here for four distinct reasons.

### 1. There Is No Predicate "Sexual Assault Dispute" to Which Any of Plaintiffs' Cases Relates.

Plaintiffs' claims do not fall within the EFAA's scope because none alleges conduct "constituting a … sexual assault ***dispute***" as contemplated by the EFAA. 9 U.S.C. § 402(a) (emphasis added).[25]

Each Plaintiff's dispute centers on allegations that Discord did not sufficiently screen user profiles; deploy adequate content monitoring and filtering technologies on its platform; take satisfactory action to find and remove profiles and messages posted by predators who exploited Discord's neutral communication tools to abuse Plaintiffs; warn users about the risks of encountering dangerous content; or conform Discord's content moderation practices to what Plaintiffs say Discord's statements about its content moderation goals required. *See, e.g.*, Common Pleading ¶¶ 1–9. None of the allegations turns on whether a sexual assault occurred. Consider this analogy: if a plaintiff sued the manufacturer of his car after a drunk driver struck him, the existence of drunk driving in the factual background would not create a "drunk driving dispute" between the plaintiff and the automaker. The automaker's liability would turn on the vehicle's allegedly dangerous condition, not the drunk driver's conduct. So too here: Discord's alleged liability turns on the conditions of its messaging service, not the predators' criminal acts. The presence of third-party criminal conduct in the factual background does not transform Plaintiffs' product liability and negligence claims into a "sexual assault dispute" with Discord.

Courts have recognized that the EFAA "was primarily intended to preclude arbitration in employment disputes" or similar disputes where a consumer was sexually assaulted at a business. *Farnham v. Grindr, LLC*, 2025 WL 3062698, at *2 (M.D. Fla. Nov. 3, 2025) (EFAA inapplicable to user's suit based on injuries from dating app's alleged failure to screen other users); *M.D. v. Verizon Commc'ns Inc.*, 2025 WL 2712831, at *2 (E.D.N.C. Sep. 23, 2025) (EFAA inapplicable to user's suit alleging that Verizon disclosed her phone number to a stalker who then sexually harassed her). The Ninth Circuit recently articulated the same principle: "Both the text of the

[25] Discord does not expect Plaintiffs to argue that their allegations satisfy the definition of "sexual harassment dispute," which the EFAA defines to mean "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4).

federal statute and its underlying purpose make clear that Congress intended to afford victims of ***workplace*** sexual assault and sexual harassment a genuine choice whether to pursue their claims in a court of law, notwithstanding a preexisting agreement to arbitrate." *Ding v. Structure Therapeutics*, --- F.4th ---, 2026 WL 2420555, at *2 (9th Cir. Aug. 19, 2026) (emphasis added) (dicta).

This interpretation of the statute accords with legislative history. The House Report accompanying the Act's passage explained that the legislation addresses circumstances "[w]hen an employee who is subject to a forced arbitration clause sues after being raped, assaulted, or harassed at work" or "a consumer who signs an arbitration clause and is assaulted at a business." H. Rep. No. 117-234 at 3 (2022), https://www.congress.gov/committee-report/117th-congress/house-report/234/1?outputFormat=pdf. As an example of the type of consumer arbitration the statute would curb, the House Report focuses on customers of a massage chain who were sexually assaulted by its employees during their appointments. *Id.* at 8–9. Further, the statute garnered bipartisan support only after its sponsors in the Senate provided assurance that the law would be "narrowly interpreted." 168 Cong. Rec. S625 (2022) (Sen. Ernst). A review of the legislative history therefore underscores that the EFAA does not broadly abrogate arbitration where, as here, there are no allegations that the defendant sexually assaulted the plaintiff or exercised control over a third party who did (e.g., an employee), or where most of the harm occurred through internet communications.[26] And construing the statute broadly would defy the rule of construction that exceptions to the FAA's pro-arbitration mandate must receive a "narrow construction." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001).

### 2. Does B, G, and E Have Not Alleged Conduct Constituting "Sexual Assault."

The EFAA defines "sexual assault dispute" as one involving a "nonconsensual sexual act or sexual contact," relying on the definitions of those terms as set forth in 18 U.S.C. § 2246.

