COOLEY LLP
Tiana Demas (*pro hac vice*)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598
Email: tdemas@cooley.com

Max A. Bernstein (305722)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222
Email: mbernstein@cooley.com

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL No. 3166<br><br>Case No. 3:25-md-03166-RS |
| This document relates to:<br><br>3:25-cv-03520<br>3:25-cv-10982<br>3:26-cv-01681<br>3:25-cv-10812<br>3:25-cv-10607<br>3:25-cv-07291 | **DEFENDANT ROBLOX CORPORATION'S NOTICE OF MOTION AND OMNIBUS MOTION TO COMPEL ARBITRATION AS TO BELLWETHER PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: January 13, 2027<br>Time: 9:30 a.m.<br>Courtroom: 12, 19th Floor<br>Judge: Hon. Richard Seeborg<br><br>**[FILED CONCURRENTLY WITH DECLARATION OF RONITA JIT IN SUPPORT; DECLARATION OF ARGEMIRA FLÓREZ IN SUPPORT]** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

## TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION .... 1
MEMORANDUM OF POINTS AND AUTHORITIES .... 1
I. INTRODUCTION .... 1
II. BACKGROUND .... 2
A. Roblox .... 2
B. Plaintiffs and Their Roblox Accounts .... 3
C. Plaintiffs Agreed to Roblox's Terms .... 4
1. Roblox Users Must Agree to Terms at Account Creation .... 4
2. To Continue Using Roblox, Users Must Agree to Updated Terms .... 7
3. Roblox Users Must Agree to the Terms When They Buy Robux or Redeem Gift Cards 9
4. Plaintiffs Repeatedly Agreed to the Terms .... 12
D. The Terms' Continued Use and Parental Assent Clauses .... 17
1. The Terms Make Clear That Continued Use Constitutes Assent .... 17
2. Plaintiffs' Responsible Adults Agreed to the Terms on Their Behalf .... 17
E. The Terms' Mandatory Arbitration Agreement and Delegation Clause .... 18
1. The Terms Clearly Notify Users of Mandatory Arbitration .... 18
2. The Terms Delegate Questions of Arbitrability to the Arbitrator .... 19
III. LEGAL STANDARD .... 20
IV. ARGUMENT .... 21
A. Each Plaintiff Formed an Agreement with Roblox .... 21
1. Plaintiffs Agreed to the Terms at Account Creation .... 23
2. Plaintiffs Agreed to Terms Updates .... 24
3. Plaintiffs Agreed to the Terms by Redeeming Robux .... 25
4. Plaintiffs Agreed to the Terms by Continuing to Use Roblox .... 26
5. Plaintiffs' Responsible Adults Agreed to the Terms on Their Behalf .... 27
B. The Arbitration Agreement Delegates Arbitrability .... 29
C. Any Purported Disaffirmance of the Terms Is Immaterial .... 31
1. Disaffirmance Is Delegated to the Arbitrator .... 31
2. Plaintiffs' Continued Use Defeats Any Claimed Disaffirmance .... 32
3. Plaintiffs Cannot Disaffirm Their Responsible Adults' Assent to Terms .... 33
4. Plaintiff A Agreed to the Terms Again After Reaching Majority .... 34
D. The EFAA Does Not Apply .... 34
1. None of the Plaintiffs' Claims "Relate to" a "Sexual Assault Dispute" Within the Meaning of the Statute .... 35
2. At Least Plaintiffs A, B, C, D, and H Agreed to Post-Dispute Arbitration Agreements 37
3. Plaintiffs B, C, and G Have Not Alleged a "Sexual Assault Dispute" .... 38
V. CONCLUSION .... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. A. v. Roku, Inc.*,
2026 WL 1349064 (N.D. Cal. May 14, 2026) .......... 29

*A.C. by and through Carbajal v. Nintendo of Am. Inc.*,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021) .......... 31

*Antonetti v. Activision Blizzard, Inc.*,
764 F. Supp. 3d 1309 (N.D. Ga. 2025) .......... 32

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 34

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) .......... 25

*Babu v. Petersen*,
4 Cal.2d 276 (1935) .......... 32

*Baumeister v. Nouveau Essentials Mktg., LLC*,
2026 WL 2093903 (N.D. Cal. July 21, 2026) .......... 24

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 21, 23, 25

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......... 21, 29

*Chin v. Thumbtack Inc.*,
2026 WL 807276 (N.D. Cal. Mar. 24, 2026) .......... 24, 25

*Collett v. Ancestry.com DNA LLC*,
2019 WL 13253477 (N.D. Cal. Dec. 19, 2019) .......... 30, 31

*Combs v. Netflix, Inc.*,
180 F.4th 1201 (9th Cir. 2026) .......... 35

*Courtright v. Epic Games*,
766 F. Supp. 3d 873 (W.D. Mo. 2025) .......... 22

*Cross v. Carnes*,
132 Ohio App. 3d 157 (1998) .......... 29

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) .......... 36, 37

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) .......... 33

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*DB Acoustics, Inc. v. Great River Contractors, L.L.C.*,
784 N.W.2d 201 (Iowa Ct. App. 2010) .......... 29

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997) .......... 36

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015) .......... 32, 33

*Ding v. Structure Therapeutics, Inc.*,
2026 WL 2420555 (9th Cir. Aug. 19, 2026) .......... 37

*Dubin v. United States*,
599 U.S. 110 (2023) .......... 36

*Dunn v. Activision Blizzard, Inc.*,
749 F. Supp. 3d 976 (E.D. Ark. 2024) .......... 32

*E.A.R.R. v. Roku, Inc.*,
2026 WL 369238 (C.D. Cal. Feb. 6, 2026) .......... 28

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 20

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 26

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
461 F. App'x 630 (9th Cir. 2011) .......... 30

*Farnham v. Grindr, LLC*,
2025 WL 3062698 (M.D. Fla. Nov. 3, 2025) .......... 35, 36, 37

*French v. Roblox Corp.*,
2026 WL 2195890 (E.D. Pa. July 29, 2026) .......... 28, 29

*G.G. v. Roblox Corp.*,
2026 WL 1615999 (N.D. Cal. June 5, 2026) .......... 22, 25

*G.G. v. Valve Corp.*,
2017 WL 1210220 (W.D. Wash. Apr. 3, 2017) .......... 33

*Garcia v. Roblox Corp.*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) .......... 24, 33

*Glob. Travel Mktg., Inc. v. Shea*,
908 So. 2d 392 (Fla. 2005) .......... 29

*Hawkins v. CMG Media Corp.*,
2024 WL 559591 (N.D. Ga. Feb. 12, 2024) .......... 22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ........ 29

*Hohe v. San Diego Unified Sch. Dist.*,
224 Cal. App. 3d 1559 (1990) ........ 33

*Holbrook v. Louisiana-Pac. Corp.*,
2015 WL 1291534 (N.D. Ohio Mar. 23, 2015) ........ 32

*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026) ........ 26

*J.A. through Allen v. Microsoft Corp.*,
2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) ........ 32

*Jiajie Zhu v. Jing Li*,
2019 WL 6050961 (N.D. Cal. Nov. 15, 2019) ........ 27

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 679033 (E.D. Ark. Mar. 3, 2025) ........ 32

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 864824 (E.D. Ark. Mar. 19, 2025) ........ 22

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) ........ 22, 31

*K.T. v. A Place for Rover*,
2023 WL 7167580 (E.D. Pa. Oct. 31, 2023) ........ 39

*Kamath v. Coinbase, Inc.*,
2024 WL 950163 (N.D. Cal. Mar. 5, 2024) ........ 26

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 21, 22, 23

*Kingston v. Ameritrade, Inc.*,
302 Mont. 90 (2000) ........ 22

*Lamb v. Midwest Mut. Ins. Co.*,
296 F. Supp. 131 (W.D. Ark. 1969) ........ 32

*Langstraat v. Midwest Mut. Ins. Co.*,
217 N.W.2d 570 (Iowa 1974) ........ 32

*Lawrence v. Finicity Corp.*,
2025 WL 547375 (9th Cir. Feb. 19, 2025) ........ 23

*Lee v. Ticketmaster LLC*,
817 F. App'x 393 (9th Cir. 2020) ........ 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ligeri v. Amazon.com Inc.*,
2024 WL 3638241 (D. Conn. Aug. 2, 2024) .......... 27

*M.D. v. Verizon Communications, Inc.*,
2025 WL 2712831 (E.D.N.C. Sep. 23, 2025) .......... 35, 36, 37

*Martin v. Stewart Motor Sales*,
73 N.W.2d 1 (Iowa 1955) .......... 22

*Massage Envy Franchising, LLC v. Doe*,
339 So. 3d 481 (Fla. Dist. Ct. App. 2022) .......... 22

*Merritt v. Jowers*,
184 Ga. 762 (1937) .......... 32

*Moreau v. Feld Ent., Inc.*,
2025 WL 2161706 (M.D. Fla. July 30, 2025) .......... 32

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) .......... 23

*Muller v. CES Credit Union*,
832 N.E.2d 80 (Ohio Ct. App. 2005) .......... 22

*N.A. v. Nintendo of Am. Inc.*,
2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) .......... 31

*Needleman v. Golden 1 Credit Union*,
474 F. Supp. 3d 1097 (N.D. Cal. 2020) .......... 29, 30

*Nerdwallet, Inc. v. Fid. Info. Servs., LLC*,
828 F. Supp. 3d 1019 (N.D. Cal. 2026) .......... 21

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 20, 22, 23

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 23, 24, 25

*Off the Wall & Gameroom LLC v. Gabbai*,
301 So. 3d 281 (Fla. Dist. Ct. App. 2020) .......... 22

*Page v. GameStop Corp.*,
2025 WL 637441 (6th Cir. Feb. 27, 2025) .......... 22

*Parrent v. Midway Toyota*,
626 P.2d 848 (Mont. 1981) .......... 22

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**


*Peeler v. Rocky Mountain Log Homes Canada, Inc.*, 2018 MT 297 (2018) ... 29

*Plaza Freeway Ltd. P'ship v. First Mountain Bank*, 81 Cal. App. 4th 616 (2000) ... 27

*Q.R. by & through Doe v. Multi Media LLC*, 823 F. Supp. 3d 1280 (D. Kan. 2026) ... 32

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ... 20, 29

*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996) ... 20

*S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614 (N.D. Cal. 2025) ... 29

*S.T.G. by and through Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200 (S.D. Cal. 2024) ... 31

*Shea ex rel. Shea v. Glob. Travel Mktg., Inc.*, 2002 WL 215330 (Fla. Cir. Ct. Feb. 5, 2002) ... 33

*Shular v. United States*, 589 U.S. 154 (2020) ... 35

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ... 34

*Slaviero v. Baby List, Inc.*, 2026 WL 1097746 (N.D. Cal. Apr. 22, 2026) (Seeborg, J.) ... 24

*Smith v. Adventure Air Sports Kennesaw, LLC*, 849 S.E.2d 738 (Ga. Ct. App. 2020) ... 22

*Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23 (2007) ... 29

*In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021) ... 22, 31

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991) ... 31

*Tomlin v. Roblox Corp.*, 2026 WL 1412606 (E.D. Pa. May 20, 2026) ... 28, 33

*Trout v. Comcast Cable Commc'ns, LLC*, 2018 WL 4638705 (N.D. Cal. Mar. 15, 2018) ... 26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Whalen v. Facebook, Inc.*,
2022 WL 19934419 (N.D. Cal. Apr. 11, 2022) ........ 22

