UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3166<br><br>Case No.: 3:25-md-03166-RS<br><br>**JOINT LETTER BRIEF REGARDING PROTECTIVE ORDER**<br><br>Judge: Hon. Richard Seeborg<br>Magistrate Judge: Hon. Ajay S. Krishnan |

Dear Judge Krishnan:

Pursuant to the Court's standing order, the Parties submit this joint letter brief concerning the proposed Protective Order governing discovery in this MDL. Attached, please find a 5-page submission of the Parties' positions. Further attached are:

**Exhibit A** – A redline comparing the Parties' respective proposals, showing Defendants' proposal as changes to Plaintiffs' proposal.

**Exhibit B** – A clean copy of Plaintiffs' proposal.

**Exhibit C** – A clean copy of Defendants' proposal.

**Exhibit D** – *In re Social Media*, 22-md-03047-YGR (N.D. Cal.), April 10, 2023 Hearing Transcript.

**Exhibit E** – *In re Social Media*, 22-md-03047-YGR (N.D. Cal.), ECF 284, May 18, 2023 Tentative Discovery Order.

**Exhibit F** – The Northern District of California's STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS.

**Exhibit G -** The Northern District of California's MODEL STIPULATED PROTECTIVE ORDER (for standard litigation).

The Parties respectfully request that the Court hold argument on October 21, 2026, or the Court's next available hearing date, and that the Court notice the hearing at least three days in advance to facilitate attorney travel to California.

Date: October 16, 2026

Respectfully submitted,

/s/ Tiana Demas
Tiana Demas (pro hac vice)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Email: tdemas@cooley.com

Simona A. Agnolucci
Max A. Bernstein
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 293-2000
Email: sagnolucci@cooley.com
Email: mbernstein@cooley.com

*Attorneys for Defendant Roblox Corporation*

/s/ Ambika Kumar
Ambika Kumar (pro hac vice)
Xiang Li
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3100
ambikakumar@dwt.com
xiangli@dwt.com

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
adamsieff@dwt.com

Sarah E. Burns
Sam F. Cate-Gumpert
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 276-6500
sarahburns@dwt.com
samcategumpert@dwt.com

*Attorneys for Defendant Discord Inc.*

/s/ Leah Godesky
Leah Godesky
Heather Welles
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 246-8501
lgodesky@omm.com
hwelles@omm.com

*Attorneys for Defendant Snap Inc.*

/s/ Megan Rodgers
Megan Rodgers
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: (650) 632-2112
mrodgers@cov.com

Ashley Simonsen
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067
Telephone: (424) 332-4800
asimonsen@cov.com

Isaac Chaput
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7053
ichaput@cov.com

*Attorneys for Meta Platforms, Inc.*

/s/ Sarah R. London
Sarah R. London
Andrew R. Kaufman
Isabel Velez
GIRARD SHARP LLP
601 California St., Suite 1400
San Francisco, CA 94108
Telephone:
(415) 981-4800
slondon@girardsharp.com
akaufman@girardsharp.com
ivelez@girardsharp.com

Alexandra M. Walsh
D. Patrick Huyett
Paige Boldt
ANAPOL WEISS
One Logan Square
130 North 18th Street, Ste. 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
awalsh@anapolweiss.com
phuyett@anapolweiss.com
pboldt@anapolweiss.com

Bryan F. Aylstock
Hillary Nappi
Jennifer Hoekstra
AYLSTOCK WITKIN KREIS OVERHOLTZ, PLC
17 East Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
HNappi@awk-saa.com
JHoekstra@awkolaw.com

*Co-Lead Counsel for Plaintiffs*

**ATTESTATION**

I, Kelly K. McNabb, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: October 16, 2026

By: /s/*Kelly K. McNabb*
Kelly K. McNabb

**<u>Plaintiffs' Position</u>**

Plaintiffs' proposals track this District's Model Protective Order ("MPO"). Defendants' markup would impose non-standard restrictions that courts in this District have already rejected as overbroad or vague. *See Rabin v. Google LLC*, 702 F. Supp. 3d 880, 881 (N.D. Cal. 2023) (finding the party seeking to impose greater restrictions bears the burden of showing prejudice or harm will result without it). Discovery here will involve sensitive material on both sides, and Plaintiffs' proposals adequately address those sensitivities.

