Alexandra M. Walsh
**ANAPOL WEISS**
14 Ridge Square, NW, 3rd Floor
Washington, DC 20016
Telephone: (771) 224-8065
Fax: (215) 735-2211
awalsh@anapolweiss.com

Sarah London
**GIRARD SHARP LLP**
601 California St #1400
San Francisco, CA 94108
Telephone: (866) 981-4800
Fax: (415) 981-4800
slondon@girardsharp.com

Bryan Aylstock
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
Fax: (850) 916-7449
baylstock@awkolaw.com

Lead Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION<br><br>This document relates to:<br><br>No. 3:25-cv-10607<br>No. 3:25-cv-07291<br>No. 3:25-cv-10812<br>No. 3:26-cv-00810<br>No. 3:25-cv-03520<br>No. 3:26-cv-01681<br>No. 3:25-cv-10982<br>No. 3:25-cv-05753 | MDL No. 3166<br>Case No. 3:25-md-03166-RS (ASK)<br><br>**DECLARATION OF D. PATRICK HUYETT IN SUPPORT OF PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION**<br><br>District Judge: Hon. Richard Seeborg<br>Magistrate Judge: Ajay S. Krishnan |

I, D. Patrick Huyett, declare as follows:

1. I am a member in good standing of the Bar of Pennsylvania, and I am admitted *pro hac vice* in this action. I am a Partner at Anapol Weiss and am authorized by Lead Counsel in the above-captioned matter to submit this declaration.

2. I submit this declaration in support of Plaintiffs' Omnibus Opposition to Defendants' Motions to Compel Arbitration. Unless otherwise noted, I have personal knowledge of the facts set forth in this declaration.

3. Attached as **Exhibit 1** is a true and correct copy of the Order Denying Defendant Roblox Corporation's Motion to Compel Arbitration and Stay Proceedings in *Doe. v. Roblox*, No. 25-CIV-01193 (Super. Ct. San Mateo Cty. Nov. 17, 2025).

4. Attached as **Exhibit 2** is a true and correct copy of the Order Denying Defendant Roblox Corporation's Motion to Compel Arbitration and Stay Proceedings in *Doe. v. Roblox*, No. 25-CIV-05901 (Super. Ct. San Mateo Cty. Feb. 23, 2026).

5. Attached as **Exhibit 3** is a true and correct copy of the Order Denying Defendant Discord Inc.'s Amended Motion to Compel Arbitration and Stay Litigation in *Doe. v. Roblox*, No. 25-CIV-05901 (Super. Ct. San Mateo Cty. Feb. 23, 2026).

6. Attached as **Exhibit 4** is a true and correct copy of the Declaration of Ronita Jit in Support of Defendant's Renewed Motion to Compel Arbitration filed in *Uhl v. Roblox Corporation*, No. 3:23-CV-01940 (S.D. Cal.), at Dkt. No. 83.

7. Attached as **Exhibit 5** is a true and correct copy of FedArb's ADR-MDL™ Framework for Mass Arbitration Proceedings, https://fedarb.com/framework-for-mass-arbitration-proceedings-adr-mdl/ (last visited Oct. 27, 2026).

8. Attached as **Exhibit 6** is a true and correct copy of FedArb's Streamlined Solutions for Mass Arbitration, https://fedarb.com/mass-arbitration/ (last visited Oct. 27, 2026).

9. Attached as **Exhibit 7** is a true and correct copy of FedArb's Expedited Arbitration Rules, https://fedarb.com/expedited-arbitration/ (last visited Oct. 27, 2026).

10. Attached as **Exhibit 8** is a true and correct copy of FedArb's FedArb Rules, https://fedarb.com/fedarb-rules/ (last visited Oct. 27, 2026).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of October, 2026, at Philadelphia, Pennsylvania.

*/s/ D. Patrick Huyett*
D. Patrick Huyett

# EXHIBIT 1

Electronically
FILED
By Superior Court of California, County of San Mateo
ON 11/17/2025
By /s/ Tovar, Priscilla
Deputy Clerk

Electronically
RECEIVED
11/12/2025
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
SARVENAZ FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
PIERCE H. STANLEY (SBN 352152)
pstanley@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

KRISTEN FEDEN (*pro hac vice*)
kfeden@anapolweiss.com
D. PATRICK HUYETT (*pro hac vice*)
phuyett@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice*)
awalsh@anapolweiss.com
**ANAPOL WEISS**
14 Ridge Square, NW, 3rd Floor
Washington, DC 20016
Telephone: (771) 224-8065
Facsimile: (215) 735-2211

*Attorneys for Plaintiff and Guardian ad litem*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

| | |
|---|---|
| JOHN DOE, a minor, represented by his court-appointed guardian *ad litem*, CHARLES JONAS,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION; DISCORD INC.; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 25-CIV-01193<br><br>*Assigned for all purposes to the Honorable Nina Shapirshtyen*<br>NGS<br>**~~[PROPOSED]~~ ORDER DENYING DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

This matter came on for hearing in the above-captioned court on October 30, 2025 at 2:00 p.m. All parties appeared. Personal appearance made on behalf of Plaintiff John Doe, a minor represented by his court-appointed guardian *ad litem*, Charles Jonas, by attorneys Anne Marie Murphy, D. Patrick Huyett, Sarvenaz "Nazy" Fahimi, and Pierce H. Stanley. Zoom Appearance made on behalf of Defendant Discord Inc. by attorney Adam Sieff. Personal appearance made on behalf of Defendant Roblox Corporation by attorneys Max Berstein and Carrie Lebel.

The Court hereby adopts its tentative ruling as follows:

For the reasons stated below, Defendant Roblox Corporation's "Motion to Compel Arbitration and Stay Proceedings," filed April 8, 2025, is **DENIED.**

**The parties' repeated Rules of Court violations.**

Roblox's 15-page Reply brief violates the California Rules of Court by a wide margin. (CRC 3.1113(d) [10-page limit for Reply briefs].) After filing the August 26, 2025 First Amended Complaint ("FAC"), on September 17, 2025, Plaintiff filed, without Court permission, a seven-page Supplemental Brief, arguing why Roblox's motion should be denied. In response, on October 1, 2025, Roblox, without Court permission, filed a "Response to Plaintiff's Supplemental Brief in Further Support of Motion to Compel Arbitration," with five pages of additional argument.

The Court has considered all of the above-referenced unauthorized briefs. Going forward, however, the Court may impose sanctions or strike any filing(s) that violate the Rules of Court, including page limit violations.

## I. Background

As alleged in Plaintiff's August 26, 2025 FAC, Defendants Roblox and Discord offer to the public online platforms that enable users to communicate with others. The FAC alleges that in 2023, Plaintiff's father created Roblox and Discord accounts for Plaintiff to use, and Plaintiff began using both platforms.

At some point in 2023, a child predator, Romero-who was later arrested and pled guilty to criminal charges-contacted Plaintiff via the Roblox direct messaging platform and asked Plaintiff to send nude pictures of himself. (FAC, ¶ 235.) Plaintiff initially refused. (*Id.*) Around the same time, Romero began messaging Plaintiff on Discord's platform, making similar requests. (FAC, ¶

236.) Romero eventually persuaded Plaintiff was to send him a nude frontal photo of himself in exchange for a "Robux gift card." (FAC, ¶ 238.)

During a subsequent law enforcement investigation into Romero, officials reviewed the videos and images that Romero had coerced Plaintiff into sending and discovered that they depicted Plaintiff touching his penis, masturbating, and penetrating himself with a toothbrush in these videos and images. (FAC, ¶ 243.)

Plaintiff asserts various tort claims against Roblox and Discord, including alleged misrepresentation(s) about the safety of their platforms, negligence, and strict product liability. Romero, the third-party perpetrator, is not a party to this action.

## II. Procedural background

Defendants Roblox and Discord each filed separate motions to compel arbitration, asserting that when the respective user accounts were created, Plaintiff expressly agreed to arbitrate any disputes arising from the use of their platforms.

After both Roblox's and Discord's motions to compel arbitration were fully briefed, Plaintiff appeared *ex parte* requesting permission to file supplemental briefing pertaining to recently-enacted federal legislation*" The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021"* ("EFAA"), Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401-402).

The Court granted Plaintiff's request, and the parties submitted supplemental briefs addressing whether the EFAA applies to the claims asserted in this action. Plaintiff contends that the EFAA bars arbitration. Roblox and Discord each maintain that the statute does not apply to Plaintiff's claims.

## III. Discussion

### A. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021

In general terms, the EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant, in cases involving sexual assault or sexual harassment as defined by the statute. The operative provision, 9 U.S.C. § 402(a), provides in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, ... no predispute arbitration agreement ... shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

(9 U.S.C. § 402 (a) [emphasis added].)

In its prior order denying, without prejudice, defendant Discord's Motion to Compel Arbitration - which predated the filing of the FAC - the Court found that Plaintiff's original complaint did not sufficiently allege a "sexual assault dispute," as defined under the EFAA. (See Aug. 15, 2025 Order.) On August 26, 2025, apparently in response to that ruling, Plaintiff filed the FAC, adding new factual allegations involving photos of Plaintiff masturbating, and penetration with a foreign object. (See FAC, ¶¶ 4, 243.)

**B. The parties' burdens**

Roblox moves to compel arbitration under the Federal Arbitration Act ("FAA") and Code of Civil Procedure §§ 1281, et. seq. When a petition to compel arbitration is filed, the trial court must determine, in a summary proceeding, whether an agreement to arbitrate the controversy exists. (Code Civ. Proc., §§ 1281.2, 1290.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412-413.)

The moving party bears the burden of proving its existence by a preponderance of the evidence. *(Rosenthal,* at p. 413; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) The party opposing arbitration bears the burden of proving any applicable defense.

Here, Plaintiff bears the burden of showing that the EFAA applies. (Doe *v. Second St. Corp.* (2024) 105 Cal.App.5th 552, 564.)

**C. The FAC alleges conduct constituting a "sexual assault dispute"**

The Court next considers whether the operative pleading alleges conduct that constitutes a "sexual assault dispute" within the meaning of the EFAA. (9 U.S.C. §§ 401-402.)

Roblox argues that the EFAA does not apply because the First Amended Complaint ("FAC") does not allege a "sexual assault dispute." The parties agree that the Court's analysis is

confined to the allegations of the operative pleading, rather than to extrinsic evidence, and that the EFAA does not require physical contact between the alleged perpetrator and the victim. The parties also appear to agree that a "sexual assault dispute," as defined in the statute, can encompass circumstances in which a perpetrator coerces or entices a minor to engage in sexually explicit conduct-such as masturbation or penetration with a foreign object-for the purpose of recording or transmitting images of that conduct. (See the parties' supplemental briefs on the EFAA, citing the relevant definitional sections.)

Both parties' briefing references the criminal proceedings against the perpetrator, Romero, in New Jersey. Roblox argues that the FAC mischaracterizes those proceedings and that Romero was not convicted of sexual assault. Roblox further contends that the criminal record shows Romero only requested and received nude photographs, and that no conviction was entered for conduct involving masturbation or penetration.

The FAC, however, alleges more than the mere exchange of nude images. It alleges that Romero persuaded Plaintiff-a 13-year-old child-to create and send videos and images depicting himself masturbating and penetrating himself with a toothbrush. (FAC ¶¶ 4, 243.) Those allegations, if true, describe coerced sexual acts that fall squarely within the scope of a "sexual assault dispute" as defined by the EFAA.

While Roblox's characterization of the criminal record may differ, the EFAA's application turns on the allegations in the civil complaint, not on the ultimate findings or charges in the criminal case. The charges brought against Romero and his plea do not necessarily define the full scope of his conduct as alleged here. It is also unclear whether the FAC's additional factual allegations were based solely on newly obtained criminal case documents or on the independent knowledge of Plaintiff and his parents.

Roblox argues that the FAC does not technically allege that Plaintiff ever sent any photograph(s) involving masturbation or penetration-and that the FAC "only purports to describe a police investigation and prosecution." (Roblox's October 1, 2025 Supp. Brief.)

Viewing the allegations in the light most consistent with their intended meaning, the Court finds that the FAC alleges conduct constituting a "sexual assault dispute" within the meaning of 9

U.S.C. § 402.

Accordingly, the Court concludes that the EFAA applies if Plaintiff's claims "relate to" the alleged sexual assault dispute, as discussed below

**D. Plaintiff's claims against Roblox "relate to" the sexual assault dispute**

Having found that the FAC alleges conduct constituting a "sexual assault dispute," the Court next considers whether Plaintiff's claims against Roblox "relate to" that dispute within the meaning of 9 U.S.C. § 402(a).

Roblox contends that even if the FAC alleges a sexual assault dispute, the EFAA nevertheless does not apply because the claims asserted against Roblox do not "relate to" that dispute. Roblox argues that Congress intended the EFAA to apply narrowly-primarily to employment cases or to situations where sexual misconduct occurs on a business's premises or is committed by its employees.

Roblox correctly observes that most published decisions applying the EFAA have arisen in the employment context, typically involving claims of workplace harassment or assault where a plaintiff sought to hold an employer vicariously liable for the acts of its employees. (See, e.g., *Diaz-Roa v. Hermes Law, P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498, 533; *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 803; *Delo v. Paul Taylor Dance Found., Inc.* (S.D.N.Y. 2023) 685 F.Supp.3d 173, 181; *Olivieri v. Stifel* (2d Cir. 2024) 112 F.4th 74, 92.) Roblox also relies on legislative history emphasizing that Congress sought to prevent forced arbitration in cases where employees or consumers were assaulted or harassed at work or on business premises. (See H.R. Rep. No. 117-234 (2d Sess. 2022), 2022 WL 302657, at *3.)

Roblox also points to the EFAA's legislative history, arguing that Congress intended that the EFAA would apply to workplace/employment disputes. For example, Roblox cites a House Report on the EFAA, stating:

> When an employee who is subject to a forced arbitration clause sues after being raped, assaulted, or harassed at work, the company is entitled, under the Federal Arbitration Act (FAA), to force the suit into arbitration. Similarly, a consumer who signs an arbitration clause and is assaulted at a business can be forced into an arbitration proceeding.

EFAA of 2021, H.R. Rep. No. 117-234 (2d Sess. 2022), 2022 WL 302657, at *3.

Roblox argues that Plaintiff has cited no published decision where a court applied the EFAA to an online platform, such as Roblox, where the alleged perpetrator (Romero) was not a Roblox employee, and was merely a user of the Roblox platform. Roblox also notes that although Romero is alleged to have sent messages to Plaintiff via the Roblox platform asking for nude photographs, Plaintiff is not alleged to have actually sent any nude photographs via the Roblox platform.

Roblox further cites *M.D. v. Verizon Communications, Inc.* (E.D.N.C. Sept. 23, 2025) 2025 WL 2712831, in which the court held that the EFAA did not apply where a perpetrator unrelated to Verizon used customer information, negligently disclosed by Verizon, to stalk and harass the plaintiff. The court found the EFAA inapplicable because the perpetrator "had no legal relationship to Verizon," and the case did not involve harassment "by Verizon or its employees." (Id. at *10.)

While *Verizon* provides some persuasive value, it is neither binding nor dispositive. The EFAA's statutory text contains no limitation restricting its reach to employment or premises-based disputes. Section 402(a) expressly applies to "any case ... which relates to the sexual assault dispute or the sexual harassment dispute." The phrase "relates to" is broad and has been interpreted expansively in federal jurisprudence to mean having "a connection with," "bearing upon," or "referring to." (*See Morales* v. *TWA* (1992) 504 U.S. 374, 383.)

Courts construing the EFAA have recognized its "expansive effect" and have cautioned against unduly narrowing its application. *(Diaz-Roa,* supra, 757 F.Supp.3d at 531.) Discussing the scope of the § 402(a) phrase "related to," the *Diaz-Roa* court stated:

> "This third requirement does not present a high bar. The phrase 'relating to' is deemed synonymous to 'in connection with,' 'associated with,' 'with respect to,' and 'with reference to.' [cites omitted] Moreover, Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent. [cites omitted]. Such expansive wording further underscores the broad application that the EFAA was written to have."

It would have been a simple task for Congress to expressly limit the EFAA to employment disputes, and/or to assaults/harassment perpetrated by employees at a business premises, had that been Congress' intent.

Applying these principles, the Court concludes that Plaintiff's claims against Roblox "relate to" the alleged sexual assault dispute. The FAC alleges that Roblox misrepresented the safety of its platform, failed to implement reasonable safeguards, and enabled Romero to identify, groom, and communicate directly with Plaintiff, resulting in the coercion and production of sexually explicit material. (FAC ¶¶ 4, 235, 243, 248.) But for Roblox's alleged misconduct, the assaultive conduct would not have occurred. Although the EFAA's language must have some practical limits, the connection between the alleged sexual assault and Roblox's alleged failures is neither remote nor incidental. The claims arise directly from the same factual nucleus-the use of Roblox's platform that allegedly facilitated Romero's exploitation of Plaintiff.

The Court therefore finds that Plaintiff's claims are sufficiently related to the underlying sexual assault dispute to bring them within the scope of 9 U.S.C. § 402(a). Accordingly, the Court concludes that the EFAA applies and renders the arbitration agreement unenforceable as to Plaintiff's claims.

If the tentative ruling is uncontested, it shall become the order of the Court. Thereafter, counsel for Plaintiff shall prepare a written order consistent with the Court's ruling for the Court's signature, pursuant to California Rules of Court, Rule 3.1312, and provide written notice of the ruling to all parties who have appeared in the action, as required by law and the California Rules of Court.

**IT IS SO ORDERED.**

Date: 11/13/2025

Electronically
**SIGNED**
By /s/ Shapirshteyn, Nina

Honorable Nina Shapirshteyn
Judge of the Superior Court

**APPROVED AS TO FORM:**

Dated: November 11, 2025

**COOLEY LLP**

**By:** */s/ Caroline A. Lebel*
MAX BERNSTEIN
CAROLINE A. LEBEL
RYAN C. STEVENS
*Attorneys for Defendant*
*Roblox Corporation*

**PROOF OF SERVICE**

I am employed in the County of San Mateo. I am over the age of 18 years and not a party to this action. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, California, 94010. On this day, I served the foregoing document(s) in the manner described below:

- **[PROPOSED] ORDER DENYING DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**
-

**[SEE ATTACHED SERVICE LIST]**

✓ **BY E-MAIL**: My e-mail address is hcheng@cpmlegal.com and service of this document(s) occurred on the date shown below. This document is being served electronically and the transmission was reported as complete and without error.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct Executed at Burlingame, California, on November 12, 2025.

*Hailey Cheng*
HAILEY CHENG

## SERVICE LIST

| | |
|---|---|
| Max A. Bernstein<br>Caroline A. Lebel<br>Ryan C. Stevens<br>**Cooley LLP**<br>3 Embarcadero Center • 20th Floor<br>San Francisco, CA 94111-4004<br>Tel: (415) 693 200<br>Fax: (415) 693 2222<br>Email: mbernstein@cooley.com<br>clebel@cooley.com<br>rstevens@cooley.com<br>tdemas@cooley.com<br>iwong@cooley.com<br>jerry.cordero@cooley.com<br>smartinez@cooley.com | **COUNSEL FOR DEFENDANT ROBLOX CORP.** |
| Ambika Kumar<br>Xiang Li<br>**Davis Wright Tremaine**<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104<br>Tel: (206) 757-8030<br>Fax: (206) 757-7030<br>Email: ambikakumar@dwt.com<br>xiangli@dwt.com<br><br>Adam S. Sieff<br>Rachel R. Goldberg<br>**Davis Wright Tremaine**<br>350 South Grand Ave., 27th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 633-6800<br>Fax: (213) 633-6899<br>Email: adamsieff@dwt.com<br>rachelgoldberg@dwt.com<br>MelissaStrobel@dwt.com<br><br>Sarah E. Burns<br>Sam F. Cate-Gumpert<br>**Davis Wright Tremaine**<br>50 California Street, Suite 2300<br>San Francisco, CA 94111<br>Tel: (415) 276-6500<br>Fax: (415) 276-6599<br>Email: sarahburns@dwt.com<br>samcategumpert@dwt.com | **COUNSEL FOR DEFENDANT DISCORD INC.** |

# EXHIBIT 2

WILLIAM SMITH (SBN 324235)
wsmith@anapolweiss.com
**ANAPOL WEISS**
6060 Center Drive, 10th Floor
Los Angeles, CA 90045
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH*
awalsh@anapolweiss.com
**ANAPOL WEISS**
14 Ridge Square, NW, 3rd Floor
Washington, DC 20016
Telephone: (771) 224-8065
Facsimile: (215) 735-2211

KRISTEN FEDEN*
kfeden@anapolweiss.com
D. PATRICK HUYETT (*pro hac vice*)
phuyett@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

*Attorneys for Plaintiff and Guardian ad litem*

**pro hac vice motions forthcoming*

Electronically
**FILED**
By Superior Court of California, County of San Mateo
ON 02/23/2026
By /s/ Tovar, Priscilla
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN MATEO**

JANE DOE, a minor, represented by her court-appointed guardian *ad litem*, JOHN DOE,

Plaintiff,

v.

