COOLEY LLP
Tiana Demas (*pro hac vice*)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598
Email: tdemas@cooley.com

Max A. Bernstein (305722)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222
Email: mbernstein@cooley.com

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION

This document relates to:

3:25-cv-03520
3:25-cv-10982
3:26-cv-01681
3:25-cv-10812
3:25-cv-10607
3:25-cv-07291

MDL No. 3166

Case No. 3:25-md-03166-RS

**DEFENDANT ROBLOX CORPORATION'S REPLY IN SUPPORT OF OMNIBUS MOTION TO COMPEL ARBITRATION AS TO BELLWETHER PLAINTIFFS**

Date: January 13, 2027
Time: 9:30 a.m.
Courtroom: 12, 19th Floor
Judge: Hon. Richard Seeborg

**[FILED CONCURRENTLY WITH DECLARATIONS OF ANNAPOORNA MANOHAR, TOBY TEEL, AND RONITA JIT IN SUPPORT]**

Judge Richard Seeborg

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 1
A. Plaintiffs Agreed to Arbitrate, Including After They Filed Suit ........ 1
1. Plaintiffs Had Conspicuous Notice of Roblox's Terms ........ 2
2. Plaintiffs and Their Responsible Adults Agreed to the Terms ........ 4
3. Plaintiffs Agreed to Arbitrate Post-Dispute ........ 6
B. Plaintiffs' Disaffirmance Arguments Fail ........ 8
1. Disaffirmance Is Delegated ........ 8
2. Plaintiffs' Continued Use Defeats Disaffirmance ........ 10
3. Plaintiffs Cannot Disaffirm Contracts They Agreed to as Adults or that Their Parents Agreed to on Their Behalf ........ 12
C. Plaintiffs' Unconscionability Arguments Fail ........ 13
1. Unconscionability Is Delegated ........ 14
2. FedArb Is FAA Arbitration and Is Not Unconscionable ........ 14
3. Plaintiffs' Post-Filing Agreements Are Not Unconscionable ........ 17
D. The EFAA Does Not Apply ........ 18
1. Plaintiffs' Claims Do Not "Relate to" a "Sexual Assault Dispute" ........ 19
2. Four Plaintiffs Agreed to Arbitrate Post-Dispute ........ 22
3. Two Plaintiffs Have Not Alleged Sexual Assault or Harassment ........ 22
III. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Juniper Networks, Inc.*,
115 Cal. App. 4th 638 (2004) .......... 18

*Alkutkar v. Bumble Inc.*,
2022 WL 4112360 (N.D. Cal. Sept. 8, 2022) .......... 6

*Anderson v. Amazon.com, Inc.*,
478 F. Supp. 3d 683 (M.D. Tenn. 2020) .......... 4

*Avery v. TEKsystems, Inc.*,
165 F.4th 1219 (9th Cir. 2026) .......... 9

*B.F. v. Amazon Inc.*,
858 F. App'x 218 (9th Cir. 2021) .......... 11

*Berg v. Traylor*,
148 Cal. App. 4th 809 (2007) .......... 13

*Berman v. Freedom Fin. Network*,
30 F.4th 849 (9th Cir. 2022) .......... 7

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 9

*Blair v. Superpedestrian HQ*,
2023 WL 12166122 (C.D. Cal. May 8, 2023) .......... 6

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 9

*Burke v. Smith*,
252 F.3d 1260 (11th Cir. 2001) .......... 7

*C.M.D. v. Facebook*,
2013 WL 1266291 (N.D Cal. Mar. 26, 2014) .......... 11

*Caremark, LLC v. Choctaw Nation*,
104 F.4th 81 (9th Cir. 2024) .......... 10

*Carolus v. Coinbase Global, Inc.*,
2025 WL 3033736 (N.D. Cal. Oct. 7, 2025) .......... 14

*Chevron USA Inc. v. Plaquemines Par., La.*,
608 U.S. 1 (2026) .......... 20

*Childress v. Moore*,
2026 WL 1618598 (M.D. Fla. June 5, 2026) .......... 21

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chui v. Chui*,
75 Cal. App. 5th 873 (2022)........................................ 8

*Coinbase v. Suski*,
602 U.S. 143 (2024)........................................ 9

*Combs v. Netflix, Inc.*,
180 F.4th 1201 (9th Cir. 2026)........................................ 18

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006)........................................ 11

*Cordero v. Coinbase, Inc.*,
2025 WL 2223495 (N.D. Cal. Aug. 5, 2025)........................................ 14

*Courtright v. Epic Games, Inc.*,
766 F. Supp. 3d 873 (W.D. Mo. 2025)........................................ 17

*Dacanay v. Mendoza*,
573 F.2d 1075 (9th Cir. 1978)........................................ 7, 8

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013)........................................ 20

*Dasher v. RBC Bank*,
82 F.3d 1017 (11th Cir. 2018)........................................ 7

*Daun v. Truax*,
56 Cal. 2d 647 (1961)........................................ 2

*Davis v. Experian Info. Sols., Inc.*,
2025 WL 2998157 (N.D. Cal. Oct. 24, 2025)........................................ 14

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997)........................................ 20

*De Ridder v. Roblox Corp.*,
2025 WL 3537260 (N.D. Cal. Oct. 8, 2025)........................................ 3

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015)........................................ 10, 11

*Delirium TV, LLC v. Dang*,
714 S.W.3d 640 (Tex. App. 2024)........................................ 21

*Ding v. Structure Therapeutics, Inc.*,
187 F.4th 1231 (9th Cir. 2026)........................................ 22

*Doe v. Int'l Student Exch.*,
2026 WL 2110889 (C.D. Ill. July 22, 2026)........................................ 21

**TABLE OF AUTHORITIES**
(continued)


**Page(s)**

*Doe v. Roblox*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) .......... 3

*Doyle v. Giuliucci*,
62 Cal. 2d 606 (1965) .......... 13

*Dubin v. United States*,
599 U.S. 110 (2023) .......... 20

*EEOC v. Luce, Forward, Hamilton & Scripps*,
345 F.3d 742 (9th Cir. 2003) .......... 8

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014) .......... 6, 7

*Eriksson v. Nunnik*,
233 Cal. App. 4th 708 (2015) .......... 13

*In re Estate of Byrd*,
227 Ill. App. 3d 632 (1992) .......... 8

*Farnham v. Grindr, LLC*,
2025 WL 3062698 (M.D. Fla. Nov. 3, 2025) .......... 20, 21

*French v. Roblox Corp.*,
841 F. Supp. 3d 55 (E.D. Pa. 2026) .......... 2, 12

*G.G. v. Roblox Corp.*,
2026 WL 1615999 (N.D. Cal. June 5, 2026) .......... 1, 2, 3

*Garcia v. Roblox Corp.*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) .......... 1, 2, 3

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 5

*Hanson v. La Flamme*,
761 F. App'x 685 (9th Cir. 2019) .......... 8

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) .......... 15, 16

*Holland-Thielen v. SpaceX*,
2026 WL 3403297 (9th Cir. Nov. 10, 2026) .......... 19

*J.D.B. v. North Carolina*,
564 U.S. 261 (2011) .......... 2

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 679033 (E.D. Ark. Mar. 3, 2025) .......... 6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Johnson v. Wells Fargo Home Mortg. Ins.*,
635 F.3d 401 (9th Cir. 2011) .......... 7

*Jones v. Starz Ent. LLC.*,
129 F.4th 1176 (9th Cir. 2025) .......... 14, 16

*Juarez v. T-Mobile USA Inc.*,
2024 WL 5424366 (C.D. Cal. Aug. 23, 2024) .......... 10, 14

*Kater v. Churchill Downs*,
423 F. Supp. 3d 1055 (W.D. Was. 2019) .......... 18

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 3, 4

*Kiefer v. Fred Howe Motors, Inc.*,
158 N.W.2d 288 (Wis. 1968) .......... 13

*Kindred Nursing Ctrs. L.P. v. Clark*,
581 U.S. 246 (2017) .......... 6

*M.D. v. Verizon Commc'ns Inc.*,
2025 WL 2712831 (E.D.N.C. Sept. 23, 2025) .......... 20

*Marino v. Aven Fin., Inc.*,
2026 WL 2280618 (9th Cir. Aug. 7, 2026) .......... 10, 14

*Mellouli v. Lynch*,
575 U.S. 798 (2015) .......... 20

*Mercado v. Roblox Corp.*,
2026 WL 2910175 (E.D. Pa. Sept. 25, 2026) .......... 3, 11

*Microsoft Corp. v. Comm'r*,
311 F.3d 1178 (9th Cir. 2002) .......... 23

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 22

*Morrison v. Yippee Ent. Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) .......... 4

*NGO v. PMGI Fin. LLC*,
2018 WL 6618316 (N.D. Cal. Dec. 18, 2018) .......... 2

*Nicosia v. Amazon.com, Inc.*,
815 F. App'x 612 (2d Cir. 2020) .......... 6

*Oberstein v. Live Nation Ent. Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 4

## TABLE OF AUTHORITIES
(continued)


**Page(s)**

*Oestreicher v. Equifax Info. Servs., LLC*,
2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024) .......... 6, 17

*Off the Wall & Gameroom LLC v. Gabbai*,
301 So. 3d 281 (Fla. 4th DCA 2020) .......... 13

