Ambika Kumar (*pro hac vice*)
ambikakumar@dwt.com
Xiang Li (SBN 291587)
xiangli@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: 206-622-3150
Fax: 206-757-7777

Adam S. Sieff (SBN 302030)
adamsieff@dwt.com
Marcy Blattner Micale (SBN 319868)
marcymicale@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Tel: 213-633-6800
Fax: 213-633-6899

*Attorneys for Defendant*
DISCORD INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL No. 3166<br>Case No. 3:25-md-03166-RS |
| This document relates to:<br><br>No. 3:25-cv-3520<br><br>No. 3:25-cv-5753<br><br>No. 3:26-cv-810<br><br>No. 3:25-cv-10607<br><br>No. 3:25-cv-7291 | **DEFENDANT DISCORD INC.'S REPLY IN SUPPORT OF OMNIBUS MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>[Filed Concurrently With Supplemental Declaration of Ben Robbins In Support]<br><br>Hon. Richard Seeborg<br><br>Date: January 13, 2027<br>Time: 9:30 a.m.<br>Courtroom: 12 |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiffs Agreed to Arbitrate by Assenting to Discord's Terms. ........ 2

B. The EFAA Does Not Apply. ........ 4

1. Plaintiffs Have No Sexual Assault or Harassment Dispute with Discord ... 5

2. Doe G Has Not Alleged Conduct Constituting "Sexual Assault." ........ 10

3. Doe G Has Not Alleged Conduct Constituting "Sexual Harassment." ........ 12

4. Does A and E's Post-Dispute Arbitration Agreements Are Not Subject to the EFAA. ........ 13

C. The Parties Agreed to Delegate Arbitrability Issues to the Arbitrator. ........ 18

1. Disaffirmance Is an Arbitrability Issue. ........ 18

2. Does A, E, F, and H Cannot Disaffirm. ........ 21

III. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Exp. Co. v. It. Colors Rest.*,
570 U.S. 228 (2013) .......... 16

*Attix v. Carrington Mortg. Servs.*,
35 F.4th 1284 (11th Cir. 2022) .......... 21

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 16

*Avery v. TEKsystems, Inc.*,
165 F.4th 1219 (9th Cir. 2026) .......... 20, 21

*Becker v. Delek US Energy, Inc.*,
39 F.4th 351 (6th Cir. 2022) .......... 21

*B.F. v. Amazon.com Inc.*,
858 F. App'x 218 (9th Cir. 2021) .......... 23

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 2, 19

*Bostock v. Clayton County, Georgia*,
590 U.S. 644 (2020) .......... 9

*Brown v. Airbnb Inc.*,
2026 WL 2982295 (M.D. Fla. 2026) .......... 7

*Brown v. Santander Consumer USA*,
2025 WL 2280559 (S.D. Ill. 2025) .......... 20

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 18, 19, 20

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......... 18

*Caremark, LLC v. Choctaw Nation*,
104 F.4th 81 (9th Cir. 2024) .......... 19

*Cascio v. Michael Jackson Co.*,
2026 WL 2337568 (C.D. Cal. 2026) .......... 11

*Chabolla v. ClassPass*,
129 F.4th 1147 (9th Cir. 2025) .......... 3, 4

*Chevron USA Inc. v. Plaquemines Par., La.*,
608 U.S. 1 (2026) .......... 6

*Childress v. Moore*,
2026 WL 1618598 (M.D. Fla. 2026) .......... 9

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 9

*C.M.D. v. Facebook, Inc.*,
2014 WL 1266291 (N.D. Cal. 2014), *aff'd*, 621 F. App'x 488 (9th Cir. 2015) .......... 22, 24

*Cocom v. ABM Aviation, Inc.*,
179 F.4th 1168 (9th Cir. 2026) .......... 16

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) .......... 1, 20

*Combs v. Netflix, Inc.*,
180 F.4th 1201 (9th Cir. 2026) .......... 5, 9

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......... 23

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) .......... 6, 9

*Dasher v. RBC Bank*,
882 F.3d 1017 (11th Cir. 2018) .......... 15

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997) .......... 6, 7, 8

*De Ridder v. Roblox Corp.*,
2025 WL 3537260 (N.D. Cal. 2025) .......... 3

*Ding v. Structure Therapeutics, Inc., NASDAQ*,
187 F.4th 1231 (9th Cir. 2026) .......... 16

*Doe v. Int'l Student Exch., Inc.*,
2026 WL 2110889 (C.D. Ill. 2026) .......... 10

*Doe v. N.C. State Univ.*,
125 F.4th 498 (4th Cir. 2025) .......... 13

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) .......... 3

*Dubin v. United States*,
599 U.S. 110 (2023) .......... 6

*Ellison v. Brady*,
924 F.2d 872 (9th Cir. 1991) .... 13

*Farnham v. Grindr, LLC*,
2025 WL 3062698 (M.D. Fla. 2025) .... 7, 9

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) .... 15

*Gen. Dynamics Land Sys., Inc. v. Cline*,
540 U.S. 581 (2004) .... 8, 9

*G.G. v. Roblox Corp.*,
2026 WL 1615999 (N.D. Cal. 2026) .... 2

*Great Am. Ins. Co. v. Chang*,
2013 WL 1632669 (N.D. Cal. 2013) .... 12

*Heckman v. Live Nation Ent.*,
120 F.4th 670 (9th Cir. 2024) .... 17

*Hill v. Jackson Offshore Holdings*,
175 F.4th 324 (5th Cir. 2026) .... 21

*Hines v. Nat'l Ent. Grp.*,
140 F.4th 322 (6th Cir. 2025) .... 17

*Holland-Thielen v. SpaceX*,
--- F.4th ----, 2026 WL 3403297 (9th Cir. 2026) .... *passim*

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) .... 13

*J.D.B. v. North Carolina*,
564 U.S. 261 (2011) .... 23

*Johnson v. Wells Fargo Home Mortg., Inc.*,
635 F.3d 401 (9th Cir. 2011) .... 14, 16

*Juarez v. T-Mobile USA Inc.*,
2024 WL 5424366 (C.D. Cal. 2024) .... 20

*Kater v. Churchill Downs Inc.*,
423 F. Supp. 3d 1055 (W.D. Wash. 2019) .... 16

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .... 2

*Kilgore v. KeyBank, N.A.*,
673 F.3d 947 (9th Cir. 2012) .... 17

*K.T. v. A Place for Rover*,
2023 WL 7167580 (E.D. Pa. 2023) .......... 12

*Marino v. Aven Fin., Inc.*,
2026 WL 2280618 (9th Cir. 2026) .......... 19, 20, 21

*M.D. v. Verizon Commc'ns Inc.*,
2025 WL 2712831 (E.D.N.C. 2025) .......... 7

*Melendez v. Ethical Culture Fieldston School*,
789 F. Supp. 3d 316 (S.D.N.Y. 2025) .......... 21

*Mellouli v. Lynch*,
575 U.S. 798 (2015) .......... 6

*Memmer v. United Wholesale Mortg., LLC*,
135 F.4th 398 (6th Cir. 2025) .......... 16

*Mercado v. Roblox Corp.*,
2026 WL 2910175 (E.D. Pa. 2026) .......... 23

*Mod. Perfection, LLC v. Bank of Am., N.A.*,
126 F.4th 235 (4th Cir. 2025) .......... 21

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 9

*New Regency Prods., Inc. v. Nippon Herald Films, Inc.*,
501 F.3d 1101 (9th Cir. 2007) .......... 13

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .......... 9

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) .......... 6

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 3

*Orellana v. Roblox Corp.*,
769 F. Supp. 3d 1273 (M.D. Fla. 2025) .......... 17

*Ortiz v. Univ. Credit Union*,
2025 WL 3765497 (9th Cir. 2025) .......... 4

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 3

*Polen v. API Group Life Safety USA*,
2025 WL 3251349 (D. Or. 2025) ..... 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ..... 18, 19, 20

*R.A. v. Epic Games, Inc.*,
2019 WL 6792801 (C.D. Cal. 2019) ..... 23

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ..... 18, 19, 20

*Rodriguez v. Microsoft Corp.*,
2026 WL 3459304 (E.D. Cal. 2026) ..... 23

*Russell v. Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014) ..... 15

*Sanfilippo v. Match Grp.*,
2021 WL 4440337 (9th Cir. 2021) ..... 15

*Saucedo v. Experian Info. Sols., Inc.*,
2023 WL 4708015 (E.D. Cal. 2023) ..... 14

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) ..... 21

*Tanner v. Roblox Corp.*,
2026 WL 3539997 (E.D. Pa. 2026) ..... 18

*Tanner v. Tax Servs. of Am., Inc.*,
2025 WL 1580737 (N.D. Cal. 2025) ..... 20

*Taylor v. Discord Inc.*,
2026 WL 2689815 (W.D. Wash. 2026) ..... 1, 3

*Tobin v. City & Cnty. of S.F.*,
2016 WL 5791224 (N.D. Cal. 2016), *aff'd*, 747 F. App'x 584 (9th Cir. 2019) ..... 22