[26] Outside the context of online communications services, one trial court "disagree[d]" with *Verizon* and *Grindr*, but that case is distinguishable. *Doe v. Int'l Student Exch., Inc.*, 2026 WL 2110889, at *2 (C.D. Ill. July 22, 2026) (EFAA applied to claims arising from defendant program's recruiting and overseeing of host family that was accused of sexually assaulting exchange student).

9 U.S.C. § 401(3). Under § 2246, a "sexual act" is defined to include four types of physical contact between specific body parts. 18 U.S.C. § 2246(2). The statute further defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(3).

Discord does not minimize the gravity of what is alleged. But the EFAA requires specific statutory predicates, and in several of these cases, the allegations do not meet the statute's definition of nonconsensual "sexual act" or "sexual contact."

**Doe B**: Doe B alleges: "The predator sent Plaintiff graphic messages, sent sexually explicit images of himself, and ultimately convinced Plaintiff to send sexually explicit images of himself to the predator." Doe B AC ¶ 15. This does not constitute a "sexual act" under § 2246(2), which requires physical contact between specific body parts. No in-person contact is alleged. Nor do the allegations constitute "sexual contact," which § 2246(3) defines as intentional touching of enumerated body parts.

**Doe G**: The same rationale applies to Doe G, who alleges:

> On Discord, the predator sent Plaintiff explicit messages and coerced Plaintiff into transmitting sexually explicit images of herself. During a telephone call, the predator directed Plaintiff to touch herself sexually. She stated that she did not want to, but succumbed to his pressure and transmitted more nude photos of herself.

Doe G AC ¶ 13. These allegations do not establish a "sexual act" under § 2246(2), which requires in-person physical contact. Doe G and the predator never met. The allegations also do not satisfy the requirements of nonconsensual "sexual contact," which § 2246(3) defines to require intentional touching of specifically enumerated body parts. Doe G's allegations are that the predator "directed Plaintiff to touch herself sexually" and that she "transmitted more nude photos of herself." Doe G AC ¶ 13. That language does not identify nonconsensual touching of any body part enumerated in the statute. Congress chose to define "sexual contact" with specificity, and the Court should apply the definition as written. *See* 18 U.S.C. § 2246(3) (requiring "touching … of the genitalia, anus, groin, breast, inner thigh, or buttocks").

**Doe E**: Doe E alleges an attempted sexual assault that was prevented by law enforcement. Doe E AC ¶ 16. The complaint does not allege that any penetration or touching of the specific body parts enumerated in § 2246(2) or (3) occurred. Congress defined these terms with precision and did not extend them to attempted acts. The Court should apply the statute as written.

#### 3. The EFAA Does Not Void Postdispute Arbitration Agreements, and Does A, B, and E Formed New Agreements After Filing Suit.

The EFAA applies only to "predispute arbitration agreement[s]," 9 U.S.C. § 402(a), meaning "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." *Id.* § 401(1). By limiting its scope to 'predispute' agreements, Congress preserved the enforceability of arbitration agreements formed after a dispute has arisen.

Does A, B, and E formed new arbitration agreements with Discord ***after*** they had sued the company. Doe A filed suit on April 21, 2025,[27] but created three new Discord accounts thereafter, forming a new postdispute arbitration agreement with Discord each time. *See supra* § II(A) (registering new Discord account requires new agreement to Terms); § II(C)(1) (new accounts created on May 2, 2025, May 16, 2025, and September 9, 2025). Doe A also formed another postdispute arbitration agreement with Discord by agreeing to a Terms of Service update on September 29, 2025. *See supra* § II(C)(1). Doe B filed suit on September 12, 2025,[28] but created a new Discord account on October 1, 2025, thereby forming a new postdispute agreement with Discord. *See supra* § II(C)(2). He also formed another postdispute agreement with Discord by agreeing to a September 29, 2025, Terms of Service update for one of his earlier accounts. *See id.* And Doe E filed her complaint July 9, 2025,[29] but formed additional postdispute agreements by accepting Terms updates for two of her accounts on October 11, 2025, and August 27, 2026. *See supra* § II(C)(3). None of these postdispute arbitration agreements fall within the limited "predispute" scope of the EFAA. 9 U.S.C. § 402(a).