*Whittaker v. Roblox Corp.*,
2026 WL 2640984 (D. Colo. Sep. 2, 2026) ........ 26, 33

*Witt v. Nation-Wide Horse Transp., Inc.*,
197 F. Supp. 3d 1146 (S.D. Iowa 2016) ........ 22

*Wynn-Williams v. Meta Platforms, Inc.*,
2026 WL 2621253 (N.D. Cal. Sep. 4, 2026) ........ 34

*Ziboukh v. Whaleco, Inc.*,
795 F. Supp. 3d 349 (E.D.N.Y. 2025) ........ 23, 32

*Zivich v. Mentor Soccer Club, Inc.*,
1997 WL 203646 (Ohio Ct. App. Apr. 18, 1997) ........ 33

**Statutes**

9 U.S.C.
§ 2 ........ 20
§ 3 ........ 21
§ 4 ........ 21
§ 401 ........ 35, 38
§ 402 ........ 34, 35, 36, 38

18 U.S.C. § 2246(2) ........ 38

Cal. Fam. Code § 6700 ........ 22

Ga. Code Ann. § 13-3-20 ........ 22

Iowa Code § 599.2 ........ 22

Mont. Code Ann. § 41-1-302 ........ 22

**Other Authorities**

168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) ........ 37

FedArb R. 5.02 ........ 20, 30

H.R. Rep. No. 117-234 (2022) ........ 37

Restatement (Second) of Contracts § 380 ........ 32

Williston on Contracts (4th ed. 2001) ........ 29, 32

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that Defendant Roblox Corporation hereby moves this Court for an order compelling Plaintiffs in the above-captioned cases to arbitration and staying their actions. This motion is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the pleadings and other papers filed, any oral argument, the evidence and testimony presented to this Court, and any other such matters that the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' claims must be compelled to arbitration because they agreed to Roblox's Terms of Use containing a mandatory arbitration agreement;

2. Whether the arbitration agreement's delegation clause delegates all further questions to the arbitrator; and

3. Whether Plaintiffs have any other defenses to arbitration that are not delegated to the arbitrator.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The six Plaintiffs whose cases were selected for bellwether motions to compel ("Plaintiffs") seek to hold Roblox liable for the misconduct of third-party perpetrators who allegedly steered Plaintiffs to other online platforms to share explicit images or plan in-person meetings. The conduct Plaintiffs describe is abhorrent, and Roblox does not condone it. Although Roblox cannot be held liable for the perpetrators' abuse of its services, this merits question must be decided by an arbitrator, not the Court. That is because Plaintiffs (and their parents) repeatedly agreed to Roblox's terms of use ("Terms"), which contain a binding arbitration agreement. Plaintiffs assented to the Terms when they willingly created their accounts, purchased Roblox's digital currency, redeemed Roblox gift cards, and agreed to Terms updates even after commencing litigation. When Plaintiffs agreed to the Terms, they confirmed that their parents or guardians had also reviewed and agreed to the Terms on their behalf. Plaintiffs and their parents are bound by their contracts.

The Terms delegate all questions of arbitrability to the arbitrator. Under binding Supreme

Court precedent, this Court's inquiry is limited to whether Plaintiffs formed an agreement to arbitrate and whether that agreement delegated all further questions of arbitrability to the arbitrator. The answer to both questions is yes, so the Court must compel arbitration.

There is no merit to the expected arguments that Plaintiffs disaffirmed the Terms or that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") bars arbitration. Because disaffirmance is a matter of contract enforcement, not formation, this issue is delegated to the arbitrator. Regardless, five of the six Plaintiffs voluntarily continued using Roblox after purporting to disaffirm, one re-assented to the Terms after reaching adulthood, and every Plaintiff represented that a parent or guardian consented to the Terms on their behalf, defeating any disaffirmance argument. And the EFAA—passed amidst the #MeToo movement to prevent persons alleged to have committed sexual harassment or sexual assault (and their employers) from compelling victims to arbitration—does not apply here. As multiple courts have held, the law does not reach disputes against communications services like Roblox that are not alleged to have committed sexual harassment or assault and have no control over the alleged wrongdoers. Additionally, several Plaintiffs have not alleged any underlying "sexual contact" or "sexual act" within the meaning of the EFAA. Finally, the EFAA does not reach post-dispute agreements to arbitrate, which were formed when Plaintiffs ***again*** agreed to the Terms during this litigation. The Court should enforce the parties' contractual agreement to arbitrate their disputes.

## II. BACKGROUND

### A. Roblox

Roblox is a popular online gaming platform with more than 100 million daily active users.[1] Roblox provides uniform tools for users to create virtual "experiences" where other users can play, learn, and communicate with each other, subject to current age-based limitations.[2] There are over

---

[1] Roblox, *Metrics for Brands & Developers on Roblox*, https://brands.roblox.com/metrics-insights (last visited Sep. 22, 2026).

[2] Roblox, *How to Complete an Age Check on Roblox*, https://about.roblox.com/age-estimation (last visited Sep. 22, 2026).

40 million user-created Roblox experiences, ranging from sports games[3] to educational modules built by teachers, museums, and healthcare providers.[4] K-12 schools and universities use Roblox for virtual tours, coding classes, and school clubs,[5] while mental health professionals use Roblox to deliver counseling and therapy to teens.[6] Thousands of other users make Roblox experiences that are communal, competitive, artistic, or simply fun. Roblox requires all users to create an account before using Roblox's services, and all users must agree to Roblox's Terms at account creation.

### B. Plaintiffs and Their Roblox Accounts

Plaintiffs allegedly used Roblox to communicate with other Roblox users before migrating to platforms such as Discord, Instagram, or Snapchat, which—unlike Roblox—allow users to share images and videos through chat functionality. ECF No. 395 ¶¶ 4, 9. Plaintiffs' tort claims are based on their communications with these third-party users. *Id.*; *see also* ECF No. 399 ¶¶ 32–132, ECF No. 396 ¶¶ 15–115; ECF No. 398 ¶¶ 19–119; ECF No. 403 ¶¶ 17–117; ECF No. 432 ¶¶ 16–126; ECF No. 433 ¶¶ 18–118.

For the Court's convenience, Roblox and Discord use common identifiers for the Plaintiffs whose cases were selected for bellwether motions to compel arbitration:

| Case No. | Identifier | Roblox Motion | Discord Motion |
|---|---|---|---|
| 3:25-cv-03520 | Plaintiff A | X | X |

[3] Roblox, *Football Fusion 3*, https://www.roblox.com/games/82866880824588/Football-Fusion-3 (last visited Sept. 22, 2026).

[4] Roblox, *Chem Lab Escape*, https://www.roblox.com/games/14020402613/Chem-Lab-Escape (last visited Sept. 22, 2026); The Met, *Enter the Metaverse: Introducing Replica*, https://www.metmuseum.org/perspectives/met-metaverse-replica (Aug. 3, 2023); Bea Mitchell, *Boston's Museum of Science Launches Educational Game on Roblox*, Blooloop (Dec. 14, 2022), https://blooloop.com/museum/news/museum-of-science-boston-roblox-metaverse-game/.

[5] NMI, *RoblUGA*, https://nmi.cool/blog/robluga/ (May 5, 2023); Sydney Boswell, *Building Blox for new ideas*, McHenry Messenger (Dec. 18, 2025), https://themchenrymessenger.com/building-blox-for-new-ideas/; StemSchool Highlands Ranch, *Enrichment*, https://www.stemk12.org/student-life/enrichment (last visited Sep. 22, 2026) (public charter school offers "Roblox Club" for kindergarten through fifth-grade students as part of enrichment curriculum).

[6] Ad Council, *First-of-Its-Kind Digital Experience Supports Teen Mental Health Through Roblox Gameplay* (Mar. 5, 2025), https://www.adcouncil.org/news-insights/press-releases/first-of-its-kind-digital-experience-supports-teen-mental-health-through-roblox-gameplay.

| Case No. | Identifier | Roblox Motion | Discord Motion |
|---|---|---|---|
| 3:25-cv-10982 | Plaintiff B | X | X |
| 3:26-cv-01681 | Plaintiff C | X | |
| 3:25-cv-10812 | Plaintiff D | X | |
| 3:25-cv-05753 | Plaintiff E | | X |
| 3:26-cv-00810 | Plaintiff F | | X |
| 3:25-cv-10607 | Plaintiff G | X | X |
| 3:25-cv-07291 | Plaintiff H | X | X |

Based on the records exchanged through the Court-ordered user account information exchange ("UAIO") process (ECF No. 290), the earliest creation date for a Plaintiff's Roblox account is January 6, 2019. (Declaration of Ronita Jit ("Jit Decl.") ¶ 6.) Most Plaintiffs continued to use Roblox and again agreed to Roblox's Terms even after filing their complaints. Roblox refers to the period between January 6, 2019 and the present as the "Relevant Period."

### C. Plaintiffs Agreed to Roblox's Terms

Roblox users affirmatively agree to the Terms (i) at account creation; (ii) each time the Terms are materially updated; and (iii) when they purchase Robux online or redeem physical or digital gift cards for Robux ("Gift Cards"), Roblox's digital currency. Plaintiffs agreed to the Terms on many occasions, in many ways. Throughout the Relevant Period, the Terms have contained a mandatory arbitration provision.

#### 1. Roblox Users Must Agree to Terms at Account Creation

Since the beginning of the Relevant Period, Roblox's account registration page ("Registration Page") has required new users to click to agree to the Terms. (Jit Decl. ¶¶ 14–15, 18.) Users can access the Registration Page from a web browser ("Web") or through the Roblox app ("App"). (*Id.* ¶ 14.) Whichever method is used, and throughout the Relevant Period, the Registration Page has clearly explained that the user agrees to the Terms when clicking a button to continue with account creation.

All versions of the Web Registration Page during this time frame have stated in prominent

text "[b]y clicking Sign Up, you are agreeing to the Terms of Use." (Jit Decl. ¶¶ 16–17.) The phrase "Terms of Use" appeared in a different color to indicate it was a hyperlink which, if clicked, would take the user to the then-effective Terms. (*Id.*) From approximately August 2, 2020 forward, the Web Registration Page has specifically noted that the Terms included an arbitration provision. (*Id.* ¶ 17.)[7] The assent language on the Web Registration Pages in effect when Plaintiffs created their accounts is shown as Figures 1–2 below. (*See* Jit Decl., ¶¶ 16–17, Exs. 7–8.)




***Figure 1: Web Registration Page from January 6, 2019 to August 2, 2020***

///

[7] On or about December 4, 2025, the Web Registration Page assent language was further modified. However, Plaintiffs have not disclosed any Roblox account that was created during this period.




***Figure 2: Web Registration Page from August 2, 2020 to December 4, 2025***

Throughout the Relevant Period, the App Registration Page also has contained prominent language making clear a user is agreeing to the Terms by taking an action—and has always linked to the Terms. (Jit Decl. ¶ 18; *see also id.* ¶¶ 20–27.) For example, the App Registration Page in effect in May 2023 stated: "By clicking Sign Up, you are agreeing to the Terms of Use including

the arbitration clause and you are acknowledging the Privacy Policy." The word "Terms" appeared just below in blue underlined text and hyperlinked to the Terms, as shown in Figure 3 below. (*Id.* ¶ 24, Ex. 18.)