**1. CSAM Evidence (§ 2.12).** While Defendants insist that their CSAM-related information be treated as AEO, they demand that Plaintiffs' arguably more sensitive materials be treated as only Confidential. The executed Acknowledgments and disposition notices required to be provided under the CSAM Order identify, by civil case number, device serial number or IMEI, and receiving agency and incident number, precisely which individual Plaintiffs—children who are victims of sexual abuse—have provided devices containing CSAM to the FBI in support of an ongoing federal criminal investigation. Such information, when viewed in conjunction with the allegations in the civil complaints and other identifying information about the victims *and perpetrators* uniquely in the Defendants' possession, would enable the Defendants to piece together detailed information about ongoing, nonpublic child sexual abuse investigations. Treating such information as AEO will enable defense counsel to take appropriate preservation steps—which is the purpose of the disclosure—without unnecessarily jeopardizing those investigations.

**2. Publicly Available Information (§ 3.2).** Information already in the public domain is public. Plaintiffs have accommodated Defendants by accepting a meet-and-confer precondition before *filing* information the Receiving Party knows or has reason to believe was leaked without permission or disclosed unlawfully. There is no legitimate reason to broaden this provision to prohibit the vague and undefined "use" of such material without conferral, which would jeopardize Plaintiffs' work product and strategy.

**3. Confidentiality Designation Challenges (§§ 6.3 and 6.5).** The burden of persuasion should be on the Designating Party. The MPO squarely supports Plaintiffs: it places the burden of persuasion "on the Designating Party," requires the Designating Party to move to retain confidentiality, provides that failure to do so automatically waives the designation, and keeps the designated level of protection in place until the Court rules. MPO § 6.3. Plaintiffs' Section 6.5 preserves that status-quo protection. Burden-shifting after an arbitrary number of unsuccessful challenges is an unnecessary deviation. A party that loses a handful of challenges out of many is not abusing the process. Plaintiffs' proposal adequately deters abuse: Section 5.2 prohibits mass, indiscriminate, or routinized designations and exposes over-designating parties to sanctions, and Section 6.5 exposes Challenging Parties to sanctions for frivolous or improper challenges.

**4. Data Security (§ 7.3).** Plaintiffs propose the MPO's language verbatim. MPO § 7.1. Defendants' markup would instead require every receiving party and every person transmitting Protected Material to maintain an information security program or else house all material with a secure eDiscovery vendor, and would forbid any copying or reproduction without the Designating Party's written permission. Judge Hixson rejected a materially identical paragraph in *In re Social Media*, 22-md-03047-YGR (N.D. Cal.). He found it "vague," warned against "satellite litigation," and held it was "a stalking horse for two unstated things"—an unstated requirement that documents live only on a cloud-based eDiscovery vendor, coupled with an unstated assumption that counsel could still use documents on laptops and by email to prepare

depositions. Ex. D, 4/10/2023 Hr'g Tr. 21:25-22:3, 22:13-15, 28:12-30:3. Defendants' hyperbole that there has been a "surge in cyberattacks" does not meet their burden to show "specific prejudice or harm will result if the less restrictive standard order . . . is imposed." *Rabin*, 702 F. Supp. 3d at 881.

**5. Expert Disclosure (§ 7.8).** Plaintiffs' proposed approach to expert access to discovery adequately protects Defendants from concerns over competitors accessing discovery. Section 2.9 excludes current employees, contractors, and competitors from the definition of experts; every expert signs Exhibit A and submits to this Court's jurisdiction; and Sections 7.1 and 14 limit use and require return or destruction.

Defendants' proposal goes much further, requiring early expert disclosure—a provision largely modeled on the NDCA's model order for patent and trade secret cases. These vetting provisions were designed for patent cases—not personal injury, product liability MDLs—and tailored to apply to narrow, highly competitively sensitive technical information. They have no place in a Protective Order that expressly carves out Source Code from its scope. Courts in this District have refused to impose such regimes in cases not involving patents or trade secrets. *Johnson v. City & County of San Francisco*, 2011 WL 13377688, at *2 (N.D. Cal. Feb. 9, 2011) (recognizing that advance vetting would "effectively allow the Defense to vet Plaintiffs' expert, eviscerate the work product privilege regarding any expert they may choose not to use, and require premature disclosure of the identity of any expert(s)").[1]