ROBLOX CORPORATION; DISCORD INC.; and DOES 1-50, inclusive,

Defendants.

Case No.: 25-CIV-05901

*Assigned for all purposes to the Honorable Michael L. Mau*

**~~[PROPOSED]~~ ORDER DENYING DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

This matter came on for hearing in the above-captioned court on February 6, 2026 at 9:00 a.m. All parties appeared. Personal appearance made on behalf of Plaintiff Jane Doe, a minor represented by her court-appointed guardian ad litem, John Doe, by attorney D. Patrick Huyett. Zoom Appearance made on behalf of Defendant Discord Inc. by attorney Adam Sieff. Personal appearance made on behalf of Defendant Roblox Corporation by attorney Max Berstein.

The Court hereby adopts its tentative ruling as follows:

For the reasons stated below, Defendant Roblox Corporation's "Motion to Compel Arbitration and Stay Proceedings," filed October 22, 2025, is **DENIED**.

BACKGROUND

Plaintiff Jane Doe, a female minor represented by her Guardian Ad Litem, John Doe, describes Defendant Roblox Corp. ("Roblox") as an online gaming app that allows users to play a myriad of games, which the company refers to as "experiences." (Compl. ¶ 15.) It is easily accessible, free to download and play, and is available on gaming consoles, computers, tablets, and smart phones. (¶ 16.) Plaintiff also describes defendant Discord as "a communications app" that allows users to talk/communicate with each other online by sending messages, making calls, and sharing documents, pictures, videos, and other media. (Compl. ¶ 149.)

Plaintiff's Complaint alleges that in 2025, when she was 10 years old, she was groomed, kidnapped, and sexually assaulted by a 27-year old male "child predator" ("predator") whom she met on Defendant Roblox's platform. (Compl., ¶¶ 218-225.) The predator built up trust with her on Roblox for two days, then transitioned their communications to Defendant Discord's platform. *(Ibid.)* She alleges the predator coerced her into sharing her address over Discord's platform, and then after obtaining her address, drove to her house, and kidnapped her. *(Ibid.)* She further alleges that the predator held her against her will for an extended period, including an overnight stay in a hotel parking lot after being denied a hotel room. *(Ibid.)* Law enforcement eventually found her in the predator's car in a state of distress. *(Ibid.)* The predator was arrested and charged with: (1) kidnapping; (2) kidnapping a child under 14 years old to commit lewd or lascivious acts; (3) lewd or lascivious acts with a child under 14 years old; (4) exhibiting harmful matter to a minor; and (5) contact with a minor with the intent to commit a sexual offense. *(Ibid.)*

Plaintiff's Complaint asserts claims against Roblox for negligence and product liability, based on allegations that Roblox should have done more to safeguard its platform to prevent adults and potential predators from communicating with minors. Plaintiff alleges that Roblox's failure to provide adequate safeguards led to her kidnapping and sexual assault.

Both Roblox and Discord have filed (separate) motions to compel arbitration. Roblox argues that Plaintiff, by using Roblox's gaming app, Plaintiff agreed to its Terms of Use ("Terms"), including a Mandatory Arbitration Agreement, which requires arbitration of Plaintiff's claims. Accordingly, Roblox argues that Plaintiff is now contractually bound to arbitrate her claims against Roblox.

Plaintiff opposes Roblox's motion on several grounds, including that Roblox is barred from enforcing the arbitration agreement by "The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021" ("EFAA"), Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401–402). Roblox argues that the EFAA does not apply.

## LEGAL ANALYSIS

The party opposing arbitration bears the burden of proving any applicable defense to a request to arbitrate. Accordingly, Plaintiff bears the burden of showing that the EFAA applies. (*Doe v. Second St. Corp.* (2024) 105 Cal.App.5th 552, 564.)

The Court finds that the EFAA prevents Roblox from compelling arbitration.

In general terms, the EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant/plaintiff, in sexual assault and sexual harassment cases that fall within the statute. The statute states, in part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, … no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

(9 U.S.C. § 402(a).) The statute defines "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law[.]" (9 U.S.C. § 401(3).)

Roblox argues that the EFAA does not apply, for two independent reasons: (1) Plaintiff's Complaint does not allege facts constituting a "sexual assault dispute"; and (2) even if Plaintiff did adequately allege a "sexual assault dispute," the nature of the alleged dispute falls outside of the EFAA's intended scope.

The Court disagrees with Roblox on both points.

*The Complaint sufficiently alleges "a sexual assault dispute."*

Roblox argues that while Plaintiff alleges that predator in her case was charged with numerous crimes, including "lewd or lascivious acts with a child under 14 years old," (Compl., ¶ 225), the complaint contains no clear allegation specifying that plaintiff was the victim of such conduct. Roblox argues that the EFAA defines "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact," yet Plaintiff has not alleged any such act or contact, nor has she even alleged the predator touched her in any manner. (Reply, 10:4-20.)

The Court finds this distinction uncompelling. The Complaint alleges that law enforcement found Plaintiff in the predator's car after she had been missing for over 12 hours, arrested the predator, and charged him with:

> (1) kidnapping; (2) kidnapping a child under 14 years old to commit lewd or lascivious acts; (3) lewd or lascivious acts with a child under 14 years old; (4) exhibiting harmful matter to a minor; and (5) contact with a minor with the intent to commit a sexual offense.

(Compl., ¶ 224, 225.) Cal. Penal Code § 11165.1 defines "sexual assault" to include "lewd or lascivious acts upon a child." The elements for "lewd or lascivious acts" upon a child are: (1) any touching of the body of a child under 14 years old, and (2) with the specific intent to arouse, appeal to, or gratify the sexual desires of either the perpetrator or the child. (*See* Cal. Penal Code § 288(a); *see also* CALCRIM No. 1110.)

The Court finds that the Complaint adequately alleges conduct constituting a "sexual assault dispute." (*See, e.g.*, *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402 [courts must draw reasonable inferences from pleaded facts]; *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602 [courts apply common sense approach by giving complaint "a reasonable interpretation by reading it as a whole and all of its parts in their context"].) Given the clear mandate that the EFAA is intended to have an "expansive effect," the Court doubts that the Legislature intended that the Act's application would hinge on a semantic argument that ignores a common sense interpretation of the allegations (*Diaz-Roa v. Hermes Law P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498, 531.)

*<u>Scope of EFAA</u>*

Roblox argues that even if the Complaint adequately alleges a sexual assault dispute, the specific dispute in this case falls outside of the EFAA's scope. Roblox argues that Congress's enactment of the EFAA was primarily intended to preclude arbitration in employment disputes and in consumer disputes where a consumer was assaulted at a business. (Reply, 8:15-19.) Roblox argues that the only two cases that have considered this issue have rejected claims like Plaintiff's claim concerning a third-party's use of an online platform to facilitate a sexual assault. (*Id.* at 9:4-8 [citing *M.D. v. Verizon Comms., Inc.*, 2025 WL 2712831, at *2-3 (E.D.N.C. Sept. 23, 2025) (holding the EFAA inapplicable to suit brought by Verizon user against the company where the plaintiff alleged that Verizon disclosed her phone number to a stalker, who then sexually harassed her); *Farnham v. Grindr, LLC,* 2025 WL 3062698, at *1 (M.D. Fla. Nov. 3, 2025) (holding the EFAA did not apply to claims asserted against a dating app/website based on harm that plaintiff suffered by user he met on dating app)].)

In both *Verizon* and *Farnham*, the district courts considered the EFAA's legislative history, and concluded that the Legislature, when enacting the EFAA, intended for the statute to apply to cases involving sexual harassment/assault that occurred in the workplace, and harassment/assault typically perpetrated by employees of the defendant employer. Indeed, it does appear to this Court that most published decisions applying the EFAA have arisen in the employment context, typically in cases involving claims of workplace harassment or assault where a plaintiff sought to hold an

employer vicariously liable for the acts of its employees. (*See, e.g.*, *Diaz-Roa v. Hermes Law, P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498, 533; *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 803; *Delo v. Paul Taylor Dance Found., Inc.* (S.D.N.Y. 2023) 685 F.Supp.3d 173, 181; *Olivieri v. Stifel* (2d Cir. 2024) 112 F.4th 74, 92.)

While *Verizon* and *Farnham* may have some persuasive value, neither is binding on this Court nor dispositive of the Legislature's intent. *Farnham* is the least persuasive, as its primary authority for its decision is in citing to *Verizon* (*Farnham v. Grindr, LLC*, supra, 2025 WL 3062698, at * 2). The *Verizon* court in turn provided its somewhat limited interpretation that the EFAA essentially covered only two areas: first that "[c]ongress' enactment was primarily intended to preclude arbitration in employment disputes" and second that "for its application to consumers, the EFFA's purpose was to cover situations where 'a consumer who signs an arbitration clause … is assaulted at a business.' H.R. Rep. No. 117-234." *M.D. v. Verizon Comms., Inc.*, supra, 2025 WL 2712831 at *2. As noted below, this Court disagrees with the analysis by the *Verizon* court.

Importantly, the EFAA's statutory text contains no limitation restricting its reach to employment or premises-based disputes. Rather, Section 402(a) expressly applies to "***any case*** ... which relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a) [emphasis added].) The Legislature's use of the phrase "relates to" is inherently broad. That phrase has been interpreted expansively in federal jurisprudence to mean having "a connection with," "bearing upon," or "referring to." (*See Morales v. TTWA* (1992) 504 U.S. 374, 383.) Courts construing the EFAA have recognized its "expansive effect" and have cautioned against unduly narrowing its application. (*Diaz-Roa, supra,* 757 F.Supp.3d at 531.)

Discussing the scope of the § 402(a) phrase "related to," the *Diaz-Roa* court stated:

> This third requirement does not present a high bar. The phrase 'relating to' is deemed synonymous to 'in connection with,' 'associated with,' 'with respect to,' and 'with reference to.' [cites omitted] Moreover, Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent. [cites omitted]. Such expansive wording further underscores the broad application that the EFAA was written to have.

(*Diaz-Roa, supra,* 757 F.Supp.3d at 536, fn. 12.)

It would have been a simple task for Congress to expressly limit the EFAA to employment disputes, or to assaults/harassment perpetrated at a business premises, had that been the intent. But Congress did not do so. (*See, e.g., City of Ontario v. Superior Court* (1993) 12 Cal.App.4th 894, 902 ["We must assume that the Legislature knew how to create an exception if it wished to do so"]; *City of La Mesa v. California Joint Powers Ins. Authority* (2005) 131 Cal.App.4th 66, 74 ["the language of an unambiguous statute cannot be expanded by statements of a committee during the course of the legislative process"]; *Atlantic Richfield Co. v. Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 726 ["When statutory language is ... clear and unambiguous[,] there is no need for construction, and courts should not indulge in it."].)

While this Court finds the express language of the EFAA to be clear and controlling, *in the alternative*, this Court also finds that the fuller legislative history also supports this ruling. As noted previously, all parties in their briefing have cited and argued the *Verizon* case (*M.D. v. Verizon Comms., Inc., supra,* 2025 WL 2712831 at *1) *and* also cited to and argued the legislative history for the EFAA which *Verizon* explores. Having been placed into the record, this Court is allowed to further explore these arguments. Further, the Court also takes Judicial Notice of the legislative history as part of an official act of Congress. Evidence Code § 452(c).

The legislative history for the EFAA (H.R. Rept. 117-234 (2022), provides in pertinent part:

> PURPOSE AND SUMMARY
>
> H.R. 4445, the "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021," would prohibit the enforcement of mandatory, pre-dispute arbitration ("forced arbitration") provisions in cases involving sexual assault or sexual harassment. Over the past several decades, forced arbitration clauses have become virtually ubiquitous in everyday contracts. Often buried deep within the fine print of employment and consumer contracts, forced arbitration deprives millions of Americans of their day in court to enforce state and federal rights. Because arbitration lacks the transparency and precedential guidance of the justice system, there is no guarantee that the relevant law will be applied to these disputes or that fundamental

> notions of fairness and equity will be upheld in the process. Furthermore, due to the secretive nature of this system, these disputes are often shielded from public scrutiny. (footnotes omitted)….
>
> H.R. 4445 would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual….
>
> II. The Effect of Forced Arbitration on Statutory Rights of Sexual Assault and Sexual Harassment Victims
>
> Forced arbitration is now widespread in consumer contracts. In many cases, consumers are unaware of forced arbitration clauses in the contracts of commonly used goods and services. These clauses are sometimes hidden inside of envelopes, delivery boxes, and privacy policies. (footnotes omitted, except original No. 46 explained below)
>
> Forced arbitration provisions imposed on consumers for using everyday goods and services often prevent victims of civil rights violations from pursuing their claims in court. (footnotes omitted)
>
> Footnote 46: See Stephanie Strom, When 'Liking' a Brand Online Voids the Right to Sue, N.Y. Times (Apr. 16, 2014), https://www.nytimes.com/2014/04/17/business/when-liking-a-brandonline-voids-the-right-to-sue.html.
>
> Excerpted from H.R. Rept. 117-234 (2022)

Thus, the actual language of this legislative history specifically explains that forced arbitration clauses are often hidden inside of envelopes, in delivery boxes, in privacy policies and are being imposed on consumers for using everyday goods and services. This type of language is much more expansive and well beyond the two basic areas that the *Verizon* court found subject to the EFAA.

Further, the article by Ms. Strom, again cited within the legislative history itself as Footnote 46, does not deal with arbitration in an employment context or at a business. Instead, the article title itself refers to merely "Liking" a brand online, or downloading a coupon from a General Mills website, joining an online community like "Facebook," entering a company-sponsored sweepstakes or interacting online with a website in a variety of other ways. Since it cannot be disputed this article is cited to and is part of the legislative history for the EFAA, the Court concludes that the *Verizon* court's finding is too limiting. These examples by Ms. Strom are arguably equal to (or even a lower level then) this Plaintiff's use of the online platforms and websites hosted by both Discord and Roblox.

Applying these principles, the Court concludes that this matter is within the scope of the EFAA, which is not limited only to sexual assault cases arising in the employment context or involving consumers assaulted at a business location.

CONCLUSION

Because the Court finds that the EFAA applies, Roblox's Motion to Compel Arbitration is DENIED. The Court notes therefore that "the plain language of the EFAA exempts a plaintiff's entire case from arbitration." *Liu v. Miniso Depot, CA., Inc., supra*, 105 Cal.App.5th at 796 (emphasis added).

~~Any party who contests a tentative ruling must email Dept20@sanmateocourt.org with a copy to all other parties by 4:00 p.m. stating, without argument, the portion(s) of the tentative ruling that the party contests.~~

~~If the tentative ruling is uncontested, it shall become the order of the Court. Thereafter, Counsel for the prevailing party shall prepare for the Court's signature a written order consistent with the Court's ruling pursuant to CRC Rule 3.1312 and provide written notice of the ruling to all parties who have appeared in the action, as required by law and by the CRC. Please note that Local Rule 3.403(b)(iv) states in part "prevailing party on a tentative ruling is required to prepare a proposed order **REPEATING VERBATIM** the tentative ruling" (emphasis added). The order should be e-filed only, do not email or mail a hard copy to the Court.~~

**IT IS SO ORDERED.**

Date: 02/20/2026

Electronically
**SIGNED**
By /s/ **Mau, Michael**

Honorable Michael L. Mau
Judge of Superior Court

Deemed Approved; No objections filed. CRC rule 3.1312(a).
Proposed Order matches Tentative Ruling.

## PROOF OF SERVICE

I am over the age of 18 years and am not a party to this action. My business address is Anapol Weiss, 130 North 18th Street, Philadelphia, Pennsylvania 19103. My email address is phuyett@anapolweiss.com. On this day, I served the following documents in the manner described below:

- [Proposed] Order Denying Defendant Roblox Corporation Motion To Compel Arbitration and Stay Proceedings

✓ (**BY ELECTRONIC MAIL – CCP § 1010.6(a)(4)(A))** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused such documents described herein to be sent to the persons at the e-mail addresses listed below through One Legal in portable document format ("PDF") Adobe Acrobat.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Wayne, Pennsylvania, on February 17, 2026.

Patrick Huyett

D. Patrick Huyett

**SERVICE LIST**

Max Bernstein (mbernstein@cooley.com)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Counsel for Defendant Roblox Corporation*

Adam Sieff (adamsieff@dwt.com)
Davis Wright Tremaine LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800

Sarah Burns (sarahburns@dwt.com)
Sam F. Cate-Gumpert (samcategumpert@dwt.com)
Davis Wright Tremaine LLP
50 California Street, Suite 2300
San Francisco, CA 94111
Telephone: (415) 276-6500

*Counsel for Defendant Discord Inc.*

# EXHIBIT 3

WILLIAM SMITH (SBN 324235)
wsmith@anapolweiss.com
**ANAPOL WEISS**
6060 Center Drive, 10th Floor
Los Angeles, CA 90045
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

KRISTEN FEDEN*
kfeden@anapolweiss.com
D. PATRICK HUYETT (*pro hac vice*)
phuyett@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH*
awalsh@anapolweiss.com
**ANAPOL WEISS**
14 Ridge Square, NW, 3rd Floor
Washington, DC 20016
Telephone: (771) 224-8065
Facsimile: (215) 735-2211

*Attorneys for Plaintiff and Guardian ad litem*

**pro hac vice motions forthcoming*

Electronically
**FILED**
By Superior Court of California, County of San Mateo
ON 02/23/2026
By /s/ Tovar, Priscilla
Deputy Clerk

Electronically
**RECEIVED**
2/17/2026
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN MATEO**

JANE DOE, a minor, represented by her court-appointed guardian *ad litem*, JOHN DOE,

Plaintiff,

v.

ROBLOX CORPORATION; DISCORD INC.; and DOES 1-50, inclusive,

Defendants.

Case No.: 25-CIV-05901

*Assigned for all purposes to the Honorable Michael L. Mau*

**~~[PROPOSED]~~ ORDER DENYING DEFENDANT DISCORD INC.'S AMENDED MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

This matter came on for hearing in the above-captioned court on February 6, 2026 at 9:00 a.m. All parties appeared. Personal appearance made on behalf of Plaintiff Jane Doe, a minor represented by her court-appointed guardian ad litem, John Doe, by attorney D. Patrick Huyett. Zoom Appearance made on behalf of Defendant Discord Inc. by attorney Adam Sieff. Personal appearance made on behalf of Defendant Roblox Corporation by attorney Max Berstein.

The Court hereby adopts its tentative ruling as follows:

For the reasons stated below, Defendant Discord Inc.'s "Amended Motion to Compel Arbitration and Stay Litigation," filed December 10, 2025, is **DENIED**.

## BACKGROUND

Plaintiff Jane Doe, a female minor represented by her Guardian Ad Litem, John Doe, describes Defendant Roblox Corp. ("Roblox") as an online gaming app that allows users to play a myriad of games, which the company refers to as "experiences." (Compl. ¶ 15.) It is easily accessible, free to download and play, and is available on gaming consoles, computers, tablets, and smart phones. (¶ 16.) Plaintiff also describes defendant Discord as "a communications app" that allows users to talk/communicate with each other online by sending messages, making calls, and sharing documents, pictures, videos, and other media. (Compl. ¶ 149.)