*Orellana v. Roblox Corp.*,
769 F. Supp. 3d 1273 (M.D. Fla. 2025) .......... 17

*Polen v. API Group Life Safety USA, LLC*,
2025 WL 3251349 (D. Or. Nov. 21, 2025) .......... 21

*Pover v. Capital Group Cos., Inc.*,
183 F.4th 1132 (9th Cir. 2026) .......... 22

*Quality Motors v. Hays*,
225 S.W. 2d 326 (Ark. 1949) .......... 11

*R.A. v. Epic Games*,
2019 WL 6792801 (C.D. Cal. July 30, 2019) .......... 11

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 6, 8, 14

*Robidoux v. Rosengren*,
638 F.3d 1177 (9th Cir. 2011) .......... 8

*Russell v. Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014) .......... 7

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
592 U.S. 80 (2020) .......... 20

*Salgado v. Carrows Rest., Inc.*,
2021 WL 2199436 (Cal. Ct. App. June 1, 2021) .......... 18

*Saucedo v. Experian Info. Sols., Inc.*,
2023 WL 4708015 (E.D. Cal. July 24, 2023) .......... 6

*SJ Med. Ctr., LLC v. Anozie*,
694 S.W.3d 915 (Tex. App. 2024) .......... 19

*Slaviero v. Baby List, Inc.*,
2026 WL 1097746 (N.D. Cal. Apr. 22, 2026) .......... 4, 17

*Smith v. Adventure Air Sports Kennesaw, LLC*,
849 S.E.2d 738 (Ga. Ct. App. 2020) .......... 13

*State Dep't of Pub. Safety v. Doe*,
425 P.3d 115 (Alaska 2018) .......... 24

## TABLE OF AUTHORITIES
(continued)


**Page(s)**

*Tanner v. Roblox Corp.*,
2026 WL 3539997 (E.D. Pa. Nov. 17, 2026) ........ 12

*Tanner v. Tax Servs. of Am., Inc.*,
2025 WL 1580737 (N.D. Cal. June 4, 2025) ........ 10

*Tomlin v. Roblox Corp.*,
2026 WL 1412606 (E.D. Pa. May 20, 2026) ........ 3, 5, 12

*United States v. Galecki*,
89 F.4th 713 (9th Cir. 2023) ........ 23

*United States v. Taylor*,
640 F.3d 255 (7th Cir. 2011) ........ 24

*Valve Corp. v. Abbruzzese*,
2026 WL 1481630 (W.D. Wash. May 27, 2026) ........ 18

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024) ........ 2

*Whittaker v. Roblox Corp.*,
2026 WL 2640984 (D. Colo. Sept. 2, 2026) ........ 12

*Wilcox v. Valero Ref. Co.*,
256 F. Supp. 2d 687 (S.D. Tex. 2003) ........ 18

*Williams v. Moon Active Ltd.*,
811 F. Supp. 3d 1079 (N.D. Cal. 2025) ........ 2

*Wray v. Humble Bundle, Inc.*,
824 F. Supp. 3d 868 (N.D. Cal. 2025) ........ 16

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563 (S.D.N.Y. 2023) ........ 24

*Zoller v. GCA Advisors, LLC*,
993 F.3d 1198 (9th Cir. 2021) ........ 22

**Statutes**

9 U.S.C.
§ 401 ........ 23, 24
§ 402 ........ 19, 22

18 U.S.C.
§ 2246 ........ 23, 24
§ 2256 ........ 23, 24
§ 2422 ........ 24
§ 2427 ........ 24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Family Code § 6710 .......... 10

**Legislative Materials**

168 Cong. Rec. H986 (daily ed. Feb. 7, 2022).......... 20

H.R. Rep. No. 117-234 .......... 20

S. 5720, 119th Cong. (2026) .......... 19

S. 5723, 119th Cong. (2026) .......... 19, 23, 24

**Other Authorities**

FedArb R.
7.......... 15
12.01.......... 15, 16

Fed. R. Civ. P.
23.......... 9, 18

## I. INTRODUCTION

There is no dispute that the misconduct by third-party perpetrators described in Plaintiffs' Complaints is deeply disturbing. Although Roblox cannot be held liable for the actions of third-party users, this Motion[1] is not about the merits of Plaintiffs' claims. It is about one thing only: where Plaintiffs' claims can be litigated. That forum is arbitration.

Plaintiffs do not deny agreeing to the Terms to create their Roblox accounts, continue using Roblox, buy Robux, and redeem gift cards. They do not meaningfully dispute Roblox's evidence that Plaintiffs and their parents collectively clicked agreement to those Terms hundreds of times, including during this litigation. In the past year alone, courts have repeatedly held that minors who assented in these same ways were bound by Roblox's Terms and have compelled their claims to arbitration. *See, e.g.*, *Garcia v. Roblox Corp.*, 2026 WL 413636, at *4 (C.D. Cal. Feb. 11, 2026); *G.G. v. Roblox Corp.*, 2026 WL 1615999, at *1 (N.D. Cal. June 5, 2026). These cases applied established Ninth Circuit principles on online contract formation irrespective of the user's age.

Plaintiffs purport to disaffirm these contracts, but that issue is delegated to the arbitrator. Regardless, Plaintiff A/A.J. agreed to the Terms as an adult, and Plaintiffs C/J.H., D/D.H., and H/M.D. cannot disaffirm because they used Roblox after filing their Complaints.

Nor does the EFAA bar arbitration here. The EFAA does not apply to tort suits against online communication services based on allegations that their *users* engaged in sexual assault or harassment because such cases do not "relate to" a sexual assault "dispute" with the platform. It does not apply to Plaintiffs A/A.J.'s, C/J.H.'s, D/D.H.'s, and H/M.D.'s post-dispute agreements to arbitrate. And it certainly does not apply to Plaintiff C/J.H.'s and G/A.S.'s cases, where there is no allegation of "sexual assault" or "harassment" within the meaning of the EFAA.

## II. ARGUMENT

### A. Plaintiffs Agreed to Arbitrate, Including After They Filed Suit

Plaintiffs and their parents clicked "I Agree" to the Terms hundreds of times. *See* Mot. 12–17. Some Plaintiffs' parents say they "never agreed" to the Terms, but that is just a legal

[1] Capitalized terms have the same meaning as in the Motion. *See* ECF No. 452.

conclusion.[2] In reality, Plaintiffs do not contest that they and their parents clicked through the assent screens described in the Motion. *See NGO v. PMGI Fin. LLC*, 2018 WL 6618316, at *5 (N.D. Cal. Dec. 18, 2018) (compelling arbitration where declaration never denied clicking agreement to terms). Nor could they: Plaintiffs could not have created accounts, purchased Robux, redeemed gift cards, or continued playing (including after filing their Complaints) without clicking through these flows and assenting to the Terms. None of Plaintiffs' contrary arguments is persuasive.

### 1. Plaintiffs Had Conspicuous Notice of Roblox's Terms

Every Roblox screen clearly notified users that they were agreeing to the Terms, as multiple courts have held. *See Garcia*, 2026 WL 413636, at *2, *4–5 (Registration, Redemption, and Purchase Pages); *G.G.*, 2026 WL 1615999, at *1 (Blocker Cards); *French v. Roblox Corp.*, 841 F. Supp. 3d 55, 63, 68 (E.D. Pa. 2026) (Registration and Purchase Pages and Blocker Cards). These cases applied the Ninth Circuit's well-settled standard—whether a "reasonably prudent user" would have been put on inquiry notice of the Terms—to find notice and assent.

***No Separate Test for Minors:*** Plaintiffs say there should be a new (undefined) test of "better notice" for minors. Opp. 62–63. To start, this invented test cannot apply to Plaintiffs' parents or to A/A.J., who agreed to the Terms as an adult. Regardless, courts have rejected this exact argument, even as to minors. In *G.G.*, the court declined to apply a "reasonably prudent child" standard in finding that Roblox's Blocker Cards gave conspicuous notice because such a test would "contradict the [California] legislature's command" to treat minors "in the same manner" as adults for contract formation. 2026 WL 1615999, at *1; *see also Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1083 (N.D. Cal. 2025) (same standard for minors and adults); *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1088–89 (2024) (sophistication level irrelevant to notice and assent; test is "reasonably prudent user"). Plaintiffs' home states likewise recognize that minors can contract in the same manner as adults, subject only to disaffirmance. *See* Mot. 22 nn.15 & 16.

Plaintiffs' authorities miss the mark. *J.D.B. v. North Carolina*, 564 U.S. 261, 271–77 (2011), discusses age in the context of a custodial interrogation. *Daun v. Truax*, 56 Cal. 2d 647,

[2] M.O. Decl. ¶ 3, Dkt. No. 479-5; T.T. Decl. ¶ 3, Dkt. No. 479-7; L.S. Decl. ¶ 3, Dkt. No. 479-11; C.D. Decl. ¶ 3, Dkt. No. 479-13.

654–56 (1961), concerns a child's contributory negligence. Neither considers online assent. *De Ridder v. Roblox Corp.*, 2025 WL 3537260, at *1 (N.D. Cal. Oct. 8, 2025), did not involve any Roblox notice-and-assent process; the court held only that a co-defendant's sign-in page did not give sufficient notice because it provided a link to the site's terms beneath a large "Sign In" button without explaining that clicking the button constituted assent. And *Doe v. Roblox*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022), conflicts with subsequent Ninth Circuit authority applying the "reasonably prudent internet user" standard to a case involving adult and minor plaintiffs, without suggesting there should be a different test for minors. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024). The court in *Garcia* relied on *Keebaugh* to find that the same Roblox Registration Pages at issue here *could* bind minors. 2026 WL 413636, at *4; *see also G.G.*, 2026 WL 1615999 at *1 (disagreeing with *Doe v. Roblox*'s application of California law).