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) ..... 15

*Valve Corp. v. Abbruzzese*,
2026 WL 1481630 (W.D. Wash. 2026) ..... 16

*Vargison v. Paula's Choice, LLC*,
2025 WL 346197 (W.D. Wash. 2025),
*opinion clarified on other grounds*, 2025 WL 822659 (W.D. Wash. 2025) ..... 14

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) ..... 2

*Whittaker v. Roblox Corp.*,
2026 WL 2640984 (D. Colo. 2026) .......... 23

*Wilcox v. Valero Ref. Co.*,
256 F. Supp. 2d 687 (S.D. Tex. 2003) .......... 17

*Yates v. United States*,
574 U.S. 528 (2015) .......... 8

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563 (S.D.N.Y. 2023) .......... 12

*Ysleta Del Sur Pueblo v. Texas*,
596 U.S. 685 (2022) .......... 6

*Ziboukh v. Whaleco, Inc.*,
795 F. Supp. 3d 349 (E.D.N.Y. 2025) .......... 2

*Zoller v. GCA Advisors, LLC*,
993 F.3d 1198 (9th Cir. 2021) .......... 15

**State Cases**

*Abramson v. Juniper Networks, Inc.*,
115 Cal. App. 4th 638 (2004) .......... 17

*Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Ass'n*,
41 Cal. App. 5th 753 (2019) .......... 17

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) .......... 4

*C.N. v. Sigma Delta Tau Society*,
--- N.Y.S.3d ----, 2026 WL 2855525 (N.Y. App. Div. 2026) .......... 10

*Delirium TV v. Dang*,
714 S.W.3d 640 (Tex. App. 2024) .......... 10

*Doe v. Roblox Corp.*,
No. A176125 (Cal. Ct. App. 2026) .......... 10

*Franco v. Greystone Ridge Condo.*,
39 Cal. App. 5th 221 (2019) .......... 14

*Grand Prospect Partners v. Ross Dress for Less, Inc.*,
232 Cal. App. 4th 1332 (2015) .......... 17

*Lee v. Hibernia Sav. & Loan Soc'y*,
177 Cal. 656 (1918) .......... 23

*Mitton v. State Bar of Cal.*,
71 Cal. 2d 525 (1969) ..... 16

*Off the Wall & Gameroom LLC v. Gabbai*,
301 So. 3d 281 (Fla. Dist. Ct. App. 2020) ..... 24

*People v. Brandao*,
203 Cal. App. 4th 436 (2012) ..... 11

*In re Poly-America, LP*,
262 S.W.3d 337 (Tex. 2008) ..... 17

*Richards v. Silver*,
433 So. 3d 433 (Fla. Dist. Ct. App. 2026) ..... 16

*Salgado v. Carrows Rests., Inc.*,
2021 WL 2199436 (Cal. Ct. App. 2021) ..... 16

*SJ Med. Ctr. v. Anozie*,
694 S.W.3d 915 (Tex. App. 2024) ..... 7

*Smith v. Adventure Air Sports Kennesaw, LLC*,
849 S.E.2d 738 (Ga. Ct. App. 2020) ..... 24

*State Dep't of Pub. Safety v. Doe*,
425 P.3d 115 (Alaska 2018) ..... 11

*Topheavy Studios, Inc. v. Doe*,
2005 WL 1940159 (Tex. App. 2005) ..... 24

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024) ..... 2

*Wilkins v. Cruise LLC*,
121 Cal. App. 5th 927 (2026) ..... 4

**Statutes**

9 U.S.C. § 2 ..... 16

9 U.S.C. § 3 ..... 24

9 U.S.C. § 401 ..... 1, 10, 12, 13

9 U.S.C. § 402 ..... 1, 5, 13

18 U.S.C. § 2246 ..... 10, 11

18 U.S.C. § 2422 ..... 12, 13

18 U.S.C. § 2427 ..... 12

20 U.S.C. § 1681 *et seq.* .......... 13

42 U.S.C. § 2000e *et seq.* .......... 13

Cal. Penal Code § 243.4 .......... 11

Cal. Penal Code § 261 .......... 11

Cal. Penal Code § 311.3 .......... 11

Cal. Penal Code § 311.4 .......... 11

Cal. Penal Code § 647.6 .......... 11

Ohio Rev. Code § 2905.32 .......... 11

Ohio Rev. Code § 2907.323 .......... 11

**Rules**

Fed. R. Civ. P. 17(c)(2) .......... 14

Fed. R. Civ. P. 23(d) .......... 14, 20, 21

**Other Authorities**

168 Cong. Rec. H986-990, 993 (daily ed. Feb. 7, 2022) .......... 8

168 Cong. Rec. S625 (2022) (daily ed. Feb. 10, 2022) .......... 9

168 Cong. Rec. S626-628 (daily ed. Feb. 10, 2022) .......... 8

H.R. Rep. No. 117-234 (2022) .......... 8

Mem. in Opp. of Mot. to Compel Arbitration, *Marino v. Aven Fin., Inc.*, No. 3:25-cv-00503 (S.D. Cal. 2025), Dkt. No. 15 .......... 20

Special Appearance for Resps.' Resp. in Opp. to Pet. to Compel Arbitration and Mem. in Supp., *Caremark v. Choctaw Nation*, No. 2:21-CV-01554 (D. Ariz. Nov. 18, 2021), Dkt. No. 28 .......... 19

## I. INTRODUCTION

Each Plaintiff created a Discord account through a registration screen informing them that doing so meant agreeing to Discord's Terms. Those Terms contain an arbitration agreement that delegates to the arbitrator threshold questions of arbitrability, including challenges to the Terms' validity and enforceability. Plaintiffs do not dispute that this language appears in the Terms, but ask the Court to set it aside by disregarding settled law that enforces materially similar registration flows; applying a federal statute that does not reach the claims against Discord; and deciding challenges to the Terms as a whole that must be decided by the arbitrator under binding Supreme Court precedent and the parties' delegation agreement. All of Plaintiffs' arguments fail.

***First***, Plaintiffs formed valid agreements with Discord. In September, another federal court held that a minor who clicked to assent to Discord's Terms through the same process described in Discord's Motion formed a binding contract. *See Taylor v. Discord Inc.*, 2026 WL 2689815, at *5-7 (W.D. Wash. 2026). That decision applied the Ninth Circuit's objective, reasonably prudent user standard for online-contract formation. A user's age goes to their capacity to contract under applicable state law and possible disaffirmance, not whether the notice was sufficiently conspicuous. Plaintiffs give no persuasive reason for this Court to reach a different result.

***Second***, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401-402, does not apply. The EFAA permits plaintiffs to void an arbitration agreement if their case "relat[es] to" a "sexual assault dispute" or "sexual harassment dispute." Plaintiffs' claims against Discord concern its alleged failure to adequately moderate content. They raise no such "dispute" with Discord, which did not itself commit the alleged assault or harassment. Plaintiffs' reading would erase key statutory text and disregard the law's purpose and legislative history. In addition, Doe G's separate theory depends on inferences her complaint does not permit, irrelevant state statutes, and a sexual harassment theory the statute does not support. And whatever the EFAA's reach, it does not help Does A and E. After filing suit, each again accepted an arbitration agreement that is not "predispute" under the statute.

***Finally***, disaffirmance is a question for the arbitrator because it challenges the Terms as a whole rather than the delegation clause specifically. Neither *Coinbase, Inc. v. Suski*, 602 U.S. 143

(2024), nor *Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023), changes that rule. Even if the Court reached the merits, disaffirmance would fail. Doe A cannot disaffirm the Terms she accepted as an adult. Does A and E continued to use Discord, accepted updated Terms after filing suit, and cannot explain how disaffirming could undo those agreements. And Does A, F, and H entered birthdates that made them appear old enough to use Discord, which bars disaffirmance under the laws of their home states. Contrary to Plaintiffs' claims that arbitration will undermine their ability to obtain relief, arbitration "does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022).

## II. ARGUMENT

### A. Plaintiffs Agreed to Arbitrate by Assenting to Discord's Terms.

The parties agree that an online agreement is formed if the user had reasonably conspicuous notice of the terms and took some action, such as clicking a button or checking a box, manifesting their assent. Mot. 18; Opp. 61. Both are satisfied here.

***Notice***. Plaintiffs claim that Discord's "overall design" as well as the "placement, font, and hyperlink formatting" of the notice language provided insufficient notice, given that Plaintiffs were minors when they agreed to the Terms. Opp. 63-64. This argument fails for two reasons.