---

[27] *See supra* n.21.

[28] *See id.*

[29] *See id.*

The EFAA's statutory text and basic principles of contract law confirm that the postdispute arbitration agreements require these Plaintiffs to arbitrate their claims. Based on the dates they created their new accounts or agreed to the Terms of Service update, Does A, B, and E—after filing their lawsuits—each agreed to the 2024 and 2025 versions of Discord's Terms.[30] The 2025 Terms state:

> This Agreement to Arbitrate is intended to be interpreted broadly, and it applies to all Disputes between the Parties, including: (1) claims that arose, were asserted, or involve facts occurring before the existence of this Agreement to Arbitrate or any prior agreement; (2) claims that may arise after the termination of this Agreement to Arbitrate. This Agreement to Arbitrate supersedes any prior arbitration agreement between Discord and you.

2025 Terms at 14. The 2024 Terms contained materially identical language. 2024 Terms at 10.

Under California law, arbitration agreements are contracts. *Salgado v. Carrows Rests., Inc.*, 33 Cal. App. 5th 356, 359 (2019).[31] They are therefore subject to basic and long-settled principles of contract law: "When language in a contract is clear and explicit, that language governs interpretation." *Id.* at 359–60 (quoting *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781, 789 (2016)). The 2024 and 2025 Terms apply to Doe A, B, and E's lawsuits against Discord. The lawsuits are each "Disputes" between Plaintiffs and Discord "that arose, were asserted, or involve facts occurring before the existence of [each] Agreement to Arbitrate." 2025 Terms at 14; *see* 2024 Terms at 10. As a result, even if the EFAA applied to the types of claims Plaintiffs bring against Discord, the arbitration agreements that these Plaintiffs formed with Discord in 2024 and 2025 are postdispute agreements that cover their claims and fall outside the limited "predispute" scope of the EFAA. 9 U.S.C. §§ 401(1); 402(a).[32]

---

[30] The 2024 Terms took effect on April 15, 2024, while the 2025 Terms took effect on September 29, 2025. Robbins Decl. ¶ 14.

[31] The same is true under any other potentially applicable state law. *See Sudbury v. Konsker*, 430 So. 3d 117, 122 (Fla. Dist. Ct. App. 2026) (arbitration agreements must be interpreted in accordance with principles of contract); *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 745–46 (Ala. 2000) (same); *Kellco Custom Homes, Inc. v. Williams*, 2025 Ark. App. 483, 4 (2025) (same).

[32] Does B and E may argue that the Court's appointment of guardians *ad litem* to represent them in this litigation indicates that they lacked capacity to enter into a postdispute arbitration agreement with Discord. That argument lacks merit because both Plaintiffs formed postdispute arbitration

**D. The Court Should Stay These Proceedings Pending Arbitration.**

Where a dispute is subject to arbitration under the terms of a written agreement, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) ("[t]he FAA's structure and purpose confirm that a stay is required").

## V. CONCLUSION

For these reasons, Discord respectfully requests that the Court grant its motion to compel arbitration as to the six bellwether cases and stay their proceedings pending arbitration.

Dated: September 22, 2026

By: */s/ Ambika Kumar*
Ambika Kumar
Adam S. Sieff
Xiang Li
Marcy Blattner Micale

*Attorneys for Defendant*
DISCORD INC.

---

agreements with Discord before their guardians *ad litem* were appointed. *See* § II(C)(2) (Doe B Complaint filed September 12, 2025); § II(C)(3) (Doe E Complaint filed July 9, 2025); Dkt No. 216 (Consolidated Ex-Parte Application for Appointment of Guardians *Ad Litem* dated March 11, 2026); Dkt. No. 250 (March 30, 2026 order granting Consolidated Application and appointing guardians *ad litem*).