***Figure 3: App Registration Page from May 2023***

**2. To Continue Using Roblox, Users Must Agree to Updated Terms**

Roblox periodically updates its Terms, and users must affirmatively agree to material updates to continue using Roblox. (Jit Decl. ¶ 28.) Since at least August 2023, Roblox has obtained

assent to updated terms through two steps: First, approximately one month before the update, Roblox sent a notification message to all users' Roblox accounts about the update. (*Id.* ¶¶ 29–30, Ex. 23.) Second, users encountered a pop-up blocker card ("Blocker Card") when they next accessed their accounts, notifying them of the update and requiring re-assent to the Terms to continue using Roblox. (*Id.* ¶ 31.) An example of a Blocker Card from June 30, 2025 is shown below. (*Id.* ¶ 33, Ex. 25.) From February 2024 to the present, the Blocker Card has contained the same language. (*Id.* ¶¶ 32, 34.)




***Figure 4: Blocker Card***

The Blocker Card makes clear that by clicking "I Agree," the user is agreeing to the updated Terms—and the "Terms of Use" hyperlinks to the updated Terms. Since February 2024, the Blocker Card has instructed the user, if a minor, to show the updated Terms to a parent or guardian (a "Responsible Adult"). (Jit Decl. ¶¶ 31–35.) This pop-up is referred to as a "blocker" card because Roblox's functionality is blocked until the user clicks "I Agree." (*Id.* ¶¶ 31, 36.)

### 3. Roblox Users Must Agree to the Terms When They Buy Robux or Redeem Gift Cards

"Robux" is Roblox's official digital currency.[8] Though Roblox is free to join and play, some gameplay enhancements require Robux to acquire virtual content like clothes or accessories for avatars, or to access certain experiences.[9] (Jit Decl. ¶¶ 8, 37.)

***Robux Online:*** Users agree to the Terms when they buy Robux directly through their accounts. (Jit Decl. ¶ 38.) From the start of the Relevant Period until January 2023, these purchases were processed exclusively by Xsolla. (*Id.*) An example of the Xsolla purchase page as it would have appeared on a web browser is shown in Figure 5 below. (*Id.* ¶ 38, Ex. 29.)




***Figure 5: Robux Purchase Flow (Xsolla)***

[8] Roblox, *What is Roblox?*, https://about.roblox.com/what-is-roblox (last visited Sep. 22, 2026); Roblox, *Roblox Terms of Use*, https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use (last visited Sep. 22, 2026).

[9] Roblox, *What is Roblox?*, https://about.roblox.com/what-is-roblox (last visited Sep. 22, 2026).

In 2023, Roblox began also using Stripe as a payment processor. An example of the Stripe purchase flow is shown in Figure 6 below. (Jit Decl. ¶¶ 39–40, Exs. 30, 31.)




***Figure 6: Robux Purchase Flow (Stripe)***

While elements of these pages have changed over time, the Web purchase flow has always disclosed that clicking "pay" or an equivalent button constitutes agreement to the Terms—and has linked to the Terms then in effect. (Jit Decl. ¶ 41.) From at least February 24, 2021 to December 4, 2024, the App purchase flow likewise required the user to assent to the Terms in similar fashion. (*Id.* ¶ 42.)[10]

[10] The layout of the App purchase flow changed on December 4, 2024. (Jit Decl. ¶ 43.) Because assent through App purchases after this date is unnecessary to resolve this motion, Roblox does not rely on in-app purchases made after that date.

***Redemption:*** The Robux redemption flow, used to redeem Gift Cards for Robux, has from August 18, 2021 to the present required affirmative agreement to the Terms by clicking "Redeem." (Jit Decl. ¶¶ 44–45.) Each Gift Card has a redemption code that can be redeemed by visiting www.roblox.com/redeem on the Web, or by selecting "redeem codes" on supported versions of the App ("Redemption Page"). (*Id.* ¶¶ 44–51, Exs. 33–35, 37–39.) The user must be logged into a Roblox account to redeem Gift Cards. (*Id.* ¶ 44.) An example of the Gift Card Redemption Page, as it appeared between August 18, 2021 and September 9, 2021, is shown in Figure 7 below. (*Id.* ¶ 46, Ex. 33.)




***Figure 7: Redeem Robux Page***

As with the purchase flow, the redemption flow required users to click a button—"Redeem"—affirming that they agreed to the hyperlinked Terms. (*Id.* ¶¶ 44–51.) Minors represented that a Responsible Adult also agreed to the Terms. (*Id.*) This assent language has remained substantially the same since August 18, 2021, and has always appeared immediately above or below the "Redeem" button. (*Id.*, Exs. 33–35, 37–39.) All redemptions discussed in this motion are from this period.

### 4. Plaintiffs Repeatedly Agreed to the Terms

Every Plaintiff agreed to the Terms many times when creating their accounts. At least one Plaintiff created a new account during this litigation. All but one Plaintiff again agreed to updated Terms by clicking "I Agree" on a Blocker Card (most did so many times). At least five of the six Plaintiffs agreed to the Terms by purchasing Roblox Gift Cards or redeeming Robux. Collectively, Plaintiffs affirmatively agreed to the Terms 345 times.

**<u>Plaintiff A:</u>** Plaintiff A's first claimed account was created on June 22, 2019. (Jit Decl. ¶ 64, Ex. 1 at 1 (summary chart showing assents and activity from Plaintiff A's accounts).) Plaintiff A has claimed nine other accounts: one created on June 29, 2022, four on April 23, 2023, one on April 24, 2023, one on July 16, 2023, one on August 7, 2023, and one on November 24, 2023. (*Id.*) These accounts agreed to the Terms by clicking "I Agree" on Blocker Cards seven times and when redeeming Robux Gift Cards 29 times. (*Id.*) In total, Plaintiff A's accounts agreed to the Terms at least 46 times. (*Id.*)

| Account | Creation Date | Blocker Cards | Robux Purchases | Gift Card Redemptions |
|---|---|---|---|---|
| [redacted] | 08/07/23 | 6 | - | 15 |
| | 04/23/23 | - | - | - |
| | 04/23/23 | - | - | - |
| | 06/22/19 | - | - | 1 |
| | 06/29/22 | - | - | 9 |
| | 04/23/23 | - | - | - |
| | 07/16/23 | - | - | - |
| | 04/24/23 | 1 | | 4 |
| | 04/23/23 | - | - | - |
| | 11/24/23 | - | - | - |
| **Total** | **10** | **7** | **-** | **29** |

Plaintiff A filed her complaint on April 21, 2025. She then continued to use Roblox, logging in at least **362 times** and playing for at least **2,718** hours post-complaint. (*Id.*, Ex. 1 at 2.) Post-filing, Plaintiff A's account agreed to the Terms by clicking "I Agree" on Blocker Cards three times and when redeeming Robux Gift Cards two times. (*Id.* at 1.) An account claimed by Plaintiff A was used as recently as April 29, 2026. (*Id.* at 2.)

**Plaintiff B:** Plaintiff B's claimed account was created on November 25, 2022. (Jit Decl. ¶ 65, Ex. 2 at 1 (summary chart for Plaintiff B).) This account agreed to the Terms by clicking "I Agree" on Blocker Cards six times, when purchasing Robux 49 times, and when redeeming Robux Gift Cards three times. (*Id.*, Ex. 2 at 1–2.) In total, Plaintiff B's accounts agreed to the Terms at least 59 times. (*Id.*)

| Account | Creation Date | Blocker Cards | Robux Purchases | Gift Card Redemptions |
|---|---|---|---|---|
| [redacted] | 11/25/22 | 6 | 49 | 3 |
| **Total** | **1** | **6** | **49** | **3** |

Plaintiff B filed his complaint on September 12, 2025. He then continued to use Roblox, logging in at least **220 times** and playing for at least **717 hours** post-complaint. (*Id.* at 3.) Post-filing, Plaintiff B's account agreed to the Terms by clicking "I Agree" on a Blocker Card at least once, and when purchasing Robux at least nine times. (*Id.* at 2.) An account claimed by Plaintiff B was used as recently as September 14, 2026. (*Id.* at 3.)

**Plaintiff C:** Plaintiff C has claimed three accounts: one created on March 16, 2019, and two on July 1, 2024, and July 22, 2024, respectively. (Jit Decl. ¶ 66, Ex. 3 at 1–2 (summary chart for Plaintiff C).) These accounts also agreed to the Terms by clicking "I Agree" on Blocker Cards seven times, when purchasing Robux 41 times, and when redeeming Robux Gift Cards five times. (*Id.*, Ex. 3 at 1–2.) In total, Plaintiff C's accounts agreed to the Terms at least 56 times. (*Id.*)

| **Account** | **Creation Date** | **Blocker Cards** | **Robux Purchases** | **Gift Card Redemptions** |
|---|---|---|---|---|
| [redacted] | 03/16/19 | 7 | 41 | 5 |
| | 07/01/24 | - | - | - |
| | 07/22/24 | - | - | - |
| **Total** | **3** | **7** | **41** | **5** |

Plaintiff C filed her complaint on December 2, 2025. She then continued to use Roblox, logging in at least **nine times** and playing Roblox experiences for at least **five hours** post-complaint. (*Id.,* Ex. 3 at 3.) Post-filing, the accounts agreed to the Terms by Blocker Card at least once. (*Id.*, Ex. 3 at 2.) An account claimed by Plaintiff C was used as recently as September 13, 2026. (*Id.*, Ex. 3 at 3.)

**Plaintiff D:** Plaintiff D has claimed two Roblox accounts, created on March 15, 2025, and October 4, 2025, respectively. (Jit Decl. ¶ 67, Ex. 4 at 1 (summary chart for Plaintiff D).) In total, Plaintiff D's accounts agreed to the Terms at least twice. (*Id.*) Plaintiff D unquestionably agreed to the Terms other times, as she allegedly began using Roblox in 2020, five years before the creation dates of the two accounts she claimed, but she did not provide any other accounts or identifiers. (Declaration of Argemira Flórez ("Flórez Decl.") ¶¶ 9–11.) As a result, the chart below necessarily undercounts her assents:

| **Account** | **Creation Date** | **Blocker Cards** | **Robux Purchases** | **Gift Card Redemptions** |
|---|---|---|---|---|
| [redacted] | 3/15/25 | - | - | - |
| [redacted] | 10/4/25 | - | - | - |
| **Total** | **2** | - | - | - |

[11] Plaintiff D originally disclosed a single Roblox username, [redacted], and did not provide any email address or phone number. (Flórez Decl. ¶ 9.) This username did not yield any potentially related account under the UAIO process. (*Id.*) Given the discrepancy between the time frame of Plaintiff's alleged Roblox use and the claimed account's creation date, Roblox alerted Plaintiff's counsel that Plaintiff D's disclosure was incomplete and was told only that Plaintiff did not "recall" other accounts. (*Id.* ¶ 10.) Roblox then went beyond the UAIO's requirements by manually

Plaintiff D filed her complaint on July 29, 2025. (Jit Decl. ¶ 67, Ex. 4 at 1.) She then agreed to the Terms when creating a new account on October 4, 2025. (*Id.*) This account continued to use Roblox until at least April 22, 2026, logging in at least **73 times** and playing Roblox experiences for at least **138 hours** post-complaint. (*Id.,* Ex. 4 at 2.)