Defendants cite the *Social Media* protective order, but the subsequent history in that case confirms how little work that provision did. In that litigation, Defendants objected to only two of Plaintiffs' experts because the experts were also serving as experts in a parallel proceeding in Canada. The elaborate advance-identification provision produced no substantive challenge to any expert's fitness to receive protected material. It served merely as a standing window into Plaintiffs' consulting relationships. Defendants' designation practices underscore how broadly this requirement would reach: in other recent litigation, Plaintiffs understand that Defendants have designated the majority of relevant material "highly confidential." With designations that sweeping, Defendants' proposal would be a near-universal requirement that Plaintiffs identify their experts and consultants to Defendants before those individuals can review the material. Plaintiffs have excluded current or prospective competitors from the potential universe of experts or consultants; requiring more serves no legitimate interest.

**6. Clawbacks (§§12.2, 12.4).** After receipt of a clawback notice, Plaintiffs' provision that allows sequestration follows the default framework of Rule 26(b)(5)(B), which the MPO incorporates. MPO § 11. Plaintiffs have agreed to Defendants' proposed deviations from the Rule by giving up the right to submit the document to the Court for *in camera* review. Given this, it is reasonable to allow Plaintiffs choose between returning, destroying, or sequestering work product incorporating a clawed back document pending the outcome of a clawback challenge—requiring destruction absent Defendants' consent would result in significant loss and waste in the event of a meritless clawback attempt. It is likewise reasonable to give Plaintiffs some say in requiring that a document be submitted for *in camera* review, particularly where the issue is time sensitive such as a clawback shortly before a deposition or filing deadline. Requiring in every instance that the

[1] *See also Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 433481, at *4 (N.D. Cal. Feb. 2, 2015) (a court should not require a party "to disclose in advance the identity of anyone they might consult" because it "potentially invades the attorney work product doctrine").

Court first review the pleadings and then order the document submitted adds steps and delay in the privilege challenge process, which may be prejudicial in certain circumstances.

**7. Export Control (§§ 2.10 and 13.10).** Plaintiffs propose confining any export-control restriction to documents that are actually export controlled and designated as "EXPORT CONTROL PROTECTED MATERIAL" (§ 2.10). Section 13.10 then applies the territorial restriction only to material so designated. This is the structure Judge Hixson ordered in *Social Media*. He rejected using the "Highly Confidential (Competitor)" designation as a proxy for export-controlled material because that designation targets competitively sensitive business information, "which is not the focus of export control regulations." Ex. E, ECF 284 at 2-3. Defendants' broader language would bar all Protected Material from leaving the United States, being viewed abroad, or being made available to foreign nationals—even those who may work or consult for a Plaintiffs' law firm or an ESI vendor. Judge Hixson refused to enter this very approach, finding it "applies to all protected material, every single email that has the word confidential stamp on it" and is "vastly overbroad." Ex. D, Hr'g Tr. 59:17-60:10, 62:9-63:9; *see also Iron Tribe Fitness v. Meta Platforms, Inc.*, 2026 WL 2351858, at *1 (N.D. Cal. Aug. 13, 2026) (rejecting Meta's proposal that "no protected material leave the United States" because the patent model PO—which "already includes an optional 'export control' provision" that the court ordered the parties to adopt—"isn't as restrictive, and Meta hasn't demonstrated that tighter controls are necessary").

<u>**Defendants' Position**</u>

**Introduction.** Defendants' proposals protect sensitive technical data and personal user information and promote efficiency and the Parties' ability to litigate. These proposals are narrowly tailored, apply equally to all Parties, are consistent with District precedent, and impose no cognizable burden on Plaintiffs. Plaintiffs rely heavily on this District's Model Protective Order, which does not provide enough protection for a case of this complexity, and *In re Social Media*, which reflects case-specific compromises negotiated among a different set of litigants over three years ago and left open to revision. *See, e.g.,* Ex. D, Hr'g Tr. 8:2-3, 28:12-14, 38:20-21, 65:11-16; Ex. E at 3-4.