Plaintiff's Complaint alleges that in 2025, when she was 10 years old, she was groomed, kidnapped, and sexually assaulted by a 27-year old male "child predator" ("predator") whom she met on Defendant Roblox's platform. (Compl., ¶¶ 218-225.) The predator built up trust with her on Roblox for two days, then transitioned their communications to Defendant Discord's platform. *(Ibid.)* She alleges the predator coerced her into sharing her address over Discord's platform, and then after obtaining her address, drove to her house, and kidnapped her. *(Ibid.)* She further alleges that the predator held her against her will for an extended period, including an overnight stay in a hotel parking lot after being denied a hotel room. *(Ibid.)* Law enforcement eventually found her in the predator's car in a state of distress. *(Ibid.)* The predator was arrested and charged with: (1) kidnapping; (2) kidnapping a child under 14 years old to commit lewd or lascivious acts; (3) lewd or lascivious acts with a child under 14 years old; (4) exhibiting harmful matter to a minor; and (5) contact with a minor with the intent to commit a sexual offense. *(Ibid.)* Plaintiff's Complaint asserts

claims against Discord for negligence and product liability, based on allegations that Discord should have done more to safeguard its platform and to prevent adults and potential perpetrators from communicating with minors. Plaintiff alleges that Discord's failure to provide adequate safeguards led to her kidnapping and sexual assault.

Both Roblox and Discord have filed separate motions to compel arbitration. Discord's Motion argues that Plaintiff agreed to Discord's Terms of Service ("TOS") each time Plaintiff opened a Discord account. Specifically, each time Plaintiff opened an account, she clicked-through and expressed her consent to a mandatory arbitration clause. Accordingly, Discord argues that Plaintiff is now contractually bound to arbitrate her claims against Discord.

Plaintiff opposes Discord's Motion on several grounds, including her argument that Discord is barred from enforcing any purported arbitration agreement(s) by federal legislation, entitled "The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021" ("EFAA"), Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401–402). Discord argues that the EFAA does not apply.

## LEGAL ANALYSIS

The party opposing arbitration bears the burden of proving any applicable defense to a request to arbitrate. Accordingly, Plaintiff bears the burden of showing that the EFAA applies. (*Doe v. Second St. Corp.* (2024) 105 Cal.App.5th 552, 564.)

The Court finds that the EFAA prevents Discord from compelling arbitration.

In general terms, the EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant/plaintiff, in sexual assault and sexual harassment cases that fall within the statute. 9 U.S.C. § 402(a) states, in part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, … no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

(9 U.S.C. § 402(a) [emphasis added].) The statute defines "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law[.]" 9 U.S.C. § 401(3).

Discord argues that the EFAA does not apply, for three independent reasons: (1) Plaintiff's Complaint does not allege facts constituting a "sexual assault dispute"; (2) even if the Complaint does allege a "sexual assault dispute," Plaintiff's case against Discord does not "relate to" the "sexual assault dispute;" and (3) Plaintiff opened a third Discord account after Plaintiff had already filed this lawsuit, thereby rendering the EFAA inapplicable, because the EFAA only applies to "pre-dispute" arbitration agreements.

The Court disagrees with Discord on each point, as explained below.

<u>The Complaint sufficiently alleges "a sexual assault dispute."</u>

First, the Court finds that the Complaint sufficiently alleges conduct constituting a "sexual assault dispute." Discord argues that the Complaint does not allege *sexual act or contact*, as required to meet the definition of "sexual assault dispute" under 9 U.S.C. § 401(3). Discord acknowledges the Complaint's allegations that an adult (perpetrator) kidnapped Plaintiff and held her captive in a car in a parking lot before law enforcement ultimately arrived. Compl. ¶¶ 221-225. The Complaint further alleges:

> The predator was charged with (1) kidnapping; (2) kidnapping a child under 14 years old to commit lewd or lascivious acts; (3) lewd or lascivious acts with a child under 14 years old; (4) exhibiting harmful matter to a minor; and (5) contact with a minor with the intent to commit a sexual offense.

(Compl. ¶ 225.) Discord notes that there is a distinction between (a) alleging that sexual assault charges (lewd and lascivious acts with a minor) have been brought against the perpetrator, and (b) alleging that the perpetrator sexually assaulted the *Plaintiff*. Relying on this distinction, Discord argues that, based on the allegations here, the EFAA does not apply, because Plaintiff failed to allege that *she (Plaintiff)* was the actual victim, i.e. that she is the actual child under 14 years old who was subjected to the lewd or lascivious acts.

The Court disagrees, because Discord's argument ignores the logical meaning of the Complaint's allegations. Based on the allegations, it is reasonable and logical to infer that the alleged perpetrator was charged with committing a sexual assault ("lewd and lascivious acts") with *this Plaintiff*, not with some unknown third-party minor. And in light of the clear mandate that the EFAA is intended to have *"expansive effect"* (*Diaz-Roa v. Hermes Law, P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498, 531), the Court doubts that the Legislature intended that the EFAA's application would hinge on this type of hyper-literal, hair-splitting argument that ignores the logical meaning/implication of the allegations, which is that the perpetrator sexually assaulted this Plaintiff.

Accordingly, the Court finds that the Complaint adequately alleges "conduct constituting a sexual assault dispute."

<u>The Claims against Discord sufficiently "relate to" the "sexual assault dispute."</u>

Discord next argues that even if the Complaint adequately alleges "conduct constituting a sexual assault dispute," the EFAA still does not apply, because the claims asserted against Discord do not "relate to" the sexual assault dispute. Discord notes that the third party perpetrator is not a party to this case, and that Plaintiff's negligence and product liability claims against Discord do not require Plaintiff to prove that a sexual assault actually occurred. (Mot. at 14.)

Discord further argues that "when courts have considered similar allegations, they have rejected theories like Plaintiff's." (Mot. at 14 [citing *M.D. v. Verizon Comms., Inc.,* 2025 WL 2712831, at *2-3 (E.D.N.C. Sept. 23, 2025) (holding the EFAA inapplicable to suit brought by Verizon user against the company where the plaintiff alleged that Verizon disclosed her phone number to a stalker, who then sexually harassed her); *Farnham v. Grindr, LLC,* 2025 WL 3062698, at *1 (M.D. Fla. Nov. 3, 2025) (holding the EFAA did not apply to claims asserted against a dating app/website based on harm that plaintiff suffered by user he met on dating app.)

In both *Verizon* and *Farnham*, the district courts considered the EFAA's legislative history, and concluded that the Legislature, when enacting the EFAA, intended for the statute to apply to cases involving sexual harassment/sexual assault that occurred in the workplace, and to cases involving harassment/assault perpetrated by *employees of the defendant employer*. Indeed, it does appear that most published decisions applying the EFAA have arisen in the employment context,

typically in cases involving claims of workplace harassment or assault where a plaintiff sought to hold an employer vicariously liable for the acts of its employees. (See, e.g., *Diaz-Roa v. Hermes Law, P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498, 533; *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 803; *Delo v. Paul Taylor Dance Found., Inc.* (S.D.N.Y. 2023) 685 F.Supp.3d 173, 181; *Olivieri v. Stifel* (2d Cir. 2024) 112 F.4th 74, 92.)

While *Verizon* and *Farnham* may have some persuasive value, neither is binding on this Court nor dispositive of the Legislature's intent. *Farnham* is the least persuasive, as its primary authority for its decision is in citing to *Verizon* (*Farnham v. Grindr, LLC, supra,* 2025 WL 3062698, at * 2). The *Verizon* court in turn provided its somewhat limited interpretation that the EFAA essentially covered only two areas: first that "[c]ongress' enactment was primarily intended to preclude arbitration in employment disputes" and second that "for its application to consumers, the EFFA's purpose was to cover situations where 'a consumer who signs an arbitration clause … is assaulted at a business.' H.R. Rep. No. 117-234." *M.D. v. Verizon Comms., Inc., supra*, 2025 WL 2712831 at *2. As noted below, this Court disagrees with the analysis by the *Verizon* court.

Importantly, the EFAA's statutory text contains no limitation restricting its reach to employment or premises-based disputes. Section 402(a) expressly applies to "**any case** ... which relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a) [emphasis added].) The Legislature's use of the phrase "relates to" is inherently, and appears to be intentionally, broad. That phrase has been interpreted expansively in federal jurisprudence to mean having "a connection with," "bearing upon," or "referring to." (*See Morales v. TTWA* (1992) 504 U.S. 374, 383.) Courts construing the EFAA have recognized its "expansive effect" and have cautioned against unduly narrowing its application. (*Diaz-Roa, supra,* 757 F.Supp.3d at 531.)

Discussing the scope of the § 402(a) phrase "related to," the *Diaz-Roa* court stated:

> "This third requirement does not present a high bar. The phrase 'relating to' is deemed synonymous to 'in connection with,' 'associated with,' 'with respect to,' and 'with reference to.' [cites omitted] Moreover, Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent. [cites omitted]. Such

> expansive wording further underscores the broad application that the EFAA was written to have."

(*Diaz-Roa, supra*, 757 F.Supp.3d at 536, fn. 12.)

It would have been a simple task for Congress to expressly limit the EFAA to employment disputes, or to assaults/harassment perpetrated at a business premises, had that been the intent. But Congress did not do so. (*See, e.g., City of Ontario v. Superior Court* (1993) 12 Cal.App.4th 894, 902 ["We must assume that the Legislature knew how to create an exception if it wished to do so"]; *City of La Mesa v. California Joint Powers Ins. Authority* (2005) 131 Cal.App.4th 66, 74 ["the language of an unambiguous statute cannot be expanded by statements of a committee during the course of the legislative process"]; *Atlantic Richfield Co. v. Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 726 ["When statutory language is ... clear and unambiguous[,] there is no need for construction, and courts should not indulge in it."].)

While this Court finds the express language of the EFAA to be clear and controlling, *in the alternative*, this Court also finds that the fuller legislative history also supports this ruling. As noted previously, all parties in their briefing have cited and argued the *Verizon* case (*M.D. v. Verizon Comms., Inc., supra,* 2025 WL 2712831 at *1) *and* also cited to and argued the legislative history for the EFAA which *Verizon* explores. Having been placed into the record, this Court is allowed to further explore these arguments. Further, the Court also takes Judicial Notice of the legislative history as part of an official act of Congress. Evidence Code § 452(c).

The legislative history for the EFAA (H.R. Rept. 117-234 (2022), provides in pertinent part:

> PURPOSE AND SUMMARY
>
> H.R. 4445, the "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021," would prohibit the enforcement of mandatory, pre-dispute arbitration ("forced arbitration") provisions in cases involving sexual assault or sexual harassment. Over the past several decades, forced arbitration clauses have become virtually ubiquitous in everyday contracts. Often buried deep within the fine print of employment and consumer contracts, forced arbitration deprives millions of Americans of their day in court to enforce state and federal rights. Because arbitration

lacks the transparency and precedential guidance of the justice system, there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be upheld in the process. Furthermore, due to the secretive nature of this system, these disputes are often shielded from public scrutiny. (footnotes omitted)….

H.R. 4445 would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual….

II. The Effect of Forced Arbitration on Statutory Rights of Sexual Assault and Sexual Harassment Victims

Forced arbitration is now widespread in consumer contracts. In many cases, consumers are unaware of forced arbitration clauses in the contracts of commonly used goods and services. These clauses are sometimes hidden inside of envelopes, delivery boxes, and privacy policies. (footnotes omitted, except original No. 46 explained below)

Forced arbitration provisions imposed on consumers for using everyday goods and services often prevent victims of civil rights violations from pursuing their claims in court. (footnotes omitted)

Footnote 46: See Stephanie Strom, When 'Liking' a Brand Online Voids the Right to Sue, N.Y. Times (Apr. 16, 2014), https://www.nytimes.com/2014/04/17/business/when-liking-a-brandonline-voids-the-right-to-sue.html.

Excerpted from H.R. Rept. 117-234 (2022)

Thus, the actual language of this legislative history specifically explains that forced arbitration clauses are often hidden inside of envelopes, in delivery boxes, in privacy policies and are being imposed on consumers for using everyday goods and services. This type of language is

much more expansive and well beyond the two basic areas that the *Verizon* court found subject to the EFAA.

Further, the article by Ms. Strom, again cited within the legislative history itself as Footnote 46, does not deal with arbitration in an employment context or at a business. Instead, the article title itself refers to merely "Liking" a brand online, or downloading a coupon from a General Mills website, joining an online community like "Facebook," entering a company-sponsored sweepstakes or interacting online with a website in a variety of other ways. Since it cannot be disputed this article is cited to and is part of the legislative history for the EFAA, the Court concludes that the *Verizon* court's finding is too limiting.

These examples by Ms. Strom are arguably equal to (or even a lower level then) this Plaintiff's use of the online platforms and websites hosted by both Discord and Roblox.

Having considered the parties' arguments and the cited authorities, the Court concludes that Plaintiff's claims against Discord "relate to" an alleged sexual assault dispute—for purposes of invoking the EFAA. The Complaint alleges that Discord's tortious conduct directly led to her kidnapping, and to the perpetrator's arrest and charges of engaging in lewd and lascivious acts with the minor Plaintiff. The Complaint alleges that, had Discord implemented more effective screening or age and identity verification, and other common sense safety measures, Plaintiff's kidnapping and assault would not have occurred. (Compl. ¶ 227.) These allegations sufficiently establish that Plaintiff's claims against Discord "relate to" the alleged sexual assault dispute. (*Celebrity Cruises,* 2025 U.S. Dist. LEXIS 139046, at *22 [having "little trouble concluding that Plaintiff's action relates to a sexual assault dispute within the meaning of the EFAA" because the plaintiff alleged a sexual assault dispute, and because "the case she brings relates to a dispute involving those factual allegations"].)

<u>Discord has not shown that Plaintiff relinquished her right to invoke the EFAA by creating a third Discord account after filing this lawsuit.</u>

Finally, Discord argues that the EFAA does not apply, because Plaintiff created a third Discord account (and in doing so, *again* clicked-through the mandatory arbitration clause) *after* she filed her Complaint in this case, which Discord argues renders the EFAA inapplicable, because the

EFAA applies only to "pre-dispute arbitration agreements." (9 U.S.C. §§ 401(1), 402(a).) The Court disagrees.

First, Discord cites no authority, including no analogous case, supporting its argument that Plaintiff's opening of a third account, after making clear her desire/intention to proceed with the present lawsuit, renders the EFAA inapplicable.

Second, "waivers are generally disfavored." (*Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124, 1128 (N.D. Cal. 2007).) Discord essentially argues that Plaintiff, after expressing a clear intention to pursue this lawsuit in court, *waived* her right to proceed in court. Any such "waiver" has not been shown. Discord offers no evidence that Plaintiff, in opening the third account and merely clicking through to open an account, indicated a specific intent to submit her already-pending lawsuit against Discord to arbitration. Discord offers no evidence that Plaintiff opened the third account and agreed to its arbitration clause in the context of settlement discussions, nor that the language of that arbitration clause in any way referenced the EFAA or Plaintiff's pending lawsuit against Discord. In short, Discord points to no evidence that, in clicking through a new account opening, that Plaintiff understood or believed that she was submitting her already-pending lawsuit to arbitration. Indeed, all logical inferences suggest the opposite—that Plaintiff had no such understanding or intention.

## CONCLUSION

Because the Court finds that the EFAA applies, Discord's Motion to Compel Arbitration is DENIED. The Court notes therefore that "the plain language of the EFAA exempts a plaintiff's entire case from arbitration." *Liu v. Miniso Depot, CA., Inc., supra*, 105 Cal.App.5th at 796 (emphasis added).

~~Any party who contests a tentative ruling must email Dept20@sanmateocourt.org with a copy to all other parties by 4:00 p.m. stating, without argument, the portion(s) of the tentative ruling that the party contests.~~

~~If the tentative ruling is uncontested, it shall become the order of the Court. Thereafter, Counsel for the prevailing party shall prepare for the Court's signature a written order consistent with the Court's ruling pursuant to CRC Rule 3.1312 and provide written notice of the ruling to all~~

~~parties who have appeared in the action, as required by law and by the CRC. Please note that Local Rule 3.403(b)(iv) states in part "prevailing party on a tentative ruling is required to prepare a proposed order **REPEATING VERBATIM** the tentative ruling" (emphasis added). The order should be e-filed only, do not email or mail a hard copy to the Court.~~

**IT IS SO ORDERED.**

Date: 02/20/2026

Electronically
**SIGNED**
By /s/ **Mau, Michael**

Honorable Michael L. Mau
Judge of Superior Court

Deemed Approved; No objections filed. CRC rule 3.1312(a).
Proposed Order matches Tentative Ruling.

**PROOF OF SERVICE**

I am over the age of 18 years and am not a party to this action. My business address is Anapol Weiss, 130 North 18th Street, Philadelphia, Pennsylvania 19103. My email address is phuyett@anapolweiss.com. On this day, I served the following documents in the manner described below:

- [Proposed] Order Denying Defendant Discord Inc. Motion To Compel Arbitration and Stay Proceedings

✓ (**BY ELECTRONIC MAIL – CCP § 1010.6(a)(4)(A)**) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused such documents described herein to be sent to the persons at the e-mail addresses listed below through One Legal in portable document format ("PDF") Adobe Acrobat.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Philadelphia, Pennsylvania, on February 17, 2026.

Patrick Huyett
D. Patrick Huyett

**SERVICE LIST**

Max Bernstein (mbernstein@cooley.com)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Counsel for Defendant Roblox Corporation*

Adam Sieff (adamsieff@dwt.com)
Davis Wright Tremaine LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800

Sarah Burns (sarahburns@dwt.com)
Sam F. Cate-Gumpert (samcategumpert@dwt.com)
Davis Wright Tremaine LLP
50 California Street, Suite 2300
San Francisco, CA 94111
Telephone: (415) 276-6500

*Counsel for Defendant Discord Inc.*

# EXHIBIT 4

COOLEY LLP
TIANA DEMAS (*pro hac vice*)
(tdemas@cooley.com)
LAURA ELLIOTT (286702)
(lelliott@cooley.com)
JAMIE D. ROBERTSON (326003)
(jdrobertson@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598

KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

ARIANA E. BUSTOS (345918)
(abustos@cooley.com)
355 South Grand Avenue, Suite 900
Los Angeles, California 90007-1560
Telephone: +1 213 561 3250
Facsimile: +1 213 561 3244

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN UHL, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBLOX CORPORATION, a Delaware corporation<br><br>Defendant. | Case No. 23-cv-01940-TWR-BLM<br><br>**DECLARATION OF RONITA JIT IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**<br><br>Date: May 29, 2025<br>Time: 1:30 p.m.<br>Courtroom: 14A<br>Judge: Hon. Todd Robinson<br>**TRIAL DATE: NOT YET SET** |

I, Ronita Jit, declare and state as follows:

1. I am a Litigation Paralegal at Roblox Corporation ("Roblox"). Since January 31, 2023, I have been responsible for supporting litigation needs, including assisting with discovery, responding to subpoenas, and conducting dispute-related investigations. Through that work, I am familiar with the systems and records that, among other things, relate to and track Roblox's Robux purchase processes as well as Roblox account holder's records and account sign-in and sign-up flows. I make the statements in this declaration based on my personal knowledge of the matters set forth below and based upon my review of records maintained in the ordinary course of business. If called as witness, I could and would testify competently to the matters stated herein.

2. I submit this declaration in support of Roblox's Renewed Motion to Compel Arbitration, filed concurrently herewith.

3. I have reviewed what I understand to be the Fourth Amended Class Action Complaint for Damages ("4AC") filed by Plaintiff Damien Uhl ("Plaintiff") on August 14, 2024. *See* ECF No. 53. I understand that this litigation involves Plaintiff's allegations about Roblox's statements regarding its platform. I understand that Plaintiff alleges he purchased Robux on Roblox's platform.

4. Roblox operates an online platform ("the Roblox Platform") that hosts a virtual universe where users can create virtual games and experiences, connect with other users to enjoy user-created games and user-created virtual experiences, and use virtual apparel and other content created by themselves and other users.

5. Robux is a virtual currency that can be used on the Roblox Platform to acquire virtual items and gain access to virtual experiences.

6. I understand based on my review of an August 16, 2024 email from Plaintiff's counsel that Plaintiff's child has at least one active Roblox account. I further understand that, according to Plaintiff, the Roblox account used by Plaintiff's child has the username provided by Plaintiff's counsel. Roblox's records kept in the

ordinary course of business show that this account was created on November 7, 2018 ("Uhl Account").

7. I have reviewed the Roblox account information and records associated with the Uhl Account that are kept in the ordinary course of business (the "Records").