Plaintiffs' specific challenges to Roblox's notice-and-assent mechanisms fare no better.

***Blocker Cards:*** The Blocker Cards are pop-up screens that inform users that the Terms are being updated and that by clicking "I Agree," the user accepts the Terms. Mot. 8. Plaintiffs argue the pop-ups are "visual[ly] clutter[ed]," Opp 63 n.43, but the cards reveal the opposite. *See* Mot. 8 (depicting Blocker Card). And courts examining the same Blocker Cards have found they provide clear notice of the Terms, including to minor users. *See G.G.*, 2026 WL 1615999, at *1; *Mercado v. Roblox Corp.*, 2026 WL 2910175, at *11 (E.D. Pa. Sept. 25, 2026); *Tomlin v. Roblox Corp.*, 2026 WL 1412606, at *8 (E.D. Pa. May 20, 2026). Plaintiffs cite no authority holding otherwise. Because each Plaintiff clicked "I Agree" on a Blocker Card, the Court can find formation on this basis alone. *See* Supplemental Declaration of R. Jit ("Supp. Jit Decl."), Ex. 2 (Blocker Card assent for Plaintiff D/D.H.); *see* Mot. 12–17 (Blocker Card assent for other Plaintiffs).

***Registration Pages:*** Plaintiffs also agreed to the Terms at account creation. Plaintiffs do not deny that the Registration Pages clearly stated that clicking "Sign Up" meant assent to the Terms, which were hyperlinked directly below the "Sign Up" button in a contrasting color. *See* Mot. 5–6. Plaintiffs' allegations about "large, bright buttons" and "colorful graphics," Opp. 63, mischaracterize the pages. Any graphics appear in the periphery, and the notice explaining that the user would be bound by the Terms is prominently displayed, with no design elements between the

text and the button. *See* Jit Decl., Exs. 7–14, Dkt. Nos. 454–454-7. Courts considering these ***exact*** pages have held they provide sufficient notice to bind a minor to the Terms. *See, e.g.*, *Garcia*, 2026 WL 413636, at *4. And the Ninth Circuit has approved similar sign-up screens with more distracting graphics, smaller and less prominent text, and a colorful action button. *See Keebaugh*, 100 F.4th at 1020–21; *Oberstein v. Live Nation Ent. Inc.*, 60 F.4th 505, 516–17 (9th Cir. 2023); *cf. Slaviero v. Baby List, Inc.*, 2026 WL 1097746, at *4 (N.D. Cal. Apr. 22, 2026) (notice conspicuous where assent language was in natural visual path near "Sign Up" button).

***Gift Card Redemption:*** Plaintiffs complain that the "Redeem" button is large and contains an "ad." Opp. 63–64. But courts have found that Roblox's Gift Card Redemption Page provides notice and secures assent, with these features. *Garcia*, 2026 WL 413636, at *2, *5. In any event, the button is no larger than the one in *Keebaugh*, 100 F.4th at 1020–21, and the purported "ad" is in the bottom corner of the screen, away from the user's "natural visual path," *Morrison v. Yippee Ent. Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025).

***Robux Purchases:*** Plaintiffs note the "Buy Robux" process requires the user to agree to both Roblox's and its payment processor's terms. Opp. 65. But there is no rule prohibiting an online service from securing assent to its own terms and another entity's terms. *See, e.g., Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 689, 697–98 (M.D. Tenn. 2020) (compelling arbitration under eBay's terms where notice above the "confirm and pay" button informed the user that he was agreeing to eBay and PayPal's terms.) If the notice states that by taking a specific action, the user is agreeing to both terms—as the page here did—courts enforce these agreements.

***Continued Use:*** Plaintiffs say their continued use cannot constitute assent because they had no notice of the Terms. Opp. 65–66. But Plaintiffs do not dispute that the Terms disclose that continued use is assent, and Plaintiffs' notice arguments fail for the reasons explained above.

### 2. Plaintiffs and Their Responsible Adults Agreed to the Terms

Plaintiffs proffer the declaration of a "cybersecurity expert," Justin Seitz, who speculates that the account data for C/J.H. may be unreliable. His assertions are flawed.

*First*, Roblox provided proof that Plaintiff C/J.H. accepted Roblox's Terms, including through Blocker Cards, Jit Decl., Ex. 3, Dkt. No. 453-2, which Roblox has used for Terms updates

since August 2023, *id.* ¶¶ 28–30, Dkt. No. 452-1. To accept a Blocker Card, one must be logged into a Roblox account, so every Plaintiff's account that accepted updated Terms after August 2023 clicked a Blocker Card. *Id.* ¶¶ 31, 38. It is irrelevant that Roblox does not list IP addresses in its Terms acceptance records, as the IP, login, and other records are consistent with Blocker Card acceptances. *See id.*, Ex. 3, Dkt. No. 453-2; *id.*, Exs. 59–61, Dkt. Nos. 459-11–459-13.

*Second*, the 0:00 timestamps in 2019 in certain login IP records do not affect data reliability. The data source for these IP records ***did not record timestamps*** until April 2019, so the timestamp for any login IP before then is 0:00, reflecting a null value, not data corruption. *See* Declaration of A. Manohar ("Manohar Decl.") ¶ 5. Regardless, neither side relies on these pre-2020 entries.[3]

*Third*, Seitz raises supposed inconsistencies in the predicted city/state of IP addresses in different productions. But the IP addresses and the dates and times of access are consistent in the first and second productions (unless there was new activity appearing only in the later production). The predicted city/state association comes from downloadable third-party databases that are refreshed weekly, and the city/state overlay is made when the IP address files are ***pulled***. Declaration of T. Teel ("Teel Decl.") ¶¶ 5–6. Because IP addresses are not static and can be reassigned, the third-party databases may predict a different city for a given IP address over time. *Id.* ¶ 6. In other words, if the same IP address data is pulled on different dates, some predicted city/state locations would be expected to change between pulls. *Id.* This is not an "anomaly" at all.[4]

*Fourth*, Plaintiffs argue that Roblox has not proven that Plaintiff C/J.H. was behind the keyboard when Blocker Cards were accepted. Opp. 36. But Plaintiff C/J.H. claimed these accounts and never denies clicking "I Agree." J.H. Decl., Dkt. No. 479-4. Courts regularly reject attempts to avoid arbitration in this way. *See, e.g.*, *Tomlin*, 2026 WL 1412606, at *8 (Roblox account records

---

[3] Seitz posits that these pre-April 2019 timestamps reflect the actual time of the IP login event. Wrong. The 0:00 timestamp means the account had a login event at some point on January 6, 2019, consistent with the account being created on that date. Manohar Decl. ¶ 5.

[4] The Seitz Declaration is also inadmissible. Seitz notes certain data features, admits he does not have documentation or other bases to understand them, and then baselessly speculates that the data may be compromised or unreliable. Seitz Decl. ¶¶ 27–33, Dkt. No. 479-14. These conclusions are guesswork based on an incomplete and inaccurate understanding of the data. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (affirming exclusion where there was "too great an analytical gap" between data and the expert's opinion). His opinions are also irrelevant for the reasons above.

sufficient to prove that plaintiff accepted terms; rejecting speculation that someone else was "on the other side of the screen"); *Alkutkar v. Bumble Inc.*, 2022 WL 4112360, at *7 (N.D. Cal. Sept. 8, 2022) (no case requires defendants to "describe the security measures taken to ensure that [the plaintiff] rather than somebody else, clicked to accept the Arbitration Agreement"); *Blair v. Superpedestrian HQ*, 2023 WL 12166122, at *5 (C.D. Cal. May 8, 2023) (similar).

### 3. Plaintiffs Agreed to Arbitrate Post-Dispute

Plaintiffs A/A.J., C/J.H., D/D.H., and H/M.D. also agreed to arbitrate after they filed suit by creating new Roblox accounts, agreeing to Blocker Cards, purchasing Robux, and redeeming gift cards. *See* Mot. 12–17. Plaintiffs' attacks on these post-filing agreements fail.

***Representation by Counsel:*** Being represented by counsel does not prevent a party from agreeing to arbitration during litigation. To the contrary, courts routinely enforce online terms that parties agree to mid-litigation. *See, e.g., Johnson v. Activision Blizzard, Inc.*, 2025 WL 679033, at *1 (E.D. Ark. Mar. 3, 2025) (compelling arbitration where the plaintiff "again agreed to the terms … to continue playing" after suing); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1173 (W.D. Wash. 2014) (same); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015 (E.D. Cal. July 24, 2023) (same); *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612 (2d Cir. 2020) (same). In these cases, the plaintiffs had counsel, but that was immaterial because "[t]he timing of the arbitration agreement mid-litigation does not negate a valid contract." *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902, at *5 (E.D.N.Y. Mar. 20, 2024). Any other rule would be inconsistent with the FAA, which requires that arbitration agreements be placed "on an equal footing with other contracts." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see Kindred Nursing Ctrs. L.P. v. Clark*, 581 U.S. 246, 248–52 (2017) (invalidating rule requiring express authorization only for arbitration agreement).