First, Doe A was an adult when she most recently agreed to the Terms, and the remaining Plaintiffs' ages do not change the standard for inquiry notice, which asks whether the Terms provided a reasonably prudent user—not a "reasonably prudent child"—sufficient notice. *G.G. v. Roblox Corp.*, 2026 WL 1615999, at *1 (N.D. Cal. 2026); *see Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014, 1020-21 (9th Cir. 2024) (applying same standard to minor). Thus, in *G.G.*, the court refused to consider the plaintiff's age in deciding whether notice was sufficient, finding that age was relevant to disaffirmance, which (as here) had been delegated to the arbitrator. 2026 WL 1615999, at *1 & n.2; *see, e.g.*, *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1088-89 (2024) (refusing to consider sophistication level in deciding formation; standard is a "reasonably prudent user," not a "hypothetical" user); *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 397 (E.D.N.Y. 2025) (rejecting argument by minors made "on the basis of their age"). Plaintiffs' cases do not change this result. The Ninth Circuit has never required, as the court held

in *De Ridder v. Roblox Corp.*, 2025 WL 3537260, at *1 (N.D. Cal. 2025), that notice must give an "indication that the hyperlinked terms included an arbitration clause." *See, e.g.*, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516-17 (9th Cir. 2023); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). And *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022), which concerned Roblox's (not Discord's) 2022 registration screens, departs from the Ninth Circuit's objective standard and state law permitting a minor to enter contracts in the same manner as an adult. *See* Mot. 23-24.

Second, the design of each screen shown to Plaintiffs provided reasonably conspicuous notice of the Terms—with text directly beside the action button with a link to the Terms in a contrasting color. Mot. 3-7. *Taylor*, 2026 WL 2689815, at *6, held these screens provided sufficient notice to a minor. Plaintiffs claim *Taylor* "overlooked" binding precedent in *Chabolla v. ClassPass*, 129 F.4th 1147, 1158-59 (9th Cir. 2025), Opp. 65 n.46, but *Taylor* applied the Ninth Circuit's sign-in-wrap framework, including *Chabolla*. *Taylor*, 2026 WL 2689815, at *2, *6 (images of Discord screens and those from *Oberstein*, 60 F.4th at 510, and *Patrick*, 93 F.4th at 477).

***Assent***. Plaintiffs claim Discord "d[id] not expressly state what action will constitute agreement," Opp. 65, but every screen stated that proceeding to create an account meant agreeing to the hyperlinked Terms, Mot. 3-6. These prompts satisfy *Chabolla*, 129 F.4th at 1158-59, which held that a website's notice language must clearly align with the text on the action button to support a finding of unambiguous assent. Discord's iOS and Android screens from mid-June 2025 onward, desktop screen, and Terms update screen all satisfy that standard because the descriptions mirror the text on the action buttons. Mot. 3, 6-7.

Discord's January 2023 website registration screen is on even stronger footing, as it required a user to click a checkbox next to the statement "I have read and agree to Discord's Terms of Service and Privacy Policy." Mot. 5. The checkbox means that this screen presents a clickwrap agreement, which courts "routinely enforce." *Chabolla*, 129 F.4th at 1154. A clickwrap agreement need not display the terms on a pop-up screen such that the user actually reviews them, as Plaintiffs

claim, Opp. 61. *See Ortiz v. Univ. Credit Union*, 2025 WL 3765497, at *2 (9th Cir. 2025) (similar checkbox design was a presumptively enforceable clickwrap agreement).

So, too, the iOS and Android screens preceding mid-June 2025 and the January 2023 home page screen satisfy *Chabolla*. For the pre-mid-June 2025 screens, the notice stated: "By registering, you agree to Discord's Terms of Service and Privacy Policy." Mot. 3. The action button is clearly labeled "Create an account." *Id.* A reasonably prudent user would understand that clicking a button labeled "Create an account" means creating a Discord account, and that doing so is synonymous with "registering" for Discord. The January 2023 home page screen stated: "By registering, you agree to Discord's Terms of Service and Privacy Policy." Mot. 4. On that page, users were prompted to "enter a username" and click an arrow button to continue to register. *Id.* Again, a reasonably prudent user would understand that entering a username and clicking the button meant "registering" for Discord and thereby agreeing to the Terms. *See, e.g.*, *Wilkins v. Cruise LLC*, 121 Cal. App. 5th 927, 950 (2026) (notice language stating that "[b]y continuing, you agree to our Terms" was sufficient because a reasonable user would know that clicking the arrow button meant "continuing" with the account creation process) (emphasis omitted).

*Chabolla* reached a different result in part because it was unclear whether the transaction at issue contemplated a continuing relationship between the user and the defendant. 129 F.4th at 1155 (because the user "does not create a username or password and is not asked to make an account," "[t]he transaction could easily be considered a one-time purchase"). And the defendant's screens obscured what, exactly, the user was signing up for. *Id.* at 1159 (unclear if user was signing up for membership, subscription, or credits). Plaintiffs allege nothing comparable here.

The Court should deny Plaintiffs' request for a trial, which is proper only when there are genuine issues of material fact. Plaintiffs do not dispute Discord presented them the screens through which they created their accounts. That they allegedly did not read the Terms raises no material fact. *See, e.g.*, *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 944 (2022).

**B. The EFAA Does Not Apply.**

Discord disputes the EFAA's applicability to ***all*** Plaintiffs, not "only three," Opp. 12. None of Plaintiffs' cases relates to a "sexual assault dispute" or "sexual harassment dispute" with

Discord. Two additional grounds independently defeat the EFAA as to specific Plaintiffs. Doe G does not allege conduct that meets the statutory definitions of "sexual assault" or "sexual harassment." And Does A and E agreed to arbitrate after their dispute arose, so their agreements are not "predispute" agreements that the EFAA reaches.

**1. Plaintiffs Have No Sexual Assault or Harassment Dispute with Discord.**

The EFAA applies only to a case that "relates to" a "sexual assault dispute" or "sexual harassment dispute." 9 U.S.C. § 402(a). Plaintiffs' cases against Discord do not. Their dispute with Discord concerns how it moderates content. Plaintiffs' arguments ignore the EFAA's plain text as well as its purpose and legislative history.

"***Dispute***." Plaintiffs claim that Discord's interpretation requires inserting the words "defendant" or "employee" into the EFAA's text. Opp. 20. Not so. The EFAA applies only if a case "relates to" alleged "conduct constituting a … sexual assault [or sexual harassment] ***dispute***." 9 U.S.C. § 402(a) (emphasis added). As Plaintiffs note, Opp. 21, the Ninth Circuit recognized that a "'dispute' requires 'some aspect of opposition or disagreement' between the parties as to a particular issue." *Combs v. Netflix, Inc.*, 180 F.4th 1201, 1205 (9th Cir. 2026) (citation omitted). But Plaintiffs' disagreement with Discord pertains to an alleged failure to adequately moderate content, not "sexual assault" or "sexual harassment." *See* Doe A AC ¶¶ 32-132; Doe E AC ¶¶ 19-119; Doe F AC ¶¶ 28-128; Doe G AC ¶¶ 17-117; Doe H AC ¶¶ 19-119. In other words, whether the conduct of a third party constitutes sexual assault or harassment has no bearing on the merits of Plaintiffs' claims against Discord. Given this missing nexus, no Plaintiff's case "relates to" a "sexual assault dispute" or "sexual harassment dispute." The Ninth Circuit recently suggested as much: "the EFAA will apply only so long as a sexual harassment dispute is part of the case." *Holland-Thielen v. SpaceX*, --- F.4th ----, 2026 WL 3403297, at *10 (9th Cir. 2026) (dicta).

Had Congress intended the EFAA to apply in ***every*** case that somehow involves any type of alleged sexual assault or harassment by anyone, no matter the claims against the defendant, the word "dispute" would be needless—it would have been enough to say that the statute applies to any case that relates to allegations of conduct constituting sexual assault or harassment. Plaintiffs'

position reads the term "dispute" out of the EFAA—defying the "longstanding canon[] of statutory construction" that "no part will be inoperative or superfluous, void or insignificant." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698-99 (2022) (citation & internal quotation marks omitted).

"***Relates to***." The Supreme Court has "singled out" the phrase "relates to" "as particularly sensitive to context." *Dubin v. United States*, 599 U.S. 110, 118 (2023). Plaintiffs' own authority, *Chevron USA Inc. v. Plaquemines Par., La.*, 608 U.S. 1, 11 (2026), explained that "the ordinary meaning of 'relating to' ... is not 'so broad that it is meaningless.'" (citation omitted). The "breadth of the words 'related to' does not mean the sky is the limit," and the phrase cannot be read with "uncritical literalism." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (citation omitted). The Court has thus centered its reading of "relates to" on a law's history and objectives.

For example, in *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997), the Court held that a state law did not "relate to" employee benefit plans under the Employee Retirement Income Security Act of 1974 even though the law "impose[d] some burdens on the administration" of benefit plans. *Id.* at 815. The Court rejected a "strictly literal" application because the concept of "relat[ing] to" something else is so open-ended that courts must "go beyond the unhelpful text" and look to the statute's "objectives" and history. *Id.* at 813-15; *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (state law did not relate to employee benefit plan; "infinite relations cannot be the measure"). In *Mellouli v. Lynch*, 575 U.S. 798 (2015), the Court rejected the claim that a state drug-paraphernalia violation was "relat[ed] to a controlled substance" because—while the words "relat[ing] to" could "stop nowhere"—the statute's context and history required a "narrower reading" and a "direct link" to a ***federally*** controlled drug. *Id.* at 811-13 (citation & internal quotation marks omitted); *see also Dan's City*, 569 U.S. at 260, 263 (different result would be too "far removed from Congress' driving concern"). Each time, the literal breadth of "relates to" was the problem, and a more searching inquiry into the statute's context and objectives was the solution.