**Plaintiff G:** Plaintiff G has claimed six accounts: one created on March 15, 2022, and five more created on April 20, 2022, September 30, 2022, August 21, 2024, October 3, 2024, and February 8, 2025. (Jit Decl. ¶ 68, Ex. 5 at 1 (summary chart for Plaintiff G).) These accounts agreed to the Terms by clicking "I Agree" on Blocker Cards 10 times and when redeeming Robux Gift Cards three times. (*Id.*) In total, Plaintiff G's accounts agreed to the Terms at least 19 times. (*Id.*)

| Account | Creation Date | Blocker Cards | Robux Purchases | Gift Card Redemptions |
|---|---|---|---|---|
| [redacted] | 02/08/25 | - | - | - |
| | 03/15/22 | 1 | - | - |
| | 04/20/22 | 5 | - | 3 |
| | 09/30/22 | 1 | - | - |
| | 10/03/24 | 1 | - | - |
| | 08/21/24 | 2 | - | - |
| **Total** | **6** | **10** | **-** | **3** |

**Plaintiff H**: Plaintiff H's first claimed account was created on January 6, 2019. (Jit Decl. ¶ 69, Ex. 6 at 1 (summary chart for Plaintiff H).) Plaintiff H has claimed 22 other accounts, created on July 23, 2019, April 23, 2020, June 15, 2020, two accounts on October 20, 2020, January 9,

investigating to find potentially related accounts. (*Id.*) Roblox surfaced as a possibility, and Plaintiff D later claimed the [redacted] account. (*Id.*, Ex. 1.) Consistent with the UAIO, Roblox then produced this account data. (*Id.* ¶ 10.) Given Plaintiff D's recent and extensive use of this account, it is difficult to understand why the account was not timely disclosed by the original UAIO deadline. If Plaintiff D argues that this account data should somehow be excluded from the Court's consideration, the Court should reject that argument. The purpose of the UAIO process was to "level [the] playing field." 2026-04-08 Hr. Tr. at 60:6. Failing to disclose a recently used account does the opposite.

2022, June 5, 2022, August 7, 2022, September 27, 2022, December 29, 2022, January 8, 2023, January 20, 2023, January 22, 2023, two accounts on January 25, 2023, February 17, 2023, February 24, 2023, March 18, 2023, March 25, 2023, August 20, 2023, September 16, 2023, and March 26, 2025. (*Id*. at 1–5.) These accounts agreed to the Terms by clicking "I Agree" on Blocker Cards 33 times, by purchasing Robux 96 times, and when redeeming Robux Gift Cards 11 times. (*Id*. at 3–5.) In total, Plaintiff H's accounts agreed to the Terms at least 163 times. (*Id*.)

| Account | Creation Date | Blocker Cards | Robux Purchases | Gift Card Redemptions |
|---|---|---|---|---|
| [redacted] | 03/26/25 | 3 | 9 | - |
| [redacted] | 06/05/22 | 7 | 11 | 5 |
| [redacted] | 06/15/20 | 7 | 57 | 4 |
| [redacted] | 01/25/23 | - | - | - |
| [redacted] | 01/22/23 | - | - | - |
| [redacted] | 01/25/23 | - | - | - |
| [redacted] | 08/20/23 | 1 | - | - |
| [redacted] | 03/25/23 | - | - | - |
| [redacted] | 01/06/19 | - | 1 | - |
| [redacted] | 04/23/20 | - | 4 | - |
| [redacted] | 01/09/22 | 2 | - | - |
| [redacted] | 10/20/20 | 1 | - | - |
| [redacted] | 07/23/19 | - | 10 | 1 |
| [redacted] | 10/20/20 | 1 | - | - |
| [redacted] | 01/20/23 | 4 | - | - |
| [redacted] | 08/07/22 | - | - | 1 |
| [redacted] | 12/29/22 | 2 | 3 | - |
| [redacted] | 09/27/22 | - | - | - |

| Account | Creation Date | Blocker Cards | Robux Purchases | Gift Card Redemptions |
|---|---|---|---|---|
| [redacted] | 03/18/23 | - | - | - |
| | 01/08/23 | 1 | - | - |
| | 02/17/23 | 1 | 1 | - |
| | 02/24/23 | 2 | - | - |
| | 09/16/23 | 1 | - | - |
| **Total** | **23** | **33** | **96** | **11** |

Plaintiff H filed her complaint on August 28, 2025, and then continued to use Roblox as recently as September 12, 2026. (*Id.*, Ex. 6 at 6.) Her claimed accounts show **185 logins** and **178 hours** of post-complaint playtime. (*Id.*) These accounts agreed to the Terms by clicking "I Agree" on Blocker Cards three times, and when purchasing Robux at least six times, since filing. (*Id.*, Ex. 6 at 1–6.)

### D. The Terms' Continued Use and Parental Assent Clauses

#### 1. The Terms Make Clear That Continued Use Constitutes Assent

As noted above, at least five Plaintiffs continued to use Roblox after filing their complaints. (*See* Section II.C.4, *supra*.) The Terms in effect throughout the Relevant Period advise users that continued use constitutes assent. For example, since August 1, 2023, the Terms have stated:

> BY USING THE SERVICES, YOU AFFIRM THAT YOU HAVE REACHED THE LEGAL AGE OF MAJORITY IN YOUR JURISDICTION AND STATE OF RESIDENCE, AND UNDERSTAND, ACCEPT, AND AGREE TO BE BOUND AND ABIDE BY THE ROBLOX TERMS. IF YOU DO NOT AGREE TO THE ROBLOX TERMS, YOU MUST NOT USE THE SERVICES.

(*See, e.g.*, Jit Decl. ¶¶ 54–55, Ex. 41 at Introduction.) Plaintiffs A, B, C, D, and H agreed to this language, filed suit and acknowledged familiarity with the Terms (*e.g.*, by purporting to disaffirm the arbitration clause), and then continued using Roblox.

#### 2. Plaintiffs' Responsible Adults Agreed to the Terms on Their Behalf

Since before any Plaintiff created an account, the Terms have stated that Responsible Adults

must read and consent to the Terms on behalf of minor users. (*See* Jit Decl. ¶ 54, Ex. 40 at Section 1.A.) Since August 1, 2023, this provision has appeared in the introduction, in capitalized letters: "IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY (A "**MINOR**") IN YOUR JURISDICTION OR STATE OF RESIDENCE, BEFORE USING THE SERVICES, YOUR PARENT OR LEGAL GUARDIAN MUST READ AND CONSENT TO THE ROBLOX TERMS." (*See*, *e.g.*, Jit Decl. ¶ 54, Ex. 41.) Each Plaintiff repeatedly agreed to this language confirming that a Responsible Adult had read and agreed to the Terms. (*See* Section II.C, *supra* (detailing agreement to the Terms).)

Roblox's assent flows reiterate that Responsible Adults are consenting to the Terms for minors. Five Plaintiffs' accounts clicked "I Agree" on Blocker Cards advising: "If you are a minor, please show this to your parent or guardian." (*See* Section II.C.4, *supra*.) Five Plaintiffs' accounts redeemed Roblox Gift Cards, and three purchased Robux. (*Id.*) Both methods require the assent or involvement of an adult, as stated in the flows. (*See*, *e.g.*, Jit Decl. ¶¶ 38, 46.) And all Plaintiffs allege a degree of parental involvement in the management of their accounts and parental familiarity with Roblox. (*See, e.g.*, ECF No. 433, ¶ 11 (Plaintiff B's mother familiar with Roblox); ECF No. 432 ¶ 11 (Plaintiff C's mother reviewed Roblox "representations").)

Plaintiff H's account also has a linked parent account, meaning that Plaintiff H's Responsible Adult created their own Roblox account to monitor Plaintiff H's Roblox activity and approve actions. (Jit Decl. ¶¶ 9, 52.) Plaintiff H's Responsible Adult had to agree to the Terms when creating the parental account. (*Id.*)

### E. The Terms' Mandatory Arbitration Agreement and Delegation Clause

#### 1. The Terms Clearly Notify Users of Mandatory Arbitration

The Terms prominently inform the user that they are agreeing to arbitrate. Throughout the Relevant Period, the introductory sections to the Terms have notified users that disputes with Roblox will be resolved through binding, individual arbitration, not in court. (Jit Decl. ¶¶ 53–54, Exs. 40–47.) For example, since August 1, 2023, the Terms have stated in clear, bold, capitalized text: "For U.S. Users, Roblox's Arbitration Agreement . . . outlines how disputes between [the user] and Roblox will be resolved," and that "these Roblox Terms contain **A BINDING, INDIVIDUAL**

**ARBITRATION AND CLASS ACTION WAIVER. THIS MEANS THAT YOU GIVE UP THE RIGHT TO BRING AN ACTION IN COURT, INDIVIDUALLY OR AS PART OF A CLASS ACTION**." (Jit Decl. ¶ 54.)

The arbitration agreement has not changed since August 1, 2023 (the "Current Arbitration Agreement"). (Jit Decl. ¶¶ 54–55.) Because all Plaintiffs agreed to arbitrate after this date (*see id*., Exs. 1–6), the Current Arbitration Agreement controls. The Current Arbitration Agreement appears in a section titled "Dispute Resolution (Between User and Roblox); Arbitration Agreement; Class Action Waiver." It states:

> USER AND ROBLOX AGREE THAT ANY DISPUTE THAT CANNOT BE RESOLVED THROUGH MIDR, WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AS SET FORTH HEREIN, RATHER THAN IN COURT," and that the "USER AND ROBLOX THEREBY AGREE TO WAIVE ANY RIGHT TO A JURY TRIAL AND AGREE THAT USER AND ROBLOX MAY BRING CLAIMS AGAINST EACH OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR CLASS ARBITRATION.

(*Id*.; *e.g.*, Ex. 41 at 10–11.) The Current Arbitration Agreement specifies that any arbitration will be conducted "in accordance with FedArb's Expedited Arbitration Rules and (if applicable) Framework for Mass Arbitration Proceedings ADR-MDL." (*Id.*)[12]

The Current Arbitration Agreement allows users (or, for minors, their Responsible Adults) to opt out of arbitration by sending a written "Arbitration Opt-Out Notice" to Roblox within 30 days of signing up for an account or to opt out of changes to the arbitration agreement within 30 days after Roblox provides notice of material updates to the Terms. (*See* Jit Decl. ¶¶ 61–62.) No Plaintiff has timely opted out. (*Id.*)

### 2. The Terms Delegate Questions of Arbitrability to the Arbitrator

Throughout the Relevant Period, the Terms have expressly delegated all questions of

[12] All other versions of the Terms in effect during the Relevant Period included a mandatory arbitration clause and delegated issues of arbitrability to the arbitrator. (Jit Decl. ¶ 59.) A representative sample of earlier Terms and their arbitration agreements are shown in Exhibits 40-47 of the Jit Declaration. Roblox can provide all versions of the Terms if requested but has limited exhibits to those relevant to this motion.

arbitrability to the arbitrator. (Jit Decl. ¶ 58.) The Current Arbitration Agreement's delegation clause states:

> Delegation; Interpretation. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms, including, but not limited to, any claim that all or any part of the Roblox Terms is void or voidable; however, in the event of a Dispute about which particular version of the Roblox Terms you agreed to, a court will decide that specific question prior to the commencement of the arbitration. This Arbitration Agreement is intended to be broadly interpreted and will survive termination of the Roblox Terms.

(*Id.*) ("Delegation Clause").

The Current Arbitration Agreement incorporates the FedArb Rules, which likewise delegate questions of arbitrability to the arbitrator. (Jit Decl. ¶ 59; FedArb Rules, Rule 5.02 ("The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration clause.").)[13]

## III. LEGAL STANDARD

To determine if an arbitration agreement has been formed, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted).[14] A court is not limited to the facts alleged in the complaint and may consider prima facie evidence of a written agreement. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413–14 (1996).