***Plaintiffs' CSAM-Related Evidence Confidentiality (§§ 2.4 and 2.11).*** Pragmatism calls for designating Plaintiffs' CSAM-related evidence (comprising destruction notices and Acknowledgment Forms, ECF 415) Confidential, not AEO. AEO treatment would require the Parties to confer each time a Party needs to share the evidence with client-side personnel who have relevant information or may assist with investigation or NCMEC reporting, imposing recurring burdens without corresponding benefit. Plaintiffs have identified nothing sensitive about the notices or Acknowledgment Forms, which include no PII or readily identifiable victim information. Plaintiffs ignore this difference: Defendants' CSAM-related information is derived from NCMEC reporting with PII for potential victims and perpetrators, and Plaintiffs' forms will contain nothing of the sort. Treating such information as Confidential cannot plausibly "jeopardize" an investigation.

***Scope (§ 3.2).*** Meet-and-confer obligations should attach when a Receiving Party wants to "use" Protected Material alleged to be in the public domain, not before "filing." Otherwise, that Party could use Protected Material obtained unlawfully or through a confidentiality

obligation violation without notice before a Producing Party can assess confidentiality. The "use" formulation also promotes efficiency, reduces emergency motions practice, and prevents intentional violations once a Party asserts confidentiality.[2] Because a partial leak or unlawful source may not place an entire document in the public domain, Parties should address these nuances before a Receiving Party uses the material.

***Judicial Intervention (§ 6.3).*** Once a Designating Party prevails on three motions to retain a confidentiality designation—no small doing—the burdens of filing and persuasion should shift to that Challenging Party. This proposal promotes proportionality and judicial economy. Further, this District has adopted at least twenty-six POs that place the filing burden on the Challenging Party,[3] and the Tier 2 Model PO recognizes the need to shift the filing burden, Ex. F at 7 n.1. Because Defendants' productions will far exceed Plaintiffs', Defendants also face greater exposure to confidentiality challenges, making burden-shifting appropriate. Treating all Plaintiffs as one Challenging Party gives § 6.3 practical effect in an MDL: without aggregation, designations could be challenged serially by different Doe Plaintiffs.

***Data Security (§ 7.3).*** Defendants seek data security "consistent with standard industry practice" because the Model PO's "secure manner" language is insufficient for protecting sensitive proprietary information and personal user data, particularly amid a surge in cyberattacks targeting tech companies and law firms. *See, e.g., Affinity Credit Union v. Apple Inc.*, 2024 WL 1344211, at *2 (N.D. Cal. Mar. 29, 2024) (approving protections beyond those in Model PO); Dan Roe, *Data Breaches at McDermott, Quinn Cap Cyber-Siege Summer*, Law.com (Sept. 9, 2026). ESI productions containing algorithms and competitive information—types of material at issue—are especially vulnerable to cyberattack and inadvertent disclosure. Defendants' proposal also imposes minimal burden, requiring far fewer technical requirements than other POs entered in this District. *See, e.g.*, *Kapil v. Apple Inc.*, 2026 WL 2352768, at *2 (N.D. Cal. Aug. 13, 2026). Plaintiffs identify no compliance issues. Nor could they: a reputable eDiscovery vendor suffices if Plaintiffs' systems do not meet industry standards.

***Expert Disclosure (§ 7.8).*** The PO should require any Receiving Party, i.e., both Plaintiffs and Defendants, to disclose information about an expert before that expert receives HCC material, giving the Producing Party "an opportunity to vet someone who is going to have access to" its most sensitive information, especially in competitive industries. *See In re Google Assistant Priv. Litig.*, 2020 WL 4698810, at *2 (N.D. Cal. Aug. 13, 2020). This requirement is consistent with the Tier 2 Model PO and other POs in this District.[4] *See, e.g.*, *In re Social Media*, No. 4:22-md-03047-YGR, ECF 289, at 3-4 (N.D. Cal. May 22, 2023); *id.*, ECF 553, at 17 (N.D. Cal. Jan. 23, 2024) (upholding disclosure requirement given "substantial need" to vet experts because "it is impossible to erase knowledge of those materials from the expert's mind").

---

[2] Plaintiffs concede that conferring before *filing* information in the public domain would not invade work product and cite no authority for their position that conferring before *using* information in the public domain would.