8. Attached hereto as Exhibit 1 is a true and accurate copy of a record of Robux purchases made by the Uhl Account. This record shows multiple Robux purchases starting on December 26, 2018 and continuing through July 12, 2024. These Robux purchases were made on the Roblox platform using various payment methods. Purchase entries with a "Payment Method" of "AppleAppStore" were made through the Roblox mobile application using Apple Pay. Purchase entries with a "Payment Method" of "GooglePlayStore" were made through the Roblox mobile application using Google Pay. Purchase entries with a "Payment Method" of "StripeCard," "XsollaCreditdebitcards," or "Vantivtoken" were made through the Roblox website using a credit or debit card.

9. Roblox has no record showing that Plaintiff opted out of the arbitration agreement included in the Terms of Use ("Terms").

**Robux Purchase Interfaces**

10. From May 2, 2018 through January 3, 2023, payments for one-time purchases of Robux were processed by Xsolla. For credit or debit card payments made through the Roblox website, users were presented with a screen containing a disclosure stating:

> By submitting payment information you acknowledge that you are at least 18 years old, and that you have read, understood and agree to be bound by Xsolla's End-User License Agreement, Privacy Policy, Refund Policy, Roblox Terms including the arbitration clause, and Roblox Privacy Policy, along with the applicable refund and cancellation policies.

11. The phrase "Roblox Terms" appeared in underlined blue font on a white background and was hyperlinked to the then-current version of the Terms, which

could be found on the Roblox website. To complete the Robux purchase, users were required to enter their payment information and submit it by clicking a button labeled "Pay now."

12. A true and accurate copy of a screenshot of this screen is depicted below:




13. From February 24, 2021 to October 16, 2022, when purchasing Robux through the Roblox app on a mobile device, users were presented with a disclosure at the top of the screen informing them that, "[b]y purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**." The phrase "Terms of Use" appeared in bolded, underlined font and was hyperlinked to

the then-current version of the Roblox Terms.

14. The screenshot below shows the correct layout—including placement, font size, bolding, and underlining—of the disclosure presented to mobile app users between February 24, 2021 and October 16, 2022:




As discussed in paragraph 13 above, the text of the disclosure between February 24, 2021 and October 16, 2022 was: "By Purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**."

15. On October 17, 2022, the language of the disclosure was updated to what is reflected in the screenshot in paragraph 14. No changes were made to the layout or appearance of the disclosure.

16. If the user had a payment method stored on their mobile device through either Apple Pay or Google Pay, once the user selected the desired Robux package, a pop-up window corresponding to the payment method appeared on the bottom of the same screen containing the disclosure described in paragraphs 14 and 15. (As noted above, the precise text of the disclosure at the top of the screen depended on the timing of the purchase.) To complete their purchase of Robux through the mobile app, users were required to provide affirmative consent for the charge by double clicking the side button to pay through Apple Pay or clicking 1-tap buy on Google Pay. The below is a true and accurate screenshot of the aforementioned process:




*Apple*




*Android*

## <u>Robux Terms</u>

17. During the period between November 7, 2018, when the Uhl Account was created, and the present, Roblox periodically updated its Terms. The updated Terms were made publicly available on Roblox's website when they became effective. In addition, hyperlinks to the Terms in the purchase flows described above linked to the then-current Terms.

18. I attest that Exhibit 2 is a true and accurate copy of Roblox's Terms of Use effective on August 8, 2017.

19. I attest that Exhibit 3 is a true and accurate copy of Roblox's Terms of Use effective on November 7, 2018.

20. I attest that Exhibit 4 is a true and accurate copy of Roblox's Terms of Use effective starting on April 6, 2022 and continuing through at least June 14, 2022.

21. I attest that Exhibit 5 is a true and accurate copy of the Roblox

Dictionary that was linked from the version of the Roblox Terms of Use effective starting on April 6, 2022 and continuing through at least June 14, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate.

Dated: March 20, 2025

By: */s/ Ronita Jit*
Ronita Jit

# EXHIBIT 5



ADR-MDL Fra

PANELISTS RULES SERVICES SELECT PRACTICE AREAS

Model Arbitration Clauses

Arbitration Rules

Expedited Arbitration

Arbitration Fees

Mediation Rules

Mass Arbitrations

Emergency Relief

Archived Rules

***NOTE: For Arbitration Claims made between January 1, 2022-December 30, 2024 use these rules: Pre December 30, 2024 Rules***

# ADR-MDL™ Framework for Mass Arbitration Proceedings

***Effective December 31st, 2024***

**Learn how FedArb streamlines mass arbitrations**

**A written agreement between the company and FedArb must be executed prior to usin the FedArb Mass Arbitration Proceedings**

***Download these rules as a PDF***

A "Mass Arbitration" is deemed to exist when 20 or more individual claims are submitted for arbitration by or with the assistance or coordination of the same law firms or organizations and where the claims are subject to a common set of factual and legal issues.

## 1. FEDARB'S ADR-MDL™ MASS ARBITRATION PROCEDURES

a. **Written agreement with FedArb.** Companies must (i) register with FedArb the arbitration agreement between the parties ("Arbitration Agreement") and any relevant customer or employee claim form so that FedArb can integrate those materials into

FedArb's automated case management system; (ii) execute an agreement with FedArb; and (iii) pay the annual subscription for mass arbitration administration, implementation and technology maintenance.

b. **Submission of Claims and Affirmation Requirement**

i. <u>Spreadsheet listing Claimant Information</u>. Unless otherwise specified in the Arbitration Agreement, the Demand for Arbitration shall be accompanied by an electronic spreadsheet ("Spreadsheet") that includes (1) the first and last name, physical address and email of each claimant; and (2) any other information that is contractually required under the terms of the Arbitration Agreement (e.g., customer or employee number, or a reference number provided in an informal resolution procedure).

ii. <u>Affirmation Requirement.</u> The Demand for Arbitration and the Spreadsheet must be accompanied by a sworn declaration averring that the information in both the Demand for Arbitration and the Spreadsheet is true and correct to the best of the representative's knowledge after an inquiry reasonable under the circumstances.

iii. <u>Payment of Filing Fees.</u> If the Arbitration Agreement provides for claimants to pay a portion of the filing fees, such fees need not be paid with the Demand for Arbitration but must be paid within 30 days after FedArb submits an invoice to the parties for their respective filing fees.

iv. <u>Stay of Proceedings</u>. Upon the filing of Demand for Arbitration with FedArb, all individual arbitrations are automatically stayed pending completion of the MDL Tribunal process described below.

c. **Option for a Pre-Filing Fee motion.** Prior to the parties having to pay the filing fees on behalf of each potential claimant, the parties have the option of filing a Pre-Filing Fee Motion.

i. Prior to filing a Pre-Filing Fee motion, the parties shall meet and confer and both sides shall undertake reasonable efforts to resolve disputed issues, including an obligation by the Company to use reasonable efforts to share information necessar for claimant's counsel to verify that the list of potential claimants is accurate and that each claimant has complied with all pre-filing requirements set forth in the Arbitration Agreement.

ii. After the meet and confer, either party can make a motion for, inter alia, violation of the Affirmation Requirement, lack of arbitrability, claimant's failure to comply with the contractual terms of the Arbitration Agreement or a 12(b)(6) motion for claimant's failure to state a plausible claim.

iii. Such motion will be resolved promptly before a single former federal judge selected by FedArb in consultation with the parties' counsel.

iv. Simultaneous with its filing of such a motion, the filing party will pay FedArb a $30,000 administrative fee, in addition to the fees charged by the arbitrator hearing the motion.

v. If the Affirmation Requirement is found to have been violated, then the former federal judge hearing the motion may impose an appropriate sanction on any attorney, law firm, or party that violated the Affirmation Requirement or who is responsible for the violation. Sanctions may include the dismissal of the claim and/or an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

d. **Payment of Filing Fees.** If the parties decline to bring a Pre-Filing Fee motion, or after decision has been rendered on a Pre-Filing Fee Motion, FedArb will issue an invoice for FedArb's filing fees of $100 for each claimant based on the actual number of recognized claimants—either as submitted in the Spreadsheet or as adjusted by the parties or by th decision in the Pre-Filing Fee hearing. All filing fees must be paid to FedArb within 30 days from the date of FedArb's invoice, unless a shorter period is required under governing law.

e. **MDL Tribunal.** Unless the Arbitration Agreement provides for a single arbitrator, a tribunal of three arbitrators ("Tribunal") selected from FedArb's panel will then decide (i) any dispositive motions the parties elect to bring (including counter claims); (ii) all discovery disputes; (iii) all common issues of fact or law; (iv) any common damages issues; and (v) any other motion either side deems relevant. The tribunal's goal will be to reduce the number of individual issues that need to be arbitrated so that claimants entitled to damages can promptly be paid either by completing a claims form or by expedited arbitration.

f. **Election to Submit a Claim or to Pursue Individual Arbitration.** Within ninety (90) days after the Tribunal has rendered its findings and decisions, claimants must elect either (a to complete a Claims Submission Form with the information needed to process their claim, or (b) to proceed to individual arbitration with respect to facts specific to each claimant and consistent with the Tribunal's binding findings and decisions.

g. **Individual Arbitrations.**

i. Parties will use FedArb's Expedited Arbitration Rules (i.e., limited briefing, limited discovery, no post hearing briefs).

ii. The Tribunal's resolution of all issues presented by the parties will be binding on the parties and dispositive.

iii. Arbitrations will be virtual unless the arbitrator concludes that compelling facts and circumstances dictate otherwise, or unless the claim is for an amount in exces of $100,000.

h. **Mass Arbitration Rules Govern.** To the extent these Mass Arbitration procedures conflict with FedArb's general arbitration rules or the rules that the arbitration is being conducted under, these Mass Arbitration procedures supersede and govern with respec to the amount of any filing or administrative fees.

i. **Settlement.** Nothing in this framework shall prohibit the parties from settling any individual case or groups of cases.

j. **Modifications to Mass Arbitration Framework.** FedArb reserves the right in its sole discretion to change the elements of this framework or any FedArb fees at any time. Any modifications or changes to FedArb fees shall, however, govern only arbitrations commenced or notified to FedArb after the date of such modifications.

k. **Severability.** If any of the procedures in these rules is determined to be in conflict with a provision of applicable law, the provision of law will govern over such procedure, and n other rule will be affected.

Email Address | First Name | Last Name | SUBSCRIBE TO OUR NEWSLETTER

## Resources

[Model Arbitration Clauses]
[Arbitration Submission Forms]
[Ethics Code]

© Copyright 2020 Federal Arbitration | All Rights Reserved | Terms and Conditions | Privacy | FAQ

**Disclaimer**

This website is provided for informational purposes only and does not constitute legal advice, legal opinion, or a solicitation for legal services. FedArb is an alternative dispute resolution ("ADR") organization that provides arbitration, mediation, case administration, and dispute resolution management services. **FedArb is not a law firm and does not provide legal representation, legal service or legal advice.** Parties utilizing FedArb services are encouraged to consult with independent legal counsel regarding their legal rights and obligations.

FedArb panelists serve in independent adjudicative, mediative, or evaluative capacities and are not acting as attorneys for any party. No attorney-client relationship is created through the use of this website or through participation in any FedArb administered proceeding. The materials on this website are intended only as general information about FedArb, its services, and its panelists, and do not constitute a complete description of all services, procedures, or terms. While FedArb endeavors to maintain accurate and current information, FedArb makes no representations or warranties regarding the completeness, accuracy, or reliability of the information contained on this website.

# EXHIBIT 6




# The High Price of Legacy Mass Arbitration Rules

Legacy mass arbitration rules don't allow litigants to narrow the case at an early stage, which encourages the mass solicitation of potential claimants, often abusively. This drives up costs and makes it harder to identify legitimate claimants who are entitled compensation.

Traditional mass arbitration providers create costly and inefficient hurdles, including:

- No dispositive motions
- Limited or no ability to bring*Rule 11*motions

- Unqualified process administrators with limited or no ability to narrow the case
- Massive front-end filing fees
- Limited or no ability to select decision-makers
- Variability in rulings from batch or bellwether arbitrations

CONTACT US TO ACTIVATE FEDARB RULES

# Efficient, Quick, Uniform Resolution

## Minimize front-end costs with early dispositive motions

FedArb helps you minimize risk, manage costs and speed up case resolution by enforcing Rule 11 affirmation requirements. Our expert-driven process, led by top jurists, ensures early case assessment and a clear understanding of its scope.

- **Eliminate non-meritorious claims before paying filing fees.** Pre-filing fee motion to dismiss filters out unmeritorious cases early with Rule 12(b)(6) standards and former Article III judges. View our fee framework.
- **Faster, more effective settlements.** A FRCP MDL-styled consolidated process eliminates issues of procedural and substantive unconscionability, ensuring all parties have a clear picture of potential claims, leading to more meaningful settlement discussions. Read our mass arbitration rules.
- **Uniform, efficient outcomes.** Our ADR-MDL™ process treats all claimants equally – unlike the variability inherent in batch or bellwether arbitrations

– by resolving legal, discovery and damages issues common to all cases before individual arbitration begins.

- **Reduce frivolous claims** with a rigorous "reasonable inquiry" requirement using FRCP Rule 11 affirmation standards.
- **$5-$7MM savings versus other arbitration providers.** Massive upfront fees are eliminated. Filing fees are paid after the motion to dismiss decision. See how FedArb's fees compare to legacy providers.
- **Resolve cases in under a year** for those involving statutory damages with FedArb's mass arbitration rules, integrated case management software and former Article III judges.

Contact FedArb **to register your arbitration provision and adopt our mass arbitration rules.**

READ OUR MASS ARBITRATION RULES

FEDARB What you need to know about the latest in Mass Arbitrations
FedArb - Federal Arbitration

Watch on

# Recommended by Leading Law Firms and Implemented by Major Companies

# Resolve Cases with Established Jurists Skilled in Mass Claims Resolution

**FedArb offers seasoned jurists with Rule 11 and 12(b)(6) experience can reduce your mass arbitration burden**

- Largest panel of former Article III judges (60).
- Federal rules provide case law. See FedArb's rules for mass arbitration.
- Highly responsive, 24/7 case administration team.
- Decades of arbitration experience. Leader in mass arbitration since its inception.
- Challenges against FedArb rules have been uniformly rejected.

- Flexibility to use any arbitration rules: AAA, JAMS, CPR, ADR Services or any other rules.

REGISTER YOUR ARBITRATION CLAUSE

# FedArb ADR-MDL Framework to Expedite Resolutions and Reduce Fees

## No filing fees required until after the motion to dismiss decision

### Stage 1

Registration date

**Company registers arbitration provision with FedArb.**

Cost: $50,000

### Stage 2

3 months

**Claimants submit demand for arbitration with Rule 11 attestation.**

Optional Prefiling Motion

- $50K-$100K/motion
- Filing fee of $100/actual claimants due 30 days after ruling

### Stage 3

4-12 months

**MDL Panel decides common issues.**

Any remaining individual issues decided by:

- Submission of claims form: $1MM
- Individual expedited arbitrations: $350K

Access to FedArb's cost-saving mass arbitration process begins only if your arbitration provision specifies the use of FedArb's rules.

Contact us to ensure you are covered

VIEW FEE COMPARISON

# FAQs

+ **Does FedArb administer mass arbitration?**

+ **What are FedArb's Mass Arbitration Rules?**

+ **How are FedArb's Mass Arbitration Rules different from other ADR providers?**

+ **How does a company engage FedArb for mass arbitration?**

+ **Can claims be dismissed before arbitration fees are triggered?**

+ **What does "MDL-style" mean in FedArb's process?**

+ **How does FedArb apply Rule 11 standards in mass arbitration?**

+ **Is FedArb's mass arbitration process fair to both claimants and respondents?**

+ **Who oversees mass arbitrations at FedArb?**

Email Address | First Name | Last Name | SUBSCRIBE TO OUR NEWSLETTER

## About

Leadership
Case Management

## Rules

Arbitration
Expedited Arbitration
Emergency Relief

Mediation Rules
Framework for Mass Employment Arbitration Proceedings
Archived Rules

## Resources

Model Arbitration Clauses
Arbitration Submission Forms
Ethics Code

© Copyright 2020 Federal Arbitration | All Rights Reserved Terms and Conditions | Privacy | FAQ

**Disclaimer**

This website is provided for informational purposes only and does not constitute legal advice, legal opinion, or a solicitation for legal services. FedArb is an alternative dispute resolution ("ADR") organization that provides arbitration, mediation, case administration, and dispute resolution management services. **FedArb is not a law firm and does not provide legal representation, legal service or legal advice.** Parties utilizing FedArb services are encouraged to consult with independent legal counsel regarding their legal rights and obligations.

FedArb panelists serve in independent adjudicative, mediative, or evaluative capacities and are not acting as attorneys for any party. No attorney-client relationship is created through the use of this website or through participation in any FedArb administered proceeding. The materials on this website are intended only as general information about FedArb, its services, and its panelists, and do not constitute a complete description of all services, procedures, or terms. While FedArb endeavors to maintain accurate and current information, FedArb makes no representations or warranties regarding the completeness, accuracy, or reliability of the information contained on this website.

# EXHIBIT 7




PANELISTS RULES SERVICES SELECT PRACTICE AREAS

Model Arbitration Clauses

Arbitration Rules

**Expedited Arbitration**

Arbitration Fees

Mediation Rules

# Expedited Arbitration Rules

## (Appendix C)

## (Effective August 25, 2026)

**(Arbitrations initiated prior to this date should use Archived rules here)**

Click here to download the Agreement

*The parties hereby agree that any dispute arising out of or related to any aspect of the performance of this contract shall be resolved through an ADR process under the Feder Arbitration ("FedArb") Rules for Arbitration and Mediation (as may be amended from tim to time, unless the parties otherwise agree to use the rules effective at the time of their agreement), and in particular Rule 16 (Expedited Disposition), with administration by FedArb; provided, however, that such rules shall be modified as follows:*

**Exp. Rule 1. Informal Discussion**

The parties agree to attempt to resolve their disputes in good faith through informal discussions.

**Exp. Rule 2. Video Hearing**

Unless required by law or unless exceptional circumstances present themselves, any hearing, including oral arguments, may be conducted through video conferencing.

**Exp. Rule 3. Mediation**

Mediation is not a prerequisite to initiating arbitration. However, any party may request mediation at any time. If all parties agree, mediation shall be confidential, scheduled promptly and conducted concurrently with the arbitration, unless the parties agree otherwise in writing that mediation will stay or delay the arbitration. The parties will exchange information sufficient to evaluate the issues and the reasonable value of the claims, taking into account the amount in controversy and the expedited nature of the proceedings.

**Exp. Rule 4. Commencement of Arbitration**

Any party to a dispute may commence arbitration after attempting to settle the dispute through informal discussion and/or mediation in accordance with the terms set forth herein. Remedies under these rules are limited to monetary damages and no injunctive relief may be granted.

**Exp. Rule 5. Tribunal Appointment**

The tribunal shall consist of one arbitrator appointed by FedArb from its panel of Expedited Arbitration Experts, unless the parties jointly notify FedArb that they have agreed to the appointment of an arbitrator from that panel.

**Exp. Rule 6. Arbitrator Disclosures and Objections**

Within seven (7) business days after appointment, the arbitrator shall submit disclosure consistent with applicable ethical standards and FedArb policies. Unless otherwise provide by governing law, any objection to the arbitrator's service must be submitted in writing within five (5) business days of the disclosures and must demonstrate good cause. Unless otherwise provide by governing law, FedArb shall determine whether the objection warrants replacement of the arbitrator.

**Exp. Rule 7. Administrative Requirements and Representative Capacity (Minors and Incapacitated Persons)**

**(a) Required Administrative Documentation.** FedArb may require submission of documents necessary to administer an arbitration, including filing forms, payment information, executed agreements, disclosures, or proof of authority to act on another's behalf.

***Minors.*** Except as governing law otherwise allows, a minor claimant may not proceed unless a parent or guardian submits an affidavit consenting to the minor's pursuit of arbitration and participation through final award. The affidavit is due within ten (10) business days of FedArb's acknowledgment of the arbitration. Respondent's deadline to answer does not begin to run until FedArb receives and determines the affidavit's validity If the affidavit is not timely received, the case is administratively closed; it may be reopened upon receipt of the affidavit, at which point Respondent's answer deadline begins to run.