Roblox did not target Plaintiffs specifically to obtain their post-dispute assent to arbitration. Roblox's periodic Terms updates are sent to each of the millions of users who continue using Roblox's services. Jit Decl. ¶¶ 28–31, Dkt. 452-1. The arbitration agreement has also remained the

same throughout the litigation, and Plaintiffs affirmatively agreed to the Terms during litigation.[5] Plaintiffs' cases lack these features. Opp. 30. Each involved arbitration agreements entered for the first time during litigation. In addition, the plaintiffs in *Dasher v. RBC Bank*, unlike here, took no affirmative steps to assent to the new agreement. 82 F.3d 1017, 1021 (11th Cir. 2018). And *Russell v. Citigroup, Inc.* found that the new arbitration agreement's text did not reach pending claims. 748 F.3d 677, 680–81 (6th Cir. 2014). But the agreement here applies to "*any* dispute, claim, or controversy" the user "may have with Roblox." Jit Decl. ¶ 56, Dkt. 452-1 (emphasis added). That language is "not limited to prospective disputes." *Ekin*, 84 F. Supp. 3d at 1178 (citation omitted).

Plaintiffs' policy arguments are equally unfounded. Opp. 26–27. Roblox moved to compel before any discovery or merits briefing commenced, not on the eve of trial. Regardless, there is no policy against agreeing to arbitrate well into litigation. *See, e.g.*, *JT Cleary, Inc. v. Narragansett Elec. Co.*, No. 22-cv-4533 (S.D.N.Y. Mar. 12, 2025), Dkt. No. 120 (arbitration agreement entered three years after complaint was filed, after expert reports, depositions, and motions); *Johnson v. Wells Fargo Home Mortg. Ins.*, 635 F.3d 401, 406 (9th Cir. 2011) (weeks before trial).

***Guardian Ad Litem (GAL) Appointment:*** Plaintiffs say the Court should "protect" minors from entering post-dispute arbitration agreements, Opp. 27, but that would flout the general rule permitting minors to contract, Mot. 22.[6] Plaintiffs identify no statute, rule, or authoritysuggesting that appointment of a GAL changes that default rule. Federal Rule of Civil Procedure 17(c) states only that a minor can sue through a guardian and the Court can appoint one to protect the minor's interests as a party to litigation; it "gives no general powers over [a minor's] person or property." *Burke v. Smith*, 252 F.3d 1260, 1266 (11th Cir. 2001) (citation modified).

Plaintiffs' suggestion that a guardian should have approval power over a plaintiff's contracts is inconsistent with the guardian's "essentially ministerial" role to assist with "procedural steps of litigation." *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 & n.8 (9th Cir. 1978). A guardian cannot

---

[5] Plaintiffs claim that they did not form post-dispute agreements because Roblox did not revise its arbitration clause after they filed suit. Opp. 28. Their reasoning is flawed. An online contract is formed ***whenever*** a user who is on notice of the terms "unambiguously manifests his or her assent." *Berman v. Freedom Fin. Network*, 30 F.4th 849, 856 (9th Cir. 2022).

[6] Plaintiffs' argument is also inapplicable to A/A.J., an adult, and D/D.H. and H/M.D., both of whom entered post-dispute agreements before the Court's March 30, 2026 GAL Order.

make admissions, stipulations, or waive substantive rights—only the plaintiff can. *Id.* The guardian is not a party to the litigation. *Hanson v. La Flamme*, 761 F. App'x 685, 688 (9th Cir. 2019). And if a guardian cannot displace the minor's right to contract with counsel, the guardian cannot interfere with any of a minor's contractual rights. *See In re Estate of Byrd*, 227 Ill. App. 3d 632, 637–38 (1992) (appointment of guardian "did not render any subsequent contract of employment" with attorney "unenforceable," as guardian was not a "plenary guardian").

Plaintiffs miss the mark in equating their voluntary agreements to arbitrate with "rights-destroying" settlement agreements. Opp. 27. Settlements require court approval because they completely dispose of minors' claims. *See Robidoux v. Rosengren*, 638 F.3d 1177 (9th Cir. 2011); *Chui v. Chui*, 75 Cal. App. 5th 873 (2022); *Dacanay*, 573 F.2d at 1075. Arbitration does not dispose of claims; it changes the forum and procedural rules. But a plaintiff's "substantive rights … are not in any way diminished" and "may be as fully vindicated" in arbitration, as in court. *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 753 (9th Cir. 2003).

### B. Plaintiffs' Disaffirmance Arguments Fail

Roblox's Terms delegate to the arbitrator all questions of arbitrability, including disaffirmance, Mot. 31–32, so the Court should let the arbitrator decide these questions. Regardless, Plaintiffs' continued use and their parents' assent defeat their disaffirmance arguments.

#### 1. Disaffirmance Is Delegated

Plaintiffs concede that disaffirmance targets contract enforceability, not formation, and that the Terms delegate enforceability questions to the arbitrator. Opp. 40. Yet Plaintiffs ask this Court to decide disaffirmance on the ground that Plaintiffs have disaffirmed the Terms, their arbitration agreement, and the delegation clause. Opp. 39. None of Plaintiffs' cited cases supports this result.

***Rent-A-Center and Suski:*** There are two types of challenges in the context of a delegation clause: one "challenges the contract as a whole," including on grounds that "affect[] the entire agreement"; the other "challenges specifically the validity" of the delegation clause. *Rent-A-Ctr.*, 561 U.S. at 70. "[U]nless [the plaintiff] challenge[s] the delegation provision specifically," a court "must treat it as valid …, leaving any challenge to the validity of the Agreement as a whole for the

arbitrator." *Id.* at 72. Thus, courts have rejected attempts to avoid delegation clauses based on infancy defenses, which necessarily challenge the validity of the whole contract. *See* Mot. 31–32.

Plaintiffs rely on *Coinbase v. Suski*, 602 U.S. 143 (2024), but that decision did not overrule this longstanding precedent. *Suski* addressed who decides "which contract governs" when "parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts." *Id.* at 194. The Court held this question was for the court, not the arbitrator. *See id.* That result makes sense. When one contract contains a delegation clause and the other does not, deciding which one controls is like deciding if a contract is formed in the first place: it is a threshold question that must be answered to decide if there is a delegation clause to apply. In addressing that narrow question, the Court did not address infancy defenses or purport to overrule or limit *Rent-A-Center*.

***Avery and Bielski*:** *Avery v. TEKsystems, Inc.*, 165 F.4th 1219 (9th Cir. 2026) and *Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) do not suggest otherwise. *Avery* considered only whether a court can cancel an arbitration agreement under its Rule 23 authority to control class actions—which is indisputably not at issue here. 165 F.4th at 1230. And in *Bielski*, the Ninth Circuit ***confirmed*** that a party resisting arbitration must "make specific arguments attacking the [delegation] provision" and must "specif[y] why each reason renders the [delegation] provision"—in particular—"unenforceable." 87 F.4th at 1009–10. The court made clear that it was not disturbing prior precedent that required a specific challenge to a delegation clause. *Id.* at 1010 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015) (enforcing delegation where plaintiff "failed to make any arguments specific to the delegation provision")). And while the *Bielski* majority may have thought otherwise, the concurrence noted that the holding was consistent, not at odds, with the Sixth Circuit's decision in *In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873 (6th Cir. 2021), which held that disaffirmance is delegable because it challenges the entire contract. *Bielski*, 87 F.4th at 1016 (Miller, J., concurring in part); *see* Mot. 31–32.

These decisions do not dismantle the *Rent-A-Center* framework. *Contra* Opp. 40–43. On the contrary, district courts and the Ninth Circuit have continued to require a challenge specific to a delegation clause to avoid delegation—finding challenges to the whole contract insufficient. *See,*

*e.g.*, *Marino v. Aven Fin., Inc.*, 2026 WL 2280618, at *2 (9th Cir. Aug. 7, 2026) (enforcing delegation clause because plaintiff's argument did not "impugn the validity of the delegation clause specifically" (citation omitted)); *Juarez v. T-Mobile USA Inc.*, 2024 WL 5424366, at *7 (C.D. Cal. Aug. 23, 2024) (similar). And the Ninth Circuit's subsequent decision in *Caremark, LLC v. Choctaw Nation* makes clear that an argument that an entire arbitration agreement is unenforceable—exactly what Plaintiffs' disaffirmance defense asserts—is insufficient to challenge the delegation clause specifically. 104 F.4th 81, 87 (9th Cir. 2024).

That Plaintiffs claim to disaffirm both the Terms *and* the delegation clause does not change the outcome. A minor plaintiff can disaffirm a contract she enters, but she cannot disaffirm *clauses* within a contract. *See* Mot. 32. For example, California Family Code section 6710 states "a contract of a minor may be disaffirmed," but it does not contemplate anything less than disaffirmance of the whole contract. And Plaintiffs describe the delegation clause as simply one provision "in" their contract as a whole. *E.g.*, J.H. Decl. ¶ 6, Dkt. No. 479-4. Plaintiffs' purported disaffirmance can only be understood to disaffirm the entire Terms—a squarely delegable challenge under *Rent-A-Center*. Merely stating that by disaffirming the Terms, Plaintiffs also disaffirm the delegation clause is insufficient. The test is whether a challenge attacks the delegation clause specifically, not whether the plaintiff has recited magic words to that effect. *Tanner v. Tax Servs. of Am., Inc.*, 2025 WL 1580737, at *5 (N.D. Cal. June 4, 2025) ("conclusory assertions" that arguments applied equally to the delegation clause were insufficient to challenge delegation).