The EFAA's language thus does not support the expansive scope Plaintiffs propose, and the statute's objectives and context are crucial to its interpretation. The Ninth Circuit's recent decision in *Holland-Thielen* confirmed that the term "relates to"—as used in the EFAA—cannot

be "so broad that it is meaningless." 2026 WL 3403297, at *11 (plaintiffs "met the 'relates to' bar" because they alleged their terminations were in response to accusations of sexual harassment). Instead, for allegations of sexual harassment to "relate[] to" the case, they "must be charges of misconduct for which the plaintiff is seeking relief." *Id.* The "misconduct" for which Plaintiffs seek relief against Discord is ***not*** sexual harassment or assault, but alleged failure to moderate and restrict access to content. *See id.*; *see also SJ Med. Ctr. v. Anozie*, 694 S.W.3d 915, 922-24 (Tex. App. 2024) (EFAA applies where claim "will necessarily include or entail proof that the plaintiff was a victim of a nonconsensual sexual act or sexual contact").

The only federal courts to have considered the EFAA's applicability to comparable claims ***agree*** with this reading. *See Farnham v. Grindr, LLC*, 2025 WL 3062698, at *2 (M.D. Fla. 2025); *M.D. v. Verizon Commc'ns Inc.*, 2025 WL 2712831, at *2 (E.D.N.C. 2025). Plaintiffs say these courts erred by relying on "congressional intent," Opp. 23, but the Supreme Court has urged courts to do just that when interpreting language such as "relat[es] to." *De Buono*, 520 U.S. at 813-15. Plaintiffs also claim that "all courts agree" the "statute's text … is not so limited." Opp. 23. That is wrong. *Farnham* considered the statute's text and—echoing *De Buono*—found that the case did not relate to a "sexual assault dispute ***within the meaning of the EFAA***." 2025 WL 3062698, at *2 (emphasis added); *De Buono*, 520 U.S. at 815 (recognizing state laws impacted administration of employee benefit plans "but nevertheless do not 'relate to' them ***within the meaning of the governing statute***") (emphasis added).

Just last month, a federal court again rejected a broad reading of the EFAA. *Brown v. Airbnb Inc.*, 2026 WL 2982295, at *2 (M.D. Fla. 2026). There, the plaintiff alleged Airbnb wrongly terminated his account after relying on complaints from property hosts, which he alleged were made in retaliation for his own complaints that the hosts had sexually harassed him. *Id.* at *1-2. The EFAA did not apply because the claims did "not impute [sexual harassment] to Airbnb" but "relate[d] directly to Airbnb's own conduct in reviewing and terminating [his] account." *Id.* at *2. As the court put it, the "incidents of sexual harassment must relate to the dispute itself in a meaningful way." *Id.* Just as in *Brown*, Plaintiffs' claims relate to Discord's supposed conduct—publishing certain third-party content—not to a "sexual assault dispute" in any meaningful way.

Plaintiffs argue that the statute's legislative history supports their position, pointing to prefatory statements in the Committee Report that arbitration agreements shield "corporate harms" from scrutiny. Opp. 23 (citing H.R. Rep. No. 117-234, at 4-6 (2022)). But these quotes, when put in context, express concern over workplace misconduct. For example, Plaintiffs quote a congressional statement of concern over "prevent[ing] victims from being warned about dangerous companies," *id.*, but in the same sentence, the report makes clear that its target is "the growth of ***office cultures*** that ignore harassment." H.R. Rep. No. 117-234, at 4 (emphasis added); *see also Holland-Thielen*, 2026 WL 3403297, at *2 ("Congress enacted the EFAA in response to reports that exposed pervasive sexual misconduct at various companies.").

Plaintiffs claim the bill's sponsor intended a broader application by referencing "downloading an app" and noting that "bad actors aren't just at workplaces." Opp. 24 (citation omitted). But in that context, Representative Bustos identified the type of "bad actors" she had in mind: "ride-share applications, moving companies, nursing homes, [and] grocery deliveries." 168 Cong. Rec. H986 (daily ed. Feb. 7, 2022). In each example, the misconduct is committed by the company's own workers or contractors. None involves a communications service sued over the acts of its users. Nothing in the legislative history suggests the law would extend to claims beyond that context—much less to claims that impose liability on a communications service for the acts of its users. *See* 168 Cong. Rec. H986-990, 993; *id.* at S626-628 (daily ed. Feb. 10, 2022); H.R. Rep. No. 117-234, at 8-12 (2022) (testimony and examples limited to misconduct by employees).

Plaintiffs ask the Court to ignore congressional intent because statutes "routinely reach beyond the examples that might have prompted them." Opp. 24 (citing *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581 (2004)). But they fail to distinguish cases where courts have looked to such examples, particularly to construe vague language such as "relates to." *See De Buono*, 520 U.S. at 813-15; *see also Yates v. United States*, 574 U.S. 528, 531, 535-36 (2015) (plurality opinion) ("tangible object" did not include a fish, given that Enron Corporation's document-shredding scandal prompted Sarbanes-Oxley Act's prohibition on destroying "tangible objects"). *General Dynamics* declined to hold that younger workers qualified for protection under the Age Discrimination in Employment Act precisely because the legislative record was "devoid of any

evidence" of discrimination against young people. 540 U.S. at 591. The remaining cases Plaintiffs cite offer no more support. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017) (no examples of issue Congress sought to address); *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 656-57, 683 (2020) (concluding statute's "because of" language was clear and rejecting reliance on "nothing more than suppositions about intentions or guesswork about expectations").

Plaintiffs argue that the EFAA should not be narrowly interpreted—ignoring that the law's Senate sponsor said the opposite. Mot. 32 (citing 168 Cong. Rec. S625 (2022) (daily ed. Feb. 10, 2022) (Sen. Ernst)). Plaintiffs also say the Court should reject a narrow interpretation because the EFAA "is part of the FAA, not an exception." Opp. 24. But an exclusion within the FAA must "be afforded a narrow construction." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiffs do not address the results their reading would produce. *See* Mot. 31. In Plaintiffs' view, the EFAA would extend to any number of "tenuous, remote, or peripheral" relationships. *Dan's City*, 569 U.S. at 261 (citation omitted). For example, consider a lawsuit against: a cell phone provider whose subscriber sexually harasses another; an amusement park where two people meet and one later assaults the other somewhere else; a manufacturer of a security camera or pepper spray that malfunctions right before an assailant commits sexual assault. In Plaintiffs' view, all of these cases would "relate to" a "sexual assault dispute" or "sexual harassment dispute." But this cannot be true if there is no "opposition or disagreement" between the parties as to whether a sexual assault or harassment actually occurred, *Combs*, 180 F.4th at 1205, and the allegations of sexual assault or harassment do not form the "charges of misconduct for which the plaintiff is seeking relief," *Holland-Thielen*, 2026 WL 3403297, at *11.

The cases Plaintiffs cite do not support a contrary conclusion. *Childress v. Moore*, 2026 WL 1618598 (M.D. Fla. 2026), distinguished *Farnham* precisely because there, like here, "both the victim and the alleged perpetrators were consumers with 'no legal relationship' to the defendant" other than a user agreement. 2026 WL 1618598, at *5 n.2. The *Childress* plaintiff, by contrast, alleged "sexual assault by an independent contractor of Defendants." *Id.* Similarly,

*Delirium TV v. Dang*, 714 S.W.3d 640 (Tex. App. 2024), applied the EFAA where the plaintiff alleged a legal relationship between her assailant and a production company that hired them as television show participants. *Id.* at 647-49. And in *Polen v. API Group Life Safety USA*, 2025 WL 3251349 (D. Or. 2025), the EFAA applied to a suit for sex discrimination and retaliation by an employee who claimed she was fired after reporting that her ex-partner had sexually assaulted her. *Id.* at *2, *5-6. Aside from lacking any resemblance to this case, *Polen*'s analysis cannot withstand scrutiny: it interpreted "involving" and "relates to" as broadly as possible, without addressing the Supreme Court's instruction to limit such language to the relationships Congress targeted. *Id.* at *3-4. Plaintiffs' other cases are similarly far afield. *See Doe v. Int'l Student Exch., Inc.*, 2026 WL 2110889, at *2 (C.D. Ill. 2026) (EFAA applied to claims against student exchange program that recruited, assigned, and oversaw host family accused of sexually assaulting exchange student); *C.N. v. Sigma Delta Tau Society*, --- N.Y.S.3d ----, 2026 WL 2855525, at *1-3 (N.Y. App. Div. 2026) (EFAA applied to sorority requiring attendance at party where sexual assault occurred).