Once a court has determined that an arbitration agreement exists, the Federal Arbitration Act ("FAA") supplies the substantive rules for enforcing that agreement. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA establishes a "federal policy favoring arbitration," requiring courts to "rigorously" "enforce arbitration agreements according to their terms[.]" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018)

[13] The FedArb Rules are available at https://fedarb.com/fedarb-rules/ (last visited Sep. 22, 2026).

[14] This Court need not engage in a choice-of-law analysis because the relevant state law principles are the same in California and in the states where the Plaintiffs reside. (*See* Section IV.A, *infra*.)

(citations omitted).

These rules apply equally to delegation clauses in arbitration agreements. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). When an agreement contains "clear and unmistakable" evidence that the parties agreed to delegate these questions to the arbitrator, the court must enforce that delegation. *Id*.

When a court determines that a plaintiff's claims are subject to arbitration, courts compel arbitration "in accordance with the terms of the agreement[s]." 9 U.S.C. § 4. The pending litigation is stayed until the arbitration occurs consistent with the order to arbitrate. *See* 9 U.S.C. § 3; *see also Nerdwallet, Inc. v. Fid. Info. Servs., LLC*, 828 F. Supp. 3d 1019, 1028 (N.D. Cal. 2026) (granting motion to compel arbitration and staying proceedings).

## IV. ARGUMENT

Each Plaintiff expressly agreed to the Terms, often dozens of times. (*See* Section II.C, *supra*, summarizing account assents by Plaintiff and category.) The Roblox flows at issue were clear and pass muster under any test of an effective "clickwrap" agreement. Because the Terms delegated all further questions of arbitrability to the arbitrator, there is nothing else for the Court to resolve, including disaffirmance. As explained below, the EFAA does not apply for many independent reasons. The Court should order Plaintiffs to arbitration.

### A. Each Plaintiff Formed an Agreement with Roblox

An online contract, including an agreement to arbitrate, is formed when "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Notice is sufficient where the "font size, text placement, and overall screen design" alert the user to the terms. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024). Then, where the user is "explicitly advised that the act of clicking will

constitute assent to the terms and conditions of an agreement," the user's click forms the contract. *Berman*, 30 F.4th at 857.

This standard for assent to online terms is the same whether the Court applies California law or the laws of Plaintiffs' states of residence, so no choice-of-law analysis is required.[15] *See Nguyen*, 763 F.3d at 1175 (no need to engage in conflict-of-law analysis where all possibly applicable state laws "dictate the same outcome"). This analysis is no different for minors. *See Keebaugh*, 100 F.4th at 1012, 1020-21 (applying same tests and analysis in context of minor plaintiff); *G.G. v. Roblox Corp.*, 2026 WL 1615999, at *1 (N.D. Cal. June 5, 2026) (compelling arbitration and declining to apply different standard of contract formation for minors, as that would "contradict the legislature's command to treat minors 'in the same manner as an adult' . . . for contract formation"); *Courtright v. Epic Games*, 766 F. Supp. 3d 873, 885–88 (W.D. Mo. 2025) (similar as to twelve-year-old plaintiff); *Whalen v. Facebook, Inc.*, 2022 WL 19934419, at *4 (N.D. Cal. Apr. 11, 2022) (compelling arbitration of claims brought by minor plaintiff who first agreed to Instagram's terms at age ten).[16]

---

[15] *See*, *e.g.*, *Johnson v. Activision Blizzard, Inc.*, 2025 WL 864824, at *3 (E.D. Ark. Mar. 19, 2025) (Arkansas law; online agreements are enforceable where the user is required to click "I agree," to the terms, but need not actually view or scroll through them); *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App. 2022) (Florida law; enforcing arbitration agreement where user checked a box stating "I agree and assent to the Terms of Use Agreement," where the terms were hyperlinked next to the checkbox); *Hawkins v. CMG Media Corp.*, 2024 WL 559591, at *5 (N.D. Ga. Feb. 12, 2024) (Georgia law; recognizing that online agreements are enforceable where user was required "to press the continue button" to create account and screen "explain[ed] the legal significance of clicking on the continue button"); *Witt v. Nation-Wide Horse Transp., Inc.*, 197 F. Supp. 3d 1146, 1154 (S.D. Iowa 2016) (Iowa law; recognizing clickwrap agreements as effective); *Page v. GameStop Corp.*, 2025 WL 637441, at *3 (6th Cir. Feb. 27, 2025) (holding under Ohio law that online agreements are valid where terms were "conspicuously presented" and user assents by "clicking some form of 'I agree' or 'accept' button"); *see also Kingston v. Ameritrade, Inc.*, 302 Mont. 90, 96 (2000) (describing cases where the Montana Supreme Court compelled arbitration "notwithstanding plaintiff's claim that he did not specifically consent to the arbitration clause" and where investor claimed "he didn't read the documents before signing").

[16] Minors can form contracts under the laws of California and in each of the states where Plaintiffs reside. *See* Cal. Fam. Code § 6700; *G.G. v. Roblox Corp.*, 2026 WL 1615999, at *2 (N.D. Cal. June 5, 2026); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 864824, at *3 (E.D. Ark. Mar. 19, 2025); *Off the Wall & Gameroom LLC v. Gabbai*, 301 So. 3d 281, 284 (Fla. Dist. Ct. App. 2020); Ga. Code Ann. § 13-3-20; *Smith v. Adventure Air Sports Kennesaw, LLC*, 849 S.E.2d 738 (Ga. Ct. App. 2020); Iowa Code § 599.2; *Martin v. Stewart Motor Sales*, 73 N.W.2d 1, 2 (Iowa 1955); Mont. Code Ann. § 41-1-302; *see Parrent v. Midway Toyota*, 626 P.2d 848, 850 (Mont. 1981); *Muller v. CES Credit Union*, 832 N.E.2d 80, 85 (Ohio Ct. App. 2005). If Plaintiffs invoke an "infancy defense" to argue they lacked capacity to form a contract because of their youth, that would go to the *enforceability* of the arbitration agreement, not whether it was formed, an issue delegated to the

Under these well-established principles, Roblox's notice and assent mechanisms bound Plaintiffs to the Terms, including the Current Arbitration Agreement. Plaintiffs' repeated agreement to the Terms only "reinforces" that they received notice. *See Lee v. Ticketmaster LLC*, 817 F. App'x 393, 395 (9th Cir. 2020).

**1. Plaintiffs Agreed to the Terms at Account Creation**

Each Plaintiff created Roblox accounts during the Relevant Period and agreed to the Terms. Roblox's Registration Page gave Plaintiffs reasonably conspicuous notice of the Terms. The Registration Page has consistently "lack[ed] clutter," *Keebaugh*, 100 F.4th at 1021, presenting only fields to enter a date of birth, username, password, and gender. (*See*, *e.g.*, Jit Decl. ¶¶ 16–27, Exs. 7–22.) The hyperlink to the Terms was "readily apparent," *Berman*, 30 F.4th at 857, appearing in differently colored font, with underlining, or both, and against a contrasting background. *Id.* And the Registration Page called out the Terms directly above or below the "Sign Up" button (*Id.*), squarely within the "natural visual path of completing" the sign-up process, *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025).[17] Finally, the context of the transaction—creating an account for ongoing, future Roblox use—signaled a "'continuing, forward-looking relationship' governed by terms." *Lawrence v. Finicity Corp.*, 2025 WL 547375, at *1 (9th Cir. Feb. 19, 2025) (citation omitted).

The Web Registration Page contained text immediately above the Sign-Up button that clearly informed Plaintiffs and their Responsible Adults that "[b]y clicking Sign Up, you are agreeing to the Terms of Use including the arbitration clause and you are acknowledging the

arbitrator, as explained in Section IV.B, *infra*. *See also*, *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (infancy is a defense to enforcement and delegated to the arbitrator); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 884 (6th Cir. 2021) ("infancy defense is a matter of enforceability covered under the delegation provision"); *Courtright*, 766 F. Supp. 3d at 888 (binding a twelve-year-old plaintiff with "cognitive difficulties" to online contracts and delegating lack of capacity defenses to the arbitrator); *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 398 (E.D.N.Y. 2025) (delegating infancy defense to arbitrator).

[17] On the relevant App Registration Pages, the hyperlink to the Terms was in large blue and underlined font, immediately below the Sign-up button. (Jit Decl. ¶¶ 18-27, Exs. 15-22.) That placement, too, is sufficient to make the Terms reasonably conspicuous, as they were not "buried at the bottom of the page or tucked away in obscure corners of the website[.]" *Nguyen*, 763 F.3d at 1177; *Oberstein*, 60 F.4th at 516 (enforcing agreement where relevant text was located below the sign-up button).

Privacy Policy." *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (enforcing arbitration where the disclosure appeared "directly above" sign-in buttons). The App Registration Page showed materially the same language immediately above or below the button. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (agreement enforceable where notice of terms was "clear and legible" and placed directly below a button to complete purchase). Plaintiffs and their Responsible Adults were shown this assent language and clicked these buttons. Plaintiff A's accounts did so at least ten times, Plaintiff B's once, Plaintiff C's three times, Plaintiff D's twice, Plaintiff G's six times, and Plaintiff H's 23 times. (Jit Decl., Exs. 1–6.) These affirmative acts manifested assent, binding Plaintiffs and their Responsible Adults.

Courts, including this one, routinely enforce "sign-in wrap" agreements with the same characteristics. *See Slaviero v. Baby List, Inc.*, 2026 WL 1097746, at *2-4 (N.D. Cal. Apr. 22, 2026) (Seeborg, J.) (compelling arbitration where users clicked "Sign Up" in flow with less prominently placed notice of terms); *Oberstein*, 60 F.4th at 515-16 (enforcing arbitration agreement where user clicked "Sign in" after instruction that "[b]y continuing past this page, you agree to the Terms of Use"); *Chin v. Thumbtack Inc.*, 2026 WL 807276, at *6 (N.D. Cal. Mar. 24, 2026) ("[T]here is no genuine dispute Plaintiff manifested assent . . . by clicking the 'Sign Up' and 'Create Account' buttons."); *see also Baumeister v. Nouveau Essentials Mktg., LLC*, 2026 WL 2093903, at *3 (N.D. Cal. July 21, 2026) (compelling arbitration where user clicked "Continue" button located below hyperlinks to terms). And courts have found Roblox's Registration Page sufficient to bind users to the Terms. *See*, *e.g.*, *Garcia v. Roblox Corp.*, 2026 WL 413636, at *4 (C.D. Cal. Feb. 11, 2026). (mobile Roblox sign-up flow secured user assent to terms).

**2. Plaintiffs Agreed to Terms Updates**

Plaintiffs agreed to arbitrate in a second way, by accepting updates to the Terms. Plaintiffs A, B, C, G, and H's accounts clicked "I Agree" on Blocker Cards that prevented users from continuing further, were titled "Updated Agreements," and, in the only other text on the card, explained the user was agreeing to updated Terms. (*See* Section II.C.2, *supra*, describing Blocker Cards.) Plaintiff D, who has not identified all Roblox accounts, also would have encountered a Blocker Card based on the timing of her alleged Roblox use. (*See* n.11 *supra*; Jit Decl. ¶ 28 (listing

dates of Terms updates resulting in Blocker Cards).) The Blocker Card included a bolded link to the updated Terms directly above the "I Agree" button, which explicitly advised that clicking "I Agree" would constitute assent to the updated Terms. (*See* Section II.C.2, *supra*.)