[3] *See, e.g.*, *Tapia v. The Coca-Cola Co.*, No. 4:22-cv-01362-HSG (N.D. Cal. July 17, 2023), ECF 57, § 6.3 (placing filing *and* persuasion burden on Challenging Party); *Pacific Steel Group v. Commercial Metals Co*., No. 4:20-cv-07683-HSG (N.D. Cal. Feb. 2, 2024), ECF 261, § 6.3 n.1 (shifting the burden to file to the Challenging party after three unsuccessful challenges "to avoid abuse of the process.").

[4] Plaintiffs' assertion that § 7.8 is modeled on the "model order for patent and trade secret cases" is misleading because that model PO is also written for "LITIGATION INVOLVING . . . HIGHLY SENSITIVE CONFIDENTIAL INFORMATION . . . ." Ex. F at 1.

Providing an expert's name, resume, employer, and recent professional history imposes no cognizable burden, reveals no work product, *see* Ex. D, Hr'g Tr. 39:8-12, and benefits all Parties by surfacing conflicts early—if anything, this provision streamlined expert engagement in *Social Media*, as Plaintiffs concede.

***Clawback Procedures (§§ 12.2 and 12.4).*** Defendants' proposed §§ 12.2 and 12.4 reinforce a core tenet of privilege law: a Party challenging privilege may not use, disclose, or possess another Party's privileged information unless a court so authorizes. Even if a Defendant permits sequestration under § 12.2, there is no basis for Plaintiffs' proposed § 12.4—requiring the Producing Party to submit the challenged document(s) to the Court upon the Receiving Party's request—because a party requesting *in camera* review may only use "relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Wang v. Zymergen Inc*., 2025 WL 2978393, at *5 (N.D. Cal. Oct. 22, 2025). And "the party requesting review" must first meet an "evidentiary threshold" to obtain an *in camera* review assessing whether information is privileged. *Id*. If the Court does order *in camera* review, it is only at that point that there is any need for the Court to have the challenged documents, and Defendants will provide the documents, so there is no prejudice to Plaintiffs' ability to challenge privilege.

***Export Controls (§ 13.10).*** § 13.10 merely restates existing export controls compliance obligations applicable to all Parties and requires no new restrictions. Plaintiffs' proposed Export Control provision, on the other hand, is unworkable because Defendants cannot designate technical data at the document level without enormous burden, specifically manual review by an export controls expert and an engineer able to translate highly technical documents. Nor have Plaintiffs explained why discovery in a case with U.S.-based lawyers and Parties must be shared with foreign nationals or stored outside the U.S. Defendants are equally bound by the restriction and can coordinate 24-hour eDiscovery support without foreign contractors. And Defendants' proposal is nearly identical to restrictions approved in this District. *See, e.g.*, *Laixion Network Tech. Ltd. v. Meta Platforms, Inc*., No. 3:25-cv-03227-JSC, ECF 89, § 14.3 (N.D. Cal.); *M.H. v. Done Global, Inc.*, No. 3:24-cv-03040-RFL, ECF 76, § 13.3 (N.D. Cal.); *Starzinski v. Meta Platforms, Inc.*, No. 4:24-cv-04501-AMO, ECF 69, § 12.3 (N.D. Cal.).

***Foreign Location and Use (§ 13.11).*** Defendants seek reasonable and proportionate restrictions on use and location of Protected Material to address heightened data-security concerns for Protected Material located, accessed, or transmitted outside the U.S. Foreign storage or transmission may expose proprietary technical data and personal user data to foreign legal regimes, surveillance frameworks, and cybersecurity threats.[5] § 13.11 addresses those risks and provides for exceptions where appropriate. Plaintiffs have expressed no legitimate need for Protected Material to leave the U.S., and courts in this District have found similar restrictions reasonable. *See, e.g.*, *Laixion*, No. 3:25-cv-03227-JSC (N.D. Cal. July 11, 2025), ECF 86.

[5] *See* Exec. Order No. 14117, 89 Fed. Reg. 15421 (Mar. 1, 2024) (recognizing "unusual and extraordinary threat" posed by foreign actors seeking "access [to] Americans' sensitive personal data"); *UK Parliament forces executive to hand over internal Facebook documents*, Notebook Check (Nov. 25, 2018), https://www.notebookcheck.net/UK-Parliament-forces-executive-to-hand-over-internal-Facebook-documents.368356.0.html (reporting that a UK parliamentary committee compelled production of internal documents subject to PO).