***Incapacitated Parties.*** Where a claim is brought by or against a minor or other individual lacking legal capacity, FedArb may require documentation confirming the appearing individual's authority — e.g., a notarized authorization (FedArb Representative Authorization Form), proof of guardianship, letters of conservatorship, a court appointment, or other documentation FedArb deems appropriate.

**(b) Administrative Hold.** If required documentation or payment is outstanding, FedArb may provide written notice putting the arbitration on administrative hold. During a hold: a administrative and procedural deadlines are suspended; no hearings or conferences will be scheduled absent contrary direction from FedArb or the arbitrator; and the arbitrator need not act further until the hold is lifted.

**(c) Opportunity to Cure.** Unless FedArb determines otherwise, a party has ten (10) calendar days from the notice of administrative hold to cure.

**(d) Administrative Closure.** If the deficiency remains uncured after the Final Notice period, FedArb may administratively close the arbitration without prejudice. Closure is no a decision on the merits and does not bar reopening upon the curing of the deficiency, subject to these Rules, the arbitration agreement, and any applicable statute of limitations or other legal requirement.

**(e) Effect on Jurisdiction.** Actions taken by FedArb under this Rule are administrative in nature and shall not constitute determinations by the arbitrator regarding jurisdiction, arbitrability, or the merits of the dispute.

**Exp. Rule 8. Deadlines and Adjournments**

No party may ask the tribunal, and no arbitrator may ask the parties, for an adjournment of any deadline; adjournments may only be implemented as agreed by all parties, or for good cause as determined by the FedArb administrator.

**Exp. Rule 9. Place of Arbitration**

Arbitrations shall be held at a venue that minimizes costs; telephonic or video hearings will be utilized whenever possible. Where permitted by these Rules or ordered by the arbitrator, the arbitration may proceed on the papers without an evidentiary hearing.

**Exp. Rule 10. Applicable Law**

Unless otherwise provided by the arbitration agreement, all disputes shall be resolved in accordance with the law of the State of [California], without regard to its rules regarding conflicts of law.

**Exp. Rule 11. Procedural Order and Timetable**

As soon as practicable, and no later than thirty (30) calendar days after Respondent's Answer is filed, the tribunal shall confer with the parties and issue a procedural order an timetable that reserves agreed dates for the hearing on the merits and such preliminary deadlines as may be appropriate.

There are to be no motions to enforce discovery requests, to dismiss, for summary judgment, or for any other form of relief except (1) by agreement of all parties, or (2) upo a determination by the tribunal that the motion is necessary and likely to enhance efficiency.

**Exp. Rule 12. Reply to Counterclaim**

If the Respondent's Answer includes a counterclaim, the Claimant shall have ten (10) calendar days from the date of service of the Answer to file an optional Reply limited to the counterclaim. If no reply is filed, all counterclaims shall be deemed denied by Claimant. No other replies shall be permitted unless authorized by the tribunal for good cause.

**Exp. Rule 13. Documentary Discovery**

Unless otherwise ordered by the Tribunal, all parties shall produce to all other parties an document or information on which the producing party intends to rely at the hearing within thirty (30) calendar days after the preliminary hearing/scheduling conference; onl documents produced in discovery shall be permitted to be introduced into evidence absent substantial justification or a showing that the document was unavailable for earlier production. Any party may request the Tribunal to order discovery from another party of specifically-identified documents or narrowly defined categories of documents upon a showing that such would be discoverable under federal discovery standards and that the collection and production of the requested materials is not unduly burdensome and will not unduly delay the expedited arbitration.

**Exp. Rule 14. Requests for Admissions**

Requests for Admissions are prohibited. The parties may agree to submit an Agreed Statement of Facts at least thirty (30) days before the hearing.

**Exp. Rule 15. Depositions**

No depositions shall be held except by agreement of the parties, or unless authorized by the tribunal upon a showing that the interests of justice require the pre-hearing testimon of a particular witness.

**Exp. Rule 16. Expert Testimony**

Experts shall be used only on issues requiring expert testimony, and only upon agreeme or as allowed by the tribunal; expert testimony shall be provided in writing at least thirty (30) calendar days in advance of the hearing, and any oral testimony shall be limited to the scope of the expert's written testimony.

**Exp. Rule 17. Pre-hearing Briefs**

The parties shall file individual pre-hearing briefs only if they agree such briefs are necessary and with the tribunal's approval subject to such conditions as to scope and length as the tribunal considers appropriate.

**Exp. Rule 18. Exhibits**

The parties shall file a single set of all the exhibits they agree should be admitted into evidence. All other exhibits shall be party-designated. Paper copies shall be filed only as required by the tribunal, which shall be provided with digital versions of all papers and exhibits in a convenient format.

**Exp. Rule 19. Final Hearing**

Unless the parties' arbitration agreement expressly requires an in-person hearing, any final hearing shall be conducted by videoconference or on the papers, as agreed upon by the parties. In the absence of agreement, the matter shall be determined by the paper submissions, unless the tribunal determines that a hearing by either video conference o in-person is necessary to ensure fairness. If the hearing is in-person, it shall be held at a venue that minimizes costs.

**Exp. Rule 20. Post-hearing Briefs**

Post-hearing briefs shall not be filed unless by agreement by both parties and with the tribunal's consent; they shall generally be considered unnecessary where the parties hav filed pre-hearing briefs.

**Exp. Rule 21. Form of Award**

The parties shall agree on the form of award no later than the completion of the hearing An Award may be formal (including findings of fact and conclusions of law), reasoned (setting out the tribunal's reasoning in a logical but informal manner), or conclusory (setting out the tribunal's conclusions without reasoning). In the absence of agreement, the Award shall be reasoned. The tribunal may issue partial final awards where necessary.

**Exp. Rule 22. Finality and Jury Waiver**

The parties agree that the Award (or awards) shall be final, except as provided in the Federal Arbitration Act and other governing authorities, and that they waive any right to a trial by jury.

**[v8-25-26]**

Email Address | First Name | Last Name | SUBSCRIBE TO OUR NEWSLETTER

**About**

Leadership

Case Management

## Rules

Arbitration
Expedited Arbitration
Emergency Relief

Mediation Rules
Framework for Mass Employment Arbitration Proceedings
Archived Rules

## Resources

Model Arbitration Clauses
Arbitration Submission Forms
Ethics Code

© Copyright 2020 Federal Arbitration | All Rights Reserved | Terms and Conditions | Privacy | FAQ

**Disclaimer**

This website is provided for informational purposes only and does not constitute legal advice, legal opinion, or a solicitation for legal services. FedArb is an alternative dispute resolution ("ADR") organization that provides arbitration, mediation, case administration, and dispute resolution management services. **FedArb is not a law firm and does not provide legal representation, legal service or legal advice.** Parties utilizing FedArb services are encouraged to consult with independent legal counsel regarding their legal rights and obligations.

FedArb panelists serve in independent adjudicative, mediative, or evaluative capacities and are not acting as attorneys for any party. No attorney-client relationship is created through the use of this website or through participation in any FedArb administered proceeding. The materials on this website are intended only as general information about FedArb, its services, and its panelists, and do not constitute a complete description of all services, procedures, or terms. While FedArb endeavors to maintain accurate and current information, FedArb makes no representations or warranties regarding the completeness, accuracy, or reliability of the information contained on this website.

# EXHIBIT 8





Model Arbitration Clauses

Arbitration Rules

Expedited Arbitration

Arbitration Fees

Mediation Rules

Mass Arbitrations

Emergency Relief

Archived Rules

Download the FedArb Rules

Download Arbitration Submission Forms

***FedArb is using SIAC Rules for Pacific rim cases.***

***FedArb is using UNCITRAL Rules for European cases.***

# FedArb Rules **(Effective August 9, 2021)**

**I. FedArb Arbitration Rules**
**Rule 1: General Principles**
Rule 1.01 – Authority of FedArb
Rule 1.02 – Compliance with Mandatory Law
Rule 1.03 – Rules Governed by Parties
Rule 1.04 – Default Rules of Procedure and Evidence
Rule 1.05 – Extensions and Deadlines
**Rule 2: Notice and Calculation of Time**
Rule 2.01 – Delivery of Notice
Rule 2.02 – Time of Notice Received
Rule 2.03 – Calculation of Time
Rule 2.04 – Calendar Days
**Rule 3: Commencement of Arbitration**
Rule 3.01 – Submitting a Claim
Rule 3.02 – Notice to Respondent
Rule 3.03 – Commencement of Arbitration
Rule 3.04 – Answer and Counterclaims

Rule 3.05 – Changing Claims
Rule 3.06 – Reply
**Rule 4: Emergency Relief**
Rule 4.01 – Pre-Tribunal Emergency Relief
Rule 4.02 – Post-Tribunal Emergency Relief
Rule 4.03 – Costs of Emergency Arbitrator
**Rule 5: Jurisdiction of the Arbitral Tribunal**
Rule 5.01 – Timeliness of Jurisdictional Challenge
Rule 5.02 – Challenges to Jurisdiction
Rule 5.03 – Failure to Appear
Rule 5.04 – Determination of Valid Agreement
Rule 5.05 – Severability
Rule 5.06 – Class Action
Rule 5.07 – Consolidation of Claims
Rule 5.08 – Attorneys' Fees in Class or Consolidated Actions
**Rule 6: Representation**
Rule 6.01 – Choice of Representative
Rule 6.02 – Providing Notice of Representation
Rule 6.03 – Applicability of FedArb Rules to Representatives
**Rule 7: Selection of Arbitrators**
Rule 7.01 – Nomination of Arbitrators
Rule 7.02 – Appointment of Arbitrators
Rule 7.03 – Resolving Impasse on Arbitrator Appointment
Rule 7.04 – Rank Selection of Arbitrators
Rule 7.05 – Ex Parte Communication
**Rule 8: Arbitrator Ethics and Conduct**
Rule 8.01 – Independence and Impartiality
Rule 8.02 – Disclosure Form and Acceptance of Arbitrators
Rule 8.03 – Challenges to Arbitrators
Rule 8.04 – Ongoing Duty to Disclose
Rule 8.05 – Applicable Ethical Standards
Rule 8.06 – Exclusive Remedy for Delay
Rule 8.07 – Settlement and Mediation During Arbitration

**Rule 9: Vacancies**
Rule 9.01 – Filling a Vacancy
Rule 9.02 – Proceeding After Vacancy is Filled
**Rule 10: Conduct of Proceedings**
Rule 10.01 – Ex Parte Communication During Proceedings
Rule 10.02 – Place of Arbitration
Rule 10.03 – Language and Translation
Rule 10.04 – Confidentiality, Cybersecurity and Data Privacy
Rule 10.05 – Pre-Hearing Conference
Rule 10.06 – Streamlined Three Arbitrator Pre-Hearing Option
Rule 10.07 – Discovery and Special Master
Rule 10.08 – Adherence to Deadlines
Rule 10.09 – Authority of the Tribunal
Rule 10.10 – Sanctions
**Rule 11: The Award**
Rule 11.01 – Specifications of the Award
Rule 11.02 – Award with Separate Confidential Memorandum
Rule 11.03 – Signatures
Rule 11.04 – Time Limit for Final Award
Rule 11.05 – Review of Award by FedArb
Rule 11.06 – Correction of Errors
Rule 11.07 – Registration of Awards
Rule 11.08 – Allocation of Fees
Rule 11.09 – Rule of Decision
Rule 11.10 – Enforcement of the Award
**Rule 12: Arbitration Appeals**
Rule 12.01 – Agreement to Appeal
Rule 12.02 – Appointment of the Appellate Panel
Rule 12.03 – Time Periods on Appeal
Rule 12.04 – Results on Appeal
Rule 12.05 – Implementation of Appellate Decision
**Rule 13: Failure to Comply and Default**
Rule 13.01 – Failure to Comply
**Rule 14: Immunity**

Rule 14.01 – Limitation of Liability
Rule 14.02 – Deliberate Misconduct
**Rule 15: Fees, Costs, and Expenses**
Rule 15.01 – Allocation of Fees
Rule 15.02 – Failure to Pay Fees
Rule 15.03 – Payment During Course of Proceedings
Rule 15.04 – Liability of Parties
Rule 15.05 – Combination of Entities for Purposes of Fees
Rule 15.06 – Allocation of Costs
Rule 15.07 – Summary of Fees & Expenses
**Rule 16: Expedited Disposition**
Rule 16.01
Rule 16.02
**Rule 17: Fixed Price Arbitration**
Rule 17.01 – Terms of Fixed Price Arbitration ™ Engagement
Rule 17.02 – Alterations
Rule 17.03 – Refunds
**Rule 18: Waiver**
**II. Rules Specific to Subject Matter**
Construction Arbitration Rules
Employment Arbitration Rules
Patent Arbitration Rules
**Appendix A: Sample Arbitration Clauses**
**Appendix B: Guidelines for Independent Factual Research by Arbitrator Via the Internet**
**Appendix C: Expedited Arbitration Agreement**
**III. Mediation Rules (Effective June 8, 2020)**

## I. FEDARB ARBITRATION RULES

### Introduction

Federal Arbitration, Inc. (FedArb) is a private Alternative Dispute Resolution (ADR) servic providing high quality, efficient arbitrations, mediations, and other ADR and related litigation services based on party-agreed legal principles in civil disputes of significant

complexity. Arbitrations administered by FedArb seek to satisfy all applicable international, federal and state law, including the Federal Arbitration Act (FAA) and state laws pertaining to arbitration. Accordingly, awards issued through FedArb are screened help ensure enforceability through judicial proceedings within the United States and in a other States that are parties to the New York Convention of 1958 and any other applicable international agreements to which the United States is a party.
FedArb Rules incorporate the best of federal litigation procedures and protections together with the advantages of ADR, and require respect for mandated deadlines and other measures that ensure efficiency. FedArb's default procedures are those used in the federal courts of the United States, developed over time by expert and experienced judges and practitioners, and familiar to parties and counsel. Parties may, however, vary these procedures as they choose, and arbitrators (and mediators) are required to adhere to lawful party-agreed options.

FedArb may adopt supplemental rules for specific purposes or substantive fields, and those rules, as adopted, are made part of this single set of rules.

**Rule 1: General Principles**

**Rule 1.01 – Authority of FedArb**
When parties agree to refer a dispute to FedArb for arbitration or mediation, or to arbitration or mediation in accordance with FedArb Rules, they thereby authorize FedArb to administer the arbitration or mediation involved. The authority and duties of FedArb shall be as prescribed in the agreement of the parties and in these Rules, and may be carried out through such of FedArb's representatives as the parties or Rules may direct. FedArb may, in its discretion, assign the administration of an arbitration or mediation to any of its offices. FedArb may amend these Rules from time to time as it sees fit.

**Rule 1.02 – Compliance with Mandatory Law**
No rule, practice or decision of FedArb shall be construed or applied to conflict with any applicable, governing law. To the extent these Rules conflict with a mandatory provision of applicable law, the applicable law shall prevail.

**Rule 1.03 – Rules Governed by Parties**

Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted ipso facto to the Rules in effect at the time of the commencement of arbitration as defined in Rule 3.03, unless the parties agree otherwis Subject to all legally required limitations, and consistent with these Rules, the parties, by written agreement, may vary the procedures set forth in these Rules. After appointment of the Tribunal, such modifications may be made only with the consent of the Tribunal.

**Rule 1.04 – Default Rules of Procedure and Evidence**

Unless otherwise agreed by the parties, the Federal Rules of Civil Procedure (FRCP) and the Federal Rules of Evidence (FRE) shall be applied in all FedArb proceedings to the extent their application is consistent with these Rules and is feasible in the judgment of the Tribunal. The Tribunal and the parties shall make every effort to conduct the arbitration in an expeditious and cost-effective manner, having regard to the complexity and value of the dispute.

**Rule 1.05 – Extensions and Deadlines**

The Tribunal may not vary any applicable time limit agreed upon by the parties, and may not seek any extension of a time period from the parties to any FedArb proceeding exce through the FedArb administrator. Any party may decline any request for extension of agreed time limitations, and such decisions will be conclusive unless an extension is determined to be necessary by FedArb in the interests of justice.

(back to top)

**Rule 2: Notice and Calculation of Time**

**Rule 2.01 – Delivery of Notice**

For the purposes of these Rules, any notice, communication or proposal shall be in writing. Any such notice, communication or proposal may be delivered by hand, registered post or courier service, or transmitted by any form of electronic communication (including electronic mail and facsimile), or delivered by any other appropriate means that provides a record of its delivery. Any notice, communication or proposal shall be deemed to have been received if it is delivered: (i) to the addressee

personally or to its authorized representative; (ii) to the addressee's habitual residence, place of business or designated address; (iii) to any address agreed by the parties; (iv) according to the practice of the parties in prior dealings; or (v) if, after reasonable effort none of these can be found, then at the addressee's last-known residence or place of business.

**Rule 2.02 – Time of Notice Received**
Any notice, communication or proposal shall be deemed to have been received on the day it was delivered in accordance with Rule 2.01.

**Rule 2.03 – Calculation of Time**
For the purpose of calculating any period of time under these Rules, such period shall begin to run on the day following the day when a notice, communication or proposal wa received or is deemed to have been received.

**Rule 2.04 – Calendar Days**
All calendar days shall be included in calculating any period of time under these Rules. I the last day of any period of time under these Rules is not a business day at the place of receipt in accordance with Rule 2.01, the period is extended until the first, following business day.
(back to top)

**Rule 3: Commencement of Arbitration**

**Rule 3.01 – Submitting a Claim**
A party or parties may initiate an arbitration by submitting to FedArb a Notice of Arbitration which shall include the following:

> (a) the full names, descriptions, and addresses of the parties and their representatives, including telephone numbers and email addresses;
> (b) a brief description of the facts giving rise to the dispute;
> (c) the relief sought;
> (d) a request that the dispute be administered by FedArb;
> (e) identification of the agreement pursuant to which arbitration is demanded, with

copy of the relevant portions of such agreement attached to each copy of the Notic of Arbitration;

(f) a statement of Claimant's position as to the place of arbitration and the applicable law and the reasons therefore;

(g) a request for either a single arbitrator or a panel of three arbitrators;

(h) the fee for initiating the arbitration specified in the FedArb fee schedule in effect at the time of the filing; and

(i) such other relevant information as the party or parties giving notice deem necessary.

Materials should be submitted by email to **filings@fedarb.com**. The filing party or parties should call FedArb at 650-328-9500 to confirm receipt of materials.

**Rule 3.02 – Notice to Respondent**

Upon determining that a Claimant has satisfied all the requirements for commencing an arbitration under these rules, including payment of the required deposit, FedArb will send a copy of the Notice of Arbitration to the Respondent or Respondents named therein.

**Rule 3.03 – Commencement of Arbitration**

An arbitration proceeding shall be deemed to commence upon the execution by the parties and FedArb of an agreement to arbitrate under the auspices of FedArb, or in the case of a demand to arbitrate, when FedArb receives a Notice of Arbitration.

**Rule 3.04 – Answer and Counterclaims**

Within twenty (20) days from receipt from FedArb of a Notice of Arbitration, each Respondent named therein shall file with FedArb an Answer containing the following information:

(a) Respondent's full name, description, and address;

(b) A statement of Respondent's position with regard to the claims advanced in the Notice of Arbitration, including the arbitrability of such claims;

(c) A statement of Respondent's position with regard to the place of arbitration and the applicable law, and the reasons therefor;

(d) Any Notice of Counterclaim or Responsive Pleading that Respondent wishes to file, which shall include the information required for the filing of a Notice of

Arbitration; and

Upon determining that a Respondent has satisfied all the foregoing requirements, FedArb shall send a copy of such Respondent's Answer and other pleadings to the Claimant or Claimants named therein. Failure to deliver a notice of defense shall no delay the arbitration; in the event of such failure, all claims set forth in the Notice of Arbitration shall be deemed denied.

**Rule 3.05 – Changing Claims**

A party may amend or supplement a claim, counterclaim, or defense to the extent allowed by the FRCP and applicable law, except that no amendment shall be allowed tha would fall outside the scope of the agreement to arbitrate unless agreed to by all the parties thereto in writing.

**Rule 3.06 – Reply**

Claimants may file a Reply to the Answer, or to the Answer and Counterclaim and/or Responsive Pleading, within 20 days of its service.