**2. Plaintiffs' Continued Use Defeats Disaffirmance**

Plaintiffs' disaffirmance arguments also fail on the merits. Plaintiffs A/A.J., C/J.H., D/D.H., and H/M.D. continued to use Roblox even after purporting to disaffirm. Plaintiffs do not contest that a party cannot benefit from "part of the transaction" but "repudiate the other, which may not be to his interest to fulfill." *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015). Courts routinely apply that principle to hold that minors cannot disaffirm contracts with online platforms while continuing to enjoy their benefits. *See* Mot. 32–33. That is the logical and equitable result: when a minor plaintiff continues to use a platform, he cannot unilaterally decide to keep playing without abiding by the terms that bind him, including arbitration.

Plaintiffs argue that "[c]onduct during minority" cannot affect disaffirmance rights. Opp. 48 (citing *C.M.D. v. Facebook*, 2013 WL 1266291 (N.D Cal. Mar. 26, 2014)). But in *C.M.D.*, this Court questioned how the plaintiffs could press a disaffirmance argument when they did "not dispute that they continued to use their Facebook accounts long after this action was filed." 2013 WL 1266291, at *4. On appeal, the Ninth Circuit affirmed that by continuing to use Facebook after filing suit, plaintiffs "manifested an intention ***not*** to disaffirm the contract." *C.M.D.*, 621 F. App'x at 489. Plaintiffs argue that the doctrine of ratification applies only when a minor reaches majority. Opp. 48. But whether a plaintiff ratified a contract as an adult is a separate question from whether a minor can disaffirm part of a contract while enjoying the rest of its benefits—he cannot. Mot. 33.

None of Plaintiffs' cited cases support the suggestion that they can engage in an endless cycle of disaffirmance, continued use, and further disaffirmance when Roblox tries to enforce its rights. *R.A. v. Epic Games* recognized that it would be "inequitable" for a minor to "keep using a product and then disaffirm it as soon as the other side to the agreement tries to enforce an obligation from the agreement," but declined to reach that issue. 2019 WL 6792801, at *7 (C.D. Cal. July 30, 2019). And *Mercado* summarily concluded that disaffirmance post-motion to compel was effective, without analysis. 2026 WL 2910175, at *14. Regardless, Plaintiff H/M.D. used Roblox even after the Opposition was filed, Supp. Jit Decl., Ex. 3—which clearly "contradict[s] [her] intent to disaffirm," *R.A.*, 2019 WL 6792801, at *7.[7]

Finally, Plaintiffs wrongly contend that continued use is relevant only if they assert a right under a contract they purport to disaffirm. Opp. 49–50. Their cited cases involved application of equitable estoppel to bind nonsignatories to agreements and so necessarily required courts to examine if the nonsignatory invoked or relied on the agreement. *See B.F. v. Amazon Inc.*, 858 F. App'x 218, 221 (9th Cir. 2021); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). That examination is unnecessary here because Plaintiffs agreed to the Terms, and they unquestionably received rights by doing so—their agreement was a prerequisite to using Roblox, and Plaintiffs'

---

[7] Even if Roblox "cut off" the accounts Plaintiffs have claimed, Opp. 49, Plaintiffs could still create new accounts (many have). This case is thus distinct from the case Plaintiffs cite, which involved a car dealership affirmatively rejecting the minor plaintiff's attempts to return the purchased car. *See Quality Motors v. Hays*, 225 S.W. 2d 326, 328 (Ark. 1949).

claims center on that use. Courts frequently reject minors' attempts to disaffirm online agreements where they continue to use the platform, no matter what the nature of the claims. *See* Mot. 33; *see also Whittaker v. Roblox Corp.*, 2026 WL 2640984, at *4 (D. Colo. Sept. 2, 2026) ("Disaffirmance requires that the parties return to the status quo ante, but N.G. continues to enjoy the benefits of the agreements she purports to disaffirm by using the services, accessing the related accounts, etc.").

**3. Plaintiffs Cannot Disaffirm Contracts They Agreed to as Adults or that Their Parents Agreed to on Their Behalf**

Each of Plaintiffs' disaffirmance arguments fails for additional reasons. Plaintiff A/A.J. is an adult who agreed to Roblox's Terms at least five times after reaching majority and so cannot disaffirm. *See* A.J. Am. Compl. ¶ 10, Dkt. No. 399; Mot. 34. The remaining Plaintiffs cannot disaffirm because their Responsible Adults entered agreements on their behalf. These adults agreed to the Terms by (1) assisting Plaintiffs with account creation; (2) reviewing Terms updates; (3) purchasing Robux; and (4) redeeming Robux. *See* Mot. 27–29, 33. Plaintiffs submit declarations from certain Responsible Adults denying that they "agreed" to the Terms, M.O. Decl. ¶ 3, Dkt. No. 479-5; T.T. Decl. ¶ 3, Dkt. No. 479-7; L.S. Decl. ¶ 3, Dkt. No. 479-11; C.D. Decl. ¶ 3, Dkt. No. 479-13, but that is a conclusory legal assertion the Court need not accept. And the declarations ***do not*** deny that each adult helped Plaintiffs create accounts, reviewed Terms updates, purchased Robux, and redeemed gift cards. *See French*, 841 F. Supp. 3d at 68 (minor bound by parent's Terms acceptance where parents did not dispute encountering assent screens); *see Tanner v. Roblox Corp.*, 2026 WL 3539997, at *10 (E.D. Pa. Nov. 17, 2026). Plaintiff H/M.D.'s Responsible Adult also does not deny that she created a linked parental account and had to agree to the Terms as part of that process. Plaintiff H/M.D. seems to argue that the parental account was not for her benefit, but the whole purpose of a parental account is to monitor activity of the child's account. Mot. 18.

Moreover, when Plaintiffs agreed to the Terms, they confirmed that they showed the Terms to their Responsible Adults and that their parents assented. Plaintiffs are thus estopped from now arguing otherwise. Mot. 27–28. Plaintiffs respond that they disaffirmed their contracts. Opp. 45. But that circular logic misses the point. These representations mean Plaintiffs are estopped from contesting that their parents assented to the Terms. *Cf. Tomlin*, 2026 WL 1412606, at *8 ("The

undisputed evidence … shows that Roblox offered M.B. the opportunity to play Roblox in exchange for M.B.'s Responsible Adult's agreement to the [Terms]."). And if Plaintiffs' parents assented to the Terms, then Plaintiffs cannot disaffirm them—which Plaintiffs' cases confirm. *See Doyle v. Giuliucci*, 62 Cal. 2d 606, 610 (1965) (holding that minor disaffirmance statute does not control where parent binds a minor to arbitration because the contract is "between adults").[8]

Plaintiffs next contend that parents can bind children to contracts only where the contracts implicate a "duty of care" involving medical treatment or school activities. Opp. 46. None of their authorities announce that rule. And several courts have held that children can be bound by their parents' contracts outside of these limited contexts. *See* Mot. 28–29. Plaintiffs observe that several of those cases involved online accounts used by both the minors and their parents. *See* Opp. 46, 48. But Plaintiffs do not explain why a parent's use of the same service affects whether the parent's agreement to arbitration bound the minor. Plaintiffs also characterize these cases as involving contracts where the minors were third-party beneficiaries, not principals. *See* Opp. 46–47. But the case Plaintiffs cite to support that distinction—*Berg v. Traylor*, 148 Cal. App. 4th 809 (2007)—identified the minor's principal status as only one factor among many that permitted the minor to disaffirm. *Id.* at 819. Several of those factors—including the existence of a specific statutory procedure governing the minor contracts at issue and the agreement's imposition of substantial affirmative financial responsibilities on the minor—are indisputably absent here. *See id.* And more recently, California courts have held that a minor can be precluded from disaffirming a contract signed by a parent even when the minor is the only principal. *See Eriksson v. Nunnik*, 233 Cal. App. 4th 708, 721 (2015) (minor's estate could not disaffirm contract signed by the minor as the "Rider" and the parent as the "Rider's Parent," even though the parent was not "a party to the release").

### C. Plaintiffs' Unconscionability Arguments Fail

Plaintiffs' unconscionability arguments also fail. Like disaffirmance, unconscionability is a

[8] Roblox's reliance on their representations of parental assent was justified. A party may rely on a representation where, as here, the statement's falsity is not known or obvious. *See Off the Wall & Gameroom LLC v. Gabbai*, 301 So. 3d 281, 285–86 (Fla. 4th DCA 2020); *Smith v. Adventure Air Sports Kennesaw, LLC*, 849 S.E.2d 738, 742–43 (Ga. Ct. App. 2020). *Kiefer v. Fred Howe Motors, Inc.*, 158 N.W.2d 288, 293-93 (Wis. 1968), does not impose a categorical duty to verify representations.

challenge to contract enforceability and is delegated to the arbitrator. And courts have repeatedly held that consolidated arbitration models like FedArb's are consistent with the FAA. Nor is there merit to Plaintiffs' argument that post-complaint arbitration agreements are unconscionable.