Finally, Plaintiffs cite a San Mateo Superior Court order, Opp. 23, which Discord has appealed. *Doe v. Roblox Corp.*, No. A176125 (Cal. Ct. App. 2026). That non-binding order is unpersuasive. It described the EFAA's "relates to" language as "intentionally[] broad" without addressing the Supreme Court's repeated direction to read such phrases in context. Dkt. 479-2, Ex. 3 at 5. It relied on a footnote in the Committee Report, which cited an article criticizing arbitration agreements in consumer transactions, *id.* at 7 (citation omitted), and says nothing about sexual harassment or sexual assault. And it did not address the legislative history showing the EFAA is a targeted exception to the FAA for particular cases related to a sexual assault or sexual harassment dispute. The order also predates *Holland-Thielen*, which noted that the "related to" bar is not "so broad that it is meaningless." 2026 WL 3403297, at *11. This Court should decline to follow it.

**2. Doe G Has Not Alleged Conduct Constituting "Sexual Assault."**

Plaintiffs agree that a "sexual assault dispute" requires a nonconsensual "sexual act" or "sexual contact," "as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law." 9 U.S.C. § 401(3). Plaintiffs do not argue that Doe G "allege[s] a sexual act" because she does not claim any in-person contact at all. *See* 18 U.S.C. § 2246(2); Opp. 14. Nor has she

alleged conduct meeting the statutory definition of "sexual contact," whether under 18 U.S.C. § 2246(3) or any "similar applicable" state law.

Doe G has not alleged "sexual contact" because Plaintiffs identify no allegation that anyone intentionally touched the body parts enumerated in 18 U.S.C. § 2246(3). *See* Opp. 15. Plaintiffs instead argue the predator "coerced [Doe G] into transmitting sexually explicit images of herself" and "directed [Doe G] to touch herself sexually." *Id.* (quoting Doe G AC ¶ 13). They ask the Court to "infer[]" sexual contact by virtue of their allegation that Doe G "succumbed to his pressure." Opp. 15 (citing Doe G AC ¶ 13). But Plaintiffs omit the rest of that allegation, which leaves no room for such inference—Plaintiffs allege Doe G "succumbed to his pressure ***and transmitted more nude photos***." Doe G AC ¶ 13 (emphasis added).

Plaintiffs' arguments under California or Ohio law, Opp. 16-19, fare no better. None of the statutes they cite uses definitions that are "similar" to the definitions of sexual act and sexual contact in 18 U.S.C. § 2246 because none requires any physical touching. *See People v. Brandao*, 203 Cal. App. 4th 436, 440 (2012) (interpreting Cal. Penal Code § 647.6 as "not requir[ing] a touching"); Cal. Penal Code §§ 311.4(a)-(d), 311.3(c)(5); Ohio Rev. Code §§ 2907.323, 2905.32(A)(2) (criminalizing media showing minors "in a state of nudity" or recruiting them to do so). For that reason, Plaintiffs' reliance on *Cascio v. Michael Jackson Co.*, 2026 WL 2337568 (C.D. Cal. 2026), is misplaced: that court looked to California rape and sexual battery statutes, which do require physical touching. *See id.* at *4 (citing Cal. Penal Code §§ 243.4, 261).

Plaintiffs claim that the EFAA's incorporation of state and tribal law must "be read broadly because Congress determined" that sexual assault and harassment cases belong "as a category" in courts. Opp. 13 (citation omitted); *see* Opp. 15. But Congress chose to integrate the definitions of "sexual act" and "sexual contact" from 18 U.S.C. § 2246 into the EFAA for a reason. Those definitions enumerate specific types of physical touch and particular body parts. The phrase "similar applicable Tribal or State law" sets the outer bounds of what state laws may satisfy the EFAA, and the word "similar" is not a license to stretch the EFAA to all factual scenarios that might involve some form of sexual abuse. *See also State Dep't of Pub. Safety v. Doe*, 425 P.3d 115, 119-20, 122-23 (Alaska 2018) (California Penal Code § 647.6 covering no-contact

misconduct not sufficiently "similar" to Alaska sexual-abuse statute that requires contact). In fact, there is a federal statute criminalizing the coercion of minors to engage in "sexual activity" more broadly, which does "not require interpersonal physical contact." 18 U.S.C. § 2422(b); *id.* § 2427. Congress did not include such conduct in the EFAA. Plaintiffs cannot import it into the EFAA under the guise of "similar applicable Tribal or State law." 9 U.S.C. § 401(3).[1]

Finally, the Court should deny Plaintiffs' request for ***another*** opportunity to amend their complaints if it finds their allegations insufficient under the EFAA. *See* Opp. 13. The facts needed to assess the EFAA's applicability are within Plaintiffs' possession, and Plaintiffs have already had one such opportunity. *Great Am. Ins. Co. v. Chang*, 2013 WL 1632669, at *4 (N.D. Cal. 2013) (no leave where court had "already granted … leave to amend on this very same issue").

**3. Doe G Has Not Alleged Conduct Constituting "Sexual Harassment."**

Plaintiffs again ask the Court to stretch the EFAA well beyond its scope when they argue that their claims relate to a "sexual harassment dispute." Opp. 19. To qualify, "sexual harassment" must be conduct "alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). As Plaintiffs acknowledge, "[n]ot all statutes will match," Opp. 16, and courts require the plaintiff to allege "that such conduct violated a law prohibiting sexual harassment." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023); *see also K.T. v. A Place for Rover*, 2023 WL 7167580, at *1, *4-5 (E.D. Pa. 2023) (EFAA did not apply to allegation that pet services platform "created an environment" where pet owners could "prey upon young women" because plaintiff did not allege violation of statute prohibiting sexual harassment). Plaintiffs make no such allegations here.

Plaintiffs point only to § 2422(b), but again, that law prohibits "coercion and enticement" of minors for illegal sexual activity; it says nothing about "sexual harassment." Plaintiffs argue that the EFAA incorporates conduct violating § 2422(b) because courts have described such conduct as a form of "grooming," and one court suggested that allegations of "grooming" in a completely different context may put a university on notice that "sexual harassment" occurred.

[1] For Doe E, Discord has no reason, at this stage, to doubt that she was attacked as she alleges. But the allegations merely underscore the absence of a "sexual assault dispute" between her and Discord. Rather, her dispute with Discord centers on content moderation, not whether she was assaulted by a third-party predator.

Opp. 20 (citing *Doe v. N.C. State Univ.*, 125 F.4th 498, 505-06 (4th Cir. 2025)).[2] This attenuated reasoning stretches the idea of "applicable" law beyond what Congress could have intended. *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1134 (9th Cir. 2009) ("term 'applicable' has a spectrum of meanings"; "broader context of the statute" necessary to interpretation) (citation omitted). As Plaintiffs' cases make clear, there are federal sexual harassment laws, but Plaintiffs do not allege any harassment under those laws occurred. *See* 42 U.S.C. § 2000e *et seq*.; 20 U.S.C. § 1681 *et seq*.

Plaintiffs argue that this creates a "loophole" if the EFAA applies to traditional sexual harassment but not the more serious sexual misconduct prohibited in 18 U.S.C. § 2422, Opp. 20, but that argument underscores Plaintiffs' misguided reading of the EFAA. The EFAA does not apply to ***every*** claim alleging ***any*** kind of sexual misconduct; it narrowly targets predispute arbitration agreements where the plaintiff alleges a "sexual assault dispute" or "sexual harassment dispute." 9 U.S.C. § 402(a). Congress's overwhelming focus on addressing workplace harassment and assaults, Mot. 32, makes the omission of unrelated criminal sexual offenses unsurprising.

#### 4. Does A and E's Post-Dispute Arbitration Agreements Are Not Subject to the EFAA.

Congress limited the EFAA's application to "predispute arbitration agreement[s]." 9 U.S.C. § 402(a). It does not reach agreements made after the dispute arises, which are enforceable under the FAA. *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1104-05 (9th Cir. 2007). Does A and E each entered into arbitration agreements with Discord in 2025 and 2026, after filing suit. Mot. 34. Plaintiffs' arguments for avoiding those agreements fail.[3]

***Policy Arguments.*** Plaintiffs claim that once a litigant files suit, that choice is permanent and irreversible. But Congress limited the EFAA's application to "predispute arbitration agreement[s]." 9 U.S.C. § 402(a). Plaintiffs would have the Court stretch the EFAA to bar ***post-***

---

[2] The other case Plaintiffs cite, *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991), is irrelevant. The court there held that a co-worker's persistent advances were sufficient to state a prima facie case for hostile work environment sexual harassment, with no discussion of "grooming." *Id.* at 873-74.

[3] Plaintiffs claim that Doe A's acceptance of the 2024 Terms after filing suit is not "post-dispute" because the 2024 Terms existed before Doe A filed suit. Opp. 28. This Court need not reach that argument because Doe A also accepted the 2025 Terms after filing suit. Mot. 34. In any event, the argument misreads the statute. A "predispute arbitration agreement" is "any agreement to arbitrate a dispute that had not yet arisen ***at the time of the making of the agreement***." 9 U.S.C. § 401(1) (emphasis added). Whether an agreement is "predispute" thus turns on when the parties made their agreement, not when the company drafted or published its terms.

dispute arbitration agreements too, as long as litigation has begun. That interpretation would impermissibly read "predispute" out of the statute. Plaintiffs' version not only has no support in the statute, but also defies the Supreme Court's admonition against adopting bespoke rules in the arbitration context. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (courts cannot use "custom-made rules, to tilt the playing field in favor of (or against) arbitration").