It is hard to conceive of an online notice more conspicuous than a pop-up window, with no other content except language highlighting the Terms. And "Blocker Card" means exactly what it says; the account could not be used without viewing and affirmatively accepting the updated Terms by clicking "I Agree." Plaintiffs A, B, C, G and H clicked "I Agree" between seven and 33 separate times each during the Relevant Period (Section II.C.4, *supra*), and Plaintiff D certainly would have as well (*id.*). *See Berman*, 30 F.4th at 856 (observing that courts routinely compel arbitration where a "website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed"); *Chin*, 2026 WL 807276, at *7 (pop-up terms update requiring user to click "I Agree" bound plaintiff); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 946 (2022) (pop-up notice of updated terms bound minor plaintiff). Courts have found that these exact Blocker Cards provide sufficient notice. *See G.G. v. Roblox Corp.*, 2026 WL 1615999, at *1 (holding that Roblox's "pop-up notifications gave adequate notice of the terms of use"). Through Blocker Cards alone, Plaintiffs agreed to the Terms.

### 3. Plaintiffs Agreed to the Terms by Redeeming Robux

Plaintiffs A, B, C, G and H agreed to arbitrate in a third way, by redeeming Roblox Gift Cards. (*See* Sections II.C.3 and 4, *supra*.) From August 2021 forward, the Redemption Page conspicuously notified users of Roblox's Terms. Beneath a textbox for entering a Gift Card code or the "Redeem" button, the screen informed users that "[b]y redeeming your code, you acknowledge that you are 18 years of age, or that you are the parent or legal guardian of the account owner, and agree to our Terms of Use including the arbitration clause"—or has included materially the same language. (Jit Decl. ¶¶ 46-50, Exs. 33-38.) The Terms were hyperlinked and in bold against a contrasting background. (*Id.*) The accompanying language explaining that the user was agreeing to the Terms and arbitration appeared directly above or below the "Redeem" button. (*Id.*) Each time a Plaintiff clicked Redeem, they agreed to the Terms. *See Oberstein*, 60 F.4th at 515–16 (enforcing arbitration agreement where user clicked "Place Order" after being instructed that "[b]y

continuing past this page and clicking 'Place Order,' you agree to our Terms"). Plaintiffs A, B, C, G, and H unambiguously manifested their assent to Roblox's Terms each of the many times they clicked.

**4. Plaintiffs Agreed to the Terms by Continuing to Use Roblox**

Plaintiffs A, B, C, D, and H also agreed to the Terms by continuing to use Roblox *after* filing their complaints. The Terms have, throughout the Relevant Period, notified users that continuing to use Roblox constitutes assent to the Terms. (*See* Section II.D.1, *supra*.) For example, since August 1, 2023, the Terms have stated: "BY USING THE SERVICES, YOU . . . UNDERSTAND, ACCEPT, AND AGREE TO BE BOUND AND ABIDE BY THE ROBLOX TERMS." (*See* Section II.D.1, *supra*.) The Terms continue: "IF YOU DO NOT AGREE TO THE ROBLOX TERMS, YOU MUST NOT USE THE SERVICES." (*Id.*) Every Plaintiff affirmatively agreed to versions of the Terms with this language.

In their complaints, Plaintiffs A, B, C, D, and H purport to disaffirm the Terms—but nonetheless continued using Roblox post-complaint. (*See* Section II.C.4 *supra* (summarizing assents and post-complaint use by Plaintiff and category).) By affirmatively agreeing to the Terms at account creation, when the Terms were updated, and when buying Robux and redeeming Gift Cards, Plaintiffs agreed that by continuing to use Roblox, they were assenting to the Terms. This continued use renewed Plaintiffs' agreement to the Terms post-filing. *See Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) (plaintiff unambiguously manifested assent to the Oct. 2023 Terms by using the defendant's app in January 2024 and periodically opening the app to check location-sharing settings); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (continued use of online platform manifested assent); *Kamath v. Coinbase, Inc.*, 2024 WL 950163, at *4 (N.D. Cal. Mar. 5, 2024) (same); *see also Whittaker v. Roblox Corp.*, 2026 WL 2640984, at *3 (D. Colo. Sep. 2, 2026) ("Particularly problematic for Plaintiff is the uncontroverted evidence that N.G. continues to use each of the services and accounts at issue in this litigation even after filing."). This Court has compelled arbitration in similar circumstances where the agreement provided, "You will have accepted this Agreement and be bound by its terms if you use the Service(s) . . ." and the user "continued to receive and pay for her

service[.]" *Trout v. Comcast Cable Commc'ns, LLC*, 2018 WL 4638705, at *2 (N.D. Cal. Mar. 15, 2018).

These Plaintiffs not only had constructive notice of the Terms by continuing to use Roblox, but they also had actual knowledge due to this litigation. The complaints frequently refer to the Terms (*see*, *e.g.*, 3:25-cv-10812 Compl. ¶ 5); Plaintiffs claim to disaffirm the Terms (conceding their awareness of the Terms when the complaints were filed); and they are represented by counsel who are well-aware of the Terms.[18] Against this backdrop, Plaintiffs decided to continue using Roblox during this litigation, renewing their assent to the Terms. *See Ligeri v. Amazon.com Inc.*, 2024 WL 3638241, at *7 (D. Conn. Aug. 2, 2024) (granting motion to compel based on plaintiffs' continued use of Amazon's website after receiving notice of the arbitration clause, as such continued use bound user to terms).

#### 5. Plaintiffs' Responsible Adults Agreed to the Terms on Their Behalf

Plaintiffs' Responsible Adults also assented to the Terms. Since at least August 1, 2023, the first section of the Terms has notified users that: "IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY (A "**MINOR**") IN YOUR JURISDICTION OR STATE OF RESIDENCE, BEFORE USING THE SERVICES, YOUR PARENT OR LEGAL GUARDIAN MUST READ AND CONSENT TO THE ROBLOX TERMS." (*See* Section II.D.2, *supra*.) Materially similar language has appeared in all versions of the Terms during the Relevant Period. (*Id.*) Plaintiffs repeatedly agreed to this language. As explained in Section II.C.3, Plaintiffs' accounts also clicked through assent flows that required the user to confirm that they had shown the Terms to a Responsible Adult who agreed to them. Because no minor is permitted to create a Roblox account without a Responsible Adult assenting to the terms, and because Plaintiffs represented that they had obtained such assent, they are estopped from now arguing otherwise. *Jiajie Zhu v. Jing Li*, 2019 WL 6050961, at *4 (N.D. Cal. Nov. 15, 2019) (applying doctrine of estoppel by contract to hold that a party who signed a written instrument was estopped from arguing that the statements contained

[18] Much of the caselaw addressing continued use considers assent to updates to new terms through continued use, following email notice. The argument here is even stronger, as Roblox does not seek to enforce new terms. It seeks to enforce the same Terms Plaintiffs previously accepted and then accepted again (and again) through post-complaint use. (*See* Section IV.A.4.)

therein were incorrect); *Plaza Freeway Ltd. P'ship v. First Mountain Bank*, 81 Cal. App. 4th 616, 626 (2000) (explaining the "common law doctrine" of "estoppel by contract" and identifying provision in California Evidence Code codifying the same).

Moreover, the record supports that Plaintiffs' Responsible Adults received notice of, and agreed to, the Terms. ***First***, Plaintiffs allegedly began using Roblox when they were quite young and would have required assistance from Responsible Adults to create their accounts. (*See*, *e.g.*, ECF No. 396 ¶ 10 (Plaintiff D "first downloaded and started playing Roblox in 2020 when she was approximately 8 years old"); ECF No. 398 ¶ 11 (Plaintiff H "was four years old when she first started playing on Roblox"); ECF No. 433 ¶¶ 10-11 (Plaintiff B was an "avid Roblox user for years" before turning 15 years old).) Plaintiffs also allege their parents reviewed statements by Roblox before allowing them to use the platform. (*See*, *e.g.*, ECF No. 396 ¶ 10.) Given Roblox's prominent display of the Terms at account creation and throughout the site, any reasonable review would have included the Terms. (Jit Decl. ¶ 53 (explaining Terms are linked at the bottom of Roblox.com webpages).)

***Second***, all but one Plaintiff's account purchased Robux or redeemed Roblox gift cards—and each redemption had to follow an earlier purchase. Only adults are allowed to buy Robux on Roblox's website and App, and these purchases were made with credit and debit cards. (*See* Section II.C.3.) Every time a Responsible Adult purchased Robux this way, they had to agree to the Terms. (*Id.*) ***Third***, Plaintiff H's account had a linked parent account, meaning Plaintiff H's Responsible Adult created their own account and agreed to the Terms in the process. (Jit Decl. ¶ 52.)

Every time Plaintiffs' Responsible Adults agreed to the Terms, they bound Plaintiffs. This result is compelled because: (i) the Terms expressly contemplate a parent binding a minor, *see Tomlin v. Roblox Corp.*, 2026 WL 1412606, at *8 (E.D. Pa. May 20, 2026) ("M.B. may be bound by the [Roblox] arbitration clause as an intended third-party beneficiary."), and (ii) the doctrine of equitable estoppel precludes Plaintiffs from avoiding contracts made for their benefit, *see E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026) (finding equitable estoppel applicable where online contract "was, at least in part, to benefit" the minor). Applying these doctrines, courts regularly hold that parents can bind minors when parents agree to terms so minors

can use an online platform. *See*, *e.g.*, *French v. Roblox Corp.*, 2026 WL 2195890, at *6 (E.D. Pa. July 29, 2026) (parent bound minor to Roblox Terms); *S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025) (finding that "by assenting to the EULA, which explicitly contemplates a parent consenting to the minor's acceptance of the agreement," the parent bound the minor); *A. A. v. Roku, Inc.*, 2026 WL 1349064, at *4 (N.D. Cal. May 14, 2026) (similar).[19]

**B. The Arbitration Agreement Delegates Arbitrability**

Where, as here, formation has been established, the parties can delegate to the arbitrator any remaining "threshold issues concerning the arbitration agreement." *Rent-A-Center*, 561 U.S. at 68–69. Delegation provisions are "simply . . . additional, antecedent agreement[s] the party seeking arbitration asks the federal court to enforce[.]" *Id*. at 70. And "the FAA operates on this additional arbitration agreement just as it does on any other." *Id*.

Applying these principles, the Supreme Court has enforced delegation provisions that delegate to the arbitrator questions of arbitrability. *Caremark*, 43 F.4th at 1029. In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), for example, the Court enforced a delegation clause that required the arbitrator to decide "whether their arbitration agreement applies to the particular dispute," despite the plaintiff's assertion that the argument for arbitration was "wholly groundless." *Id*. at 65. And in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Court enforced a delegation provision vesting the arbitrator with "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement," holding that the arbitrator, not the Court, had authority to decide if the arbitration agreement as a whole was unconscionable. *Id*. at 71–73 (alterations in original). These cases establish that where the parties' contract clearly and unmistakably delegates threshold issues to the arbitrator, "a court may not override the contract" and "possesses no power to decide the . . . issue." *Henry Schein, Inc.*, 586 U.S. at 68; *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1106 (N.D. Cal. 2020) ("If the parties' contract

[19] *See also Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, 27 (2007); *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 403 (Fla. 2005); *DB Acoustics, Inc. v. Great River Contractors, L.L.C.*, 784 N.W.2d 201 (Iowa Ct. App. 2010); *Peeler v. Rocky Mountain Log Homes Canada, Inc.*, 2018 MT 297 (2018); *Cross v. Carnes*, 132 Ohio App. 3d 157, 168 (1998); Williston on Contracts § 57:19, at 183 (4th ed. 2001).

delegates the question of arbitrability to an arbitrator, courts must defer to the parties' contract and respect that decision." (citation omitted)).