(back to top)

**Rule 4: Emergency Relief**

These Emergency Relief provisions are not intended to prevent any party from seeking urgent interim or conservatory measures from a competent judicial authority at any time prior to making an application for such measures, and in appropriate circumstances eve thereafter, pursuant to these Rules. Any application for such measures from a competen judicial authority shall not be deemed to be an infringement or a waiver of the arbitration agreement. Moreover, it is not necessary for the parties to have complied with any requirement to engage in mandatory mediation to seek Emergency Relief.

**Rule 4.01 – Pre-Tribunal Emergency Relief**

(a) A party in need of emergency relief prior to the appointment of a Tribunal may seek such relief after notifying FedArb and all other parties in writing of the relief sought and the basis for an Award of such relief. This application shall contain:

i. the name in full, description, address and other contact details of each of the parties;
ii. the name in full, address and other contact details of any person(s) representing the applicant;
iii. a statement certifying that all other parties have been notified. If all other parties have not been notified, the Application shall include an explanation of the efforts made to effect such notification
iv. a description of the circumstances giving rise to the application and of the underlying dispute referred or to be referred to arbitration;
v. a statement of the emergency measures sought;
vi. the reasons why the applicant needs urgent interim or conservatory measures that cannot await the constitution of an arbitral tribunal;
vii. any relevant agreements and, in particular, the arbitration agreement;
viii. any agreement as to the place of the arbitration, the applicable rules of law or the language of the arbitration;
ix. proof of payment of the amount set forth in Rule 4.03;

The Application may contain such other documents or information as the applicant considers appropriate or as may contribute to the efficient examination of the Application.

(b) FedArb shall terminate the emergency relief proceedings if a Notice for Arbitration and related documents has not been received by FedArb from the applicant within 5 days of FedArb's receipt of the application for Emergency Relief, unless FedArb determines that a longer period of time is necessary
(c) Upon receipt of the Application, FedArb shall promptly appoint an Emergency Arbitrator to rule on the emergency request. When practicable, appointment of an Emergency Arbitrator will be initiated by FedArb within 24 hours of receipt of the request with preference to FedArb's panel of former Article III judges who have agreed to act as Emergency Arbitrators. Within 36 hours the Emergency Arbitrator shall disclose any circumstance likely, on the basis disclosed in the application, to affect the Arbitrator's ability to be impartial or independent. Any challenge to the appointment of the Emergency Arbitrator shall be made within 24 hours of the disclosures by the Emergency Arbitrator. FedArb will promptly review and decide an

such challenge.
(d) Within two business days after appointment, or as soon as practicable thereafte the Emergency Arbitrator shall establish a schedule for the consideration of the request for emergency relief. The Emergency Arbitrator will have the authority to rul on their own jurisdiction and shall resolve any disputes with respect to the request for emergency relief. The Emergency Arbitrator may conduct the emergency proceedings in any manner determined by the Emergency Arbitrator to be appropriate in the circumstances, taking account of the nature of such emergency proceedings, the need to afford to each party, if possible, an opportunity to be consulted on the claim for emergency relief (whether or not it avails itself of such opportunity), the claim and reasons for emergency relief and the parties' further submissions (if any). The Emergency Arbitrator is not required to hold any hearing with the parties (whether in person, by telephone or otherwise) and may decide the claim for emergency relief on available documentation.
(e) The Emergency Arbitrator shall determine whether the party seeking emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief and whether the requesting party is entitled to such relief under applicable law. The Emergency Arbitrator shall enter an order or award granting or denying relief, as the case may be, and stating the reasons therefor.
(f) Any request to modify the Emergency Arbitrator's order or award must be based on changed circumstances and may be made to the Emergency Arbitrator until such time as the Tribunal is appointed in accordance with the parties' Agreement and FedArb's usual procedures. Thereafter, any request related to the relief granted or denied by the Emergency Arbitrator shall be determined by the Tribunal appointed in accordance with the parties' Agreement and applicable FedArb procedures.
(g) The Emergency Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservatio of property and disposition of disposable goods. At the Emergency Arbitrator's discretion, any interim award or order for emergency relief may be conditioned on the provision of adequate security by the party seeking such relief.
(h) The Emergency Arbitrator may modify or vacate the interim award or order. Any interim award or order shall be binding on the parties when rendered. The parties shall undertake to comply with such an interim award or order without delay.
(i) The emergency arbitrator shall have no further power to act after the arbitral

Tribunal is constituted. Once the Tribunal has been constituted it may modify or vacate the interim award or order of emergency relief issued by the Emergency Arbitrator. The Emergency Arbitrator may not serve as a member of the Tribunal unless all the parties agree otherwise.

**Rule 4.02 – Post-Tribunal Emergency Relief**

The Emergency Arbitrator shall have no further power to act after the Tribunal is constituted. Once the Tribunal has been constituted, it may reconsider and adopt such interim measures as it deems necessary, including measures for the preservation of assets, the conservation of goods, or the sale of perishable goods. The Tribunal may require appropriate security as a condition of ordering such measures.

**Rule 4.03 – Costs of Emergency Arbitrator**

To invoke this process the applicant must deposit an amount determined by FedArb; for 2020, the rate is $50,000, consisting of US $15,000 for FedArb's administrative expenses and US $35,000 for the Emergency Arbitrator's fees and expenses. It is preferred that the payment for this amount be made by wire transfer contact FedArb at 650.328.9500 for information.

FedArb may, at any time during the Emergency Arbitrator proceedings, decide to increas the Emergency Arbitrator's fees or FedArb's administrative expenses taking into accoun inter alia, the nature of the case and the amount of work performed by the Emergency Arbitrator and FedArb. If the party which submitted the application fails to pay the increased costs within the time limit fixed by FedArb, the application shall be considered as withdrawn. In the event that the emergency relief proceedings do not take place or ar otherwise terminated prior to the making of an order or award, FedArb shall determine the amount to be reimbursed to the applicant, if any. An amount of US $15,000 for FedArb's administrative expenses is non-refundable in all cases.

(back to top)

**Rule 5: Jurisdiction of the Arbitral Tribunal**

**Rule 5.01 – Timeliness of Jurisdictional Challenge**

A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The Tribunal may rule on such objections a a preliminary matter or as part of the final award.

**Rule 5.02 – Challenges to Jurisdiction**

The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration clause or other agreement invoked as the basis of jurisdiction. This authority extends to jurisdictional challenges with respect to both the subject matter of the dispute and the parties to the arbitration.

**Rule 5.03 – Failure to Appear**

If any party fails to take part in an arbitration proceeding commenced under these Rules at any stage, the arbitration shall proceed notwithstanding such failure so long as sufficient funds are provided by the participating party or parties to cover all the costs, expenses and fees of the proceeding.

**Rule 5.04 – Determination of Valid Agreement**

The Tribunal shall have the power to determine the existence, scope and validity of the contract of which an arbitration clause forms a part unless otherwise specified by the parties. A valid agreement to arbitrate will confer jurisdiction upon FedArb to process th dispute to final resolution under its Rules, regardless of any claim that the underlying contract is invalid.

**Rule 5.05 – Severability**

For the purpose of challenges to the jurisdiction of the Tribunal, the arbitration clause shall be considered as separable from any contract of which it forms a part.

**Rule 5.06 – Class Action**

An arbitration agreement to have all or part of any dispute handled in the form of a class action, or a judicial order to that effect, shall be sufficient to confer jurisdiction on any FedArb tribunal to handle the matter in the manner requested by the parties, subject to

state or federal law. Where no such agreement exists, or where class action procedures are precluded by the parties to an agreement, FedArb Tribunals shall lack jurisdiction to apply class action procedures in the absence of an authoritative judicial ruling requiring or authorizing otherwise. Except to the extent modified by the parties, class actions ove which the Tribunal has jurisdiction will be handled by FedArb tribunals in the same manner as they are handled under FRCP 23, including certification, notice, and settlement. The obligation of confidentiality will be modified during this process to the extent necessary for class action procedures to be properly implemented under the circumstances; the parties may maintain as high a level of confidentiality of such proceedings as they consider desirable, consistent with applicable law. The costs of class action certification, notice, and other related procedures will be treated in the sam manner as they are by U.S. federal courts under the FRCP, and all anticipated charges shall be collected by FedArb in advance of a tribunal permitting each stage of such processes to commence.

**Rule 5.07 – Consolidation of Claims**

The Tribunal may, at the request of a party, consolidate two or more arbitrations into a single arbitration, where:

1. a) the parties have agreed to consolidation; or
2. b) in accordance with FRCP standards and applicable law; or
3. c) all of the claims in the arbitrations are made under the same arbitration agreement agreements.

In deciding whether to consolidate, the Tribunal may take into account any circumstance it considers to be relevant, including whether one or more arbitrators have been confirmed or appointed in more than one of the arbitrations and, if so, whether the same or different persons have been confirmed or appointed.

**Rule 5.08 – Attorneys' Fees in Class or Consolidated Actions**

The parties shall be free to agree on limitations on the fees to be paid class-action counsel, or counsel in consolidated proceedings, beyond lodestar levels calculated on th basis of actual work performed.

(back to top)

## Rule 6: Representation

### Rule 6.01 – Choice of Representative

Each party may be represented or assisted in any FedArb proceeding or appeal by persons of the party's choice, unless such choice is prohibited by applicable law.

### Rule 6.02 – Providing Notice of Representation

Each party shall notify all other parties and FedArb in writing of the name, address, and function of each person it chooses as a representative or assistant.

### Rule 6.03 – Applicability of FedArb Rules to Representatives

Every representative or assistant of a party, by accepting such assignment, agrees to comply with the FedArb Rules and all applicable legal and ethical requirements for representatives and assistants in arbitrations or mediations.

(back to top)

## Rule 7: Selection of Arbitrators

### Rule 7.01 – Nomination of Arbitrators

Unless the parties agree otherwise in writing, arbitrations under the FedArb Rules shall b decided by a sole Arbitrator. Where the parties designate a panel of three arbitrators, the arbitrators shall be selected in the manner provided by these Rules from FedArb's list of Participating Arbitrators. FedArb may permit any qualified person to act as an arbitrator in a FedArb administered proceeding on an ad hoc basis.

### Rule 7.02 – Appointment of Arbitrators

Unless the parties have agreed otherwise, the parties shall attempt to agree on an arbitrator or Panel of three arbitrators to serve as the Tribunal in the following manner:

(a) Where a single Arbitrator is to be selected, the parties will have twenty days from the time an Answer or an Answer and Counterclaim and/or Responsive Pleading is filed to agree on any Participating Arbitrator or other qualified person to hear and decide their claims.

(b) Where a Panel is to be selected, the party or parties on each side of the dispute shall each designate an arbitrator within twenty days from the time an Answer or an Answer and Counterclaim and/or Responsive Pleading is filed to serve as a neutral, party-appointed Arbitrator; the parties shall thereafter attempt to agree on a third Arbitrator during the next twenty (20) days to serve as Chair, or shall authorize the party-appointed arbitrators to do so.

(c) In the event the parties to an arbitration cannot agree on a single Arbitrator, or on the third member of a Panel, within the time required or otherwise agreed, the Arbitrator or third Panel member shall be selected by FedArb within twenty (20) day from the time it is notified of the parties' inability to agree from among Participating Arbitrators eligible for appointment, taking into account the views of the parties with regard to particular qualifications or experience.

(d) Upon the request or agreement of all the parties to a dispute, FedArb will administer a process by which the parties collectively select the Arbitrator, the Chai of the Panel, or all three members of the Panel.

**Rule 7.03 – Resolving Impasse on Arbitrator Appointment**

Where multiple parties are involved in a matter, the multiple Claimants, and/or multiple Respondents, shall jointly propose or reject arbitrators. In the event that multiple Claimants or Respondents are unable to agree on the choice or acceptability of arbitrators within the applicable time periods, FedArb shall attempt for a period no longe than ten days to arrange a method acceptable to them, failing which FedArb will choose the Arbitrator or Arbitrators after appropriate consultation with the parties.

**Rule 7.04 – Rank Selection of Arbitrators**

The parties may agree upon the selection of a Tribunal through "ranking" in which case the parties shall proceed as follows ("the Procedure"):

(a) To initiate the Procedure, the parties will jointly notify FedArb in writing that they have elected to resolve their dispute before a Tribunal chosen by "rank selection." The parties will indicate whether the Tribunal shall be a sole arbitrator or a three-arbitrator panel.
(b) Upon receipt of this notification, FedArb will make a random selection of qualifie candidates (excluding those arbitrators who are ineligible or unavailable) and will forward the names to counsel for the parties. If the parties request a three-arbitrato panel, FedArb will select ten (10) qualified candidates. If the parties request a single arbitrator, FedArb will select five (5) qualified candidates.
(c) Within ten (10) days of receipt of the list, each party may strike up to three (3) names from the list of ten and notify FedArb of the same. After removing the names stricken by the parties, FedArb will forward the remaining names to counsel for the parties. Each party shall rank the remaining arbitrator candidates in order of preference, with a ranking of "1" indicating a party's number one choice to serve on the Tribunal. Within ten (10) days of receipt of the list, the parties shall submit their respective orders of preference to FedArb and may agree to exchange their orders o preference with each other.
(d) If the parties request a sole arbitrator, the arbitrator candidate with the lowest composite ranking derived from the Procedure be appointed sole arbitrator. If the parties request a three-arbitrator panel, the candidate with the lowest composite ranking shall be appointed Chair. The remaining two arbitrators on the panel shall b appointed in accordance with the designated order of mutual preferences. If any arbitrator candidate withdraws from consideration or is unable to serve, FedArb will proceed to the next candidate with the lowest ranking to assemble the Tribunal and in the case of a three-arbitrator panel, the person with the lowest composite rank shall serve as the Chair. In the event of a composite ranking tie, FedArb will choose between the tied candidates by random lot.
(e) If the Procedure does not yield a Tribunal, FedArb shall notify counsel for the parties. Within fifteen (15) days of such notification, FedArb will make a random selection of six (6) additional qualified and available candidate arbitrators from its panel and will forward the names to counsel for the parties. Within ten (10) days of receipt of the list, each of the parties may strike up to two (2) names. After removin the names stricken by the parties, FedArb will forward the remaining names to counsel for the parties. Each party shall rank the remaining arbitrator candidates in

order of preference. Within ten (10) days of receipt of the list, the parties shall subm their respective orders of preference to FedArb and may agree to exchange their orders of preference with each other. FedArb will repeat the Procedure as necessary until a complete Tribunal is selected.

**Rule 7.05 – Ex Parte Communication**

A party to a FedArb proceeding may consult unilaterally in advance with any potential Arbitrator to ascertain the individual's qualifications and availability to serve as a party-appointed Arbitrator in the matter. A party may also consult with its party-appointed Arbitrator to discuss the selection of the Chair of an arbitration Panel. All communications allowed under this Rule shall be strictly restricted to discussions of suitability and availability, and to a general description of the controversy and the issues presented. No substantive discussion of the merits of the issues is permitted in such exchanges. No party may contact, directly or indirectly, an individual the party or parties wish to consider appointing as sole Arbitrator or as Chair of an Arbitration Panel or as a member of an Appellate Panel; FedArb will undertake all necessary contacts with such individuals at the request of one or more of the parties.

(back to top)

**Rule 8: Arbitrator Ethics and Conduct**

**Rule 8.01 – Independence and Impartiality**

Each person appointed to act as an Arbitrator in a proceeding or an appeal under these Rules must be, and must remain throughout the arbitration or appeal, independent of the parties involved, and must act impartially on all issues.

**Rule 8.02 -Disclosure Form and Acceptance of Arbitrators**

Before accepting appointment as an Arbitrator in any matter under the FedArb Rules, each person shall sign the FedArb Disclosure Form, and shall make reasonable inquiries so as to disclose in writing to the parties any facts or circumstances of such a nature as reasonably to call into question the person's independence or impartiality.

**Rule 8.03 – Challenges to Arbitrators**

A party shall have ten (10) days from receipt of the Disclosure Form to submit a challenge to the appointment of an Arbitrator if it believes that circumstances exist, or a any later point have arisen, that give rise to justifiable doubt regarding that Arbitrator's independence or impartiality. A party may challenge the appointment of an Arbitrator; provided, however, that a party may challenge an Arbitrator whom it has designated only for reasons of which it becomes aware after the designation has been made.

A party may challenge an appointed Arbitrator only by a notice in writing to FedArb, with copy to the Tribunal and the other party, given no later than 10 days after the challenging party (i) receives notification of the appointment of that Arbitrator, or (ii) becomes aware of the circumstances that give rise to justifiable doubt regarding the Arbitrator's independence and impartiality, whichever shall last occur. The notice shall state the reasons for the challenge with specificity.

When an Arbitrator is challenged by a party, the other party may agree to the challenge o the Arbitrator may voluntarily withdraw. Neither of these actions shall imply acceptance of the validity of the challenge.

If neither agreed disqualification nor voluntary withdrawal occurs, FedArb will determine as expeditiously as possible whether the Arbitrator should be disqualified, on the basis o such submissions and proceedings as FedArb considers necessary. FedArb shall inform the parties and the Arbitrator of FedArb's decision on challenges in writing no later than ten days after all evidence and argument on such matter is submitted, which decision shall be final and not appealable within FedArb or to any court, except to the extent required by controlling law.

**Rule 8.04 – Ongoing Duty to Disclose**

If an Arbitrator appointed under the Rules learns of any facts or circumstances during an arbitration or an appeal conducted under the Rules which a prospective Arbitrator would be required to disclose before appointment, the Arbitrator, within ten (10) days of learnin of such facts or circumstances, shall disclose them in writing to FedArb and the parties. A party may object for cause to an Arbitrator on the basis of such disclosure, or upon th discovery at any time during the proceeding of facts or circumstances warranting disqualification of the Arbitrator, in the manner provided by these Rules.

**Rule 8.05 – Applicable Ethical Standards**

Persons serving as FedArb Arbitrators must agree to abide by the ethical rules for arbitrators promulgated by applicable law and relevant ethical codes, which would specifically include the ABA Model Code of Judicial Conduct for arbitrations taking plac in the United States. The parties to a proceeding shall disclose to all prospective arbitrators the companies and other persons or organizations having an interest in the outcome, including counsel. A person selected to serve as an Arbitrator must reveal in writing to FedArb and the parties any interest he/she has in, or relationship with, any of the entities or persons disclosed.

**Rule 8.06 – Exclusive Remedy for Delay**

In the event a proceeding under the auspices of FedArb administration is delayed, or is authoritatively determined to have been invalid, due to an ethical violation by FedArb personnel or any FedArb-appointed Arbitrator or Tribunal, the sole and exclusive remedy for such delay or invalidity will be to require FedArb to provide arbitration services at its own expense that substitute for any delayed or invalid hearing in the matter.

**Rule 8.07 – Settlement and Mediation During Arbitration**

A Tribunal may suggest that the parties explore settlement, but may not do so repeatedl and may not insist upon such discussions. All exchanges between parties concerning mediation shall be confidential, and shall be subject to the Federal Rules of Evidence provisions governing settlement discussions and other applicable legal requirements. Any request by a party or parties for assistance in exploring settlement and/or the appointment of a mediator shall be made to FedArb, and not to the Tribunal serving in th matter. FedArb will attempt to assist the party or parties in securing mediation services on separate terms.

(back to top)

**Rule 9: Vacancies**

**Rule 9.01 – Filling a Vacancy**

A vacancy resulting from resignation, recusal, incapacity, death, or challenge of an Arbitrator in an arbitration shall be promptly filled in the same manner by which the

appointment was made in said arbitration.

**Rule 9.02 – Proceeding After Vacancy is Filled**
As soon as a vacancy is filled, the proceeding shall continue to the extent practicable from the point it had reached at the time the vacancy occurred. Any party may, however, in such a situation, suggest that reconsideration or rehearing of any issue or issues is necessary for good cause. In that event, the Tribunal will determine within 10 days of such request whether and to what extent reconsideration or rehearing is necessary to ensure a full and fair hearing.

(back to top)

**Rule 10: Conduct of Proceedings**

**Rule 10.01 – Ex Parte Communication During Proceedings**
No party to a FedArb arbitration, and no witness or representative of or assistant to any party, shall have any ex parte communication with any Arbitrator serving in that proceeding with respect to any matter related to the proceeding.

**Rule 10.02 – Place of Arbitration**
Unless the parties otherwise agree, the place of arbitration shall be fixed by the Tribunal The Award shall be deemed made at the agreed or designated place of arbitration, though hearings or meetings, including conferences via telecommunications or the Internet, and the signing and issuance of the final Award, may take place wherever convenient.