**1. Unconscionability Is Delegated**

Plaintiffs do not contest that unconscionability challenges enforceability and that such challenges fall within Roblox's delegation clause. And Plaintiffs fail to explain why the delegation clause, in particular, is unconscionable. Instead, they assert that the delegation clauses "suffer from the same defects as the agreements as a whole." Opp. 32–33. That is insufficient to show that "procedures *as applied* to the delegation provision rendered *that provision* unconscionable." *Rent-A-Ctr.*, 561 U.S. at 74; *see Juarez*, 2024 WL 5424366, at *7 (enforcing delegation where plaintiffs offered "no specific argument regarding how the delegation provision" is "unconscionable"); *Marino*, 2026 WL 2280618, at *2 (similar). Plaintiffs make no such specific argument here.[9]

**2. FedArb Is FAA Arbitration and Is Not Unconscionable**

***FedArb is FAA Arbitration:*** Plaintiffs incorrectly argue that FedArb's Mass Arbitration Framework is not "bilateral arbitration" under the FAA. *See* Opp. 54–55. Courts have repeatedly held that consolidated proceedings like FedArb's are protected by the FAA. *See, e.g.*, *Jones v. Starz Ent. LLC.*, 129 F.4th 1176, 1182 (9th Cir. 2025) (applying FAA where JAMS consolidated before a single arbitrator similar cases brought by claimants represented by the same law firm and noting that "[c]onsolidation is not the same as class or representative arbitration" because "a claimant in a consolidated arbitration brings the claim in her *individual* capacity").[10]

Plaintiffs' argument reduces to falsely equating FedArb to the New Era model at issue in

[9] Plaintiffs claim that arbitrators have a "self-interest in deciding that a dispute is arbitrable." Opp. 59–60. That argument—which applies to all delegation clauses and all arbitrations—would disfavor arbitration and violate the FAA. Plaintiffs' remaining arguments, related to mass procedures, discovery, and surprise, are the same as their general unconscionability challenge and are meritless, in any event. *See* Section II.C.2, *infra*.

[10] *Cordero v. Coinbase, Inc.*, 2025 WL 2223495, at *5 (N.D. Cal. Aug. 5, 2025) (FAA applied to "consolidated proceedings" involving "batching" of cases for decision by a single arbitrator under AAA rules, as there were no "bellwether or representative proceedings that bind absent parties"); *Carolus v. Coinbase Global, Inc.*, 2025 WL 3033736, at *9–11 (N.D. Cal. Oct. 7, 2025) (similar); *Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157, at *7 (N.D. Cal. Oct. 24, 2025) (similar).

*Heckman v. Live Nation Entertainment, Inc.*, which the Ninth Circuit found violated the FAA. 120 F.4th 670, 689–90 (9th Cir. 2024). That case is distinct for several reasons. *Heckman* involved three bellwether arbitrations litigated individually and confidentially, where the outcomes were binding precedent on non-participants in all batched cases. The arbitral body could replace the agreed-upon arbitrator at its sole discretion. Discovery was limited to 10 documents and closing briefs to 15,000 characters. The parties could appeal awards of injunctive relief only, not denials. *See id.*

FedArb has none of these features. It does not involve bellwether proceedings that bind absent parties, and participating claimants are represented by counsel at all stages. *See* Huyett Decl., Ex. 5, Dkt. No. 479-2 (defining "[m]ass [a]rbitration" as "when 20 or more individual claims are submitted by or with the assistance or coordination of ***the same law firms*** … and … subject to a common set of factual and legal issues" (emphasis added)). Where claimants are represented by the same or coordinated counsel and claims involve common factual and legal issues, a tribunal decides certain overlapping issues before individual cases proceed to arbitration. *Id.* § 1(e), (f). Plaintiffs argue that they will be bound by early rulings despite differences, Opp. 54, but they ignore that the tribunal decides "motions ***the parties*** elect to bring." Huyett Decl., Ex. 5 §1(e), Dkt. No. 479-2 (emphasis added). Plaintiffs' suggestion that they would be financially disincentivized to file a pre-filing fee motion challenging arbitrability, Opp. 55, is equally unsupported. Roblox, not the claimant, pays "all other fees or expenses charged by FedArb," except the first $50 (and even pays that in some circumstances). Jit. Decl., Ex. 45 § 11(b)(vi), Dkt. No. 458. FedArb also does not have sole discretion to replace the tribunal. *See* FedArb R. 7;[11] *see* Huyett Decl., Ex. 5 § 1(h), Dkt. No. 479-2 (incorporating FedArb general arbitration rules). And FedArb's expedited procedures allow sufficient discovery, including documents "discoverable under federal discovery standards," and additional discovery permitted by the tribunal. Huyett Decl., Ex. 7, Exp. R. 13, Dkt. No. 479-2; *see id.* Exp. R. 15 (allowing depositions in "interest of justice"). Briefs and expert testimony also are allowed, *id.* Exp. R. 16–17, and parties can agree to appeal, *see* FedArb R. 12.01. FedArb thus

[11] The FedArb General Rules are available at https://fedarb.com/fedarb-rules/.

preserves the proceedings at the core of the FAA.[12]

***FedArb Is Not Unconscionable:*** Because the FAA governs, California unconscionability principles disfavoring arbitration do not apply. *Heckman*, 120 F.4th at 689 (FAA preempts any application of California's unconscionability rules that "pos[e] an 'obstacle' to the objectives of the FAA"). But they do not support an unconscionability finding, in any event.

FedArb is not class arbitration; it involves consolidated proceedings before a tribunal that bind only those individuals who participate. Plaintiffs argue these provisions are unconscionable because the tribunal's threshold decisions cannot be appealed. Opp. 57. But Plaintiffs cite no authority requiring an arbitration clause to provide for an appeal as of right; *Heckman* holds only that this right cannot be one-sided. *Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868, 880 (N.D. Cal. 2025). And FedArb Rules permit the parties to agree to an appeal. *See* FedArb R. 12.01.

Nor do the expedited procedures on discovery or briefing render FedArb's procedures unconscionable. *See* Opp. 58–59. "[L]imitations on discovery in arbitration are appropriate, as long as parties can 'access [ ] essential documents and witnesses, as determined by the arbitrator.'" *Wray*, 824 F. Supp. 3d at 880 (citation omitted). FedArb's expedited procedures provide for sufficient document discovery, depositions, and briefing and vest the arbitral body with discretion to permit additional discovery in the interests of justice. Huyett Decl., Ex. 7, Exp. R. 13–17, Dkt. No. 479-2. Such procedures are common in arbitration, are not unconscionable, and differ from those in the cases Plaintiffs cites. *Compare Wray*, 2025 WL 4662288, at *8 (upholding agreement that required party agreement on discovery limitations and gave arbitrator discretion if no agreement was reached), *with Heckman*, 120 F.4th at 685 (finding unconscionable arbitration procedures that limited the evidentiary record to 10 documents and closing briefs to 15,000 characters).[13]

---

[12] Plaintiffs' argument that FedArb lacks a predominance standard, Opp. 57, rests on the faulty assumption that FedArb is class arbitration, which it plainly is not. "Consolidation is not the same as class or representative arbitration," because each claimant "brings the claim in her individual capacity." *Jones*, 129 F.4th at 1182.

[13] The same is true of Plaintiffs' objection that FedArb does not guarantee a hearing. Rule 19 provides for a video or in-person hearing whenever the tribunal determines one is necessary to ensure fairness. Huyett Decl., Ex. 7, Exp. R. 19, Dkt. No. 479-2.

**3. Plaintiffs' Post-Filing Agreements Are Not Unconscionable**

Plaintiffs also fail to establish that their post-filing agreements are unconscionable. Plaintiffs contend that these agreements are procedurally unconscionable because Roblox users cannot negotiate the Terms. *See* Opp. 34–35. But the same is true for all online agreements, and courts consistently reject unconscionability arguments where, as here, there is an opt-out right. *See Slaviero*, 2026 WL 1097746, at *5. Nor can it be true, as Plaintiffs' theory about education, age, and intelligence suggests, that every online arbitration agreement involving minors is procedurally unconscionable. *See* Mot. 22 (citing cases involving minor contracts). Plaintiffs also repeatedly state that "Defendants design their platforms to addict children," Opp. 35, but courts have rejected efforts to defeat arbitration agreements based on generalized "addictiveness" assertions. *See Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 898 (W.D. Mo. 2025) (rejecting argument that minor's addiction left him with "no real choice" but to accept terms); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283 (M.D. Fla. 2025) (compelling arbitration despite contention that minors' continued use resulted from "disordered compulsion and addiction to using the products"). There also is no surprise here: Roblox's Terms clearly state that by agreeing, users "**GIVE UP THE RIGHT TO BRING AN ACTION IN COURT**" and that "ANY DISPUTE THAT CANNOT BE RESOLVED THROUGH MIDR, WILL BE RESOLVED BY BINDING INDIVIDUAL ARBITRATION." Mot. 19 (quoting Jit Decl. ¶ 54 & Ex. 41 10–11).