Plaintiffs say Discord's position would risk sending cases to arbitration years into litigation. But they admit "[t]hese bellwether cases are at the early stages of litigation." Opp. 25. Moreover, nothing is inherently impermissible about agreeing to arbitrate after litigation has started—even on the eve of trial. *See, e.g.*, *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 406 (9th Cir. 2011). Parties may well decide to arbitrate when faced with a concrete dispute in litigation. And doctrines like waiver already guard against potential unfairness.

Plaintiffs ask the Court "to protect" minors from post-dispute arbitration agreements. Opp. 26. But state law already protects minors through the right to disaffirm, which Discord addresses below. Mot. 23-24; *infra* § II.C. Plaintiffs instead seek a rule that would void a minor's arbitration agreement simply because a lawsuit is pending. Plaintiffs' guardian ad litem argument also fails. It does not apply to Doe A, who accepted the Terms as an adult, or to Doe E's October 11, 2025, agreement, which predates the March 2026 appointment of her guardian ad litem. Dkt. 250.[4]

***Representation by Counsel.*** That a litigant is represented by counsel does not prevent that party from contractually agreeing to arbitration after filing suit. *See, e.g.*, *Johnson*, 635 F.3d at 406 (arbitration based on stipulation entered three weeks before trial date); *New Regency Prods.*, 501 F.3d at 1103 (arbitration based on post-filing arbitration agreement); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015, at *6 (E.D. Cal. 2023) (same); *Vargison v. Paula's Choice, LLC*, 2025 WL 346197, at *2 (W.D. Wash. 2025) (same), *opinion clarified on other grounds*, 2025 WL 822659 (W.D. Wash. 2025); *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 226, 232 (2019) (compelling arbitration based on agreement signed after filing and rejecting argument that agreement must "expressly cover[] a pre-existing lawsuit").

[4] Plaintiffs' focus on Rules 17(c)(2) and 23(d)(1)(B) and related case law is puzzling—Plaintiffs are not unrepresented minors, nor proceeding in a putative class action or proposing a settlement for court review. Opp. 26-27.

Discord did not, as Plaintiffs imply, single them out to procure post-dispute agreements. Opp. 30. Rather, Plaintiffs chose to visit Discord to create new accounts or, like millions of other Discord users, agreed to periodic Terms updates, including in 2024 and 2025, to continue using Discord's services. Dkt. 443-3 ¶ 14 & Ex. A. In all of the cases Plaintiffs cite, the arbitration agreement was, unlike here, new to the parties' relationship. Opp. 30. Further, unlike here, the litigants in *Dasher v. RBC Bank*, 882 F.3d 1017 (11th Cir. 2018), did not assent to the agreement. *Id.* at 1021 (failure to "opt out" is not assent). *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014) found no evidence that the arbitration agreement covered "pending lawsuits." *Id.* at 680. But Discord's 2024 and 2025 Terms expressly cover "claims that arose, were asserted, or involve facts occurring before the existence of this arbitration agreement" or "Agreement to Arbitrate." Dkt. 443-3 Exs. G & H. Courts routinely enforce such language. *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878, 881 (N.D. Cal. 2018) (arbitration provision covering "claims that arose before" acceptance "expressly applies ... to previously accrued claims on its face") (citation omitted), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *cf. Sanfilippo v. Match Grp.*, 2021 WL 4440337, at *2 (9th Cir. 2021) ("pre-existing claims fell within the scope of the arbitration agreement").

***Enforceability.*** Plaintiffs' remaining arguments challenge the ***enforceability*** of post-dispute arbitration agreements, but enforceability arguments are delegated to the arbitrator. *See infra* § II.C.1. They also lack merit.

As to "knowing waiver" and "effective vindication," Opp. 28-32, those doctrines apply where, unlike here, the plaintiff asserts a federal cause of action authorized by federal statute. *See, e.g.*, *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201-02 (9th Cir. 2021) ("knowing waiver" requirement "applies only to a comparatively small class of claims arising under Title VII or similar laws" and requires examining the federal "statutes creating [the] private right of action" to determine whether the statute precludes waiver of judicial remedies); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir. 2013) (application of "effective vindication" doctrine is "reserved for claims brought under federal statutes").[5] Plaintiffs' remaining cases either support

[5] Even if either doctrine applied, Plaintiffs' authorities confirm that the Terms meet the applicable test. They contain "clear terms" disclosing that disputes about Discord's services must be submitted to "binding arbitration," *Zoller*, 993

Discord, *Richards v. Silver*, 433 So. 3d 433, 440-41 (Fla. Dist. Ct. App. 2026) (EFAA did not apply to post-dispute arbitration agreement), or analyzed irrelevant issues, *Ding v. Structure Therapeutics, Inc., NASDAQ*, 187 F.4th 1231, 1237 (9th Cir. 2026) (whether earlier arbitration affected ability to apply EFAA to a later-filed lawsuit); *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 407 (6th Cir. 2025) (whether dispute arose before EFAA's effective date).

As to unconscionability, Plaintiffs have not met their burden to prove both procedural and substantive unconscionability. *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1173 (9th Cir. 2026). There is nothing inherently unconscionable about a post-dispute arbitration agreement; the FAA expressly covers agreements "to submit to arbitration an existing controversy," 9 U.S.C. § 2, and the Ninth Circuit enforces them. *See, e.g.*, *Johnson*, 635 F.3d at 406. Plaintiffs' proposed rule would make post-dispute arbitration agreements a uniquely unenforceable type of contract just because a lawsuit has been filed. That is the kind of arbitration-specific rule the FAA forbids. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 341 (2011).

Plaintiffs cannot show procedural unconscionability. After filing complaints expressly acknowledging Discord's Terms and referencing "any arbitration agreements" with Discord, Does A and E accepted Discord's updated Terms again through the same platform-wide process presented to ***all*** Discord users, on screens that stated, immediately adjacent to the action button, that clicking the button meant agreeing to Discord's hyperlinked Terms. The Terms conspicuously disclosed arbitration and provided an opt-out right that Plaintiffs did not exercise. *See* Mot. 12-14. Plaintiffs' authorities are all distinguishable. *Mitton v. State Bar of Cal.*, 71 Cal. 2d 525, 534 (1969) (disciplinary action not addressing unconscionability); *Salgado v. Carrows Rests., Inc.*, 2021 WL 2199436, at *1 (Cal. Ct. App. 2021) (communications targeted at a represented party); *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) (communications with putative class members presenting a new arbitration provision without approved notice of lawsuit); *Valve Corp. v. Abbruzzese*, 2026 WL 1481630, at *10 (W.D. Wash. 2026) (agreements that would

---

F.3d at 1203-04, and do not prohibit asserting any federal statutory claims, *Am. Exp. Co. v. It. Colors Rest.*, 570 U.S. 228, 235 (2013).

unwind already-litigated arbitrations); *Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687, 691 (S.D. Tex. 2003) (agreement would bar administrative procedures).

Plaintiffs identify no evidence that they lacked alternative communications services; their addictive-design theory is attorney argument, not evidence. *See Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283, 1291 (M.D. Fla. 2025) (compelling arbitration despite contention that minors' continued use resulted from alleged addiction). The cases they cite say nothing about minors. *See Grand Prospect Partners v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332 (2015); *Hines v. Nat'l Ent. Grp.*, 140 F.4th 322 (6th Cir. 2025). And while age may be relevant to disaffirmance, it does not establish procedural unconscionability. Mot. 23-25 & n.20. Attorney argument about adhesion and lack of choice is not admissible evidence to support the assertion that Plaintiffs "felt compelled to accept" the Terms, Opp. 34-35, particularly when Plaintiffs, who were presented with an "opt-out provision and a conspicuous and comprehensive explanation of the arbitration agreement," did not exercise that option. *See Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 964 (9th Cir. 2012). Plaintiffs' other cases involved circumstances in which agreement was a condition of engaging in specific and unique activities. *See Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Ass'n*, 41 Cal. App. 5th 753, 761-62 (2019) (college's only alternative was to forgo and thus preclude all students from participating in intercollegiate athletics); *Heckman v. Live Nation Ent.*, 120 F.4th 670, 682 (9th Cir. 2024) (Ticketmaster's alleged market dominance meant consumers had to accept the challenged terms or be barred from purchasing tickets to almost all large-venue concerts). Here, by contrast, Discord's Terms provided an opt-out right, and Plaintiffs do not suggest they lacked a meaningful choice in communications services. *See* Mot. 15. Nor was there surprise. *See id.* at 12-15 (detailing how the Terms provided notice of a dispute-resolution section containing an arbitration agreement, which itself was featured prominently under a large bold heading).