Here, the parties have clearly and unmistakably delegated threshold issues of arbitrability to the arbitrator. ***First***, the Current Arbitration Agreement contains an express delegation clause, as have all versions in effect during the Relevant Period. This clause states: "[t]he arbitrator, and not any . . . court or agency, shall have exclusive authority to . . . resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Roblox Terms." (Jit Decl. ¶ 59.) This language plainly delegates to the arbitrator any questions about enforceability and applicability. *Collett v. Ancestry.com DNA LLC*, 2019 WL 13253477, at *2 (N.D. Cal. Dec. 19, 2019) (enforcing delegation clause where there was "clear and unmistakable evidence" that the parties agreed that an arbitrator is to decide whether a claim is subject to arbitration).

***Second***, the Current Arbitration Agreement incorporates FedArb rules authorizing arbitrators to decide the issue of arbitrability. *See* Jit Decl., Ex. 41 at § 11(b)(iv), FedArb Rules, R. 5.02 ("The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration clause . . . [including] with respect to both the subject matter of the dispute and the parties to the arbitration."). Where an arbitration agreement incorporates rules delegating arbitrability to the arbitrator, courts routinely conclude that the parties intended that the arbitrator—not the courts—should decide such questions. *See*, *e.g.*, *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011) ("the language of the arbitration clause shows a clear and unmistakable intent to delegate questions of scope to the arbitrator [where] [t]he clause incorporates the AAA's Commercial Arbitration Rules, which provide that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction'" (citation omitted)).

Because each Plaintiff agreed to the Terms, which clearly and unmistakably delegate questions of arbitrability to the arbitrator, there is nothing further for this Court to determine: arbitration must be compelled. *See Needleman*, 474 F. Supp. 3d at 1105–06 (Seeborg, J.) (enforcing delegation clause once a valid arbitration agreement was shown to exist and delegating all further arbitrability issues to the arbitrator).

### C. Any Purported Disaffirmance of the Terms Is Immaterial

Plaintiffs' purported disaffirmance of the Terms does not change the analysis.[20] Disaffirmance is a question of enforceability, which the Terms delegate to the arbitrator. Regardless, Plaintiffs' claimed disaffirmance is ineffective because they continued to use Roblox post-filing, they cannot disaffirm their Responsible Adults' assent to the Terms, and Plaintiff A agreed to the Terms after reaching majority.

#### 1. Disaffirmance Is Delegated to the Arbitrator

While a party generally "cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate, . . . an arbitrator may properly decide whether a contract is 'voidable'" when the parties have agreed to delegate that question to the arbitrator. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). "Examples of 'voidable' contracts" include "those 'where one party was an infant'" who later purports to disaffirm the contract. *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, at *4 (N.D. Cal. Dec. 11, 2023) (quoting *Three Valleys*, 925 F.2d at 1140); *see also Collett*, 2019 WL 13253477, at *3 ("[W]hether plaintiffs successfully opted out of the contract is an issue of contract termination, not formation."). Here, the parties have delegated all questions of disaffirmance to the arbitrator because that defense goes to the voidability or enforceability of the arbitration agreement, not formation. *A.C. by and through Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *2–3 (W.D. Wash. Apr. 29, 2021) (ruling that disaffirmation "does not relate to contract formation").

Courts in this district and across the country routinely hold as much, finding that "the question of disaffirmation must be decided in arbitration" where the parties "agree[] to arbitrate issues of enforceability[.]" *N.A.*, 2023 WL 8587628, at *5–6; *see also K.F.C.*, 29 F.4th at 837–39 (delegating minor's disaffirmance defense to arbitrator); *In re StockX*, 19 F.4th at 885–86 (same); *S.T.G. by and through Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1208 (S.D. Cal. 2024)

[20] Plaintiffs each purport to "disaffirm" their agreements with Roblox in their Complaints. *See*, *e.g.*, ECF No. 399 (Plaintiff A Compl.) ¶ 4 (disaffirming contracts "entered as a minor"); ECF No. 398 (Plaintiff H Compl.) ¶ 4 (similar); ECF No. 396 (Plaintiff D Compl.) ¶ 5 (similar); ECF No. 403 (Plaintiff G Compl.) ¶ 4 (similar); ECF No. 433 (Plaintiff B Compl.) ¶ 4 (similar); ECF No. 432 (Plaintiff C Compl.) ¶ 4 (similar).

(same); *Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976, 982 (E.D. Ark. 2024) (same); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1321–23 (N.D. Ga. 2025) (same); *J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, at *9 (W.D. Wash. Apr. 2, 2021) (same); *Ziboukh*, 795 F. Supp. 3d at 398 (same); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 679033, at *3 (E.D. Ark. Mar. 3, 2025) (same); *Q.R. by & through Doe v. Multi Media LLC*, 823 F. Supp. 3d 1280, 1287–88 (D. Kan. 2026) (same).

**2. Plaintiffs' Continued Use Defeats Any Claimed Disaffirmance**

Even if the Court considers disaffirmance, the arbitration agreement remains enforceable because all but one Plaintiff continued using Roblox after purportedly disaffirming. (*See* Section II.C.4, *supra* (showing continued use by all Plaintiffs but Plaintiff G).) It is axiomatic that a party cannot disaffirm a contract but choose to enjoy its benefits. *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) ("[A] party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill." (quoting *Babu v. Petersen*, 4 Cal.2d 276, 286 (1935))); Restatement (Second) of Contracts § 380 ("A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract."); *see also* 3 Williston on Contracts § 7:14 (4th ed.) ("A minor may be estopped to cancel, rescind or terminate its own contract if, for example, the minor wants to affirm those provisions of [the] agreement that are favorable to it and repudiate those portions of the contract that are burdensome or unfavorable. A minor may not retain the benefits of a contract and, at the same time, try to repudiate its obligations under the agreement.").[21]

Courts consistently apply this principle to deny disaffirmance defenses to plaintiffs who

[21] *See also Moreau v. Feld Ent., Inc.*, 2025 WL 2161706, at *3 (M.D. Fla. July 30, 2025) (the law "will not allow [a minor] to repudiate his contract and at the same time retain its fruits as his own[]"); *Lamb v. Midwest Mut. Ins. Co.*, 296 F. Supp. 131, 133 (W.D. Ark. 1969) ("[T]he minor must either affirm or disaffirm the contract as a whole; he cannot accept the benefits and disaffirm the burdens."), *aff'd*, 421 F.2d 179 (8th Cir. 1970); *Holbrook v. Louisiana-Pac. Corp.*, 2015 WL 1291534, at *4 (N.D. Ohio Mar. 23, 2015) ("[A] party who accepts the benefits of a contract may not evade the burdens the contract imposes."); *Merritt v. Jowers*, 184 Ga. 762, 763 (1937) ("Equity will not . . . permit the infant grantor to repudiate his deed on account of his minority and at the same time retain that which is the fruit of the contract."); *Langstraat v. Midwest Mut. Ins. Co.*, 217 N.W.2d 570, 571 (Iowa 1974) ("What he seeks here . . . is to retain the benefits of the policy but to avoid the one provision which has become burdensome. There is no rule permitting such a selective choice.").

continue to use online platforms *after* purporting to disaffirm. *See*, *e.g.*, *C.M.D. ex rel. De Young*, 621 F. App'x at 489 (affirming this Court's decision that plaintiffs who continued using Facebook had not disaffirmed); *Garcia*, 2026 WL 413636, at *5 ("Moreover, R.G.'s disaffirmance defense falls flat in light of her continued use of the [Roblox] platform[.]"); *Tomlin*, 2026 WL 1412606, at *11 (denying disaffirmance defense due to minor's continued use of gaming platform); *G.G. v. Valve Corp.*, 2017 WL 1210220, at *3 (W.D. Wash. Apr. 3, 2017) (enforcing arbitration agreement between gaming platform and minor plaintiffs; alleged disaffirmance "unsupported by law and fact" given plaintiffs' continued use of the defendant's content and services), *vacated in part on other grounds*, 799 F. App'x 557 (9th Cir. 2020); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012) (rejecting minor's attempted disaffirmance of forum selection clause because they continued to use Facebook after filing a complaint). As one court recently explained, "[d]isaffirmance requires that the parties return to the status quo ante" and it is "impermissible as a matter of equity and estoppel" for a minor to "continue[] to enjoy the benefits of the agreements she purports to disaffirm by using the services, accessing the related accounts etc." *Whittaker*, 2026 WL 2640984, at *4.

That same reasoning applies here. Plaintiffs cannot validly disaffirm Roblox's Terms and then continue to derive benefits from Roblox's services on an ongoing basis. Plaintiffs A, B, C, D, and H continued to use Roblox extensively after filing, even *agreeing* to the Terms *after* their purported disaffirmance. (Jit Decl., Exs. 1-4, 6 (showing continued use in summary sheets).)

### 3. Plaintiffs Cannot Disaffirm Their Responsible Adults' Assent to Terms

Plaintiffs cannot disaffirm Terms that their Responsible Adults agreed to on their behalf (*See* Section IV.A.5, *supra*.) It is well-established that contracts by an adult for a minor cannot be disaffirmed. *See Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 1564–65 (1990) ("The purpose of [the California disaffirmance statute] is to protect the minor" not "to affect contracts entered into by adults on behalf of their children.").[22]

[22] *See also Shea ex rel. Shea v. Glob. Travel Mktg., Inc.*, 2002 WL 215330, at *3–4 (Fla. Cir. Ct. Feb. 5, 2002), rev'd, 870 So. 2d 20 (Fla. Dist. Ct. App. 2003) ("while recognizing the rule that a minor can disaffirm a contract he or she enters, the rule did not apply to contracts between adults entered into on behalf of a child because the child is a third-party beneficiary[]"); *Zivich v. Mentor Soccer Club, Inc.*, 1997 WL 203646, at *6 (Ohio Ct. App. Apr. 18, 1997), aff'd on other grounds,

**4. Plaintiff A Agreed to the Terms Again After Reaching Majority**

Plaintiff A is an adult who repeatedly agreed to the Terms after reaching majority. *See* ECF No. 1-1 ¶ 205 (alleging that Plaintiff A was 18 years old as of April 21, 2025); Jit Decl., Ex. 1 at 1 (summary chart showing continued use and assent after April 21, 2025 date). Plaintiff A agreed to Blocker Card Terms updates three times between June 5, 2025 and September 26, 2025, when she was an adult. (*Id.*) She redeemed Roblox Gift Cards twice after reaching majority (*id.*), assenting to the Terms again. Plaintiff A cannot disaffirm a contract she made as an adult.

**D. The EFAA Does Not Apply**

The EFAA does not affect the Plaintiffs' arbitration agreements. Congress enacted the EFAA in the wake of the #MeToo movement to create a narrow exception to the policy favoring arbitration for certain sexual assault or sexual harassment disputes. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also*, *e.g.*, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (noting the "emphatic federal policy in favor of arbitral dispute resolution"). The EFAA provides, in relevant part, that "at the election of the person alleging conduct constituting . . . sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).[23]

A plaintiff bears the burden of establishing that an arbitration agreement may be invalidated pursuant to the EFAA. *Wynn-Williams v. Meta Platforms, Inc.*, 2026 WL 2621253, at *9 (N.D. Cal. Sep. 4, 2026). Plaintiffs cannot carry their burden for at least three independent reasons. ***First***, none of the Plaintiffs' claims against Roblox "relate[] to" a "sexual assault dispute" or a "sexual harassment dispute" within the meaning of the statute. ***Second***, the EFAA, by its terms, applies only to "predispute" arbitration agreements, and five of the Plaintiffs agreed to arbitrate their claims *after* filing their complaints. ***Finally***, Plaintiffs B, C, and G do not allege conduct constituting

---

82 Ohio St. 3d 367 (1998) (holding that "a minor can only disaffirm his or her own contracts, not those made by another on the minor's behalf[]").