**Rule 10.03 – Language and Translation**
Unless the parties agree otherwise, all arbitrations supervised by FedArb will be conducted in English. In the event the parties desire that an arbitration under FedArb Rules and administration be conducted in a language other than English, the Tribunal ma order that the parties provide any necessary translation and interpretation services.

**Rule 10.04 – Confidentiality, Cybersecurity and Data Privacy**

(a) Unless all the parties otherwise agree, all papers, exchanges, hearings, and decisions in any FedArb proceeding shall be and shall remain confidential and may not be disclosed to any third parties, except to the extent that the information has been previously disclosed, or disclosure is necessary in connection with a judicial challenge to or enforcement of an Award, or disclosure is required by law.
(b) The parties shall confer and address issues of cyber security and data privacy b having referenced these issues as set forth in relevant cyber and data privacy guidelines, such as those issued by CPR, NYIAC, the IBA or other similar guidelines the jurisdiction where the arbitration is seated.

**Rule 10.05 – Pre-Hearing Conference**
Within ten days of appointment to a dispute, the Tribunal shall confer with the parties an establish a schedule for the conduct of the proceeding. Pre-hearing conference call should also have the parties confer and address how issues of Cyber Security and Data Privacy should be addressed.

**Rule 10.06 – Streamlined Three Arbitrator Pre-Hearing Option**
In cases where the parties have agreed on a three-person panel to serve as the Tribunal, the parties may elect to follow a streamlined procedure where the preliminary and discovery stages of a case are managed by the Chair, acting as a single Arbitrator. The procedure for the streamlined option is as follows:

(a) The Chair will be empowered to hear and decide all discovery and dispositive motions that may be filed. The two other Arbitrators will remain in an inactive status on the case but will become active and participate in the evidentiary hearing, if one held, and in approving and issuing the Final Award when an evidentiary hearing is required.
(b) As part of the preliminary scheduling order, the parties and Chair shall agree on what process, if any, would be used to keep the two inactive Arbitrators informed about the case and about any issues that the Chair has resolved. The inactive Arbitrators shall be notified by the Chair regarding their active status as soon as practicable, and at least 30 days prior to the evidentiary hearing.
(c) Hearing Availability – The two, inactive Arbitrators shall be consulted regarding their availability for the scheduling of any hearings prior to the finalization of the

preliminary scheduling order.

(d) Dispositive Motions – The Chair will be empowered to hear and decide any dispositive motion that may be filed. However, if either side requests that a dispositive motion be heard and decided by the full panel, the full panel shall be made available to hear and decide the motion.

(e) Opt Out – A party may withdraw its consent to the streamlined option. Such withdrawal must be made in writing. The inactive Arbitrators shall, in such event, immediately become active and will participate in any future proceedings for the case; the Chair will cease any activity on the case until the full panel is engaged. However, the withdrawal shall not apply to any dispositive motion that has been full briefed and argued before the withdrawal is issued.

**Rule 10.07 – Discovery and Special Master**

The Tribunal shall closely supervise discovery, and if necessary, may appoint a Discover Master for that purpose, on terms acceptable to the parties and FedArb. Discovery Masters must be approved as qualified by FedArb before being appointed to a matter, and must be acceptable to the parties. A Discovery Master shall have authority to convene the parties, to hear discovery disputes and pre-trial motions, and to recommend to the Tribunal the resolution of such disputes or motions in writing. The parties shall receive notice of and shall be permitted to monitor all exchanges between a Discovery Master and the Tribunal.

**Rule 10.08 – Adherence to Deadlines**

The Tribunal will decide any motion submitted by the parties no later than thirty (30) day after submission, and will render an award on the merits of proceedings within thirty (30 days of the closing of the record in the case, which shall not be delayed beyond the filing of the final post-trial brief and any argument that is sought and agreed to by the parties. The parties may vary any deadline by written agreement. The Tribunal may seek an extension of any deadline only through FedArb, and may not seek any extension of time directly from the parties. FedArb will authorize extensions of time only upon the consen of all parties to the arbitration, or if FedArb finds an extension is in the interests of justic to the extent necessary under the circumstances.

**Rule 10.09 – Authority of the Tribunal**

Unless otherwise agreed by the parties, the Tribunal shall have authority to manage the prehearing process and the hearing, including the authority to issue preliminary injunctions and other forms of interim measures, and to consider and decide motions to dismiss and for summary judgment, subject to jurisdictional or other limitations impose by these Rules or the parties.

Nothing in these Rules shall be construed to give the Tribunal the authority to compel th production of documents by third parties not subject to the arbitration, unless the Tribunal is so authorized by applicable law.

The Tribunal may issue orders or make arrangements to extend special protection for th confidentiality of proprietary information, trade secrets, or other sensitive information disclosed in discovery or otherwise.

**Rule 10.10 – Sanctions**

The Tribunal shall have the powers to sanction any party or counsel that are conferred upon the federal courts by the FRCP, including FRCP Rule 11, unless modified by the parties. Any party or attorney upon whom a sanction is imposed may seek review of its legal propriety by FedArb within 10 days of its imposition. FedArb will review the legal propriety of the sanction in accordance with applicable law, and issue its decision within 10 days of the filing of all papers related to the request for review. FedArb's decision will be final and not appealable within FedArb or to any court, except to the extent required b law.

(back to top)

**Rule 11: The Award**

**Rule 11.01 – Specifications of the Award**

The Award shall be in writing and shall describe the relief, if any, granted, and the decisions on the issues presented. The parties to any arbitration under the FedArb Rules agree that, upon application of any party, judgment shall be entered upon the Award by any court having jurisdiction to do so. Unless the parties agree otherwise, the Tribunal shall also issue an opinion in writing that may be incorporated into the Award by reference, and that should include the findings, reasons, and conclusions upon which th

Award is based. The Award shall state the date upon which it is made, which will be the date signed by the Arbitrator or the last of the three Arbitrators if issued by a Panel. The Award shall also state the place of the arbitration, though that need not be the place at which the Award is signed.

**Rule 11.02 – Award with Separate Confidential Memorandum**

In situations where the arbitration proceedings require the parties to disclose confidenti or highly sensitive trade secrets or other information, the parties may require the Tribuna to issue an award sufficient to be enforceable, isolating any confidential or sensitive information to a separate memorandum. The parties shall not file this separate memorandum with the Court unless otherwise required by law. If disclosure of the separate memorandum is required, the parties shall undertake to file such memorandum under seal, or to otherwise take advantage of any procedural mechanisms that will further confidentiality, including redaction of confidential information. Any determination as to whether information is confidential or protected shall be made by the Tribunal afte consultation with the parties.

**Rule 11.03 – Signatures**

The Award shall be signed by the Arbitrator, or if issued by a Panel shall be signed by at least two of the three Arbitrators on the Panel. Awards issued by a Panel may be accompanied by a dissenting opinion, which may be filed with or after the filing of the Award, but which shall not constitute part of the Award.

**Rule 11.04 – Time Limit for Final Award**

Draft copies of the proposed Award shall be provided to FedArb through the FedArb Cas Manager for review no later than seven (7) days in advance of the deadline for rendering an award in the case, which shall be thirty (30) days after the closing of the record, unles an extension of time is granted by the parties through FedArb.

**Rule 11.05 – Review of Award by FedArb**

After a draft copy of the proposed award is submitted to FedArb, FedArb shall review the draft and suggest any changes that may be necessary or desirable as to its form. The

draft shall then be returned to the Tribunal. The Tribunal shall then deliver executed copies of the Award and of any dissenting opinion to FedArb by the applicable deadline. FedArb shall then send copies of the executed award to the parties.

**Rule 11.06 – Correction of Errors**

Within ten days of receipt of the Award, or of the discovery within one year of the Award of facts necessary to ascertain errors in the Award, any party may request the Tribunal o FedArb Case Manager to correct any ministerial errors in the Award, such as typographical or computational mistakes. Any dispute concerning the propriety of any correction to an Award shall be presented to the original Tribunal for final decision, or if any member of the Tribunal is unavailable, to FedArb. The parties to FedArb proceedings agree that FedArb and its appointed Arbitrators shall have continuing jurisdiction to correct ministerial errors in Awards, and to perform such other tasks as may be required or permitted to be performed under governing law.

**Rule 11.07 – Registration of Awards**

If applicable law requires an Award to be filed or registered, the Tribunal shall cause suc requirement to be satisfied. It is the responsibility of the parties to bring such requirements or any other procedural requirements of the place of arbitration to the attention of the Tribunal.

**Rule 11.08 – Allocation of Fees**

The Award of the Tribunal may allocate Arbitration fees and Arbitrator compensation an expenses, unless such an allocation is expressly prohibited by the parties' Agreement.

**Rule 11.09 – Rule of Decision**

When the Tribunal is composed of more than one Arbitrator, an Award is made by a majority decision. If there is no majority, the Award shall be made by the Chair alone.

**Rule 11.10 – Enforcement of the Award**

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, et seq., or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to

have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

(back to top)

**Rule 12: Arbitration Appeals**

**Rule 12.01 – Agreement to Appeal**
At any time, the parties may agree to an appeal. All Parties must agree in writing for suc procedure to be effective. Once a Party has agreed to an optional arbitration appeal, it cannot unilaterally withdraw from it. Where such agreement has been reached, a party may commence an appeal from the Award by filing with FedArb a notice of appeal in accordance with the Federal Rules of Appellate Procedure (FRAP). The FRAP and applicable law shall govern the FedArb appellate process unless the Appellate Panel appointed to decide the appeal determines the FRAP cannot practically be applied in a particular situation, or all the parties agree on another rule.

**Rule 12.02 – Appointment of the Appellate Panel**
The Appellate Panel shall be chosen from the FedArb list of Participating Arbitrators in the same manner provided in these Rules for the selection of the Tribunal in the applicable arbitration.

**Rule 12.03 – Time Periods on Appeal**
The Appellate Panel shall, within ten days of being formed, establish time periods for the filing of briefs by the Appellant and Respondent, and for oral argument, consistent with any schedule agreed to by the parties. If the parties cannot agree on a schedule for briefing and oral argument, the Appellate Panel's schedule shall provide for the filing of a briefs within ninety days of its scheduling order. Appeals will be decided in an opinion issued no later than thirty days after oral argument, or after the final brief submitted, whichever is later.

**Rule 12.04 – Results on Appeal**
The Appellate Panel may approve the Award issued by the Tribunal, or may correct any aspect of the Award that would be within the power of a U.S. Court of Appeals to correc

decisions of a U.S. District Court. Unless otherwise agreed, errors of law will be subject correction to the same extent as in the federal courts of the U.S., and findings of fact wil be subject to correction when found to be clearly erroneous. The Appellate Panel may instruct the Tribunal as to corrections that should be made in the original Award, if any, o as to further proceedings that are necessary on remand.

**Rule 12.05 – Implementation of Appellate Decision**
The Tribunal shall implement the instructions of the Appellate Panel as soon as practicable after the issuance of the appellate decision, but unless otherwise agreed by the parties not more than thirty (30) days thereafter. An Award issued pursuant to such instructions shall be submitted to FedArb for its approval as to matters of form, and sha become final as soon as it is issued in the form approved by FedArb. FedArb shall provid the Award to the parties only after receipt by FedArb of all amounts due for fees and services.

(back to top)

**Rule 13: Failure to Comply and Default**

**Rule 13.01 – Failure to Comply**
If a party fails to comply with any order issued pursuant to these Rules, the entity makin the order may fix a period for compliance, and thereafter in the event of noncompliance shall impose appropriate remedies, including costs, attorneys' fees, and/or an Award on default. Absent good cause, a party that fails to comply with any order issued pursuant t these Rules agrees to pay and shall be required to pay all the costs, fees, and damages caused by its failure to comply.

(back to top)

**Rule 14: Immunity**

**Rule 14.01 – Limitation of Liability**
Unless otherwise mandated by governing law, Participating Arbitrators, FedArb and its personnel including its Board of Directors, shall have the same immunity on account of

acts or omissions related to FedArb proceedings and appeals that the law provides to federal judges of the United States and their administrative personnel.

**Rule 14.02 – Deliberate Misconduct**
No immunity shall be afforded to any individual with regard to deliberate and knowing misconduct.

(back to top)

**Rule 15: Fees, Costs, & Expenses**

**Rule 15.01 – Allocation of Fees**
Each party shall pay its pro rata share of FedArb's fees and expenses as set forth in the FedArb fee schedule in effect at the time of the commencement of the Arbitration, unles the parties agree on a different allocation of fees and expenses. FedArb's agreement to render services is jointly with the party and the attorney or other representative of the party in the Arbitration.

**Rule 15.02 – Failure to Pay Fees**
If, at any time, any party has failed to pay fees or expenses in full, FedArb may order the suspension or termination of the proceedings. FedArb may so inform the parties in orde that one of them may advance the required payment. If one party advances the paymen owed by a non-paying party, the Arbitration shall proceed, and the Arbitrator may allocat the non-paying party's share of such costs. An administrative suspension shall toll any other time limits contained in these Rules or the parties' Agreement.

**Rule 15.03 – Payment During Course of Proceedings**
FedArb requires that the parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Tribunal may preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing. The parties shall also be responsible for the expenses reasonably incurred by the Tribunal.

**Rule 15.04 – Liability of Parties**

The parties are jointly and severally liable for the payment of FedArb Arbitration fees and Arbitrator compensation and expenses. In the event that one party has paid more than it share of such fees, compensation and expenses, the Tribunal may award against any other party any such fees, compensation and expenses that such party owes with respect to the arbitration.

**Rule 15.05 – Combination of Entities for Purposes of Fees**

Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single party for purposes of FedArb's assessment of fees. FedArb shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions.

**Rule 15.06 – Allocation of Costs**

To the extent the allocation of costs and/or fees is necessary, the Tribunal shall determine the costs, expenses and attorneys' fees incurred by the parties. Tribunal cost expenses, and attorneys' fees shall be allocated in accordance with any applicable agreement of the parties. To the extent the parties provide that costs, expenses or fees shall be allocated to the prevailing party, the Tribunal shall allocate all such costs, expenses and fees they determine to have been properly incurred against the losing par (or in appropriate proportion based on the outcome of all the issues considered), or as agreed by the parties. The Tribunal shall allocate such costs, expenses and fees by exercising discretion according to the standards and practices followed in the U.S. federal courts on such issues. In the event the parties fail to specify how the costs, expenses and/or fees shall be allocated, each party shall bear its own costs, expenses and fees.

**Rule 15.07 – Summary of Fees & Expenses**

(a) Filing Fee. FedArb will charge a filing fee in accordance with its Arbitration Price Schedule. The filing fee is nonrefundable after an Arbitrator or Mediator is appointe unless otherwise stated in the FedArb contract.
(b) Administration Fee. FedArb will charge an administration fee in accordance with

its Arbitration Price Schedule, unless otherwise stated in the FedArb contract.

(c) Arbitrator Fees & Expenses. The fees of Participating Arbitrators shall be based upon the hourly rate set by each Participating Arbitrator. Fee information will be available to the parties before the arbitrators are selected for possible appointment The parties will be deemed to have accepted responsibility for the fees of the Participating Arbitrators appointed to serve in their matters, at the rates specified by them, unless some other rate is agreed.

(d) Collection of Fees and Expenses. FedArb may, in the event any party fails to pay any fees and/or expenses in a timely manner, suspend proceedings in the matter involved until all amounts due have been paid or adequately secured. If any party fails to pay its share of charges due, another party may do so. In such cases, the Award shall, in FedArb's sole judgment, be modified to give full credit for the amoun paid on behalf of the defaulting party, with interest from the time of payment, calculated at LIBOR (or equivalent) plus 3%, compounded on a monthly basis. Additional charges for late payments may be assessed as per contract agreements with FedArb.

(e) Deposits. The parties shall at the time of filing a case or within 30 days of the filing of an Answer, submit to FedArb an initial deposit calculated to cover the costs fees, and administrative expenses expected to be incurred in the course of the arbitration or mediation, or such amount as FedArb and the parties agree is sufficie for an initial deposit. Parties pursuing an appeal within the FedArb system will be required to make deposits to cover the costs of the appeal.

(back to top)

**Rule 16: Expedited Disposition**

**Rule 16.01**

Parties to any arbitration may jointly seek to agree with FedArb on the terms of an expedited disposition in accordance with the rules outlined in Appendix C. In the event a matter is filed for processing under the auspices of FedArb, pursuant to the terms of an agreement by which the parties and FedArb arrange for an expedited disposition,

FedArb's obligation to perform will depend on the parties' compliance with the terms to which they agree. The fees for an expedited disposition shall be agreed in advance and paid in accordance with the agreement with FedArb.

**Rule 16.02**

The sole remedy for a failure of performance by a party or parties, or by FedArb, of an agreement for expedited disposition shall be as follows:
(a) If the failure of performance is by a party or parties, the remedy shall be payment of the costs of arbitration and other services improperly caused to be provided beyond those originally agreed.
(b) If the failure of performance is by FedArb, or its Tribunal, the remedy shall be the provision without charge of such additional services as are found to be required by the agreement in order to complete the arbitration.

(back to top)

**Rule 17: Fixed Price ArbitrationTM**

Parties seeking FedArb services may obtain agreement on both the cost and duration of the arbitration process by entering into an agreement for Fixed Price ArbitrationTM. This service is provided by FedArb on a case-by-case basis, or by contract for groups of similar cases.

**Rule 17.01 – Terms of Fixed Price ArbitrationTM Engagement**

Each Fixed Price ArbitrationTM Contract entered into between parties and FedArb will specify the payment to be made, the date upon which the Award is due, and the services to be provided, including: number of arbitrators; names of arbitrators where chosen; plac of arbitration and services or facilities to be provided by FedArb; pre-hearing activities covered by the agreement; number of hearing days required; post-hearing activities covered by the agreement, including form of Award and/or findings to be issued; and co of appeal if utilized.

**Rule 17.02 – Alterations**

Alterations sought by the parties in the schedule established in a Fixed Price ArbitrationTM contract, or in the services to be provided by FedArb pursuant to such

contract, will be permitted as requested for additional charges agreed upon between the parties and FedArb. Any alteration in schedule or change in services must be in writing t be considered enforceable in the event of any dispute.

**Rule 17.03 – Refunds**
Refunds on Fixed Price ArbitrationTM contracts that are not completed due to settleme or other change brought about by the parties will not be made, unless the parties and FedArb otherwise agree.

(back to top)

**Rule 18: Waiver**
A party knowing of a failure to comply with any provision of these Rules, or of any requirement of the arbitration agreement or any direction of the Tribunal, shall be deeme to have waived any objection thereto that it fails promptly to raise.

(back to top)

**II. RULES SPECIFIC TO SUBJECT MATTER**
**CONSTRUCTION ARBITRATION RULES**

**Rule C-1: Application of Construction Rules**
Unless otherwise agreed by the parties, this Rule supplements all other FedArb Rules, ar will apply to any dispute concerning the alleged violation of any agreement or duty relate to construction activities. Dispute resolution in construction takes many informal forms including on-site participation of neutral experts and highly informal, non-binding expert intervention. FedArb is prepared to assist parties in developing plans that include such activities. These rules, however, and FedArb's established processes are designed to satisfy the need for mediation and arbitration of relatively sizable and intractable controversies. In the case of any inconsistency between these Supplemental Rules and other FedArb Rules, these Supplemental Rules shall control.

**Rule C-2: Model Pre-Dispute Construction Arbitration Clause**

Parties wishing to agree in advance to arbitrate disputes that may arise between them under the FedArb Rules, including the Supplemental Rules on Construction Arbitration, with FedArb administration, may do so by including the following language in their writte agreements (or other language to the same effect):

“The parties to this contract agree that all disputes arising out of or in connection with, o in the application of, any of its provisions shall be fully and finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with it Rules for Arbitration, including its Supplemental Rules on Construction Arbitration.”

**Rule C-3: Model Post-Dispute Construction Arbitration Clause**

Parties wishing to agree to arbitrate any dispute that has already arisen between them under the FedArb Rules, including the Supplemental Rules on Construction Arbitration, and with FedArb administration, may do so in writing by using the following language (o other language to the same effect):

“The parties to this agreement acknowledge that the dispute described below has arisen between them and they agree to have the dispute, and all issues related to it, fully and finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with its Rules for Arbitration including its Supplemental Rules on Construction Arbitration.”