That these agreements were entered after Plaintiffs filed their complaints and retained counsel does not render them unconscionable. *See* Opp. 33. Courts routinely enforce mid-litigation arbitration agreements, even when the parties have counsel. *See* Section II.A.3, *supra*. In *Oestreicher*, 2024 WL 1199902, at *6, for example, the court rejected an unconscionability challenge to a post-complaint arbitration agreement because the plaintiff did not allege that the agreement was "drafted and placed before her because of the litigation at hand," "that she was unable to consult an attorney before" agreeing, "that she was approached personally by the [defendant's] attorneys" to sign the agreement, or that "she had no way of knowing she was a party that could benefit from this litigation." The same is true here. Roblox did not solicit Plaintiffs to continue using its services or to again agree to arbitration. Instead, Plaintiffs voluntarily used their

Roblox accounts after purporting to disaffirm and agreed to the Terms via Blocker Cards, account creation, Robux purchases, and gift card redemptions. *See* Mot. 12–17. Roblox did not prevent Plaintiffs from consulting with counsel before clicking "I Agree" or "Sign Up." Plaintiffs' cases, in contrast, all involved the defendants deliberately approaching the plaintiffs mid-litigation and demanding that they agree to change the forum for their claims.[14]

The post-filing agreements also are not substantively unconscionable. Plaintiffs observe that the agreements change the forum for Plaintiffs' claims in exchange only for continued access to an online platform. *See* Opp. 35. But the same is true of the many online terms that courts have enforced during litigation. And Plaintiffs' invocation of unconscionability principles arising in different factual settings does not satisfy their burden of proving unconscionability here. *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 665–66 (2004).[15]

### D. The EFAA Does Not Apply

The Court should reject Plaintiffs' invitation to adopt a boundless interpretation of the EFAA, divorced from its text and legislative history, to nullify arbitration agreements in circumstances Congress never contemplated. Opp. 11–25. The EFAA does not apply in tort suits against online communication services based on allegations that their *users* engaged in sexual assault or harassment because such cases do not "relate to" a sexual assault "dispute" with the platform. This reasoning applies to *all* Plaintiffs, not just the "three" Plaintiffs identify. Opp. 12. Each Plaintiff's arguments fail for additional reasons as well. Plaintiffs A/A.J., C/J.H., D/D.H., and H/M.D. entered post-dispute arbitration agreements that the EFAA plainly does not reach. And

---

[14] *See Salgado v. Carrows Rest., Inc.*, 2021 WL 2199436 (Cal. Ct. App. June 1, 2021) (arbitration agreement entered for first time after plaintiff sued and plaintiff believed she would lose her job if she did not agree); *Valve Corp. v. Abbruzzese*, 2026 WL 1481630 (W.D. Wash. May 27, 2026) (material changes to arbitration agreement mid-litigation); *Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687 (S.D. Tex. 2003) (defendants adopted a new dispute resolution program with binding arbitration during litigation); *Kater v. Churchill Downs*, 423 F. Supp. 3d 1055 (W.D. Was. 2019) (updated terms and arbitration agreement expressly referencing pending class action lawsuit violated Fed. R. Civ. P. 23(d)).

[15] Nor does the EFAA render all post-filing arbitration agreements unconscionable. Opp. 35. Had Congress intended to invalidate as unconscionable every arbitration agreement in these circumstances, it would have said so. Instead, the EFAA gives the option to void a "predispute" agreement at the "election of the person" alleging certain conduct. 9 U.S.C. § 402(a).

Plaintiffs C/J.H. and G/A.S. do not allege "sexual assault" or "harassment."

**1. Plaintiffs' Claims Do Not "Relate to" a "Sexual Assault Dispute"**

***Dispute.*** The EFAA applies only if a case "relates to" "a sexual assault ***dispute***" or "sexual harassment ***dispute***." 9 U.S.C. § 402(a) (emphasis added). A "dispute" requires "'some aspect of opposition or disagreement' between the parties on a particular issue." *Combs v. Netflix, Inc.*, 180 F.4th 1201, 1205 (9th Cir. 2026) (citation omitted). Put differently, "the allegations concerning" the dispute "must be charges of misconduct for which the plaintiff is seeking relief." *Holland-Thielen v. SpaceX*, 2026 WL 3403297, at *11 (9th Cir. Nov. 10, 2026). Here, Plaintiffs' disagreement with Roblox—and the misconduct for which they are seeking relief—relates to content moderation decisions; it is not about whether a third-party user committed sexual assault.

The EFAA's definition of "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact" confirms this reading. *Contra* Opp. 21. Plaintiffs do not contest that "involve" generally means "to require as a necessary accompaniment" or "necessarily require." *See* Mot. 35–36. So the EFAA's definition of "sexual assault dispute" is implicated only when the adversarial controversy between the parties "necessarily requires" showing that a nonconsensual sexual act or sexual contact occurred. Nothing about Plaintiffs' claims—challenging Roblox's content moderation decisions and statements describing those policies—requires such a showing. *See SJ Med. Ctr., LLC v. Anozie*, 694 S.W.3d 915, 919–24 (Tex. App. 2024) (interpreting EFAA to require "a claim for recovery that will necessarily include or entail proof that the plaintiff was a victim of a nonconsensual sexual act or sexual contact").

If, as Plaintiffs suggest, the EFAA applied to any case involving alleged sexual assault by anyone, no matter how tangential to the claims against the defendant, the word "dispute" would be superfluous. Congress could have simply drafted the EFAA to cover any case that "relates to" "conduct constituting sexual assault or sexual harassment," instead of requiring that conduct to form the basis for the parties' "dispute." Two recent proposals to amend the EFAA and to exempt broader types of cases from arbitration only underscore that the EFAA, as is, does not apply here. *See* S. 5723, 119th Cong. (2026); S. 5720, 119th Cong. (2026).

***"Relates to."*** Nor does the phrase "relates to" support Plaintiffs' expansive reading. Opp.

21–22. Courts must interpret that phrase in the statute's "context," *Dubin v. United States*, 599 U.S. 110, 119 (2023), examining "the objectives of [the statute]" and the "nature and strength" of the relationship Congress sought to reach, *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020); *see De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997) (considering statute's "objectives" to hold that state law did not "relate to" employee benefit plans); *Mellouli v. Lynch*, 575 U.S. 798 (2015) (concluding state drug-paraphernalia violation did not "relate[] to a controlled substance" based on context and history). Plaintiffs discard this methodology, arguing that "relates to" encompasses any case with an attenuated chain of causation between a defendant's conduct and a third party's assault. But that is exactly the "sky is the limit" reading foreclosed by Supreme Court precedent. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). Plaintiffs' cited case recognizes as much, explaining that "the meaning of 'relating to' … is not so broad that it is meaningless." *Chevron USA Inc. v. Plaquemines Par., La.*, 608 U.S. 1 (2026).

The EFAA's context and history make clear that Congress was focused on ensuring a judicial forum for victims who bring claims arising from sexual assault or harassment committed by, or attributable to, the defendant. *See* Mot. 37 & n.25. Plaintiffs point to statements in the Committee Report about the use of arbitration agreements in general, but those statements did not concern sexual assault, sexual harassment, or any case to which the EFAA would apply. Opp. 11, 23–24 (citing H.R. Rep. No. 117-234, at 4–6). Plaintiffs also cherry-pick a legislator's reference to "downloading an app," Opp. 24 (quoting 168 Cong. Rec. H986 (daily ed. Feb. 7, 2022) (Rep. Bustos)), but that statement simply referred to how consumers agree to arbitration clauses—not whether the EFAA applies to communications services used by third-party perpetrators.

Plaintiffs do not dispute that every federal court that has considered the EFAA's application to analogous claims has held it does not apply to claims against communications services that allegedly "enabled" third-party perpetrators or gave them "access to" their victims. *See Farnham v. Grindr, LLC*, 2025 WL 3062698 (M.D. Fla. Nov. 3, 2025); *M.D. v. Verizon Commc'ns Inc.*, 2025 WL 2712831 (E.D.N.C. Sept. 23, 2025). Plaintiffs fault these courts for relying on the EFAA's history and purpose, Opp. 23, but that is precisely what Supreme Court precedent requires. *See supra*. Plaintiffs argue that "all courts agree" that the EFAA's text is "not so limited." Opp. 23. But

*Farnham* examined the statute's text and held that the case did not relate to "a sexual assault dispute ***within the meaning of the EFAA***." *Farhham*, 2025 WL 3062698, at *2 (emphasis added).

Recently, another federal court rejected the expansive interpretation of the EFAA urged by Plaintiffs. In *Brown v. Airbnb*, *Inc.*, the plaintiff attempted to invoke the EFAA in a case against Airbnb for wrongly terminating his account after he complained to Airbnb that hosts had sexually harassed him. 2026 WL 2982295, at *2 (M.D. Fla. Oct. 5, 2026). The court explained that none of the plaintiff's claims "directly related to either alleged incident of third-party sexual harassment," which the plaintiff did "not impute to Airbnb." *Id.* Instead, each claim "relate[d] directly to Airbnb's own conduct in reviewing and terminating Brown's account." *Id.* Because the alleged "incidents of sexual harassment" did not "relate to the dispute itself in a meaningful way," the EFAA did not apply. *Id.* So too here. Plaintiffs' claims relate to Roblox's alleged conduct in publishing third-party content and purported misrepresentations—they do not "relate to" a "sexual assault dispute."