Plaintiffs likewise cannot show substantive unconscionability. Discord's arbitration provision is bilateral and contains no remedy-stripping or unilateral carve-out term of the kind underlying Plaintiffs' cases. *See In re Poly-America, LP*, 262 S.W.3d 337, 353 (Tex. 2008) (limited workers' compensation remedies); *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638,

665-66 (2004) (unilateral intellectual-property carve-out). Discord's Terms require only that disputes be resolved in the arbitral forum to which the parties agreed.

**C. The Parties Agreed to Delegate Arbitrability Issues to the Arbitrator.**

Plaintiffs do not contest that Discord's Terms clearly and unmistakably delegated arbitrability disputes, whether through express delegation clauses or the incorporation by reference of arbitral rules. Mot. 13-14. The Court should thus let the arbitrator decide any questions of arbitrability and reject Plaintiffs' attempts to avoid their agreement to delegate.

**1. Disaffirmance Is an Arbitrability Issue.**

Disaffirmance is an enforceability challenge, which falls within the delegation clause. Mot. 24; *see* Opp. 40. *See, e.g.*, *Tanner v. Roblox Corp.*, 2026 WL 3539997, at *10 (E.D. Pa. 2026) (disaffirmance "necessarily goes to the validity and enforceability of the contract" "and is reserved for the arbitrator under the delegation clause"). Still, Plaintiffs ask this Court to decide that they have disaffirmed the entire Terms, the arbitration agreement within the Terms, and the delegation clause. Opp. 39. The Court should decline.

The Supreme Court has identified two types of challenges to contracts with arbitration agreements: one "challenges specifically the validity of the agreement to arbitrate," and the other "challenges the contract as a whole," such as those made "on a ground that directly affects the entire agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "[A] challenge to the validity of an entire arbitration agreement ... must be decided by the arbitrator if the agreement includes a delegation clause that is not directly challenged." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022); *see also Buckeye*, 546 U.S. at 444 (articulating same rule); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Thus, for example, an arbitrator decides whether "the entire agreement was fraudulently induced" or "the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S. at 444. Because Plaintiffs purport to "disaffirm[] any contract that [they] may have entered as a minor, including any forced arbitration agreement and any delegation clause in any contract," Opp. 41, an arbitrator, not this Court, must decide whether Plaintiffs' disaffirmation is valid.

*Rent-A-Center* relied on *Prima Paint*, in which the Supreme Court considered a challenge to an entire contract on the basis that it was fraudulently induced. An arbitrator, not the court, was required to decide that question: "[W]here the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we ***nonetheless*** require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." 561 U.S. at 71 (emphasis added). To be "directed specifically," a plaintiff must explain why the arbitration agreement or delegation clause is invalid, such as "fraud in the inducement of the arbitration clause ***itself***," *id.* (citation omitted & emphasis added), or unconscionability of the delegation clause ***itself***. *Id.* at 74. Thus, to mount a specific challenge, the plaintiff must not only articulate the basis for the challenge but also explain why that basis "***as applied*** to the delegation provision rendered ***that provision***" unenforceable. *Id.*; *see also Bielski*, 87 F.4th at 1009-10, 1011 (specific challenge requires "not only mention[ing] [the clause]" but "craft[ing] arguments directly addressing its unconscionability").

Plaintiffs fail to satisfy *Rent-A-Center*, *Buckeye*, *Prima Paint*, and *Bielski*. Their disaffirmance based on infancy is not directed specifically to the delegation clause. They have not offered any substantive argument as to ***why*** infancy renders the delegation clause in particular—as opposed to the arbitration agreement or the entire Terms—unenforceable. Their argument boils down to this: they disaffirm Discord's Terms, which necessarily means they disaffirm all of its components, including the delegation clause. That is a challenge to the contract as a whole, which is for the arbitrator to decide. *Buckeye*, 546 U.S. at 444-45; *Prima Paint*, 388 U.S. at 403-04.

The Ninth Circuit has rejected similar attempts to bypass a delegation clause. For example, in *Caremark, LLC v. Choctaw Nation*, 104 F.4th 81 (9th Cir. 2024), the Choctaw Nation argued that federal law displaced the arbitration agreement, and "expressly challenge[d] the enforceability and validity of the delegation clauses" on that same basis. *Id.* at 87 & n.4.[6] That was not a specific attack on the delegation clauses. *Id.* In *Marino v. Aven Financial, Inc.*, 2026 WL 2280618 (9th Cir. 2026), the plaintiff argued that the Dodd-Frank Act rendered the arbitration agreement

---

[6] *See* Special Appearance for Resps.' Resp. in Opp. to Pet. to Compel Arbitration and Mem. in Supp. at 38, *Caremark v. Choctaw Nation*, No. 2:21-CV-01554 (D. Ariz. Nov. 18, 2021), Dkt. No. 28 (arguing "the delegation clause is specifically displaced because it hinders the right of recovery under the Recovery Act").

unenforceable—and that the delegation clause was invalid for the same reason. *Id.* at *2; *see* Mem. in Opp. of Mot. to Compel Arbitration at 11, *Marino v. Aven Fin., Inc.*, No. 3:25-cv-00503 (S.D. Cal. 2025), Dkt. No. 15 (arguing that "the delegation provision in Defendant's arbitration agreement is unenforceable pursuant to the Dodd-Frank Act"). The court held that "the delegation clause control[led] because Marino's argument … that the Dodd-Frank Act precludes arbitration … does not 'impugn the validity of the delegation clause specifically.'" 2026 WL 2280618, at *2 (cleaned up); *see also, e.g.*, *Tanner v. Tax Servs. of Am., Inc.*, 2025 WL 1580737, at *5 (N.D. Cal. 2025); *Juarez v. T-Mobile USA Inc.*, 2024 WL 5424366, at *7 (C.D. Cal. 2024). So too here, Plaintiffs do not attack the delegation clause specifically.

*Suski*, 602 U.S. 143, and *Avery v. TEKsystems, Inc.*, 165 F.4th 1219 (9th Cir. 2026) (Opp. 40), do not compel a different result. *Suski* answered the narrow question of whether a court or the arbitrator should decide whether a later-dated contract supersedes an older arbitration agreement containing a delegation clause. 602 U.S. at 145, 149. In response to fears that its approach would "invite chaos" by lowering the bar for delegation clause challenges, the Court instructed: "where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Id.* at 152; *see also, e.g.*, *Brown v. Santander Consumer USA*, 2025 WL 2280559, at *8 (S.D. Ill. 2025) (explaining *Suski*'s limited application). In other words, *Suski* did not abrogate the requirements of *Rent-A-Center*, *Buckeye*, or *Prima Paint*, nor did it bless a plaintiff's attempt to circumvent an enforceable delegation clause on a ground that would not pass muster under those precedents.

*Avery* rests on the court's authority under Rule 23(d) "'to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties' includ[ing] the authority to decline to enforce an arbitration agreement." 165 F.4th at 1231 (citation omitted). The court exercised that authority because of the defendant's conduct toward putative class members. After class certification briefing closed, the defendant rolled out an arbitration agreement to its employees, who were putative class members. It made the agreement a condition of continued employment and barred employees from sharing it with plaintiffs' counsel. It also

made misleading statements about class actions, effectively converting an opt-out class into an opt-in class. *Id.* at 1226. There are no analogous facts here. These are individual actions, so Rule 23(d) does not apply. Discord's 2024 and 2025 Terms updates went to all users through the same platform-wide process, not to Plaintiffs because of this litigation. Dkt. 443-3 ¶ 16. And Plaintiffs identify nothing misleading in Discord's communications. *Marino*—decided eight months later—confirms that *Avery* did not change the rule in the Ninth Circuit. *See* 2026 WL 2280618, at *2.

Plaintiffs have not mounted a specific challenge to the delegation clause, leaving disaffirmance for the arbitrator. This result is consistent with Ninth Circuit authority and also decisions from other federal appellate courts, which recognize that merely saying an agreement-wide challenge also applies to a delegation clause is "not specific enough to enforce judicial review." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022); *see Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 243 (4th Cir. 2025); *Hill v. Jackson Offshore Holdings*, 175 F.4th 324, 334-35 (5th Cir. 2026); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021); *Attix v. Carrington Mortg. Servs.*, 35 F.4th 1284, 1304 (11th Cir. 2022).

Finally, contrary to Plaintiffs' assertions, Opp. 43, Discord does not contend that a minor plaintiff can ***never*** disaffirm a delegation clause.[7] But because Plaintiffs' disaffirmance is a challenge to Discord's Terms as a whole and does not specifically challenge the delegation agreement, it is an issue for the arbitrator to decide.

**2. Does A, E, F, and H Cannot Disaffirm.**

Even if the Court reaches disaffirmation, it should still compel Plaintiffs to arbitration.