[23] The determination whether the EFAA applies is for the "court, rather than an arbitrator, irrespective of whether . . . the agreement purports to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b).

"sexual assault" or "sexual harassment." Because the EFAA does not apply, the FAA's general policy favoring arbitration governs, and this Court should enforce the agreements.

#### 1. None of the Plaintiffs' Claims "Relate to" a "Sexual Assault Dispute" Within the Meaning of the Statute

The Plaintiffs' cases do not "relate[] to" a "sexual assault dispute" or "sexual harassment dispute," 9 U.S.C. § 402(a), as required for the EFAA to apply. The EFAA's text and history confirm it does not apply where, as here, no party to the case has legal responsibility over a third-party perpetrator of the alleged sexual harassment or assault.

Indeed, the only district courts to consider the issue in the context of claims against communications service providers like Roblox have declined to apply the EFAA for this reason. In *M.D. v. Verizon Communications, Inc.*, 2025 WL 2712831 (E.D.N.C. Sep. 23, 2025), the court held that the EFAA did not apply to the plaintiff's claims that "***Verizon enabled*** [stalker's] sexual harassment by giving him access to plaintiff's personal information," which the stalker then used to sexually harass her, because there was "no allegation of sexual harassment by an employee of the company that sold services to the consumer." *Id.* at *2 (emphasis added). And in *Farnham v. Grindr, LLC*, 2025 WL 3062698 (M.D. Fla. Nov. 3, 2025), the court concluded that the EFAA was inapplicable to the plaintiff's claims that the dating app "***Grindr enabled*** [the] sexual assault by giving them access to [the minor]" because there were "no allegations of sexual harassment by Grindr or Grindr employees, and [the perpetrators] had no legal relationship to Grindr." *Id.* at *2 (emphasis added).

Several features of the text confirm this understanding of the statute. To start, the EFAA defines a "[s]exual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact," 9 U.S.C. §§ 401(3), 402(a). The term "dispute" refers to the adversarial controversy between the parties to a lawsuit, ***not*** "the underlying challenged conduct," which may (as here) be committed by a third party. *Combs v. Netflix, Inc.*, 180 F.4th 1201, 1206 (9th Cir. 2026). And "involve" means "to engage as a participant" or "to require as a necessary accompaniment." *Involve*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/involve (last visited Sep. 21, 2026); *see Shular v. United States*, 589 U.S. 154, 162 (2020) (recognizing that

"'involve' means 'necessarily requir[e]'" (alteration in original)). Neither is true here: (1) no party to this dispute engaged in "a nonconsensual sexual act or contact," and (2) the claims asserted in this dispute do not necessarily require a showing that such conduct occurred.

Instead, the perpetrators who allegedly abused Plaintiffs are third parties whom Roblox does not control. They are not Roblox employees or agents, and Roblox bears no legal responsibility for their independent actions. Furthermore, no Plaintiff has asserted a claim for sexual assault against Roblox, nor could they. Plaintiffs' disputes instead concern Roblox's alleged failure to: (1) sufficiently screen third-party profiles; (2) use satisfactory monitoring and filtering technologies to moderate and remove third-party content, i.e., profiles, messages, and other content; (3) adequately warn users that they may encounter objectionable third-party content; and (4) moderate such content in the manner that Plaintiffs believe Roblox's statements describing its content moderation aspirations would have required. *See, e.g.*, ECF No. 395 ¶¶ 8-9, 34, 36-37, 49, 194, 197, 206-214. These allegations plainly do not depend on the occurrence of a sexual assault, so Plaintiffs have no "sexual assault dispute" with Roblox.

The EFAA's reach is further cabined by requiring that a case "relate[] to" the relevant sexual assault dispute or sexual harassment dispute. 9 U.S.C. § 402(a). The phrase "relates to" (or its variants, like "in relation to") has long been "singled out by [the Supreme Court] as particularly sensitive to context." *Dubin v. United States*, 599 U.S. 110, 118 (2023). When a statute uses this phrase, courts may not apply it with "uncritical literalism." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). Instead, courts must "go beyond the unhelpful text" and look to the statute's "objectives" and history, focusing on the particular "type" of relationship Congress sought to target. *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813–15 (1997); *see also Dubin*, 599 U.S. at 119.

That is exactly why courts in *Verizon* and *Grindr* correctly rejected the EFAA's application to similar allegations. For example, although the *Verizon* plaintiff had plausibly pled underlying facts constituting sexual harassment by an unrelated third party, the court concluded that the claims against Verizon were not "intended to fall within the scope of the EFAA." 2025 WL 2712831, at *2. *Verizon* and *Grindr* recognized that Congress "primarily intended to preclude arbitration in

employment disputes," or situations when "a consumer who signs an arbitration clause . . . is assaulted at a business," not cases against communications services about their users' alleged misconduct. *Id.* (alteration in original); *accord Grindr*, 2025 WL 3062698, at *2.[24]

These courts correctly assessed the EFAA's history and design, further reinforcing its inapplicability here. Congress described the statute as intended to ensure access to a judicial forum for victims who bring claims arising from sexual assault or harassment committed by, or attributable to, the defendant—for example, an employee "sue[d] after being raped, assaulted, or harassed at work" or a consumer assaulted at a business by one of its employees. H.R. Rep. No. 117-234, at 3–4 (2022).[25] And the EFAA's sponsors emphasized that "[t]he language of this bill should be *narrowly interpreted*," not used to sweep in unrelated disputes outside the parties' arbitration agreement. 168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) (emphasis added). "Congress' driving concern" in enacting the EFAA was to ensure that individuals may access a public judicial forum when a case requires adjudicating whether sexual assault or sexual harassment has occurred. *Dan's City*, 569 U.S. at 263. The legislative history confirms that the EFAA does not apply where, as here, there are no allegations that a party to the dispute—or a party's employee or agent—sexually assaulted a plaintiff, and the sole connection between the defendant and an alleged assault is the defendant's provision of a communications service.

### 2. At Least Plaintiffs A, B, C, D, and H Agreed to Post-Dispute Arbitration Agreements

The EFAA is independently inapplicable to Plaintiffs A, B, C, D, and H's claims because

[24] The Ninth Circuit has noted this same principle in a recent sexual harassment case: "Both the text of the federal statute and its underlying purpose make clear that Congress intended to afford victims of ***workplace*** sexual assault and sexual harassment a genuine choice whether to pursue their claims in a court of law, notwithstanding a preexisting agreement to arbitrate." *Ding v. Structure Therapeutics, Inc.*, 2026 WL 2420555, at *2 (9th Cir. Aug. 19, 2026) (emphasis added).

[25] Every single example cited in the Committee Report involved claims arising *directly* out of the alleged assault or harassment. That included a class action against Sterling, Inc. (the owner of Kay Jewelers) by tens of thousands of employees for "sexual coercion . . . in the workplace," *id.* at 10, and claims against a "massage chain," Massage Envy, whose staff "sexually assaulted" hundreds of women, *id.* at 8. The report also quoted testimony from Gretchen Carlson, a former Fox News anchor, who discussed how women at Fox News "suffer[ed] the trauma of being sexually assaulted" by Fox News executives. *Id.* at 9. Not once did the report discuss the possibility of allowing other, more attenuated claims to avoid arbitration—much less claims against defendants, like Roblox and Discord, who are not accused of harassing or assaulting anyone.

they agreed to arbitration after they filed their complaints. (*See* Section II.C.4, *supra* (detailing post-complaint use and assent).) The EFAA authorizes a party to void only a "predispute arbitration agreement," 9 U.S.C. § 402(a)—that is, an "agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." *Id.* § 401(1). At the latest, the disputes between Plaintiffs and Roblox arose when each Plaintiff originally filed their complaint. The EFAA does not permit any Plaintiff to invalidate an agreement to arbitrate made *after* their dispute arose, *i.e.*, after they filed their complaint.

Here, Plaintiffs A, B, C, D, and H affirmatively assented to the Terms and continued to use Roblox (constituting a second form of assent) post-filing. (Jit Decl., Exs. 1-4, 6 (summary charts showing post-complaint use and assent).) The EFAA does not void any of these Plaintiffs' *post*-dispute agreement to Roblox's Terms, even if it could apply to the disputes against Roblox in the first place.

### 3. Plaintiffs B, C, and G Have Not Alleged a "Sexual Assault Dispute"

The EFAA is also inapplicable as to Plaintiffs B, C, and G because they have not alleged the requisite "nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law[.]" 9 U.S.C. § 401(3). For purposes of the EFAA, the statutory definitions of both a "sexual act" and "sexual contact" require "touching" or physical "contact" of intimate body parts. Under Section 2246, a "sexual act" is (i) "contact between the penis and the vulva or the penis and the anus"; (ii) "contact between the mouth" and either "the penis," "the vulva," or "the anus"; (iii) certain kinds of "penetration, however slight, of the anal or genital opening of another"; or (iv) certain kinds of "intentional touching, not through the clothing, of the genitalia of another person" under 16 years of age. 18 U.S.C. § 2246(2). Along similar lines, Section 2246 defines "sexual contact" as "[1] the intentional touching, either directly or through the clothing, of the [2] genitalia, anus, groin, breast, inner thigh, or buttocks of any person [3] with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id*. § 2246(3).

Plaintiffs B, C, and G allege the exchange of explicit or nude imagery, not the type of contact and intentional touching of specific body parts that can constitute a sexual act or sexual

contact under the EFAA. Plaintiff B allegedly exchanged "sexually explicit images" with a perpetrator; Plaintiff C allegedly exchanged "sexually explicit materials" with a perpetrator; and Plaintiff G allegedly sent "nude photos of herself."[26] These allegations do not meet the definition of a "sexual act" or "sexual contact" and are not sufficient to carry their burden in invoking the EFAA. *See, e.g.*, *K.T. v. A Place for Rover*, 2023 WL 7167580, at *5 (E.D. Pa. Oct. 31, 2023) (holding that "[w]hile the alleged conduct is certainly reprehensible," conduct alleged to violate state sex-trafficking and wiretapping statutes did not constitute "sexual harassment" under the EFAA).

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant this Omnibus Motion to Compel Arbitration and: (1) compel each Plaintiff to arbitrate their individual claims against Roblox in accordance with the Current Arbitration Agreement; (2) stay each action in its entirety pending resolution of arbitration; and (3) grant such other and further relief as the Court deems just and proper.

[26] (*See* ECF No. 433 ¶ 15 (Plaintiff B), ECF No. 432 ¶ 14 (Plaintiff C), ECF No. 403 ¶ 13 (Plaintiff G).)

Dated: September 22, 2026

Respectfully submitted,

**COOLEY LLP**

*/s/ Tiana Demas*
Tiana Demas

TIANA DEMAS *(pro hac vice)*
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: (312) 881-6500
tdemas@cooley.com

MAX A. BERNSTEIN
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
mbernstein@cooley.com

Attorneys for Defendant
ROBLOX CORPORATION