**Rule C-4: Qualified Construction Neutrals**

FedArb shall maintain a list of qualified Construction Arbitrators and Mediators, from among whom parties may choose to make appointments. In the event FedArb is require to prepare lists of, or to appoint, Arbitrators or Mediators in a construction arbitration, they will do so from such list.

**Rule C-5: Participation of Mediator in Arbitration Process**

Parties to a FedArb administered Construction Arbitration may choose to have a Mediator present at any time during the entire course of the arbitration process in order to identify and facilitate the resolution of any part or aspect of the dispute being arbitrated. Mediations during such arbitrations shall be kept separate from the arbitratio process and the tribunal shall take no part in such activities absent a waiver of any related rights by all parties, in writing, permitting any member of the tribunal to take part

without prejudice to being permitted to complete the arbitration. The tribunal shall continue its activities during a mediation undertaken while the arbitration is in progress, unless all the parties agree to a suspension of the arbitration process.

**Rule C-6: Consolidation of Disputes**

Parties and tribunals in Construction Arbitration should consolidate all disputes related the same construction project, or involving the same parties or identical issues, before the same tribunal, unless consolidation would fail to enhance efficiency or would significantly delay one or more such proceedings. Parties to a FedArb Construction Arbitration must file all their existing disputes related to the same construction project before the same tribunal absent a showing of good cause.

**Rule C-7: Powers of Tribunal**

Tribunals in FedArb Construction Arbitrations shall have the following powers, unless all the parties provide otherwise:

- To repeal or revise orders related to consolidation issues;
- To manage consolidated cases jointly on some issues and separately on others, a fairness and efficiency warrant;
- To appoint experts, including assessors, to conduct site visits, to order testing, and to take measures to preserve evidence, with notice to the parties, input from them, and full disclosure and participation by them in such activities; and
- To adjust the pace and order of specific claims in order to minimize disruption of ongoing construction activities.

**Rule C-8: Preliminary Relief**

In addition to the full range of remedial powers vested in FedArb tribunals under these Rules, Construction arbitrators shall have authority to grant preliminary relief, upon request and a proper showing and after affording a reasonable opportunity of parties to respond, in the form of payments due to contractors or subcontractors of amounts that the tribunal concludes are not materially in dispute. The tribunal shall retain power to adjust the amounts awarded as preliminary relief in its final Award.

**Rule C-9: Preliminary Notifications of Award Contents**

Tribunals in FedArb Construction Arbitration may issue preliminary indications of the contents of their intended Award in order to minimize any delays in work, and to provide the reasons for their conclusions thereafter, within the time the Final Award is due.

**Rule C-10: Specific Performance**

Tribunals in FedArb Construction Arbitration may order as part of their Award the completion of work, or other forms of specific performance, if they determine that monetary relief is an inadequate substitute. The Tribunal may continue in force to supervise the completion of such work only with the consent and approval of all parties that would be responsible for paying the costs of such supervision. The Tribunal may recommend a person or company to perform and/or supervise such work, on specified terms, and such recommendation and terms would become binding on the parties if the fail to agree on another candidate or terms for the work to be performed.

(back to top)

**EMPLOYMENT ARBITRATION RULES**

**Rule E-1: Application of Employment Rules**

Unless otherwise agreed by the parties, these Employment Arbitration Rules supplemen all other FedArb Rules, and will apply to any Qualifying Agreement to arbitrate a dispute concerning the alleged violation of any employment agreement or of any employment-related duty based on such an agreement or on a federal, state or local statute or legal requirement, other than disputes required by law to be resolved by other means, such as workmen's compensation, unemployment insurance, and securities industry claims. A Qualifying Agreement to arbitrate an employment dispute shall be one that meets the mandatory requirements of the FedArb Rules and of applicable federal and state laws; FedArb reserves the right to decline to administer agreements to arbitrate that FedArb concludes fail to meet any such requirement. In the case of any inconsistency between the Supplemental Employment Arbitration Rules and other FedArb Rules, the Supplemental Rules shall control.

**Rule E-2: Model Pre-Dispute Employment Arbitration Clause**

Parties wishing to agree in advance to arbitrate disputes that may arise between them under the FedArb Rules, including the Supplemental Rules on Employment Arbitration, with FedArb administration, may do so by including the following language in their writte agreements (or other language to the same effect):

“The parties to this contract agree that all disputes arising out of or in connection with, o in the application of, any of its provisions shall be fully and finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with it Rules for Arbitration, including its Supplemental Rules on Employment Arbitration.”

**Rule E-3: Model Post-Dispute Employment Arbitration Clause**

Parties wishing to agree to arbitrate any dispute that has already arisen between them under the FedArb Rules, including the Supplemental Rules on Employment Arbitration, and with FedArb administration may do so by using the following language in a writing (or other language to the same effect):

“The parties to this agreement acknowledge that the dispute described below has arisen between them and they agree to have the dispute, and all issues related to it, fully and finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with its Rules for Arbitration including its Supplemental Rules on Employment Arbitration.”

**Rule E-4: Qualified Employment Neutrals**

FedArb shall maintain a list of qualified Employment Arbitrators and Mediators, from among whom parties may choose to make appointments. In the event FedArb is require to prepare lists of, or to appoint, Arbitrators or Mediators in an Employment arbitration, they will do so from such list.

**Rule E-5: Fairness of Proceedings**

To constitute a Qualifying Agreement to arbitrate Employment disputes, the administration of which FedArb would be prepared to undertake, the agreement must no include any provision that renders the arbitration contemplated fundamentally unfair. Th parties should be guided in this regard by the following principles related to critical stages of arbitration proceedings: time limitations on claims should be no more restrictive than those applied in analogous federal and state proceedings; each party

should be free to choose any representative prepared to comply with the tribunal's rulings; the process for appointing Employment Arbitrators or Mediators should be designed to choose persons likely to make fair decisions based on the evidence and applicable rules; each party should be allowed sufficient discovery to permit a reasonab opportunity to establish any legally sufficient claim or defense; each party must be accorded a fair opportunity to present its evidence and legal arguments; and Awards must be equally enforceable against any participating party. Fee shifting requirements in such agreements must comply with applicable law.

**Rule E-6: Recommended Employment Arbitration Provisions**
Parties to agreements to arbitrate or mediate Employment disputes under FedArb administration are encouraged to adopt the following measures:

- the costs and fees incurred in such arbitrations and mediations should be borne b the employer to the extent possible, especially in matters initiated by the employer;
- the parties should minimize such costs in all appropriate ways, including by the us of single-arbitrator tribunals;
- the parties should consider permitting class actions and the consolidation of claims in appropriate cases to facilitate the efficient disposition of similar claims and defenses on the basis of agreements based on consent and that limit the costs of such processes, including the fees of class counsel;
- the place of arbitration and hearing should be convenient to both parties, and should normally be the place of the employee's work;
- the employee should have access to his/her personnel records kept in the ordinary course of business;
- both parties should normally be required to advance all their claims against each other in a single proceeding;
- each party should have access to all the documentary evidence any other party plans to introduce no less than thirty days before the hearing.

**Rule E-7: Form of Award**
Unless both parties agree otherwise, the form of Award in Employment Arbitrations shal be a reasoned decision, and shall be final and not subject to appeal other than as provided by law.

## PATENT ARBITRATION RULES

### Rule P-1: Application of Patent Rules

Unless otherwise agreed by the parties, these Rules supplement all other FedArb Rules, and will apply to any dispute concerning the alleged infringement or validity of a patent issued in the United States or by any foreign government. In the case of any inconsistency between this Supplemental Rule and other FedArb Rules, this Supplemental Rule shall control. Patent arbitrations include claims of patent interferenc and claims of innocent infringement of semiconductor chip products, as authorized by 3 U.S.C. 135 and 17 U.S.C. 907, or any other law of the United States.

### Rule P-2: Model Pre-Dispute Patent Arbitration Clause

Parties wishing to agree in advance to arbitrate disputes that may arise between them under the FedArb Rules, including the Supplemental Rules on Patent Arbitration, with FedArb administration, may do so by including the following language in their written agreements (or other language to the same effect):

"The parties to this contract agree that all disputes arising out of or in connection with, o in the application of, any of its provisions shall be fully and finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with it Rules for Arbitration, including its Supplemental Rules on Patent Arbitration."

### Rule P-3: Model Post-Dispute Patent Arbitration Clause

Parties wishing to agree to arbitrate any dispute that has already arisen between them under the FedArb Rules, including the Supplemental Rules on Patent Arbitration, and wit FedArb administration, may do so in writing by using the following language (or other language to the same effect):

"The parties to this agreement acknowledge that the dispute described below has arisen between them and they agree to have the dispute, and all issues related to it, fully and finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with its Rules for Arbitration including its Supplemental Rules on Patent Arbitration."

**Rule P-4: Qualified Patent Neutrals**

FedArb shall maintain a list of qualified Patent Arbitrators and Mediators, from among whom parties may choose to make appointments. In the event FedArb is required to prepare lists of, or to appoint, Arbitrators or Mediators in a patent arbitration, they will do so from such list.

**Rule P-5: Recommended Patent Arbitration Provisions**

The parties should consider adopting specific discovery requirements that reflect the well-established parameters of discovery needs and practices in patent arbitration, including: disclosure by the Claimant of all infringement claims, identifying the patents and claims at issue, and providing file histories, claim charts, and all documents on whic the claimant plans to rely; and disclosure by the Respondent of all patents and claims reflecting prior art claimed to render the claims asserted as anticipated, obvious, or invalid for any other reason, and all documents on which the Respondent plans to rely.

**Rule P-6: Flexibility of Tribunal**

Parties and Arbitrators in Patent Arbitrations may take into account the flexibility afforded them by the absence of juries. Among the measures that could be adopted are for example, utilizing the claim construction process as a method for educating the Tribunal to relevant technical details, and for clarifying the issues prior to permitting discovery beyond the initial disclosures required by the FRCP or by party agreement; treating the Tribunal's consideration of expert testimony as satisfying, without any separate hearing, the requirement that such testimony be scientifically credible to warrant consideration, and by agreeing that such consideration will be deemed to satisf the requirements of FAA, Section 10.

**Rule P-7: Independent Experts**

The Tribunal shall have authority, when it considers it necessary, to retain at the parties' expense an independent expert to assist in evaluating technical or scientific issues on which the parties' experts disagree. The independent expert's terms of reference shall b determined by the Tribunal, after notice to and input from the parties. The independent expert will report to the Tribunal in writing, and the parties will be afforded an opportunit

to introduce evidence or present argument on the contents of the expert's reports. The parties will be permitted to witness and to participate in any oral exchanges between the independent expert and the Tribunal.

**Rule P-8: Enforceability of Awards**
FedArb administered Awards in Patent Arbitrations must comply with applicable law, including 35 U.S.C. 294 and 35 C.F.R. 1.335. The Tribunal must consider all defenses provided for under 9 U.S.C. 282. In accordance with applicable law, such Awards (including patent validity and infringement determinations) shall be final and binding between the parties, but shall have no force or effect on any other person. The parties may agree that the Award will be modified if the patent that is the subject of the arbitration is subsequently determined to be invalid or unenforceable. Notice of any patent-related Award must be given to the Director of the Office of the Commissioner of Patents and Trademarks in accordance with 35 U.S.C. 294(d & e) before the Award may be enforced.

**Rule P-9: Interlocutory Appeal**
In light of the potential impact of the claim construction process on the scope and resul of the claims presented, the parties may agree to allow either party to take an interlocutory appeal to a FedArb Appellate Panel concerning the merits of any claim construction made, in addition to the appeal provided for in Rule 12.

(back to top)

**APPENDIX A: SAMPLE ARBITRATION CLAUSES**

Parties wishing to agree in advance to arbitrate disputes that may arise between them under the FedArb Rules with FedArb administration may do so by including the following language in their written agreements (or other language to the same effect):

**Model Short-Form Clause:**
"The parties to this contract agree that all disputes arising out of or in connection with this contract, or in the application of any of its provisions (including the arbitrability of th

dispute), shall be fully and finally resolved through confidential arbitration in [select venue] conducted in [English] under the administration of Federal Arbitration, Inc. and in accordance with its Rules for Arbitration."

**Model Long-Form Clause:**
"The parties to this contract agree that all disputes arising out of or in connection with this contract, or in the application of any of its provisions (including the arbitrability of th dispute and any interim relief), if not resolved by mediation, shall be fully and finally resolved by confidential arbitration proceedings by (select 1 or 3) arbitrator(s) who [are former Federal Court Judges – or other qualifications or expertise] under the administration and Rules of Federal Arbitration, Inc., in the [English] language, and which will take place in [select venue] and will be governed by the law of [select venue]; provided, however, that if the amount in controversy is less than $[1mm], then the disput shall be governed by Federal Arbitration's Rules for Expedited Arbitration."

Parties should consider adding language prescribing mediation step procedures; metho of arbitrator selection; duration of arbitration proceedings; time limits; confidentiality; appeal; and discovery, including the IBA Rules on the Taking of Evidence in International Arbitration.

**Parties wishing to agree to expedited arbitration may do so by using the following language:**

"The parties to this contract agree that all disputes arising out of any of its provisions shall be finally resolved through arbitration, under the administration of Federal Arbitration, Inc., in accordance with its Rules for Arbitration; provided, however, that if th amount in controversy is less than [$1mm], then the dispute shall be governed by Federa Arbitration's Rules for Expedited Arbitration."

**Parties wishing to agree to arbitrate any dispute that has arisen between them on an ad hoc basis under the FedArb Rules and with FedArb administration may do so by using language identical or similar to the following:**

"The parties to this agreement acknowledge that the dispute described below has arise between them, and that they agree to have the dispute, and all issues related to it, finally resolved through arbitration under the administration of Federal Arbitration, Inc. and in accordance with its Rules for Arbitration."

(back to top)

**APPENDIX B: GUIDELINES FOR INDEPENDENT FACTUAL RESEARCH BY ARBITRATOR VIA THE INTERNET**

When deciding whether to independently investigate facts on the Internet, the arbitrator should consider:

1. Is additional information necessary to decide the case? If so, this type of information generally must be provided by counsel or the parties, or must be subjec to proper judicial notice.
2. Is the purpose of the arbitrator's inquiry to corroborate facts, discredit facts, or fil a factual gap in the record? If the facts are adjudicative, it is improper for an arbitrator to do so.
3. Is the arbitrator seeking general or educational information that is useful to provide the arbitrator with a better understanding of a subject unrelated to a pendin or impending case? If so, the inquiry is appropriate. Arbitrators may use the Internet as they would other educational sources, like judicial seminars and books.
4. Is the arbitrator seeking background information about a party or about the subject matter of a pending or impending case? If so, the information may represen adjudicative facts or legislative facts, depending on the circumstances. The key inquiry here is whether the information to be gathered is of factual consequence in determining the case. If it is, it must be subject to testing through the adversary process.

(back to top)

**APPENDIX C: EXPEDITED ARBITRATION AGREEMENT (click to view rules for Expedited Arbitration)**

## III. FEDARB MEDIATION RULES (Effective June 8, 2020)

FedArb provides parties with the services of experienced mediators from its list of Participating Mediators, or as recommended to FedArb by the parties. Mediators will be selected by agreement of all the parties, or designated by FedArb with the consent of all the parties.

### Rule M-1: Good Faith Mediation

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference. Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, a appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

### Rule M-2: Confidentiality and Privacy

Unless otherwise agreed by the parties, the following procedures shall be adopted in order to ensure confidentiality of mediation proceedings:

(a) All mediation sessions shall be private, and shall be attended only by the Mediator, the parties, and authorized representatives of the parties.
(b) The mediation process and all negotiations, and statements and documents prepared for the purposes of the mediation, shall be confidential and covered by "without prejudice" or negotiation privilege.
(c) The mediation shall be confidential. Unless otherwise agreed among the parties or required by law, neither the Mediator nor the parties may disclose to any person any information regarding the mediation or any settlement terms, or the outcome o the mediation.
(d) All documents or other information produced for or arising in relation to the mediation will be privileged and will not be admissible in evidence or otherwise discoverable in any litigation or arbitration, except for any documents or other information which would in any event be admissible or discoverable in any such litigation or arbitration.
(e) No formal record or transcript shall be made of any mediation.

(f) The parties shall not rely upon, or introduce as evidence in any arbitral or judicial proceedings, any admissions, proposals or views expressed by the parties or by the Mediator during the course of the mediation.

**Rule M-3: Ethical Requirements for Mediation**

FedArb mediations will be conducted in accordance with the ethical rules for mediators promulgated by applicable law, ethical codes, and by FedArb, including requirements concerning disclosure and actual or apparent conflict.

**Rule M-4: Default Mediation Terms**

Unless otherwise agreed:

(a) mediations will be conducted by a single Mediator acceptable to the parties;
(b) each party will pay its own fees and expenses, and the parties will share equally the common expenses, including those of FedArb; and
(c) Mediators may consider and utilize appropriately all relevant information conveyed to them by the parties regardless of admissibility of such information as evidence.

**Rule M-5: Mediation Arising During Arbitration Proceedings**

(a) Parties to FedArb arbitration contracts may utilize mediation services at any poi in the arbitral process, and thereafter. The parties should inform the Tribunal that they plan simultaneously or intermittently to engage in mediation. Members of the Tribunal may not participate in any manner or to any extent in the mediation proces without a written request signed by all the parties, and approved by FedArb, seeking the member's participation, specifying the scope of such involvement, and confirming that such involvement will not prevent the member from completing the arbitration in accordance with the FedArb Rules and/or any agreement between the parties and FedArb.
(b) Parties who engage in mediation during the course of a FedArb arbitration shall inform the Tribunal conducting the arbitration of any partial or complete settlement reached by or among any of the parties. The Tribunal shall implement any such settlement in accordance with its terms, and shall continue conducting the

arbitration with regard to issues not settled by the parties. Parties who reach partial or complete settlements through mediation may obtain from the Tribunal a partial c final Award incorporating the terms of the settlement.

**Rule M-6: Mediation Fees**

Each party to a mediation will pay its own fees and expenses, and the parties will share equally the common expenses, including those of FedArb. Such fees, costs, and expenses for mediations shall be set forth in the agreement to mediate between FedArb and the parties. Costs shall include the filing fee, fees of Participating Mediators, the FedArb administrative fee, and reimbursable expenses incurred by Participating Mediators and FedArb, unless otherwise stated in the FedArb contract.

**Rule M-7: Mediation Deposits**

The parties shall, at the time of filing an agreement to mediate, submit to FedArb an initi deposit calculated to cover the costs, fees, and administrative expenses expected to be incurred in the course of the mediation, or such amount as FedArb and the parties agree is sufficient for an initial deposit. FedArb will charge, and the parties will pay, such additional amounts as FedArb concludes will be necessary to cover all such costs at an later stage in the proceeding. Additional charges for late payments may be assessed as per contract agreements with FedArb.

[v5-6-8-20]

(back to top)

Email Address | First Name | Last Name | SUBSCRIBE TO OUR NEWSLETTER

## About

Leadership
Case Management

## Rules

Arbitration
Expedited Arbitration
Emergency Relief

Mediation Rules
Framework for Mass Employment Arbitration Proceedings
Archived Rules

## Resources

Model Arbitration Clauses
Arbitration Submission Forms
Ethics Code

© Copyright 2020 Federal Arbitration | All Rights Reserved Terms and Conditions | Privacy | FAQ

**Disclaimer**

This website is provided for informational purposes only and does not constitute legal advice, legal opinion, or a solicitation for legal services. FedArb is an alternative dispute resolution ("ADR") organization that provides arbitration, mediation, case administration, and dispute resolution management services. **FedArb is not a law firm and does not provide legal representation, legal service or legal advice.** Parties utilizing FedArb services are encouraged to consult with independent legal counsel regarding their legal rights and obligations.

FedArb panelists serve in independent adjudicative, mediative, or evaluative capacities and are not acting as attorneys for any party. No attorney-client relationship is created through the use of this website or through participation in any FedArb administered proceeding. The materials on this website are intended only as general information about FedArb, its services, and its panelists, and do not constitute a complete description of all services, procedures, or terms. While FedArb endeavors to maintain accurate and current information, FedArb makes no representations or warranties regarding the completeness, accuracy, or reliability of the information contained on this website.