Plaintiffs' cited cases do not change this conclusion. The court in *Childress v. Moore*, 2026 WL 1618598, at *2 (M.D. Fla. June 5, 2026), distinguished *Farnham* because there, "both the victim and the alleged perpetrators were consumers with no 'legal relationship' to the defendant," except for a user agreement. By contrast, in *Childress*, the plaintiff alleged "sexual assault by an independent contractor of Defendants." *Id.* at *5 n.2. In *Delirium TV, LLC v. Dang*, 714 S.W.3d 640, 647–49 (Tex. App. 2024), there was also a legal relationship between the plaintiff, her assailant, and the production company that hired them both. And *Doe v. International Student Exchange*, 2026 WL 2110889 (C.D. Ill. July 22, 2026), involved a foreign exchange program with responsibility for the adult host who raped the plaintiff exchange student.[16] Finally, *Polen v. API Group Life Safety USA, LLC*, 2025 WL 3251349 (D. Or. Nov. 21, 2025), arose from a workplace dispute where the employee claimed she was improperly fired after reporting sexual assault by her ex-partner. Apart from the employer-employee relationship absent here, *Polen*'s analysis of the EFAA's text was flawed, as it expansively interpreted "involving" and "relates to," declining to limit these words to the relationships Congress contemplated. *Id.* at *3–4.

---

[16] The unpublished state court cases Plaintiffs cite, *see* Opp. 23, are unpersuasive, as they do not contend with the need to examine Congress's objectives in interpreting the meaning of "related to."

### 2. Four Plaintiffs Agreed to Arbitrate Post-Dispute

The EFAA also does not apply to Plaintiffs A/A.J., C/J.H., D/D.H., and H/M.D. because they entered post-dispute agreements to arbitrate. *See* Section II.A.3, *supra*. The EFAA authorizes a party to void only a "***predispute*** arbitration agreement." 9 U.S.C. § 402(a) (emphasis added). These Plaintiffs' disputes with Roblox arose, at the latest, when they filed their Complaints. There is no basis to conclude that the EFAA authorizes these Plaintiffs to avoid the agreements they formed post-filing. Plaintiffs argue they could not have formed those agreements mid-litigation, but those arguments fail for the reasons explained. *See* Section II.A.3, *supra*.

Plaintiffs similarly err in contending that the EFAA imposes a heightened standard for post-dispute arbitration agreements. The EFAA allows a plaintiff to void a qualifying "predispute" arbitration agreement, 9 U.S.C. § 402, but it does not prevent a plaintiff from forming post-dispute arbitration agreements. To the extent Plaintiffs' cases, *see* Opp. 28–29, remain good law, they arise from different contexts where Congress established both a substantive claim and prescribed specific "remedies and procedural protections" for adjudicating the claim. *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1203 (9th Cir. 2021).[17] The effective vindication doctrine is also inapplicable. *Contra* Opp. 31–32. That doctrine prevents enforcement of an arbitration agreement that "operate[s] as a prospective waiver of a party's right to pursue statutory remedies." *Pover v. Capital Group Cos., Inc.*, 183 F.4th 1132, 1140 (9th Cir. 2026); *see Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016). But the Terms simply change the forum for Plaintiffs to vindicate their rights; they do not restrict Plaintiffs' substantive rights. *See* Section II.A.3, *supra*.

### 3. Two Plaintiffs Have Not Alleged Sexual Assault or Harassment

The EFAA is inapplicable to Plaintiffs C/J.H. and G/A.S. for another reason: they allege the exchange of nude imagery, not "sexual assault" or "sexual harassment."[18]

Plaintiffs do not contend that the exchange of sexually explicit images alone is a "sexual

[17] *Ding v. Structure Therapeutics, Inc.*, 187 F.4th 1231 (9th Cir. 2026), is inapposite. The question there was whether the plaintiff knew of the existence of her sexual harassment claim when she agreed to arbitration. *Id.* at 1238–39. Here, Plaintiffs had already filed their Complaints and so were indisputably aware of their claims when they entered post-dispute agreements.

[18] This Court should reject Plaintiffs' request for leave to amend, *see* Opp. 13, as Plaintiffs already amended the bellwether complaints post-selection and were aware that the EFAA would be briefed.

act" or "sexual contact." *See* 18 U.S.C. § 2246(2) ("sexual act" requires contact between genitalia or intentional touching of another); *id.* § 2246(3) ("sexual contact" requires intentional touching of enumerated body parts). Instead, they argue that sending nude images amounts to "sexual contact" if it involves "masturbatory" conduct. Opp. 15. Plaintiff C/J.H., however, alleged no "masturbatory conduct," only that she sent "sexually explicit material of herself." J.H. Am. Compl. ¶ 14, Dkt. No. 432. And Plaintiff G/A.S. also alleged sending nude photos without more. Plaintiffs urge the Court to "infer" masturbatory conduct based on the allegations that the predator "coerced [G/A.S.] into sending sexually explicit images of herself" and "directed Plaintiff to touch herself sexually," and that she "succumbed to his pressure." Opp. 15 (citation omitted). But what Plaintiff actually alleged is that she "succumbed to his pressure ***and transmitted more nude photos***," which is at odds with the requested inference. A.S. Compl. ¶ 13, Dkt. No. 403 (emphasis added).

Plaintiffs' reliance on state law fares no better. "[S]exual assault dispute" means a "dispute involving a nonconsensual sexual act or sexual contact" under 18 U.S.C. § 2246 "or ***similar*** applicable Tribal or State law." 9 U.S.C. § 401(3) (emphasis added). "Similar," in turn, means "'having characteristics in common' or 'alike in substance or essentials.'" *United States v. Galecki*, 89 F.4th 713, 730 (9th Cir. 2023). To determine if something is "similar" to items in a statute, courts thus consider what "fundamental features" the listed items possess. *Microsoft Corp. v. Comm'r*, 311 F.3d 1178, 1187 (9th Cir. 2002). And here, the "fundamental features" shared by "sexual act" and "sexual contact" under 18 U.S.C. § 2246 are that both require physical contact of specific body parts for a specific purpose. Congress members have recognized these limitations. This week, two Senators proposed a bill that would permit a minor alleging a "child sexual exploitation dispute"—including "a dispute alleging any conduct that involves" a "minor engaging in sexually explicit conduct . . . under section 2256(2) of title 18"—to void a predispute arbitration agreement. *See* S. 5723 § 2. There would be no need to propose this bill if the EFAA's definition of "sexual act" or "sexual contact" already covers nude images without more.

Because none of the state laws that Plaintiffs identify require physical contact, they are not "similar" to a "sexual act" or "sexual contact" under 18 U.S.C. § 2246. The EFAA does not draw in every state (or even federal) law that in any way concerns a sexual offense, as Plaintiffs' reading

suggests. *See* Opp. 17–19. Federal law separately defines offenses like "sexually explicit conduct" that do not require physical contact and include "simulated" activity, 18 U.S.C. § 2256, but Congress chose not to include those definitions in the EFAA. Instead, Congress tied the statute's application to 18 U.S.C. § 2246, which requires physical contact.

*United States v. Taylor*, 640 F.3d 255, 257 (7th Cir. 2011), is instructive. There, the defendant was convicted of violating 18 U.S.C. § 2422, which criminalizes using interstate commerce to coerce or entice any minor "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." *Id.* at 256. Section 2422 did not define "sexual activity," so the court looked to the closest defined term—"sexual act" in 18 U.S.C. § 2246—which necessitated physical contact. *Id.* at 257–60. The court reversed the defendant's conviction because the government proved only that he had violated an Indiana law that did not require physical contact. *Id.* at 260.[19] The same reasoning applies here. Congress chose to use "sexual act" and "sexual contact" under 18 U.S.C. § 2246 in the EFAA, so "similar" state laws must share the same features. *See State Dep't of Pub. Safety v. Doe*, 425 P.3d 115, 119-20, 122-23 (Alaska 2018) (California Penal Code § 647.6 not sufficiently "similar" to Alaska sexual-abuse statute because it reached no-contact misconduct while the Alaska statute required contact).

Plaintiffs C/J.H. and G/A.S's allegations also do not amount to a "sexual harassment dispute," which is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4). This prong is limited to "conduct [that] violated a law prohibiting sexual harassment." *Yost v. Everyrealm, Inc*., 657 F. Supp. 3d 563, 584–85 (S.D.N.Y. 2023). The statute Plaintiffs cite, 18 U.S.C. § 2422(b), does not concern sexual harassment—it is the coercion and enticement statute at issue in *Taylor*. Plaintiffs' reading cannot be squared with the proposed bill, which incorporates § 2422(b) and "any grooming, enticement, or coercion of a minor," making clear the EFAA, as it currently stands, does not. *See* S. 5723 § 2.

## III. CONCLUSION

For the foregoing reasons, Roblox respectfully requests that the Court grant the Motion.

[19] The chapter's amendment to define "sexual activity" as not requiring "any interpersonal physical contact" does not affect this analysis. 18 U.S.C. § 2427. The 2023 amendment post-dates the EFAA and only underscores that Congress meant to exclude "sexual activity" from the EFAA's scope.

Dated: November 20, 2026

Respectfully submitted,

**COOLEY LLP**

*/s/ Tiana Demas*
Tiana Demas

TIANA DEMAS *(pro hac vice)*
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: (312) 881-6500
tdemas@cooley.com

MAX A. BERNSTEIN
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
mbernstein@cooley.com

Attorneys for Defendant
ROBLOX CORPORATION