***Doe A's acceptance of Terms as an adult***. Whatever Doe A's purported disaffirmance reaches, it cannot reach Terms she accepted as an adult, including as recently as October 22, 2026. *See* A.J. Decl. (Dkt. 479-3); Supp. Robbins Decl. ¶ 3. The Terms she entered apply to "all claims that arose … or involve facts occurring before the existence of this arbitration agreement or any

[7] *Melendez v. Ethical Culture Fieldston School*, 789 F. Supp. 3d 316 (S.D.N.Y. 2025), Opp. 43, is inapposite because it relied on the *In re StockX* ***dissent*** to hold that "a minor who has disaffirmed a contract is not subject to the contract's arbitration provision." *Melendez*, 789 F. Supp. 3d at 328 (quoting *In re StockX*, 19 F.4th at 888 (Moore, J., dissenting)). The *Melendez* court acknowledged that the Ninth Circuit had not adopted that rule, *see id.* at 328 n.4, nor has it since.

prior agreement." 2024 Terms at 10; 2025 Terms at 14; Mot. 24-26; Supp. Robbins Decl. Ex. A. As a result, the Court should compel Doe A to arbitrate her claims.

***Does A and E's continued use***. Both Does A and E[8] continued to use Discord and accepted new Terms after filing suit. Discord's records show that two accounts created in September and October 2026 are associated with the phone number Plaintiffs identified as Doe A's under the User Account Information Order. Supp. Robbins Decl. ¶ 3. One of those accounts was used as recently as October 28, 2026, four days after Doe A declared that she had "stopped using Discord." *Id.* Ex. A; Dkt. 479-3 ¶ 7. Doe A has continued to use Discord for more than a year after filing suit. Supp. Robbins Decl. ¶ 3. Doe E accepted Terms updates in October 2025 and August 2026 and has continued to use Discord even six months after suit. Mot. 34; Dkt. 443-3 Ex. A.

Plaintiffs claim they can disaffirm at any time while they are minors, relying on *C.M.D. v. Facebook, Inc.*, 2014 WL 1266291 (N.D. Cal. 2014), *aff'd*, 621 F. App'x 488 (9th Cir. 2015). But the reasoning in *C.M.D.* supports Discord. This Court found that even though California law "almost certainly would allow Plaintiffs to disaffirm" Facebook's terms, the plaintiffs had "continued to use their Facebook accounts long after th[e] action was filed." *Id.* at *4. Although plaintiffs might still "disaffirm the [terms] and close their Facebook accounts," doing so could not "retroactively vitiate the consent they had given" at the relevant time—that is, when their names and pictures were allegedly misused. *Id.* Here, Doe A's and E's continued use—long ***after*** filing suit—means they cannot "retroactively vitiate" their consent to arbitrate this dispute. That Plaintiffs assert no rights under the Terms is irrelevant. In fact, courts—including the Ninth Circuit in affirming *C.M.D.*—repeatedly conclude that a minor cannot continue to receive the benefits of a contract (here, continued access to Discord's services) while disaffirming the portions they find burdensome.[9] 621 F. App'x at 489 (continued use precludes disaffirmance; "a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill") (citations & internal quotation marks omitted);

---

[8] Doe E has not disaffirmed because the declaration is unsigned, Dkt. 479-8, and is not evidence. *Tobin v. City & Cnty. of S.F.*, 2016 WL 5791224, at *3 (N.D. Cal. 2016), *aff'd*, 747 F. App'x 584 (9th Cir. 2019).

[9] Plaintiffs attempt to distinguish Discord's state cases, but these cases establish that the law of each Doe's home state recognizes that a minor may not accept the benefit of a contract while disaffirming. *See* Mot. 27-28.

*see also Whittaker v. Roblox Corp.*, 2026 WL 2640984, at *4 (D. Colo. 2026) (disaffirmance despite continued use is "impermissible as a matter of equity"; "estoppel prevents such gamesmanship"); *Rodriguez v. Microsoft Corp.*, 2026 WL 3459304, at *5 (E.D. Cal. 2026) (continued use manifested "intent *not* to disaffirm"; collecting cases); Mot. 27 (citing cases).

Plaintiffs also argue that it is incumbent on Discord to prevent them from using its service, but none of the cases involving communications services like Discord applies this reasoning.[10] The cases Plaintiffs cite offer no support. *See Lee v. Hibernia Sav. & Loan Soc'y*, 177 Cal. 656, 659 (1918) (minor not estopped from disaffirming contract after misrepresenting age under California law); *R.A. v. Epic Games, Inc.*, 2019 WL 6792801, at *7 n.2 (C.D. Cal. 2019) ("neither party addresse[d] whether a minor may purportedly disaffirm a contract multiple times" and thus declining to reach issue); *Mercado v. Roblox Corp.*, 2026 WL 2910175, at *1, *14 (E.D. Pa. 2026) (no continued use after disaffirmance); *B.F. v. Amazon.com Inc.*, 858 F. App'x 218, 221 (9th Cir. 2021) (children not bound by arbitration clause parents entered); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101-02 (9th Cir. 2006) (non-signatory not bound by estoppel). Plaintiffs repeatedly cite *J.D.B. v. North Carolina*, 564 U.S. 261 (2011), but that case dealt with custodial interrogation of minors by police, not a minor's capacity to contract. *Id.* at 264-65.

Rejecting Plaintiffs' purported disaffirmance despite their continued Discord use is not only compelled by the law but also by logic. If Plaintiffs were correct, a minor could keep using Discord's services without being bound by any of the Terms. So, for example, Plaintiffs could violate Discord's Community Guidelines—such as by stalking or bullying other users—without penalty. That is not the law. Minors must disaffirm the entire contract, not just portions they dislike.

***Does A, F, and H's misrepresentations***. Does A, F, and H misrepresented their age, which defeats disaffirmance if the Court applies the law of Plaintiffs' home states.[11] Plaintiffs argue

---

[10] Plaintiffs claim Discord's "business model depends on keeping users engaged," Opp. 49, but they rely only on unproven allegations in the complaints rather than the evidence required on a motion to compel arbitration, and they mischaracterize even those allegations: the complaints do not allege that Discord uses algorithms to tailor content or feeds, or that it employs other "addictive" features. Nor could they, as Discord does not use algorithms to curate feeds. This Motion is not the proper vehicle to address the merits of Plaintiffs' claims, and Discord does not respond here to Plaintiffs' one-sided allegations.

[11] Plaintiffs rely on Discord's Terms for application of California law, despite claiming to have never entered (or disaffirmed) those Terms, on the basis of waiver. Opp. 16. There can be no finding of waiver here: Discord noted that a choice-of-law analysis is unnecessary on the contract formation question because the result is the same under any

Discord "infers falsity" with "no direct evidence." Opp. 51. But the evidence shows that Discord's system blocks users who enter an under-13 birthdate, so someone under 13 who created an account necessarily entered a false birthdate. *See* Dkt. 443-3 ¶ 3. And Discord does not store adult birthdates in user account records, confirming that these Plaintiffs entered false birthdates because no birthdate record exists in the user accounts for Does F and H, nor for the Doe A account that Discord relies upon in its Motion. *Id.* ¶ 6; Mot. 28. No inference is required. Notably, no Plaintiff denies entering a false birthdate in their declarations.

Plaintiffs argue that Discord cannot rely on the age a minor provides and that Discord's cases involved "real age-verification measures." Opp. 52. Not so. In *Off the Wall & Gameroom LLC v. Gabbai*, 301 So. 3d 281 (Fla. Dist. Ct. App. 2020), the trial court adopted Plaintiffs' view—that the defendant was not entitled to rely on misrepresented age because it did nothing to investigate or verify the information—but the court of appeals reversed, rejecting the argument that the defendant must show reasonable reliance. *Id.* at 284-85; *see also Smith v. Adventure Air Sports Kennesaw, LLC*, 849 S.E.2d 738, 745 & n.23 (Ga. Ct. App. 2020) ("independent investigation" was "unnecessary" in absence of suspicious circumstances) (citation omitted); *Topheavy Studios, Inc. v. Doe*, 2005 WL 1940159, at *4-5 (Tex. App. 2005) (reason for suspicion existed). These cases do not establish a duty to verify, but at most, require inquiry where there is specific reason to doubt the information a particular minor provided. Plaintiffs also argue they received no benefit, but as noted, using a communications service reflects acceptance of a contract's benefits. *See C.M.D.*, 621 F. App'x at 489. Plaintiffs argue that Does F and H were too young to form fraudulent intent, but they do not dispute that those Plaintiffs knew the birthdate information they provided Discord was false. *See, e.g.*, *Off the Wall*, 301 So. 3d at 286 ("infancy defense is unavailable" where 13-year-old "intentionally misrepresented" information).

## III. CONCLUSION

Discord respectfully requests that the Court grant its Motion, compel arbitration as to the remaining five bellwether cases, and stay their proceedings pending arbitration.[12]

---

potentially applicable law. Mot. 18. Discord recognizes that the result is ***not*** the same on the question of whether a minor's misrepresentation of age precludes disaffirmance. *Id.* at 28, 29 n.24.

[12] If the Court compels arbitration, a stay is mandatory under 9 U.S.C. § 3. Plaintiffs do not argue otherwise. Mot. 36.

DATED: November 20, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ambika Kumar*

Ambika Kumar
Adam S. Sieff
Xiang Li
Marcy Blattner Micale

*Attorneys for Defendant*
DISCORD INC.